Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 91765
T: (310) 322-8800
F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019 (pending *Pro Hac Vice*)
Andrea Hirsch, Esq. GA Bar No. 666557 (pending *Pro Hac Vice*)
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FABIOLA ACEVEDO, JANE DOE 1, JANE DOE 2, JANE DOE 3, and JOHN DOE 1** , <br><br> Plaintiff, <br><br> v. <br><br> **EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; and DOES 1-100.,** <br><br> Defendants. <br> _____ | **CASE NO.** <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> **1) Violation of 18 U.S.C. § 1591** <br> **2) Violation of 18 U.S.C. § 1591** <br> **3) Violation of 18 U.S.C. § 1591** <br> **4) Sexual Battery** <br> **5) Civil Battery** <br> **6) Intentional Infliction of Emotional Distress** <br> **7) Negligent Infliction of Emotional Distress** <br> **8) Negligent Hiring, Retention, and Supervision** <br> **9) Loss of Consortium** <br><br> **DEMAND FOR JURY TRIAL** |

1

Plaintiff FABIOLA ACEVEDO, JANE DOE 1, JANE DOE 2, JANE DOE 3, and JOHN DOE 1, complaining of Defendants; eXp REALTY, LLC, eXp WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN and DOES 1-100, (hereinafter referred to as "Defendants") by their attorneys Cohen Hirsch, LP, and Lenze Lawyers, PLC, respectfully sets forth and alleges the following, upon information and belief:

## PRELIMINARY STATEMENT

1.      This is a case about the sexual assault of women, real estate agents, brought in as recruits to a larger real estate corporation operated in a pyramid-style scheme, not only for the financial benefit of both individual agents who recruited them (and those above them), but which also gave license to its' agents to prey upon these women during recruiting events.

2.      This civil action for damages is brought under the Federal sex trafficking statute, 18 U.S.C. §§1591, 1595, as well as other state law actions.  It arises from DEFENDANT MICHAEL BJORKMAN and DEFENDANT DAVID GOLDEN's ongoing venture to entice women to travel in interstate commerce, recruit enthusiastic real estate agents with the promise of career advancement and coaching, and use their considerable influence in the real estate industry on these other real estate agents behalf, knowing that they would use means of force, fraud or coercion to cause these women to engage in a sex act (the "Venture").  eXp REALTY LLC and eXp World Holdings, Inc. (hereinafter

collectively, "DEFENDANT eXp REALTY" or "eXp")  knew of such actions yet turned a blind eye, propelled by the continued financial benefits they received.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1595, which provides the district courts of the United States jurisdiction over violations of 18 U.S.C. § 1591.

4.      This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the related federal claims over which this Court has original jurisdiction.

5.      This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. §1595.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims took place in this District, and DEFENDANT MICHAEL L. BJORKMAN resided in this district and division at all times complained of herein.

## PLAINTIFFS

7.      Plaintiff, FABIOLA ACEVEDO is a citizen of Florida and is a licensed real estate agent with DEFENDANT eXp REALTY.

8.      Plaintiff, JANE DOE 1 is a citizen of Tennessee and a licensed real estate agent with DEFENDANT eXp REALTY.  The name utilized by this Plaintiff in this

Complaint is fictitious to protect her privacy as a survivor of a sexual assault that she suffered as a result of the Defendants' conduct.

9.      Plaintiff, JANE DOE 2, is a citizen of California and is a licensed real estate agent with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of attempted sexual assault that she suffered as a result of the Defendants' conduct.

10.      Plaintiff, JANE DOE 3, is a citizen of Florida and is a licensed real estate agent formerly associated with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of sexual assault that she suffered as a result of the Defendants' conduct.

11.      Plaintiff, JOHN DOE 1, is a citizen of Florida and is a licensed real estate agent formerly associated with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect the privacy of his spouse, JANE DOE 3.

**DEFENDANTS**

12.      DEFENDANT eXp WORLD HOLDINGS, INC. is a corporation duly organized and existing under and by virtue of the State of Delaware and has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

13.      DEFENDANT eXp REALTY, LLC is a corporation duly organized and existing under and by virtue of the State of Washington has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

COMPLAINT FOR DAMAGES

14.     Based upon information and belief, DEFENDANT MICHAEL BJORKMAN is a citizen of the State of California and resides in Ventura County, CA and a former real estate agent with DEFENDANT eXp REALTY.

15.     DEFENDANT DAVID S. GOLDEN is a citizen of the State of Nevada and a real estate agent with DEFENDANT eXp REALTY.

16.     The true names and capacities, whether corporate, associate, individual or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the DEFENDANTS designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to Plaintiffs, as herein alleged. Plaintiffs will seek leave to amend this Complaint to show their names and capacities when the same have been ascertained.

**EXP REALTY, LLC AND EXP WORLD HOLDINGS, INC.**
**("DEFENDANT eXp REALTY")**

17.     DEFENDANT eXp REALTY is a multi-level marketing real estate company that is publicly traded on the NASDAQ.  It is touted as a cloud-based model with a global community.

18.     According to DEFENDANT eXp REALTY, it is "fastest growing residential real estate brokerage on the planet."  As of October 2022, DEFENDANT eXp REALTY exceeds 85,000 agents worldwide, and as of November 2022, eXp World Holdings reported Third Quarter Revenue of $1.2 Billion.

COMPLAINT FOR DAMAGES



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

19.     Also, according to DEFENDANT eXp REALTY, it is the largest independent

brokerage on the planet.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

20.     DEFENDANT eXp REALTY heavily encourages and incentivizes its agents

to become a "Sponsor Agent."   DEFENDANT eXp REALTY calls this "Agent

Attraction".

COMPLAINT FOR DAMAGES

21.     eXp trains and teaches its Sponsor Agents how to recruit and entice other real estate agents ("Recruited Agent") to join DEFENDANT eXp REALTY via DEFENDANT eXp REALTY's Revenue Share pyramid.

22.     By participating in DEFENDANT eXp REALTY's Revenue Share pyramid, Sponsor Agents receive substantial money directly from DEFENDANT eXp REALTY. The higher a Sponsor Agent rises in the Revenue Share pyramid (or stated another way, the more tiers of Recruited Agents a Sponsor Agent can lock into their "downline") the more money DEFENDANT eXp REALTY pays the Sponsor Agent.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

23.     In addition, Sponsor Agents get a stock award in DEFENDANT eXp REALTY every time their Recruited Agent sells a property.

24.     Typically, DEFENDANT eXp REALTY's top recruiting Sponsor Agents would invite prospective and current DEFENDANT eXp REALTY real estate agents to social networking events ("eXp REALTY Recruiting Events") for the purpose of

COMPLAINT FOR DAMAGES

recruiting, enticing and soliciting other real estate agents to join DEFENDANT eXp REALTY or to retain current DEFENDANT eXp REALTY real estate agents.

25.    DEFENDANT eXp REALTY receives a direct financial benefit every time a Sponsor Agent recruits a real estate agent into their downline, including, but not limited to the following: 20% of all commissions earned by the Recruited Agent; $149 start-up fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $85/month cloud brokerage fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $25 transaction review fee paid by the Recruited Agent to DEFENDANT eXp REALTY; and a $40 risk management fee paid by the Recruited Agent to DEFENDANT eXp REALTY.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

26.    DEFENDANT eXp REALTY also receives a direct financial benefit from every Recruited Agent in the amount of $250 a month if the Recruited Agent fails to generate a minimum of $5,000 gross commission income or fails to close two qualifying sale transactions within the preceding six full months.

## DEFENDANT MICHAEL L. BJORKMAN AND
## DEFENDANT DAVID S. GOLDEN

27.    DEFENDANT MICHAEL L. BJORKMAN ("DEFENDANT BJORKMAN") became an agent with eXp REALTY in 2018 but had a longer history with many of the individuals involved with eXp.

28.    On March 8, 2021, DEFENDANT BJORKMAN was arrested in Miami-Dade County for two (2) counts of sexual assault of JANE DOE 3.

29.    In conjunction with that arrest, the Las Vegas Police Department issued a Declaration of Warrant/Summons, Event Number 200900070704 ("Warrant"), a 27-page report, which lays out its in-depth criminal investigation describing multiple occasions of multiple women being drugged and assaulted by DEFENDANT BJORKMAN while attending eXp REALTY Recruiting Events.

30.    As described in the Warrant, there is a long history of multiple women accusing DEFENDANT BJORKMAN of both drugging and sexually assaulting women dating back to 2000.

31.    As noted by one of the witnesses in the Warrant, after DEFENDANT BJORKMAN drugged and assaulted certain women, DEFENDANT BJORKMAN has contacted them, "threatening" them not to say anything.

32.    DEFENDANT BJORKMAN is a licensed real estate agent in California.

33.    In 2018, DEFENDANT BJORKMAN was recruited by DEFENDANT GOLDEN to join DEFENDANT eXp REALTY.

34.     DEFENDANT BJORKMAN joined DEFENDANT eXp REALTY in 2018 and named DEFENDANT GOLDEN as his Sponsor Agent.

35.     Upon information and belief, DEFENDANT BJORKMAN is no longer a real estate agent with DEFENDANT eXp REALTY.

36.     DEFENDANT BJORKMAN has been a self-described "leader" in the real estate industry[1] and was one of DEFENDANT eXp REALTY's top recruiters who generated a substantial part of his income, not from selling real estate, but by recruiting real estate agents to join DEFENDANT eXp REALTY.

37.     According to DEFENDANT BJORKMAN, at DEFENDANT eXp REALTY, "your net worth directly relates to your network."[2]   DEFENDANT BJORKMAN develops his network by creating a false environment built on trust.  Because DEFENDANT BJORKMAN instilled the importance of training, taking care of his downline agents, and teaching them how to network to grow their business, PLAINTIFFS would travel to networking events with DEFENDANT BJORKMAN to learn how to be more successful.

38.     In 2017, DEFENDANT GOLDEN was introduced to DEFENDANT eXp REALTY by a business colleague, Rosie Rodriguez.

---

[1] "Exp Agent Attraction Boot Camp Mike Bjorkman.  How to recruit agents."
https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

[2] https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

COMPLAINT FOR DAMAGES

39.     As of February 1, 2018, DEFENDANT GOLDEN joined DEFENDANT eXp REALTY and named Rosie Rodriguez as his Sponsor Agent.

40.     DEFENDANT GOLDEN is one of DEFENDANT eXp REALTY's top recruiters and generates the majority of his income not from selling real estate but by recruiting real estate agents to join DEFENDANT eXp REALTY.

41.     DEFENDANT GOLDEN develops his network by creating a false environment built on trust.  Because they trusted DEFENDANT GOLDEN and wanted to emulate how he succeeded financially in the business, PLAINTIFFS would travel to networking events with DEFENDANT GOLDEN.

42.     Upon information and belief, as detailed in the Warrant, multiple women informed the Las Vegas Police Investigator that they personally saw DEFENDANT GOLDEN with GHB[3] and other illicit substances on multiple occasions, and they believe those substances supplied by DEFENDANT GOLDEN were used to drug them so that they could be sexually assaulted at DEFENDANT eXp REALTY Recruitment Events.  As set forth in the Warrant, many of these women also informed the investigators that

---

A.     [3] GHB (Gamma-Hydroxybutyric Acid) is commonly known as the "date rape drug.  It comes in a liquid or as a white powder that is dissolved in water, juice, or alcohol.  In liquid form, GAB is clear and colorless.  When taken, it can cause hallucinations, euphoria, drowsiness, decreased anxiety, excited and aggressive behavior.  Overdose symptoms include unconsciousness, seizures, slowed heart rate, greatly slowed breathing, lower body temperature, vomiting, nausea, coma, and death.  Source: https://www.dea.gov/factsheets/ghb-gamma-hydroxybutyric-acid

GHB's liquid form allows it to be slipped into drinks, and its sedative effects prevent victims from resisting sexual assault.  GHB can also cause amnesia, meaning that when people recover from the drug's effects, they may not remember what happened.  https://www.camh.ca/en/health-info/mental-illness-and-addiction-index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,symptoms%20if%20they%20abruptly%20stop%20using%20the%20drug

COMPLAINT FOR DAMAGES

DEFENDANT GOLDEN was a participant in the sexual assaults that occurred at DEFENDANT eXp REALTY Recruitment Events.

43.    Upon information and belief, as part of its investigation and detailed in the Warrant, several victims are aware that DEFENDANT BJORKMAN and DEFENDANT GOLDEN made videos of their sexual assaults.

44.    DEFENDANT BJORKMAN and DEFENDANT GOLDEN made it known to many of the women they drugged and assaulted that they had valuable and explicit videos and pictures of the women.

45.    As part of its investigation, the police obtained a search warrant for DEFENDANT GOLDEN's cell phone.  The police conducted a digital extraction of the phone, the results of which remain in police custody.  According to the report, the police recovered 396,517 images and 10,476 videos.  Upon information and belief, some of the photos and videos recovered from the DEFENDANT GOLDEN's phone contain evidence that supports the allegations set forth in this Complaint.

## LEGAL BACKGROUND

## 18 U.S.C. § 1591

46.    The federal sex trafficking statute, 18 U.S.C. § 1591, outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States. It is to be construed expansively because it serves a remedial purpose and uses intentionally broad language.

47.     The federal sex trafficking statute, 18 U.S.C. § 1591(a), criminalizes any person acting in interstate or foreign commerce, or within the territorial or maritime jurisdiction of the United States, who knowingly:

(1)     recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;

(2)     benefits, financially or by receiving anything of value, from participation in a [sex trafficking] venture which has engaged in an act described in violation of paragraph (1);

knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, ….

48.     18 U.S.C. § 1591(d) criminalizes "obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of this section."

49.     18 U.S.C. § 1595, provides a civil remedy to victims of sex trafficking crimes, including violations of 18 U.S.C. § 1591(a) and § 1591(d), against the perpetrator of such crimes and against anyone else who knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in a sex trafficking crime. 18 U.S.C. §1595(a).

## **ALLEGATIONS RELATING TO PLAINTIFFS**

### ***Fabiola Acevedo***

50.     In early 2018, during a real estate networking event, DEFENDANT GOLDEN first began trying to recruit Ms. Acevedo to join DEFENDANT eXp REALTY.

51.     DEFENDANT GOLDEN explained to Ms. Acevedo that if she joined DEFENDANT eXp REALTY, it was important whom she chose as her Sponsor Agent as this person would provide her with important connections and coaching to help her grow her real estate business.

52.     Ms. Acevedo had known DEFENDANT GOLDEN as a leader in the real estate business for some time and trusted him and his guidance.

53.     After many conversations with DEFENDANT GOLDEN, Ms. Acevedo decided she wanted to join DEFENDANT eXp REALTY and have DEFENDANT GOLDEN as her Sponsor Agent.

54.     A contract was sent to Ms. Acevedo to join DEFENDANT eXp REALTY and Ms. Acevedo named DEFENDANT GOLDEN as her Sponsor Agent.  Soon after, DEFENDANT GOLDEN recalled the contract and told Ms. Acevedo that instead of naming DEFENDANT GOLDEN as her Sponsor Agent, she should name DEFENDANT BJORKMAN as her Sponsor Agent telling Ms. Acevedo that it would be better for her professional growth to have two Sponsor Agents, DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

55.     DEFENDANT GOLDEN then explained to Ms. Acevedo that DEFENDANT BJORKMAN had already purchased tickets to a real estate networking event hosted by the Closing Table at the Pelican Hill Hotel in Pelican Hill, California on July 20-22, 2018 and that it would be good for her career to go to this event as DEFENDANT BJORKMAN'S guest.

56.     Arriving a day before the start of the conference, DEFENDANT GOLDEN's (and DEFENDANT eXp REALTY's) Sponsor Agent, Rosie Rodriguez invited Ms. Acevedo to tour her eXp REALTY office and stay the night at her guest house.

57.     The next day, on July 20, 2018, Ms. Rodriguez dropped off Ms. Acevedo at the Pelican Hill Hotel for the networking conference. During the drive, Ms. Rodriguez and DEFENDANT GOLDEN were on a phone conference call and DEFENDANT GOLDEN. Ms. Acevedo made DEFENDANT GOLDEN aware that she was in the car with Ms. Rodriguez.

58.     Upon checking in, the hotel informed Ms. Acevedo that she did not have a room reserved in her name and that the hotel was sold out and there were no more rooms available. Upset, Ms. Acevedo called DEFENDANT GOLDEN about the lack of accommodations.   DEFENDANT GOLDEN told her to stay in DEFENDANT BJORKMAN's hotel room, that she could trust him, that they were "family".

59.     Based on a long-term platonic friendship with DEFENDANT GOLDEN, Ms. Acevedo  trusted him and agreed to stay in DEFENDANT BJORKMAN's room which had separate beds.

15

COMPLAINT FOR DAMAGES

60.     That evening, Ms. Acevedo had a single cocktail with DEFENDANT BJORKMAN and others at the hotel bar. Thereafter, she remembers nothing until the next morning whereupon she awoke naked in DEFENDANT BJORKMAN'S hotel room. Another woman and DEFENDANT BJORKMAN were in the other bed naked.  Another man was on the floor clothed.

61.     Disoriented and in shock, Ms. Acevedo ran to the bathroom to shower only to have DEFENDANT BJORKMAN come into the bathroom naked, exposing himself to her and attempting to engage her in inappropriate sexual contact.

62.     The day the conference started, July 20, 2018, DEFENDANT eXp REALTY sent Ms. Acevedo a new offer to join DEFENDANT eXp REALTY.  Uncertain and confused about the events at the conference, Ms. Acevedo signed the agreement on July 23, 2018, naming DEFENDANT BJORKMAN as her Sponsor Agent.

63.     All DEFENDANT eXp REALTY Agents that participate in DEFENDANT eXp REALTY's Revenue Share pyramid have an "upline."  Ms. Acevedo's eXp REALTY "upline" is as follows:

| Level | eXp Sponsor Agent |
|-------|-------------------|
| TIER 7 | Sheila Fejeran |
| TIER 6 | Colby Anne Casoria |
| TIER 5 | Brent Gove |
| TIER 4 | Rick Geha |
| TIER 3 | Rosie Rodriguez |
| TIER 2 | David Golden |
| TIER 1 | Michael Bjorkman |

COMPLAINT FOR DAMAGES

64.     As a result of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture, Ms. Acevedo was deeply traumatized and unable to work as a real estate agent. However, she continued to pay all fees required by DEFENDANTS..

### *Jane Doe 1*

65.     Jane Doe 1 is a real estate agent and former business partner with BJORKMAN.

66.     After BJORKMAN joined eXp REALTY, BJORKMAN recruited JANE DOE 1 to join eXp REALTY.  Initially, she refused to join because she knew if she named BJORKMAN as her Sponsor Agent, GOLDEN would be in her "upline."

67.     JANE DOE 1 was weary to have GOLDEN in her upline because BJORKMAN would constantly tell her that GOLDEN was a "dirtbag" and a "rapist." BJORKMAN also told JANE DOE 1 that despite GOLDEN's moral failings, he felt that he owed GOLDEN.

68.     After incessant recruiting efforts, JANE DOE 1 agreed to join eXp REALTY and name BJORKMAN as her Sponsor Agent.

69.     JANE DOE 1's eXp REALTY "upline" is as follows:

| Level  | eXp Sponsor Agent   |
|--------|---------------------|
| TIER 7 | Sheila Fejeran      |
| TIER 6 | Colby Anne Casoria  |
| TIER 5 | Brent Gove          |
| TIER 4 | Rick Geha           |
| TIER 3 | Rosie Rodriguez     |
| TIER 2 | David Golden        |
| TIER 1 | Michael Bjorkman    |

17

70.     On April 11, 2019, JANE DOE 1 attended a real estate networking event hosted by The Closing Table at a hotel in Beverly Hills, CA for the purpose of learning during the day and recruiting real estate agents to join eXp REALTY at night.

71.     JANE DOE 1 and BJORKMAN went to the dinner with other conference attendees.  JANE DOE 1 had a single glass of wine at dinner.

72.     After dinner, JANE DOE 1 went to the hotel bar and had one drink.

73.     Later that evening, one of the event hosts invited everyone to his room for a get-together.  JANE DOE 1 didn't want to go to the event but felt pressured to network and recruit other agents to join eXp REALTY since that was the purpose of the trip.

74.     When they arrived at the host's room, BJORKMAN handed her a drink.

75.     Shortly thereafter, JANE DOE 1 blacked out until the next morning when she woke up naked and alone in her hotel room.  The room was in disarray, and she could tell room service had been there, but she had spotty memory of it and was trying to decipher what had occurred.

76.     She immediately went to the bathroom.  She felt sick, saw blood from her vagina and experienced pain.

77.     Soon after, the phone rang, and it was BJORKMAN calling her.  By this time, she was starting to get flashes of memories from the night before.  JANE DOE 1 immediately asked BJORKMAN, "What happened?  What did you do?"   She accused him

COMPLAINT FOR DAMAGES

of having sex with her.  Rather than admit that they had sexual intercourse, BJORKMAN gaslit her and repeatedly told her that she was crazy and that nothing happened.

78.     Later that day, JANE DOE 1 told BJORKMAN that she thinks she was "roofied" the night before.  BJORKMAN replied that he must have been "roofied" as well and continued to gaslight her, telling her that she was crazy and that nothing happened.

79.     A few days after she was raped, BJORKMAN sent her a video from the night of the rape in an effort to "prove" she was drunk.  The video shows that JANE DOE 1 was hallucinating and acting completely out of character.   Despite having only three (3) drinks during the entire evening, JANE DOE 1 has no memories of the events depicted in the video.

80.     On April 27, 2019, JANE DOE 1 and BJORKMAN traveled from California to San Antonio, Texas for another real estate networking event (hosted by a networking group called "Club Wealth") to recruit agents to join eXp REALTY.

81.     While in San Antonio, JANE DOE 1 was still questioning her sanity and would repeatedly ask BJORKMAN if they had had sex at the last event they attended.

82.     After repeated questioning, BJORKMAN finally admitted that they did have sex at the last event.  He told her he lied because he didn't want to "embarrass" her. BJORKMAN went on to explain that JANE DOE 1 was "fucked up" and out of control; was hitting on him and was all over him.  BJORKMAN did not confess that he had drugged her which is why she was behaving so out of character.

83.     At that moment, JANE DOE 1 decided she would start the difficult process of leaving the business they had built together, but because of their business and financial entwinement, she knew it would take some time before she could completely distance herself from him.

84.     JANE DOE 1 considered at that point reporting him to the authorities but thought no one would believe her.  She did confide in some friends about what had happened.

85.     As soon as she was able to do so, JANE DOE 1 severed all ties with BJORKMAN.

86.     As a result of being drugged/rendered incapacitated and being assaulted, JANE DOE 1 has suffered extreme emotional distress and has lost business opportunities which significantly impacted her income.

### Jane Doe 2

87.     JANE DOE 2 was invited to attend an eXp REALTY Recruiting Event at the Wynn and Encore Hotel and Casino in Las Vegas, NV, from August 27, 2020 to August 30, 2020.  The event was hosted by DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

88.     On Friday, August 28, 2020, JANE DOE 2 and other attendees took an event-provided bus from their hotel to an eXp REALTY Recruitment Event held at the guest speaker, Jon Cheplak's house, in Henderson, NV.  Attending the event were many DEFENDANT eXp REALTY real estate agents, including Brent Gove, a top

20

DEFENDANT eXp REALTY recruiter and member of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's upline as well as other real estate agents that were being actively recruited to join DEFENDANT eXp REALTY.

89.   Discussed at this eXp REALTY Recruitment Event was Agent Attraction and DEFENDANT eXp REALTY's Revenue Share pyramid.

90.   After the event, the bus returned them to their hotel (Wynn).  JANE DOE 2 and a couple of friends planned on going to dinner that evening but first, they wanted to stop by a get-together held by two of the event's hosts, DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

91.   That evening, DEFENDANT BJORKMAN and DEFENDANT GOLDEN held the get-together inside of their suite, at the Encore Hotel and Casino.  DEFENDANT BJORKMAN and DEFENDANT GOLDEN invited event attendees to their suite for drinks, snacks, and to hang out that evening.

92.   After arriving, JANE DOE 2 poured herself one cup of vodka and soda water, which she sipped during the event.

93.   JANE DOE 2 continually added soda water to the drink and never added more vodka.  This was the only alcoholic beverage she drank over the course of the entire evening, and she did not finish the entire drink.

94.   After the party, JANE DOE 2 and some of her friends left for Caesar's Palace where they had dinner.

95.     JANE DOE 2 recalls leaving the eXp REALTY Recruiting Event but has very limited memory for the remainder of the evening.

96.     While at dinner, JANE DOE 2 recalls having to excuse herself from the table to go to the bathroom and vomit.  She also recalls sitting at the dinner table but has no memory of leaving the dinner.

97.     JANE DOE 2 next recalls waking up the next morning with a headache, feeling very groggy and was nude in her own bed in her hotel room.

98.     JANE DOE 2 has since shared her experience with co-workers who were with her that evening.  Based on her conversations with them she learned that she went to the bathroom multiple times while at dinner and she was gone for so long that her friends had to go to the restroom to find her.  JANE DOE 2 has no memory of this.

99.     In addition to discussing the evening with her friends, JANE DOE 2 posted about this experience on her Facebook page but did not publicly provide DEFENDANT BJORKMAN or DEFENDANT GOLDEN's name in the post.  As a result, she discovered that other women associated with DEFENDANT eXp REALTY had been rendered incapacitated, drugged and sexually assaulted after attending the same and other eXp REALTY Recruiting Events.

100.    After speaking with several people, JANE DOE 2 realized that she was drugged / rendered incapacitated by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

101.   In addition, on the evening before JANE DOE 2 was drugged, DEFENDANT BJORKMAN and DEFENDANT GOLDEN rented a cabana at the Wynn hotel pool. As the rest of the party was leaving, DEFENDANT BJORKMAN invited JANE DOE 2 to stay behind and have a cigarette with him, which she did.  He then said that everyone was going back up to the suite, so she followed him. When JANE DOE 2 got there, it was only DEFENDANT GOLDEN  and his girlfriend present. They pressured JANE DOE 2  to stay and have another drink, but JANE DOE 2 declined the invitation and returned to her hotel room.

102.   As a result of being drugged/rendered incapacitated and having no memory of the events that happened later, JANE DOE 2 has suffered extreme emotional distress; has lost business opportunities, including but not limited to: a lucrative position she had coaching other real estate agents, speaking and marketing opportunities.  JANE DOE 2 and continues to live in fear of running into DEFENDANT BJORKMAN and DEFENDANT GOLDEN at real estate events, so much so that for a significant period of time, she was unable to attend any networking events which significantly impacted her income.

### Jane Doe 3

103.   At all times relevant to this Complaint, JANE DOE 3 was a real estate agent for DEFENDANT eXp REALTY.

104.   In August of 2020, JANE DOE 3 was invited to attend an event in Las Vegas by her Sponsor Agent DEFENDANT BJORKMAN, and his Sponsor Agent DEFENDANT

GOLDEN.  It was marketed to her as an eXp REALTY Recruiting Event that would be good for her real estate career to attend.

105.   On Thursday, August 27, 2020, JANE DOE 3 traveled from Florida to Las Vegas, NV to attend the eXp REALTY Recruiting Event which was held at multiple locations including the Encore Hotel and Casino where JANE DOE 3 had a hotel room.

106.   On Saturday, August 29, 2020, JANE DOE 3 went to BJORKMAN and DEFENDANT GOLDEN'S hotel suite for another DEFENDANT eXp REALTY group get-together.  JANE DOE 3 remembered DEFENDANT GOLDEN becoming upset during the evening, so she and DEFENDANT BJORKMAN went for a walk on the Las Vegas Strip and gambled at the casino.

107.   After gambling for a while, JANE DOE 3 and DEFENDANT BJORKMAN returned to DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S hotel suite. JANE DOE 3's memory is spotty and limited from this point forward.

108.   JANE DOE 3 does recall being sexually assaulted by DEFENDANT BJORKMAN that evening.

109.   JANE DOE 3 also recalls witnessing both DEFENDANT BJORKMAN and DEFENDANT GOLDEN consume GHB from a plastic "5 Hour Energy" bottle.  They both told her that they take GHB recreationally.[4]

---

[4] People who use GHB regularly can develop tolerance to the effects of the drug.
https://www.camh.ca/en/health-info/mental-illness-and-addiction-index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,symptoms%20if%20they%20abruptly%20stop%20using%20the%20drug.

COMPLAINT FOR DAMAGES

110.    A few weeks after the sexual assault, JANE DOE 3 discussed the incident with DEFENDANT GOLDEN.  DEFENDANT GOLDEN encouraged her to lie about it when interviewed by the police.

111.    After the incident, JANE DOE 3 received many threatening messages from people associated with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

112.    As a result of this incident, JANE DOE 3 has suffered and continues to suffer from PTSD and extreme emotional distress all of which have negatively impacted and continue to negatively impact every facet of her life.

### *John Doe 1*

113.    JOHN DOE 1 is the spouse of JANE DOE 3.

114.    At all times relevant to this Complaint, JOHN DOE 1 was married to JANE DOE 3, and they continue to be married.

115.    As a result of the wrongful and negligent acts of the DEFENDANTS, JOHN DOE 1 was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

### ALLEGATIONS RELATING TO DEFENDANT eXp REALTY

116.    While at eXp REALTY Recruiting Events, DEFENDANT GOLDEN and DEFENDANT BJORKMAN used illegal drugs; surreptitiously drugged and rendered incapacitated other agents and sexually assaulted them, and videotaped/photographed their

COMPLAINT FOR DAMAGES

actions. On information and belief, this was known by eXp REALTY throughout the duration of their affiliation with DEFENDANT eXp REALTY.

117.   On information and belief, in late 2019 or early 2020, an eXp REALTY real estate agent who was drugged and sexually assaulted by DEFENDANT BJORKMAN informed DEFENDANT eXp REALTY and requested a Sponsor change so that she no longer had to be in DEFENDANT BJORKMAN and DEFENDANT GOLDEN's downline.

118.   DEFENDANT eXp REALTY granted this request and allowed her to switch her Sponsor Agent so that she no longer had to pay a portion of her earnings to the person who sexually assaulted her.

119.   After JANE DOE 2 and JANE DOE 3 informed DEFENDANT eXp REALTY about what happened to them in Vegas in August 2020, JANE DOE 1 also reported to eXp REALTY what had happened to her.

120.   JANE DOE 1 also requested a Sponsor change so that she no longer had to be in DEFENDANT BJORKMAN and DEFENDANT GOLDEN's downline.

121.   Rather than immediately granting her request, eXp REALTY waited several months before her request was granted.

122.   On March 9, 2021, BJORKMAN was arrested on two counts of sexual assault.  Soon thereafter, DEFENDANT BJORKMAN allegedly left DEFENDANT eXp REALTY.

123. On information and belief, DEFENDANT eXp REALTY continued to have a financial relationship with DEFENDANT BJORKMAN after leaving eXp REALTY.

124. DEFENDANT GOLDEN remains at eXp REALTY as one of its top recruiters generating substantial income for DEFENDANT eXp REALTY.

125. Moreover, on information and belief, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct as early as 2019, DEFENDANT eXp REALTY Board Member, Gene Frederick continued to socialize publicly with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.



*Picture dated December 30, 2021 posted on Facebook (From left to right, Michael DEFENDANT BJORKMAN, David DEFENDANT GOLDEN, Gene Frederick)*

126. Similarly, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct, DEFENDANT eXp REALTY (former) CEO Jason Gesing continues to work closely with DEFENDANT GOLDEN.



*Photo dated April 12, 2022 posted on DEFENDANT GOLDEN's publicly accessible Facebook Account*

127. When JANE DOE 3 complained to DEFENDANT eXp REALTY about the August 2020 Vegas incident and sought assistance from DEFENDANT eXp REALTY, Gene Frederick, an eXp REALTY board member was heard saying, "[Jane Doe 3] wants [DEFENDANT GOLDEN] fired, and we all know that's not going to happen."

128. On March 7, 2022, Ms. Acevedo attended a conference where she saw and spoke to Glenn Sanford, current CEO of DEFENDANT eXp REALTY about the 2018 incident and what she experienced thereafter. Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of

COMPLAINT FOR DAMAGES

predatory sexual conduct toward DEFENDANT eXp REALTY agents based on his position as the CEO of DEFENDANT eXp REALTY, Mr. Sanford did nothing to assist Ms. Acevedo.

129.   On or about June 9, 2022, Ms. Acevedo spoke with Jason Gesing, who at that time was the CEO of DEFENDANT eXp REALTY, about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents from his position as the CEO of DEFENDANT eXp REALTY, Mr. Gesing did nothing to assist Ms. Acevedo.

130.   In addition to not receiving any substantive help from either Sanford or Gesing, Ms. Acevedo reached out to multiple people at DEFENDANT eXp REALTY asking for assistance.  No substantive help was provided to Ms. Acevedo.

131.   DEFENDANT eXp REALTY knew or should have known of DEFENDANT BJORKMAN'S and DEFENDANT GOLDEN'S Venture, yet rather than terminating DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY elected to continue to ignore pleas from other eXp agents who'd been assaulted and profit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN and their downline.

132.   DEFENDANT eXp REALTY, despite knowing of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S Venture, chose to financially benefit from

DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture and continues to receive value from the relationships even today.

## Count I
### Violation of 18 U.S.C. § 1591
### All Plaintiffs Against MICHAEL DEFENDANT BJORKMAN

133.   Plaintiffs reallege paragraphs 1 to 132 as if fully set forth herein.

### *Fabiola Acevedo*

134.   DEFENDANT BJORKMAN caused Ms. Acevedo to travel from Florida to California to be his guest at a real estate networking event for the purpose of recruiting, enticing, or soliciting Ms. Acevedo to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

135.   DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated Ms. Acevedo for the purpose of engaging her in a sex act.

136.   DEFENDANT BJORKMAN attempted to engage Ms. Acevedo in a sex act.

137.   Upon leaving the event, confused about what had happened, Ms. Acevedo joined DEFENDANT eXp REALTY naming DEFENDANT BJORKMAN as her Sponsor Agent based on the promises from DEFENDANT BJORKMAN that he would help her with her real estate career.

### *Jane Doe 1*

138.   DEFENDANT BJORKMAN caused JANE DOE 1 to travel from California to multiple states to attend eXp REALTY Recruiting Events for the purpose of recruiting

COMPLAINT FOR DAMAGES

other real estate agents to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

139.   DEFENDANT BJORKMAN surreptitiously drugged and caused JANE DOE 1 to be incapacitated for the purpose of engaging her in a sex act and causing her to engage in a sex act without her consent.

140.   BJORKMAN surreptitiously took highly valuable videos and pictures of JANE DOE 1 while she was drugged without her consent.

### *Jane Doe 2*

141.   DEFENDANT BJORKMAN caused JANE DOE 2 to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of recruiting, enticing, or soliciting JANE DOE 2 to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

142.   DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated JANE DOE 2 for the purpose of engaging her in a sex act.

143.   After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his downline continued to try to recruit JANE DOE 1 to select DEFENDANT BJORKMAN or a member of his downline as her Sponsor Agent.  Although JANE DOE 2 did eventually decide to join DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

**Jane Doe 3**

144.   DEFENDANT BJORKMAN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

145.   DEFENDANT BJORKMAN surreptitiously drugged and rendered JANE DOE 3 incapacitated for the purpose of engaging her in a sex act and caused her to engage in a sex act without her consent.

146.   After the event, DEFENDANT BJORKMAN gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

**Count II**
**Violation of 18 U.S.C. § 1591**
**All Plaintiffs Against DAVID DEFENDANT GOLDEN**

147.   Plaintiffs reallege paragraphs 1 to 146 as if fully set forth herein.

*Fabiola Acevedo*

148.   DEFENDANT GOLDEN caused Ms. Acevedo to travel from Florida to California to be DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN's, guest at a real estate networking event for the purpose of recruiting, enticing. or soliciting Ms. Acevedo to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

149.   DEFENDANT GOLDEN enticed Ms. Acevedo to stay with DEFENDANT BJORKMAN, knowing DEFENDANT BJORKMAN would attempt to drug and render her incapacitated so he could sexually assault Ms. Acevedo.

150.   DEFENDANT BJORKMAN surreptitiously drugged Ms. Acevedo for the purpose of engaging her in a sex act.

151.   DEFENDANT BJORKMAN attempted to engage Ms. Acevedo in a sex act.

152.   Upon leaving the event, Ms. Acevedo joined DEFENDANT eXp REALTY naming DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent based on the promises from DEFENDANT BJORKMAN that he and DEFENDANT GOLDEN would help her with her real estate career.

### Jane Doe 2

153.   DEFENDANT GOLDEN caused JANE DOE 2 to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of recruiting, enticing or soliciting JANE DOE 2 to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

154.   DEFENDANT BJORKMAN surreptitiously drugged JANE DOE 2 rendering her incapacitated for the purpose of engaging her in a sex act with drugs supplied by DEFENDANT GOLDEN.

155.   After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his upline continued to try to recruit JANE DOE 1 to select DEFENDANT BJORKMAN as her Sponsor Agent.  Although JANE DOE 2 did eventually decide to join

DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

*Jane Doe 3*

156.   DEFENDANT GOLDEN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

157.   With drugs supplied by DEFENDANT GOLDEN, DEFENDANT BJORKMAN surreptitiously drugged JANE DOE 3 for the purpose of rendering her incapacitated so he could engage her in a sex act and cause her to engage in a sex act without her consent.

158.   After the event, DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

### Count III
### Participating in a Venture in Violation of 18 U.S.C. §1591
### All Plaintiffs Against DEFENDANTS GOLDEN and eXp REALTY

159.   Plaintiffs reallege paragraphs 1 to 158 as if fully set forth herein.

160.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN are two of DEFENDANT eXp REALTY's top recruiters, whereby DEFENDANT eXp REALTY receives a financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN's downline of Recruited Agents in the form of commissions and fees paid directly to DEFENDANT eXp REALTY and DEFENDANT GOLDEN receives a

34

financial benefit from DEFENDANT BJORKMAN's downline of Recruited Agents in the form of commissions and fees paid directly to DEFENDANT GOLDEN.

161.   DEFENDANT eXp REALTY knew or should have known that DEFENDANT GOLDEN and DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events.

162.   DEFENDANT GOLDEN knew or should have known that DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events

163.   After having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's illegal conduct, DEFENDANT eXp REALTY continued to endorse, support and promote DEFENDANT GOLDEN's and DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN activities.

164.   After having actual knowledge of DEFENDANT BJORKMAN's illegal conduct, DEFENDANT GOLDEN continued to endorse, support and promote DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT GOLDEN activities.

## Count IV

### Sexual Battery

### Ms. Acevedo, Jane Doe 1, and Jane Doe 3 Against DEFENDANT BJORKMAN

165.    Plaintiffs reallege paragraphs 1 to 164 as if fully set forth herein.

166.    Through his conduct, DEFENDANT BJORKMAN placed Ms. Acevedo, Jane Doe 1, and Jane Doe 3 in a state of perpetual fear of imminent, unwanted, physical, and sexual contact.

167.    Through conduct including, but not limited to, the conduct describing the sexual assault of Ms. Acevedo, Jane Doe 1 and Jane Doe 3, DEFENDANT BJORKMAN intentionally and unlawfully touched Ms. Acevedo, Jane Doe 1 and Jane Doe 3 without their consent.  This unwanted and unlawful, sexual physical touching caused Ms. Acevedo, Jane Doe 1, and Jane Doe 3 to suffer great anxiety about the possibility of further unwanted sexual touching and sexual assault.

168.    Ms. Acevedo, Jane Doe 1, and Jane Doe 3 did not consent to this contact.

169.    As a result of DEFENDANT BJORKMAN's conduct, Ms. Acevedo, Jane Doe 2, and Jane Doe 3 suffered legally compensable harm including pain and suffering, loss of enjoyment of life, mental anguish, injury to reputation, humiliation, emotional distress damages, and costs of medical treatment necessary to address the psychological damages caused by DEFENDANT BJORKMAN's conduct.

### Count IV
### Civil Battery
### All Plaintiffs Against DEFENDANT BJORKMAN and
### Plaintiffs Jane Doe 2 and 3 Against GOLDEN

170.   Plaintiffs reallege paragraphs 1 to 169 as if fully set forth herein.

171.   Through his conduct, DEFENDANT BJORKMAN intentionally placed a drug in the Plaintiffs' drink without their knowledge or consent with the intent to harm/touch and did harm/touch Plaintiffs.

172.   Through his conduct, DEFENDANT GOLDEN intentionally placed a drug in Jane Doe 2 and Jane Doe 3's drinks without their knowledge or consent with the intent to harm/touch and caused Plaintiffs to be touched.

173.   By placing a drug in the Plaintiffs' drinks, DEFENDANT BJORKMAN, and by placing drugs in Jane Doe 2 and Jane Doe 3's drinks, DEFENDANT GOLDEN, caused the Plaintiffs to unknowingly ingest the drug and be touched for which they did not consent.

174.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN all caused Plaintiffs to suffer harm and offense through the unwanted touching.

175.   DEFENDANT BJORKMAN AND GOLDEN'S  actions in causing Plaintiffs to consume a drug without their knowledge or consent and be touched which would be offensive to a reasonable person.

176.   As a direct and proximate result of DEFENDANT BJORKMAN's actions, Plaintiffs have suffered losses including, but not limited to, past and future medical expenses, loss of income, pain and suffering, mental anguish, embarrassment, humiliation, and emotional distress.

177.   In causing the Plaintiffs to consume a drug without their knowledge or consent, DEFENDANT BJORKMAN acted intentionally, for an evil motive, and with reckless indifference Plaintiffs' right to be free from harmful or offensive contact. Accordingly, Plaintiffs are entitled to punitive damages in addition to economic and non-economic relief.

### Count V
### Intentional Infliction Of Emotional Distress
**All Plaintiffs Against DEFENDANT BJORKMAN and DEFENDANT GOLDEN**

178.   Plaintiffs reallege paragraphs 1 to 177 as if fully set forth herein.

179.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN's conduct toward the Plaintiffs was extreme and outrageous.

180.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN intentionally caused Plaintiffs emotional distress by subjecting them to forceful sexual touching and assault, or other actions taken with reckless disregard of Plaintiffs' emotional well-being.

181.   As a result of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are

also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

182.   DEFENDANTS' conduct was a substantial factor in causing Plaintiffs severe emotional distress.

**Count VI**

**Negligent Infliction Of Emotional Distress**
**All Plaintiffs Against All Defendants**

183.   Plaintiffs reallege paragraphs 1 to 182 as if fully set forth herein.

184.   DEFENDANTS fell below the standard of care required for the reasonable person and resulted in the negligent breach of duties owed to Plaintiffs.

185.   As a result of DEFENDANTS' breach of their duties, Plaintiffs suffered legally compensable emotional distress damages, and they are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANTS.

186.   The DEFENDANTS' negligence was a substantial factor in causing Plaintiffs' serious emotional distress.

**Count VII**

**NEGLIGENT HIRING, RETENTION, AND SUPERVISION**
**All Plaintiffs Against eXp Realty**

187.   Plaintiffs reallege paragraphs 1 to 186 as if set forth fully herein.

188.   DEFENDANT eXp REALTY retained DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

189.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN were unfit to perform the work for which they were retained.

190.   DEFENDANT eXp REALTY knew or should have known that DEFENDANT GOLDEN and DEFENDANT BJORKMAN were and/or became unfit and that this unfitness created a particular risk to others.

191.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN's unfitness harmed PLAINTIFFS; and

192.   DEFENDANT eXp REALTY's negligence in hiring/supervising/and retaining DEFENDANT GOLDEN and DEFENDANT BJORKMAN was a substantial factor in causing PLAINTIFFS' harm.

### Count VIII
**Loss of Consortium**

**John Doe 1 against Defendants**

193.   JOHN DOE 1 incorporates by reference the allegations in paragraphs 1-192 as if fully set forth herein.

194.   As a direct and proximate result of DEFENDANTS' tortious actions and JANE DOE 3's resulting injuries described above, JOHN DOE 1 has suffered damages arising from the loss of JANE DOE 3's services, society, companionship, and sexual relations.

COMPLAINT FOR DAMAGES

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.      For past, present, and future general damages in an amount to be determined at trial;

2.      For past, present, and future special damages, including but not limited to past, present and future lost earnings, economic damages, and others in an amount to be determined at trial;

3.      For interest as allowed by law;

4.      For civil penalties as provided by law;

5.      For any applicable costs of said suit;

6.      For any appropriate punitive or exemplary damages; and

7.      For such other and further relief as the Court may deem proper. The amount of damages sought in this Complaint exceeds the jurisdictional limits of this Court.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Plaintiffs demand a trial by a jury on all of the triable issues of this Complaint.

COMPLAINT FOR DAMAGES

Dated:  February 22, 2023

Respectfully submitted,

by: **LENZE LAWYERS, PLC**

/s/ Jennifer A. Lenze
Jennifer A. Lenze, Esq.

**COHEN HIRSCH, LP**
Brooke F. Cohen, Esq.
Texas Bar No. 24007019
brooke@cohenhirsch.com
Andrea S. Hirsch, Esq.
GA Bar No. 666557
andrea@cohenhirsch.com

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES