Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 91765
T: (310) 322-8800
F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019 PHV Admitted
Andrea Hirsch, Esq. GA Bar No. 666557 PHV Admitted
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FABIOLA ACEVEDO, JANE DOE 1, JANE DOE 2, JANE DOE 3, and JOHN DOE 1**, | **CASE NO. 2:23-cv-01304-AB-AGR** |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** |
| v. | **1) Violation of 18 U.S.C. § 1591** |
| | **2) Violation of 18 U.S.C. § 1591** |
| | **3) Violation of 18 U.S.C. § 1591** |
| **EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT GOVE; and DOES 1-10,** | **4) Sexual Battery** |
| | **5) Civil Battery** |
| | **6) Intentional Infliction of Emotional Distress** |
| | **7) Intentional Infliction of Emotional Distress** |
| Defendants. | **8) Intentional Infliction of Emotional Distress** |
| | **9) Negligence: Negligent Infliction of Emotional Distress** |

1

**10) Negligent Hiring, Retention &
Supervision**
**11) Loss of Consortium**

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff FABIOLA ACEVEDO, JANE DOE 1, JANE DOE 2, JANE DOE 3, and JOHN

DOE 1, complaining of Defendants; eXp REALTY, LLC, eXp WORLD HOLDINGS,

INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT

GOVE; and DOES 1-10, (hereinafter referred to as "Defendants") by their attorneys Cohen

Hirsch, LP, and Lenze Lawyers, PLC, respectfully sets forth and alleges the following,

upon information and belief:

> **Commented [AH1]:** Local rules state you can only have 10 does so I changed it from 100 to 10.

**PRELIMINARY STATEMENT**

   1.     This is a case about profit over safety. It's about the drugging and sexual

assault of women, real estate agents, brought in as recruits to a large real estate corporation

operated in a pyramid-style scheme. This case is about this corporation's longstanding

culture—their pattern and practice—of creating an environment that allowed these assaults,

then silencing those whose accounts of sexual harassment and assault would impact profit.

   2.     This civil action for damages is brought under the Federal sex trafficking

statute, 18 U.S.C. §§1591, 1595, as well as other state law actions.  It arises from

DEFENDANT MICHAEL BJORKMAN and DEFENDANT DAVID GOLDEN's ongoing

venture to entice women to travel in interstate commerce, recruit real estate agents with the

promise of career advancement and coaching, and use their considerable influence in the

real estate industry on these other real estate agents behalf, knowing that they would use means of force, fraud or coercion to cause these women to engage in a sex act (the "Venture"). DEFENDANT GLENN SANFORD, DEFENDANT BRENT GOVE, eXp REALTY LLC and eXp World Holdings, Inc. (hereinafter collectively, "DEFENDANT eXp REALTY" or "eXp"), all knew of such actions yet turned a blind eye, propelled by the continued financial benefits they received. All DEFENDANTS collectively had a common purpose of monetary gain which was achieved through recruitment activities.

## JURISDICTION

3.     This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1595, which provides the district courts of the United States jurisdiction over violations of 18 U.S.C. § 1591.

4.     This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the related federal claims over which this Court has original jurisdiction.

5.     This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. §1595.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims took place in this District, and DEFENDANT MICHAEL L. BJORKMAN resided in this district and division at all times complained of herein.

3

FIRST AMENDED COMPLAINT FOR DAMAGES

**PLAINTIFFS**

7.    Plaintiff, FABIOLA ACEVEDO is a citizen of Florida and is a licensed real estate agent with DEFENDANT eXp REALTY.

8.    Plaintiff, JANE DOE 1 is a citizen of Tennessee and a licensed real estate agent with DEFENDANT eXp REALTY.  The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of a sexual assault that she suffered as a result of the Defendants' conduct.

9.    Plaintiff, JANE DOE 2, is a citizen of California and is a licensed real estate agent with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of attempted sexual assault that she suffered as a result of the Defendants' conduct.

10.    Plaintiff, JANE DOE 3, is a citizen of Florida and is a licensed real estate agent formerly associated with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of sexual assault that she suffered as a result of the Defendants' conduct.  As a result of JANE DOE 3 notifying DEFENDANT eXp REALTY of being sexually assaulted, she received threatening communications from numerous other DEFENDANT eXp REALTY agents.  DEFENDANT eXp REALTY was made aware of these threatening communications and has taken no action to discipline those agents.  As such, JANE DOE 3, along with the other DOE plaintiffs are extremely fearful of any attempt made by Defendants to strip them of their Doe status in this action.

FIRST AMENDED COMPLAINT FOR DAMAGES

11.    Plaintiff, JOHN DOE 1, is a citizen of Florida and is a licensed real estate agent formerly associated with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect the privacy of his spouse, JANE DOE 3.

**DEFENDANTS**

12.    DEFENDANT eXp WORLD HOLDINGS, INC. is a corporation duly organized and existing under and by virtue of the State of Delaware and has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

13.    DEFENDANT eXp REALTY, LLC is a corporation duly organized and existing under and by virtue of the State of Washington has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

14.    Based upon information and belief, DEFENDANT MICHAEL BJORKMAN is a citizen of the State of California and resides in Ventura County, CA and a former real estate agent with DEFENDANT eXp REALTY, was an "Influencer" (defined *infra*) at DEFENDANT eXp REALTY and is a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp Realty.

15.    DEFENDANT DAVID S. GOLDEN is a citizen of the State of Nevada and a real estate agent with DEFENDANT eXp REALTY, an "Influencer" (defined *infra*) at DEFENDANT eXp REALTY and a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp Realty.

FIRST AMENDED COMPLAINT FOR DAMAGES

16.     DEFENDANT GLENN SANFORD is a citizen of the State of Washington, the Founder of eXp Realty, and is Agent #1 in the Revenue Share Program (defined *infra*) with DEFENDANT eXp REALTY.

17.     DEFENDANT BRENT GOVE is a citizen of the State of California and a real estate agent with DEFENDANT eXp REALTY, a top "Influencer" (defined *infra*) at DEFENDANT eXp Realty and a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp Realty.

18.     The true names and capacities, whether corporate, associate, individual or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the DEFENDANTS designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to Plaintiffs, as herein alleged. Plaintiffs will seek leave to amend this Complaint to show their names and capacities when the same have been ascertained.

**EXP REALTY, LLC AND EXP WORLD HOLDINGS, INC.**
**("DEFENDANT eXp REALTY")**

19.     DEFENDANT eXp REALTY is a multi-level marketing real estate company that is publicly traded on the NASDAQ.  It is touted as a cloud-based model with a global community.

20.     According to DEFENDANT eXp REALTY, it is "fastest growing residential real estate brokerage on the planet."  As of October 2022, DEFENDANT eXp REALTY

FIRST AMENDED COMPLAINT FOR DAMAGES

exceeded 85,000 agents worldwide, and as of November 2022, eXp World Holdings

reported Third Quarter Revenue of $1.2 Billion.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-

Explained-Q3-2022.pdf

21.    Also, according to DEFENDANT eXp REALTY, it is the largest independent

brokerage on the planet.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-

7

**Explained-Q3-2022.pdf**

22.    DEFENDANT eXp REALTY has two distinct forms of revenue.  The first revenue stream originates from the sale of residential and commercial properties which creates a Revenue Share Program. The second revenue stream comes from the recruiting of agents to DEFENDANT eXp Realty. Both revenue streams are intricately intertwined.

23.    According to DEFENDANT eXp REALTY's most recent Proxy Statement dated April 27, 2022, DEFENDANT eXp REALTY maintains a revenue-sharing plan whereby each of its agents and brokers participate in and can receive monthly and annual residual overrides on the gross commission income resulting from transactions consummated by agents and brokers who they have attracted to eXp REALTY. Agents and brokers are eligible for Revenue Share based on the number of producing Front-Line Qualifying Active ("FLQA") agents they have attracted to eXp REALTY.  An FLQA is an agent or broker that an agent or broker has personally attracted to eXp REALTY who has met specific sales transaction volume requirements. In other words, their "recruits".

24.    Under DEFENDANT eXp REALTY's agent's agreement, vesting can occur with respect to both stock option and the Revenue Share Program. Pursuant to DEFENDANT eXp REALTY's Revenue Share Vesting Policy, to qualify for revenue share vesting, a "Participant" must meet several conditions including be affiliated with the Company for not less than 36 months.  A Participant shall be considered "Vested" in the Revenue Share Plan's eXpansion Revenue Share (sharing in the

8

income from your recruited agents) and will continue to receive the benefits provided under the Revenue Share Plan even after a Participant disassociates from the Company (so long as they do not go to a competitor).

25.    DEFENDANT eXp REALTY automatically enrolls its agents into the eXp Revenue Share Plan and heavily encourages and incentivizes its agents to become a "Sponsor Agent".   DEFENDANT eXp REALTY calls this "Agent Attraction".

26.    DEFENDANT eXp REALTY directs, trains and teaches its Sponsor Agents how to recruit and entice other real estate agents ("Recruited Agents") to join DEFENDANT eXp REALTY via DEFENDANT eXp REALTY's Revenue Share Pyramid.

27.    By participating in DEFENDANT eXp REALTY's Revenue Share Pyramid, Sponsor Agents receive substantial monetary compensation directly from DEFENDANT eXp REALTY.  The higher a Sponsor Agent is placed in the Revenue Share Pyramid (or stated another way, the more tiers of Recruited Agents that a Sponsor Agent can lock into their "downline" – downline being defined as agents they have recruited) the more money DEFENDANT eXp REALTY pays the Sponsor Agent and the more money DEFENDANT eXp REALTY and DEFENDANT SANFORD make (he is Agent #1, at the top of the pyramid).

FIRST AMENDED COMPLAINT FOR DAMAGES

https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

28.    In addition, Sponsor Agents get a stock award in DEFENDANT eXp REALTY every time their Recruited Agent sells a property.

29.    Typically, and as was the case for the Plaintiffs, DEFENDANT eXp REALTY's top recruiting Sponsor Agents ("Influencers") would invite prospective and current DEFENDANT eXp REALTY real estate agents to social networking events ("eXp REALTY Recruiting Events") for the purpose of recruiting, enticing and soliciting other real estate agents to join DEFENDANT eXp REALTY or to retain current DEFENDANT eXp REALTY real estate agents.

30.    DEFENDANT eXp REALTY receives a direct financial benefit every time a Sponsor Agent recruits a real estate agent into their downline, including, but not limited to the following: 20% of all commissions earned by the Recruited Agent; $149 start-up fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $85/month cloud brokerage

FIRST AMENDED COMPLAINT FOR DAMAGES

fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $25 transaction review

fee paid by the Recruited Agent to DEFENDANT eXp REALTY; and a $40 risk

management fee paid by the Recruited Agent to DEFENDANT eXp REALTY.



**https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-
Explained-Q3-2022.pdf**

31.   DEFENDANT eXp REALTY also receives a direct financial benefit from

every Recruited Agent in the amount of $250 a month if the Recruited Agent fails to

generate a minimum of $5,000 gross commission income or fails to close two qualifying

sale transactions within the preceding six full months. Although the standard contract states

that all agents share 20% of their commissions, DEFENDANT eXp REALTY makes

exceptions to this rule for select Influencers they want to recruit to DEFENDANT eXp

REALTY to attract more agents and increase certain Influencers' Revenue Share, to the

detriment of DEFEDANT eXp REALTY's shareholders.

FIRST AMENDED COMPLAINT FOR DAMAGES

32.     DEFENDANT eXp REALTY has a symbiotic relationship with its top agents/"Influencers".  DEFENDANT eXp REALTY's part of the relationship is to put top Influencers in the position to be able to increase the agent count by any means necessary. The Influencers' role is to recruit as many agents as possible to keep the Revenue Share pyramid from collapsing.

33.     For this reason, DEFENDANT eXp REALTY went to great lengths to promote the wealth and success of its Influencers.  As part of this strategy spearheaded by eXp President David Conord, DEFENDANT eXp REALTY profiles its top agents. One such way the agents were profiled was on eXpLife, which is a website run by DEFENDANT eXp to promote its agents.

> **Commented [JL2]:** Need to add what this is

34.     DEFENDANT eXp REALTY was run by an executive leadership team which made decisions relevant to the instant actions and individuals involved. At all relative times it included, but was not limited to: DEFENDANT SANFORD, Jason Gesing, Jeff Whiteside, Jim Bramble, David Conord, Michael Valdez, Courtney Keating, and Corey Haggard.

**DEFENDANT MICHAEL L. BJORKMAN AND
DEFENDANT DAVID S. GOLDEN**

35.     In 2018, DEFENDANT BJORKMAN, a licensed real estate agent in the state of California, was recruited by DEFENDANT GOLDEN to join DEFENDANT eXp REALTY.

36.     Prior to joining DEFENDANT eXp REALTY, DEFENDANT BJORKMAN was an agent at Remax.

37.     DEFENDANT BJORKMAN joined DEFENDANT eXp REALTY in 2018 and named DEFENDANT GOLDEN as his Sponsor Agent.

38.     DEFENDANT BJORKMAN has been a self-described "leader" in the real estate industry and was one of DEFENDANT eXp REALTY's top recruiters/Influencers, who generated a substantial part of his income, not from selling real estate, but by recruiting real estate agents to join DEFENDANT eXp REALTY.[1]

39.     According to DEFENDANT BJORKMAN, at DEFENDANT eXp REALTY, "your net worth directly relates to your network."[2]  DEFENDANT BJORKMAN develops his network by making recruits feel like a part of his "family", caring for them and helping them succeed in their careers.

40.     DEFENDANT BJORKMAN does this by building a false relationship based on trust and emotional connection, only then to manipulate, exploit and abuse these relationships.

---

[1] "Exp Agent Attraction Boot Camp Mike Bjorkman.  How to recruit agents." https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

[2] https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

FIRST AMENDED COMPLAINT FOR DAMAGES

41.     At DEFENDANT eXp REALTY'S direction and using their recruiting techniques, DEFENDANT BJORKMAN recruited downline agents by inviting them to travel to DEFENDANT eXp networking events in various states and Mexico. DEFENDANT BJORKMAN stressed the critical importance of these events to his recruits in furthering their career because DEFENDANT eXp Realty was all about recruiting agents.

42.     On March 8, 2021, DEFENDANT BJORKMAN was arrested in Miami-Dade County for two (2) counts of sexual assault of JANE DOE 3.

43.     In conjunction with that arrest, the Las Vegas Police Department issued a Declaration of Warrant/Summons, Event Number 200900070704 ("Warrant"), a 27-page report, which lays out its in-depth criminal investigation describing multiple occasions of multiple women being drugged and assaulted by DEFENDANT BJORKMAN while attending eXp REALTY Recruiting Events.

44.     As described in the Warrant, there is a long history, dating back to 2000, of multiple women accusing DEFENDANT BJORKMAN of both drugging and sexually assaulting them.

45.     One of the incidents detailed in the Warrant, details the rape of a real estate agent that occurred in 2007.  That same agent joined eXp REALTY in 2018.  Shortly after joining eXp REALTY, she ran into DEFENDANT BJORKMAN at eXpCon in New Orleans in October 2018.

14

FIRST AMENDED COMPLAINT FOR DAMAGES

46.     Seeing DEFENDANT BJORKMAN associated with the same company she just joined as a real estate agent caused this agent to suffer extreme emotional distress, at which time she told her Sponsor Agent Frank Crandall that DEFENDANT BJORKMAN had assaulted her in 2007 and that she could not work for a company where he worked. Shortly thereafter, this agent reached out to eXp REALTY'S Designated California Broker, Debbie Penny.  Ms. Penny never replied to this agent's attempts to contact her.  Frustrated with the lack of support, this agent left eXp Realty.

47.     As noted by one of the witnesses in the Warrant, after DEFENDANT BJORKMAN drugged and assaulted certain women, DEFENDANT BJORKMAN has contacted them, "threatening" them not to say anything.

48.     According to the State of California Department of Real Estate, DEFENDANT BJORKMAN was affiliated with DEFENDANT eXp REALTY's Broker License from August 13, 2018 to September 18, 2020.  Under the terms of DEFENDANT eXp REALTY's Revenue Share Plan, should an agent no longer have their license with DEFENDANT eXp REALTY, then they no longer would be entitled to participate in DEFENDANT eXp REALTY's Revenue Share Plan.

49.     DEFENDANT BJORKMAN no longer holds his real estate license under DEFENDANT eXp REALTY. DEFENDANT BJORKMAN, however, still holds a California real estate license.

FIRST AMENDED COMPLAINT FOR DAMAGES

50.    As of September 18, 2020, DEFENDANT BJORKMAN's license was no longer connected to eXp REALTY; however, DEFENDANT BJORKMAN to this day is still a Participant in DEFENDANT eXp Realty's Revenue Share Program.3

51.    Pursuant to DEFENDANT eXp's standard Agent Agreement, to become a Vested Participant, an agent must be affiliated (licensed with DEFENDANT eXp REALTY as the brokerage) with the Company for not less than 36 months.

52.    Despite the fact that DEFENDANT BJORKMAN did not meet the requirements to become a Vested Participant, upon information and belief, DEFENDANT eXp REALTY allowed DEFENDANT BJORKMAN to vest.

53.    Conversely, DEFENDANT eXp REALTY did not allow did not grant the same vesting exception to Jane Doe 3.

54.    After learning about the incidents related to Jane Doe 2 and Jane Doe 3, described in detail below, DEFENDANT eXp REALTY removed DEFENDANT BJORKMAN from their license but continued to allow him to go to eXp events, continued to socialize with him and continued to pay him substantial amounts of money each month because he was a top Influencer.

---

[3] Jane Doe 1 was entitled to half of the Revenue Share of DEFENDANT BJORKMAN; however, DEFENDANT eXp REALTY is giving 100% of the Revenue Share to DEFENDANT BJORKMAN and none to Jane Doe 1.

FIRST AMENDED COMPLAINT FOR DAMAGES

55.    DEFENDANT eXp REALTY would not allow Plaintiffs who had DEFENDANT BJORKMAN as their sponsor to move lines, forcing them to financially support their rapist.

56.    In 2017, DEFENDANT GOLDEN was introduced to DEFENDANT eXp REALTY by a DEFENDANT eXp REALTY recruiting agent named Rosie Rodriguez.

57.    As of February 1, 2018, DEFENDANT GOLDEN joined DEFENDANT eXp REALTY and named Rosie Rodriguez as his Sponsor Agent.

58.    According to the Nevada Department of Real Estate, DEFENDANT GOLDEN is currently an active agent affiliated with DEFENDANT eXp REALTY.

59.    DEFENDANT GOLDEN is one of DEFENDANT eXp REALTY's top recruiters/Influencers and generates the majority of his income not from selling real estate but by recruiting real estate agents to join DEFENDANT eXp REALTY.

60.    DEFENDANT GOLDEN develops his network by building a false relationship based on trust and emotional connection, only then to manipulate, exploit and abuse these relationships.

61.    Multiple women informed the Las Vegas Police Investigator that they personally saw DEFENDANT GOLDEN with GHB[4] and other illicit substances on

---

[4] GHB (Gamma-Hydroxybutyric Acid) is commonly known as the "date rape drug.  It comes in a liquid or as a white powder that is dissolved in water, juice, or alcohol.  In liquid form, GAB is clear and colorless.  When taken, it can cause hallucinations, euphoria, drowsiness, decreased anxiety, excited and aggressive behavior.  Overdose symptoms include unconsciousness, seizures, slowed heart rate, greatly slowed breathing, lower body temperature, vomiting, nausea, coma, and death.  Source: https://www.dea.gov/factsheets/ghb-gamma-hydroxybutyric-acid

GHB's liquid form allows it to be slipped into drinks, and its sedative effects prevent victims from resisting sexual assault. GHB can also cause amnesia, meaning that when people recover from the drug's effects, they may not remember what

FIRST AMENDED COMPLAINT FOR DAMAGES

multiple occasions, and they believe those substances supplied by DEFENDANT

GOLDEN were used to drug them so that they could be sexually assaulted at

DEFENDANT eXp REALTY Recruitment Events.  Many of these women also informed

the Las Vegas investigator that DEFENDANT GOLDEN was a participant in the sexual

assaults that occurred at DEFENDANT eXp REALTY Recruitment Events.

62.    As part of its investigation and as detailed in the Warrant, several victims are

aware that DEFENDANT BJORKMAN and DEFENDANT GOLDEN made videos of

their sexual assaults.

63.    DEFENDANT BJORKMAN and DEFENDANT GOLDEN made it known to

many of the women they drugged and assaulted that they had valuable and explicit videos

and pictures of the women.

64.    As part of its investigation, the police obtained a search warrant for

DEFENDANT GOLDEN's cell phone.  The police conducted a digital extraction of the

phone, the results of which remain in police custody.  Upon information and belief, some

of the photos and videos recovered from the DEFENDANT GOLDEN's phone contain

evidence that supports the allegations set forth in this Complaint.

65.    DEFENDANT BJORKMAN and DEFENDANT GOLDEN would on a

regular basis sponsor recruitment events to entice agents to join eXp Realty.  A key part of

---

happened.  https://www.camh.ca/en/health-info/mental-illness-and-addiction-
index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,symptoms%20if%20they
%20abruptly%20stop%20using%20the%20drug

FIRST AMENDED COMPLAINT FOR DAMAGES

their recruitment at the direction of DEFENDANT eXp REALTY was to create an image of "success" which consisted of being surrounded by beautiful women whom they could sexually exploit.

66.     DEFENDANT eXp REALTY was aware of these recruitment events, including of what went on at these events, held by DEFENDANT BJORKMAN and DEFENDANT GOLDEN and financially benefitted from them.

67.     Despite knowing of DEFENDANT GOLDEN'S criminal actions, DEFENDANT eXp REALTY took no action to remove DEFENDANT GOLDEN from DEFENDANT eXp REALTY and continued to promote him as one of their respected agents as seen on its website life.exprealty.com.

68.     DEFENDANT eXp REALTY decided to take no action against DEFENDANT GOLDEN because DEFENDANT GOLDEN provided a long line of agents below him without which his upline, consisting of DEFENDANT GOVE and DEFENDANT SANFORD and others in the upline would lose substantial income.

**DEFENDANT BRENT GOVE AND DEFENDANT GLENN SANFORD**

69.     DEFENDANT GOVE is one of eXp REALTY's top recruiters.  According to his own website, DEFENDANT GOVE has close to 20,000 agents in his downline which translates into more than a fifth of all of DEFENDANT eXp REALTY's agents.

70.     DEFENDANT GOVE was aware of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's recruitment events and would often tell other agents that he was living vicariously through DEFENDANT GOLDEN.

19

71.    DEFENDANT GOVE held his own recruiting events where upon information and belief women were assaulted by DEFENDANT BJORKMAN and/or DEFENDANT GOLDEN who were invited to these events by DEFENDANT GOVE.

72.    DEFENDANT SANFORD is Agent #1. He is the founder of eXp Realty and is at the top of the Revenue Share Pyramid.

73.    When reports of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's criminal conduct became public knowledge a small minority of DEFENDANT eXp REALTY's corporate leadership expressed a strong desire to terminate DEFENDANT BJORKMAN and DEFENDANT GOLDEN's association with DEFENDANT eXp REALTY.

74.    Upon information and belief, DEFENDANT GOVE threatened to pull his entire team, one-fifth of the entire company, from DEFENDANT eXp REALTY if DEFENDANT eXp REALTY removed DEFENDANT BJORKMAN AND DEFENDANT GOLDEN from DEFENDANT eXp REALTY.

75.    Upon information and belief, DEFENDANT SANFORD, DEFENDANT GOVE and others came to an agreement whereby they would allow DEFENDANT GOLDEN to remain at DEFENDANT eXp REALTY and continue to promote him and to remove DEFENDANT BJORKMAN from their license but continue to pay him his Revenue Share contrary to their own policies.

76.    DEFENDANT SANFORD had actual knowledge about DEFENDANT BJORKMAN AND DEFENDANT GOLDEN's criminal activities with respect to Jane

Does 1, 2, and 3 as well as others; this was made public by a Facebook post in September 2020, but on information and belief, actual knowledge predated this post.

77.     Upon information and belief, when DEFENDANT eXp REALTY and DEFENDANT SANFORD knew about the multiple assaults, he was asked what would he do when this came out publicly. DEFENDANT SANFORD's response was to say, so what, it is only going to be in the news cycle for 3-5 days, and nothing will happen.

78.     Rather than conducting a legitimate investigation into the Plaintiffs' complaints regarding DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT GOVE AND DEFENDANT SANFORD did a cost benefit analysis and decided it made economic sense to continue to pay DEFENDANT GOLDEN AND DEFENDANT BJORKMAN.

79.     DEFENDANT GOVE AND DEFENDANT SANFORD repeatedly acted as if they were hearing the assault complaints for the first time even though they were personally made aware repeatedly through the proper chain of command and direct communications about these assaults over the years. They put monetary gain over the wellbeing of the PLAINTIFFS.

80.     DEFENDANT SANFORD, DEFENDANT GOVE, DEFENDANT BJORKMAN and DEFENDANT GOLDEN gaslit the Plaintiffs in concert, shaming and blaming the Plaintiffs, holding these horrific moments over their heads.[5]

---

[5] Due to the drugging and gaslighting, Plaintiffs' state law causes of action are tolled based on their delayed discovery.

FIRST AMENDED COMPLAINT FOR DAMAGES

81.   By choosing to allow DEFENDANT GOLDEN AND DEFENDANT BJORKMAN's behavior to go unchecked for years simply so they could continue to reap the financial benefits provided by DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT GOVE and DEFENDANT SANFORD were complicit in allowing assaults to occur.

82.   The DEFENDANTS, acting with a common purpose to recruit new agents, to maintain downlines, financially benefitted from allowing this behavior to occur.

83.   Additionally, DEFENDANT eXp REALTY attempted to cover up the criminal conduct of DEFENDANTS BJORKMAN and GOLDEN through the attempted use of Non-Disclosure Agreements.

84.   Upon information and belief, DEFENDANT GOVE actively attempted to solicit agents to make false statements to extricate DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

**LEGAL BACKGROUND**

**18 U.S.C. § 1591**

85.   The federal sex trafficking statute, 18 U.S.C. § 1591, outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial

FIRST AMENDED COMPLAINT FOR DAMAGES

jurisdiction of the United States. It is to be construed expansively because it serves a remedial purpose and uses intentionally broad language.

86.     The federal sex trafficking statute, 18 U.S.C. § 1591(a), criminalizes any person acting in interstate or foreign commerce, or within the territorial or maritime jurisdiction of the United States, who knowingly:

(1)     recruits, entices, harbors, transports, provides, obtains,

advertises, maintains, patronizes, or solicits by any means a

person;

(2)     benefits, financially or by receiving anything of value, from

participation in a [sex trafficking] venture which has engaged in

an act described in violation of paragraph (1);

knowing, or … in reckless disregard of the fact, that means of

force, threats of force, fraud, coercion …, or any combination of

such means will be used to cause the person to engage in a

commercial sex act, …

87.     18 U.S.C. § 1591(d) criminalizes "obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of this section."

88.     18 U.S.C. § 1595, provides a civil remedy to victims of sex trafficking crimes, including violations of 18 U.S.C. § 1591(a) and § 1591(d), against the perpetrator of such crimes and against anyone else who knowingly benefits, financially or by receiving

FIRST AMENDED COMPLAINT FOR DAMAGES

anything of value, from participation in a venture which that person knew or should have known has engaged in a sex trafficking crime. 18 U.S.C. §1595(a).

## ALLEGATIONS RELATING TO PLAINTIFFS

### *Fabiola Acevedo*

89.     In early 2018, during a real estate networking event, DEFENDANT GOLDEN first began trying to recruit Ms. Acevedo to join DEFENDANT eXp REALTY.

90.     DEFENDANT GOLDEN explained to Ms. Acevedo that if she joined DEFENDANT eXp REALTY, it was important whom she chose as her Sponsor Agent as this person would provide her with important connections and coaching to help her grow her real estate business.

91.     Ms. Acevedo had known DEFENDANT GOLDEN as a leader in the real estate business for some time and trusted him and his guidance.

92.     After many conversations with DEFENDANT GOLDEN, Ms. Acevedo decided she wanted to join DEFENDANT eXp REALTY and have DEFENDANT GOLDEN as her Sponsor Agent.

93.     A contract was sent to Ms. Acevedo to join DEFENDANT eXp REALTY and Ms. Acevedo named DEFENDANT GOLDEN as her Sponsor Agent.  Soon after, DEFENDANT GOLDEN recalled the contract and told Ms. Acevedo that instead of naming DEFENDANT GOLDEN as her Sponsor Agent, she should name DEFENDANT BJORKMAN as her Sponsor Agent telling Ms. Acevedo that it would be better for her

professional growth to have two Sponsor Agents, DEFENDANT GOLDEN and

DEFENDANT BJORKMAN.

94.     DEFENDANT GOLDEN then explained to Ms. Acevedo that DEFENDANT

BJORKMAN had already purchased tickets to a real estate networking event hosted by the

Closing Table at the Pelican Hill Hotel in Pelican Hill, California on July 20-22, 2018 and

that it would be good for her career to go to this event as DEFENDANT BJORKMAN'S

guest.

95.     Arriving a day before the start of the conference, DEFENDANT GOLDEN's

(and DEFENDANT eXp REALTY's) Sponsor Agent, Rosie Rodriguez invited Ms.

Acevedo to tour her eXp REALTY office and stay the night at her guest house.

96.     The next day, on July 20, 2018, Ms. Rodriguez dropped off Ms. Acevedo at

the Pelican Hill Hotel for the networking conference. During the drive, Ms. Rodriguez and

DEFENDANT GOLDEN were on a phone conference call and DEFENDANT GOLDEN.

Ms. Acevedo made DEFENDANT GOLDEN aware that she was in the car with Ms.

Rodriguez.

97.     Upon checking in, the hotel informed Ms. Acevedo that she did not have a

room reserved in her name and that the hotel was sold out and there were no more rooms

available. Upset, Ms. Acevedo called DEFENDANT GOLDEN about the lack of

accommodations.   DEFENDANT GOLDEN told her to stay in DEFENDANT

BJORKMAN's hotel room, that she could trust him, that they were "family".

98.     Based on a long-term platonic friendship with DEFENDANT GOLDEN, Ms. Acevedo trusted him and agreed to stay in DEFENDANT BJORKMAN's room which had separate beds.

99.     That evening, Ms. Acevedo had a single cocktail with DEFENDANT BJORKMAN and others at the hotel bar. Thereafter, she remembers nothing until the next morning whereupon she awoke naked in DEFENDANT BJORKMAN'S hotel room. Another woman and DEFENDANT BJORKMAN were in the other bed naked.  Another man was on the floor clothed.

100.    Disoriented and in shock, Ms. Acevedo ran to the bathroom to shower only to have DEFENDANT BJORKMAN come into the bathroom naked, exposing himself to her and attempting to engage her in inappropriate sexual contact.

101.    The day the conference started, July 20, 2018, DEFENDANT eXp REALTY sent Ms. Acevedo a new offer to join DEFENDANT eXp REALTY.  Uncertain and confused about the events at the conference, Ms. Acevedo signed the agreement on July 23, 2018, naming DEFENDANT BJORKMAN as her Sponsor Agent.

102.    All DEFENDANT eXp REALTY Agents that participate in DEFENDANT eXp REALTY's Revenue Share pyramid have an "upline."  Ms. Acevedo's eXp REALTY "upline" is as follows:

| Level | eXp Sponsor Agent |
| --- | --- |
| TIER 7 | Sheila Fejeran |
| TIER 6 | Colby Anne Casoria |
| TIER 5 | Brent Gove |

FIRST AMENDED COMPLAINT FOR DAMAGES

| TIER 4 | Rick Geha |
| TIER 3 | Rosie Rodriguez |
| TIER 2 | David Golden |
| TIER 1 | Michael Bjorkman |

103.   As a result of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture, Ms. Acevedo was deeply traumatized and unable to work as a real estate agent. However, she continued to pay all fees required by DEFENDANTS.

104.   On March 7, 2022, Ms. Acevedo attended a conference where she saw and spoke to DEFENDANT SANFORD, current CEO of DEFENDANT eXp REALTY about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents based on his position as the CEO of DEFENDANT eXp REALTY, DEFENDANT SANFORD did nothing to assist Ms. Acevedo and acted as if he was hearing about their behavior for the very first time, thus gaslighting Ms. Acevedo.

105.   On or about June 9, 2022, Ms. Acevedo spoke with Jason Gesing, who at that time was the CEO of DEFENDANT eXp REALTY, about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents from his position as the CEO of DEFENDANT eXp REALTY, Mr. Gesing did nothing to assist Ms. Acevedo.

FIRST AMENDED COMPLAINT FOR DAMAGES

106. In addition to not receiving any substantive help from either DEFENDANT SANFORD or Gesing, Ms. Acevedo reached out to multiple people at DEFENDANT eXp REALTY asking for assistance.  No substantive help was provided to Ms. Acevedo.

### *Jane Doe 1*

107. Jane Doe 1 is a real estate agent and former business partner with DEFENDANT BJORKMAN.

108. After DEFENDANT BJORKMAN joined DEFENDANT eXp REALTY, DEFENDANT BJORKMAN recruited JANE DOE 1 to join DEFENDANT eXp REALTY.  Initially, she refused to join because she knew if she named DEFENDANT BJORKMAN as her Sponsor Agent, DEFENDANT GOLDEN would be in her "upline."

109. JANE DOE 1 was weary to have DEFENDANT GOLDEN in her upline because DEFENDANT BJORKMAN would constantly tell her that DEFENDANT GOLDEN was a "dirtbag" and a "rapist."  DEFENDANT BJORKMAN also told JANE DOE 1 that despite DEFENDANT GOLDEN's moral failings, he felt that he owed DEFENDANT GOLDEN.

110. After incessant recruiting efforts, JANE DOE 1 agreed to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.  DEFENDANT BJORKMAN told JANE DOE 1 in multiple communications were 50/50 partners and that they would divide the Revenue Share, Stock and any financial gain from eXp 50/50.

111. JANE DOE 1's DEFENDANT eXp REALTY "upline" is as follows:

28

| Level | eXp Sponsor Agent |
|-------|-------------------|
| TIER 7 | Sheila Fejeran |
| TIER 6 | Colby Anne Casoria |
| TIER 5 | Brent Gove |
| TIER 4 | Rick Geha |
| TIER 3 | Rosie Rodriguez |
| TIER 2 | David Golden |
| TIER 1 | Michael Bjorkman |

112.   On April 11, 2019, JANE DOE 1 attended a real estate networking event hosted by The Closing Table at a hotel in Beverly Hills, CA for the purpose of learning during the day and recruiting real estate agents to join DEFENDANT eXp REALTY at night.

113.   JANE DOE 1 and DEFENDANT BJORKMAN went to the dinner with other conference attendees.  DEFENDANT JANE DOE 1 had a single glass of wine at dinner.

114.   After dinner, JANE DOE 1 went to the hotel bar and had one drink.

115.   Later that evening, one of the event hosts invited everyone to his room for a get-together.  JANE DOE 1 didn't want to go to the event but felt pressured to network and recruit other agents to join DEFENDANT eXp REALTY since that was the purpose of the trip.

116.   When they arrived at the host's room, DEFENDANT BJORKMAN handed her a drink.

117.   Shortly thereafter, JANE DOE 1 blacked out until the next morning when she woke up naked and alone in her hotel room.  The room was in disarray, and she could tell

FIRST AMENDED COMPLAINT FOR DAMAGES

room service had been there, but she had spotty memory of it and was trying to decipher what had occurred.

118.   She immediately went to the bathroom.  She felt sick, saw blood from her vagina and experienced pain.

119.   Soon after, the phone rang, and it was DEFENDANT BJORKMAN calling her.  By this time, she was starting to get flashes of memories from the night before.  JANE DOE 1 immediately asked DEFENDANT BJORKMAN, "What happened?  What did you do?"  She accused him of having sex with her.  Rather than admit that they had sexual intercourse, DEFENDANT BJORKMAN gaslit her and repeatedly told her that she was crazy and that nothing happened.

120.   Later that day, JANE DOE 1 told DEFENDANT BJORKMAN that she thinks she was "roofied" the night before.  DEFENDANT BJORKMAN replied that he must have been "roofied" as well and continued to gaslight her, telling her that she was crazy and that nothing happened.

121.   A few days after she was raped, DEFENDANT BJORKMAN sent her a video from the night of the rape in an effort to "prove" she was drunk.  The video shows that JANE DOE 1 was hallucinating and acting completely out of character.   Despite having only three (3) drinks during the entire evening, JANE DOE 1 has no memories of the events depicted in the video.

122.   On April 27, 2019, JANE DOE 1 and DEFENDANT BJORKMAN traveled from California to San Antonio, Texas for another real estate networking event (hosted by

FIRST AMENDED COMPLAINT FOR DAMAGES

a networking group called "Club Wealth") to recruit agents to join DEFENDANT eXp REALTY.

123.   While in San Antonio, JANE DOE 1 was still questioning her sanity and would repeatedly ask DEFENDANT BJORKMAN if he had assaulted her/penetrated her while she was incapacitated at the last event they attended.

124.   After repeated questioning, DEFENDANT BJORKMAN finally admitted that they did have sex at the last event.  He told her he lied because he didn't want to "embarrass" her.  DEFENDANT BJORKMAN went on to explain that JANE DOE 1 was "fucked up" and out of control, was hitting on him and was all over him.  DEFENDANT BJORKMAN did not confess that he had drugged her which is why she was behaving so out of character.

125.   At that moment, JANE DOE 1 decided she would start the difficult process of leaving the business they had built together, but because of their business and financial entwinement, she knew it would take some time before she could completely distance herself from him.

126.   JANE DOE 1 considered at that point reporting him to the authorities but thought no one would believe her.  She did confide in some friends about what had happened.

127.   As soon as she was able to do so, JANE DOE 1 severed all ties with DEFENDANT BJORKMAN.

FIRST AMENDED COMPLAINT FOR DAMAGES

128.   As a result of being drugged/rendered incapacitated and being assaulted, JANE DOE 1 has suffered extreme emotional distress, has PTSD and has lost business opportunities which significantly impacted her income.

129.   After hearing that other eXp Agents had a similar experience of being drugged and raped by DEFENDANT BJORKMAN and/or DEFENDANT GOLDEN , JANE DOE 1 reported the assault by DEFENDANT BJORKMAN in or around October 2020 to Corey Haggard, a member of the eXp executive leadership.

130.   Jane Doe 1 repeatedly requested to be moved from DEFENDANT GOLDEN and DEFENDANT BJORKMAN's line. After months of these repeated requests, they agreed to move her but refused to pay her the part of the Revenue Share they were sending to DEFENDANT BJORKMAN.

***Jane Doe 2***

131.   JANE DOE 2 was invited to attend an eXp REALTY Recruiting Event at the Wynn and Encore Hotel and Casino in Las Vegas, NV, from August 27, 2020 to August 30, 2020.  The event was hosted by DEFENDANT GOLDEN and DEFENDANT BJORKMAN as an eXp recruiting event.

132.   On Friday, August 28, 2020, JANE DOE 2 and other attendees took an event-provided bus from their hotel to an eXp REALTY Recruitment Event held at the guest speaker, Jon Cheplak's house, in Henderson, NV.  Attending the event were many DEFENDANT eXp REALTY real estate agents, including DEFENDANT GOVE.

133.   Discussed at this eXp REALTY Recruitment Event was Agent Attraction and DEFENDANT eXp REALTY's Revenue Share pyramid.

134.   After the event, the bus returned them to their hotel (Wynn).  JANE DOE 2 and a couple of friends planned on going to dinner that evening but first, they wanted to stop by a get-together held by two of the event's hosts, DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

135.   That evening, DEFENDANT BJORKMAN and DEFENDANT GOLDEN held the get-together inside of their suite, at the Encore Hotel and Casino.  DEFENDANT BJORKMAN and DEFENDANT GOLDEN invited event attendees to their suite for drinks, snacks, and to hang out that evening.

136.   After arriving, JANE DOE 2 poured herself one cup of vodka and soda water, which she sipped during the event.

137.   JANE DOE 2 continually added soda water to the drink and never added more vodka.  This was the only alcoholic beverage she drank over the course of the entire evening, and she did not finish the entire drink.

138.   After the party, JANE DOE 2 and some of her friends left for Caesar's Palace where they had dinner.

139.   JANE DOE 2 recalls leaving the eXp REALTY Recruiting Event but has very limited memory for the remainder of the evening.

FIRST AMENDED COMPLAINT FOR DAMAGES

140.   While at dinner, JANE DOE 2 recalls having to excuse herself from the table to go to the bathroom and vomit.  She also recalls sitting at the dinner table but has no memory of leaving the dinner.

141.   JANE DOE 2 next recalls waking up the next morning with a headache, feeling very groggy and was nude in her own bed in her hotel room.

142.   JANE DOE 2 has since shared her experience with co-workers who were with her that evening.  Based on her conversations with them she learned that she went to the bathroom multiple times while at dinner, and she was gone for so long that her friends had to go to the restroom to find her.  JANE DOE 2 has no memory of this happening.

143.   In addition to discussing the evening with her friends, JANE DOE 2 posted about this experience on her Facebook page but did not publicly provide DEFENDANT BJORKMAN or DEFENDANT GOLDEN's name in the post.  As a result, she discovered that other women associated with DEFENDANT eXp REALTY had been rendered incapacitated, drugged, and sexually assaulted after attending the same and other eXp REALTY Recruiting Events.

144.   After speaking with several people, JANE DOE 2 realized that she was drugged/rendered incapacitated by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

145.   In addition, on the evening before JANE DOE 2 was drugged, DEFENDANT BJORKMAN and DEFENDANT GOLDEN rented a cabana at the Wynn hotel pool. As the rest of the party was leaving, DEFENDANT BJORKMAN invited JANE DOE 2 to

34

FIRST AMENDED COMPLAINT FOR DAMAGES

stay behind and have a cigarette with him, which she did.  He then said that everyone was going back up to the suite, so she followed him. When JANE DOE 2 got there, it was only DEFENDANT GOLDEN  and his girlfriend present. They pressured JANE DOE 2 to stay and have another drink, but JANE DOE 2 declined the invitation and returned to her hotel room.

*146.*   As a result of being drugged/rendered incapacitated and having no memory of the events that happened later, JANE DOE 2 has suffered extreme emotional distress; has lost business opportunities, including but not limited to, a lucrative position she had coaching other real estate agents, speaking and marketing opportunities.  JANE DOE 2 continues to live in fear of running into DEFENDANT BJORKMAN and DEFENDANT GOLDEN at real estate events, so much so that for a significant period of time, she was unable to attend any networking events which significantly impacted her income.

### Jane Doe 3

147.   At all times relevant to this Complaint, JANE DOE 3 was a real estate agent for DEFENDANT eXp REALTY.

148.   In August of 2020, JANE DOE 3 was invited to attend an event in Las Vegas by her Sponsor Agent DEFENDANT BJORKMAN, and his Sponsor Agent DEFENDANT GOLDEN.  It was marketed to her as an eXp REALTY Recruiting Event that would be good for her real estate career to attend.

FIRST AMENDED COMPLAINT FOR DAMAGES

149.   On Thursday, August 27, 2020, JANE DOE 3 traveled from Florida to Las Vegas, NV to attend the eXp REALTY Recruiting Event which was held at multiple locations including the Encore Hotel and Casino where JANE DOE 3 had a hotel room.

150.   On Saturday, August 29, 2020, JANE DOE 3 went to DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S hotel suite for another DEFENDANT eXp REALTY group get-together.  JANE DOE 3 remembered DEFENDANT GOLDEN becoming upset during the evening, so she and DEFENDANT BJORKMAN went for a walk on the Las Vegas Strip and gambled at the casino.

151.   After gambling for a while, JANE DOE 3 and DEFENDANT BJORKMAN returned to DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S hotel suite. JANE DOE 3's memory is spotty and limited from this point forward.

152.   JANE DOE 3 does recall being sexually assaulted by DEFENDANT BJORKMAN that evening.

153.   JANE DOE 3 also recalls witnessing both DEFENDANT BJORKMAN and DEFENDANT GOLDEN consume GHB from a plastic "5 Hour Energy" bottle.  They both told her that they take GHB recreationally.[6]

---

[6] People who use GHB regularly can develop tolerance to the effects of the drug. https://www.camh.ca/en/health-info/mental-illness-and-addiction-index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,symptoms%20if%20they%20abruptly%20stop%20using%20the%20drug.

154.   A few weeks after the sexual assault, JANE DOE 3 discussed the incident with DEFENDANT GOLDEN.  DEFENDANT GOLDEN encouraged her to lie about it when interviewed by the police.

155.   After the incident, JANE DOE 3 received many threatening messages from people associated with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

156.   Upon information and belief, on or around January of 2021, DEFENDANT GOVE was reaching out to multiple eXp agents requesting that they submit false statements to the Las Vegas investigator to help DEFEDANTS GOLDEN and DEFENDANT BJORKMAN.

157.   On March 3, 2021, JANE DOE 3 directly discussed with DEFENDANT GOVE the assault that occurred in Las Vegas in 2020. DEFENDANT GOVE had been present at the 2020 event and had seen that JANE DOE 3 had been out of her mind which was completely out of character.

158.   On March 3, 2021, she expressed the pain she felt at knowing that leaders at eXp, including DEFENDANT GOVE knew about DEFENDANT GOLDEN and DEFENDANT BJORKMAN'S illegal actions for years prior to her assault and did nothing. During this conversation with JANE DOE 3, DEFENDANT GOVE acted as if he had no idea what she was talking about and kept saying he "hoped it wasn't true" even though she kept telling him it was true and even though he already knew it was true at this time.

FIRST AMENDED COMPLAINT FOR DAMAGES

159.   As a result of this incident, JANE DOE 3 has suffered and continues to suffer from PTSD and extreme emotional distress all of which have negatively impacted and continue to negatively impact every facet of her life.

### *John Doe 1*

160.   JOHN DOE 1 is the spouse of JANE DOE 3.

161.   At all times relevant to this Complaint, JOHN DOE 1 was married to JANE DOE 3, and they continue to be married.

162.   As a result of the wrongful and negligent acts of the DEFENDANTS, JOHN DOE 1 was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

### ALLEGATIONS RELATING TO DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE

163.   While at eXp REALTY Recruiting Events, DEFENDANT GOLDEN and DEFENDANT BJORKMAN used illegal drugs; surreptitiously drugged and rendered incapacitated other agents and sexually assaulted them and videotaped/photographed their actions. On information and belief, this was known by DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE throughout the duration of their affiliation with DEFENDANT eXp REALTY.

164.   After JANE DOE 2 and JANE DOE 3 informed DEFENDANT eXp REALTY about what happened to them in Vegas in August 2020, JANE DOE 1 also reported to DEFENDANT eXp REALTY what had happened to her.

165.   JANE DOE 1 requested a Sponsor change so that she no longer had to be in DEFENDANT BJORKMAN and DEFENDANT GOLDEN's downline.

166.   Rather than immediately granting her request, DEFENDANT eXp REALTY resisted because they thought more women would come forward and ask to change their Sponsors upon the basis they were sexually assaulted as well. DEFENDANT eXp REALTY waited several months to make this change.

167.   On March 9, 2021, DEFENDANT BJORKMAN was arrested on two counts of sexual assault.

168.   Upon information and belief, certain members of the Leadership Team and/or Board of Directors suggested ways in which DEFENDANT eXp could help the sexual assault survivors which included switching their sponsors so they would not be forced to pay up to their assailants, allowing them to be heard by Leadership, and creating a safe space for reporting. DEFENDANT SANFORD explicitly rejected these requests.

169.   Moreover, on information and belief, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct DEFENDANT eXp REALTY Board Member, Gene Frederick continued to socialize publicly with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.



*Picture dated December 30, 2021 posted on Facebook (From left to right, Michael DEFENDANT BJORKMAN, David DEFENDANT GOLDEN, Gene Frederick)*

170.   Similarly, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct, DEFENDANT eXp REALTY (former) CEO Jason Gesing continues to work closely with DEFENDANT GOLDEN.



*Photo dated April 12, 2022 posted on DEFENDANT GOLDEN's publicly accessible*

*Facebook Account*

171.   When JANE DOE 3 complained to DEFENDANT eXp REALTY about the

August 2020 Vegas incident and sought assistance from DEFENDANT eXp REALTY,

Gene Frederick, an eXp REALTY board member was heard saying, "[Jane Doe 3] wants

[DEFENDANT GOLDEN] fired, and we all know that's not going to happen."

172.   On March 7, 2022, Ms. Acevedo attended a conference where she saw and

spoke to DEFENDANT SANFORD current CEO of DEFENDANT eXp REALTY about

the 2018 incident and what she experienced thereafter.  Despite already knowing about

FIRST AMENDED COMPLAINT FOR DAMAGES

DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents based on his position as the CEO of DEFENDANT eXp REALTY, DEFENDANT SANFORD did nothing to assist Ms. Acevedo.

173.   On or about June 9, 2022, Ms. Acevedo spoke with Jason Gesing, who at that time was the CEO of DEFENDANT eXp REALTY, about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents from his position as the CEO of DEFENDANT eXp REALTY, Mr. Gesing did nothing to assist Ms. Acevedo.

174.   In addition to not receiving any substantive help from either DEFENDANT SANFORD or Gesing, Ms. Acevedo reached out to multiple people at DEFENDANT eXp REALTY asking for assistance.  No substantive help was provided to Ms. Acevedo.

175.   Upon information and belief, another eXp REALTY agent, not named in this Complaint, informed eXp REALTY that she was raped by DEFENDANT GOLDEN and requested that he no longer be her Sponsor Agent.  DEFENDANT eXp REALTY flatly denied her request.

176.   DEFENDANT eXp REALTY knew or should have known of DEFENDANT BJORKMAN'S and DEFENDANT GOLDEN'S Venture, yet rather than terminating DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY elected to continue to ignore pleas from other eXp agents who'd been assaulted

and profit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN and their downline.

177.   DEFENDANT eXp REALTY, despite knowing of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S Venture, chose to financially benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture and continues to receive value from the relationships even today. In the same vein, after allegations of sexual harassment against a past President of DEFENDANT eXp REALTY, DEFENDANT eXp REALTY silenced and in certain instances terminated women who had knowledge and complained about this behavior.

<u>Count I</u>
**Violation of 18 U.S.C. § 1591**
**All Plaintiffs Against DEFENDANT MICHAEL BJORKMAN**

178.   Plaintiffs reallege paragraphs 1 to 177 as if fully set forth herein.

*Fabiola Acevedo*

179.   DEFENDANT BJORKMAN caused Ms. Acevedo to travel from Florida to California to be his guest at a real estate networking event for the purpose of recruiting, enticing, or soliciting Ms. Acevedo to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

180.   DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated Ms. Acevedo for the purpose of engaging her in a sex act.

181.   DEFENDANT BJORKMAN attempted to engage Ms. Acevedo in a sex act.

43

182.   Upon leaving the event, confused about what had happened, Ms. Acevedo joined DEFENDANT eXp REALTY naming DEFENDANT BJORKMAN as her Sponsor Agent based on the promises from DEFENDANT BJORKMAN that he would help her with her real estate career.

### Jane Doe 1

183.   DEFENDANT BJORKMAN caused JANE DOE 1 to travel from California to multiple states to attend eXp REALTY Recruiting Events for the purpose of recruiting other real estate agents to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

184.   DEFENDANT BJORKMAN surreptitiously drugged and caused JANE DOE 1 to be incapacitated for the purpose of engaging her in a sex act and causing her to engage in a sex act without her consent.

185.   BJORKMAN surreptitiously took highly valuable videos and pictures of JANE DOE 1 while she was drugged without her consent.

### Jane Doe 2

186.   DEFENDANT BJORKMAN caused JANE DOE 2 to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of recruiting, enticing, or soliciting JANE DOE 2 to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

187.   DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated JANE DOE 2 for the purpose of engaging her in a sex act.

188.   After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his downline continued to try to recruit JANE DOE 1 to select DEFENDANT BJORKMAN or a member of his downline as her Sponsor Agent.  Although JANE DOE 2 did eventually decide to join DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

**Jane Doe 3**

189.   DEFENDANT BJORKMAN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

190.   DEFENDANT BJORKMAN surreptitiously drugged and rendered JANE DOE 3 incapacitated for the purpose of engaging her in a sex act and caused her to engage in a sex act without her consent.

191.   After the event, DEFENDANT BJORKMAN gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

**<u>Count II</u>**
**Violation of 18 U.S.C. § 1591**
**All Plaintiffs Against DEFENDANT DAVID GOLDEN**

192.   Plaintiffs reallege paragraphs 1 to 191 as if fully set forth herein.

***Fabiola Acevedo***

193.   DEFENDANT GOLDEN caused Ms. Acevedo to travel from Florida to California to be DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN'S, guest at a real estate networking event for the purpose of recruiting,

45

enticing. or soliciting Ms. Acevedo to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

194.   DEFENDANT GOLDEN enticed Ms. Acevedo to stay with DEFENDANT BJORKMAN, knowing DEFENDANT BJORKMAN would attempt to drug and render her incapacitated so he could sexually assault Ms. Acevedo.

195.   DEFENDANT BJORKMAN surreptitiously drugged Ms. Acevedo for the purpose of engaging her in a sex act.

196.   DEFENDANT BJORKMAN attempted to engage Ms. Acevedo in a sex act.

197.   Upon leaving the event, Ms. Acevedo joined DEFENDANT eXp REALTY naming DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent based on the promises from DEFENDANT BJORKMAN that he and DEFENDANT GOLDEN would help her with her real estate career.

***Jane Doe 2***

198.   DEFENDANT GOLDEN caused JANE DOE 2 to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of recruiting, enticing or soliciting JANE DOE 2 to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

199.   DEFENDANT BJORKMAN surreptitiously drugged JANE DOE 2 rendering her incapacitated for the purpose of engaging her in a sex act with drugs supplied by DEFENDANT GOLDEN.

FIRST AMENDED COMPLAINT FOR DAMAGES

200.   After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his upline continued to try to recruit JANE DOE 1 to select DEFENDANT BJORKMAN as her Sponsor Agent.  Although JANE DOE 2 did eventually decide to join DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

### *Jane Doe 3*

201.   DEFENDANT GOLDEN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

202.   With drugs supplied by DEFENDANT GOLDEN, DEFENDANT BJORKMAN surreptitiously drugged JANE DOE 3 for the purpose of rendering her incapacitated so he could engage her in a sex act and cause her to engage in a sex act without her consent.

203.   After the event, DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

### Count III
### Participating in a Venture in Violation of 18 U.S.C. §1595
### All Plaintiffs Against DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE

204.   Plaintiffs reallege paragraphs 1 to 203 as if fully set forth herein.

205.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN are two of DEFENDANT eXp REALTY's top recruiters, whereby DEFENDANT eXp REALTY,

DEFENDANT SANFORD AND DEFENDANT GOVE share in the common purpose of allowing DEFEDANT BJORKMAN AND DEFENDANT GOLDEN to recruit in any way necessary to secure and to maintain agents, and thus receive, a direct financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN's recruitment of new agents into all of their common downline.

206.   DEFENDANT GOLDEN receives a financial benefit from DEFENDANT BJORKMAN's downline of Recruited Agents.

207.   DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE knew or should have known that DEFENDANT GOLDEN and DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events.

208.   DEFENDANT GOLDEN knew that DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events

209.   After having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's illegal conduct, DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE continued to endorse, support and promote DEFENDANT GOLDEN's and DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN activities.

FIRST AMENDED COMPLAINT FOR DAMAGES

210.   After having actual knowledge of DEFENDANT BJORKMAN's illegal conduct, DEFENDANT GOLDEN continued to endorse, support and promote DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT GOLDEN activities.

**Count IV**
**Sexual Battery**
**Ms. Acevedo, Jane Doe 1, and Jane Doe 3 Against DEFENDANT BJORKMAN**

211.   Plaintiffs reallege paragraphs 1 to 210 as if fully set forth herein.

212.   Through his conduct, DEFENDANT BJORKMAN placed Ms. Acevedo, Jane Doe 1, and Jane Doe 3 in a state of perpetual fear of imminent, unwanted, physical, and sexual contact.

213.   Through conduct including, but not limited to, the conduct describing the sexual assault of Ms. Acevedo, Jane Doe 1 and Jane Doe 3, DEFENDANT BJORKMAN intentionally and unlawfully touched Ms. Acevedo, Jane Doe 1 and Jane Doe 3 without their consent.  This unwanted and unlawful, sexual physical touching caused Ms. Acevedo, Jane Doe 1, and Jane Doe 3 to suffer great anxiety about the possibility of further unwanted sexual touching and sexual assault.

214.   Ms. Acevedo, Jane Doe 1, and Jane Doe 3 did not consent to this contact.

215.   As a result of DEFENDANT BJORKMAN's conduct, Ms. Acevedo, Jane Doe 2, and Jane Doe 3 suffered legally compensable harm including pain and suffering, loss of enjoyment of life, mental anguish, injury to reputation, humiliation, emotional

49

distress damages, and costs of medical treatment necessary to address the psychological

damages caused by DEFENDANT BJORKMAN's conduct.

<u>**Count V**</u>
**Civil Battery**
**All Plaintiffs Against DEFENDANT BJORKMAN and**
**Plaintiffs Jane Doe 2 and 3 Against GOLDEN**

216.   Plaintiffs reallege paragraphs 1 to 215 as if fully set forth herein.

217.   Through his conduct, DEFENDANT BJORKMAN intentionally placed a drug

in the Plaintiffs' drink without their knowledge or consent with the intent to harm/touch

and did harm/touch Plaintiffs.

218.   Through his conduct, DEFENDANT GOLDEN intentionally placed a drug in

Jane Doe 2 and Jane Doe 3's drinks without their knowledge or consent with the intent to

harm/touch and caused Plaintiffs to be touched.

219.   By placing a drug in the Plaintiffs' drinks, DEFENDANT BJORKMAN, and

by placing drugs in Jane Doe 2 and Jane Doe 3's drinks, DEFENDANT GOLDEN, caused

the Plaintiffs to unknowingly ingest the drug and be touched for which they did not

consent.

220.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN all caused

Plaintiffs to suffer harm and offense through the unwanted touching.

FIRST AMENDED COMPLAINT FOR DAMAGES

221.   DEFENDANT BJORKMAN AND DEFENDANT GOLDEN'S  actions in causing Plaintiffs to consume a drug without their knowledge or consent and be touched which would be offensive to a reasonable person.

222.   As a direct and proximate result of DEFENDANT BJORKMAN's actions, Plaintiffs have suffered losses including, but not limited to, past and future medical expenses, loss of income, pain and suffering, mental anguish, embarrassment, humiliation, and emotional distress.

223.   In causing the Plaintiffs to consume a drug without their knowledge or consent, DEFENDANT BJORKMAN acted intentionally, for an evil motive, and with reckless indifference Plaintiffs' right to be free from harmful or offensive contact. Accordingly, Plaintiffs are entitled to punitive damages in addition to economic and non-economic relief.

**<u>Count VI</u>**
**Intentional Infliction of Emotional Distress**
**All Plaintiffs Against DEFENDANT BJORKMAN and DEFENDANT GOLDEN**

224.   Plaintiffs reallege paragraphs 1 to 223 as if fully set forth herein.

225.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN's conduct toward the Plaintiffs was extreme and outrageous.

226.   DEFENDANT BJORKMAN and DEFENDANT GOLDEN intentionally caused Plaintiffs emotional distress by subjecting them to forceful sexual touching and assault, or other actions taken with reckless disregard of Plaintiffs' emotional well-being.

227.   As a result of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

228.   DEFENDANTS' conduct was a substantial factor in causing Plaintiffs severe emotional distress.

**Count VII**

**Intentional Infliction of Emotional Distress**
**All Plaintiffs Against DEFENDANT GOVE**

229.      Plaintiffs reallege paragraphs 1 to 228 as if fully set forth herein.

230.   DEFENDANT GOVE's conduct toward the Plaintiffs was extreme and outrageous.

231.   DEFENDANT GOVE intentionally caused Plaintiffs emotional distress by publicly socializing with DEFENDANT BJORKMAN and DEFENDANT GOLDEN after he was personally told by multiple plaintiffs that DEFENDANT BJORKMAN AND DEFENDANT GOLDEN drugged and assaulted them.

232.   DEFENDANT GOVE intentionally caused Plaintiffs emotional distress by continuing to support publicly DEFENDANT BJORKMAN AND DEFENDANT GOLDEN after he was personally told by multiple plaintiffs that DEFENDANT BJORKMAN AND DEFENDANT GOLDEN drugged and assaulted them.

233. Upon information and belief, DEFENDANT GOVE intentionally caused Plaintiffs' emotional distress by soliciting false statements to be given to the Las Vegas Police Investigator in support of DEFENDANT GOLDEN AND DEFENDANT BJORKMAN to keep his Revenue Share and agent count in tact in reckless disregard of Plaintiffs' emotional well-being.

234. As a result of DEFENDANT GOVE's conduct, the Plaintiffs suffered legally compensable emotional distress damages and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

235. DEFENDANT's conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

**Count VIII**

**Intentional Infliction of Emotional Distress**
**All Plaintiffs Against DEFENDANT SANFORD**

236. Plaintiffs reallege paragraphs 1 to 235 as if fully set forth herein.

237. DEFENDANT SANFORD's conduct toward the Plaintiffs was extreme and outrageous.

238. DEFENDANT SANFORD intentionally caused Plaintiffs emotional distress by discounting, dismissing and disregarding Plaintiffs' repeated reports of assault be

DEFENDANT BJORKMAN AND DEFENDANT GOLDEN, two of his top recruiting agents.

239.   DEFENDANT SANFORD not only ignored Plaintiffs' pleas for help, but he also made the executive decision as the Chairman of the Board and CEO of eXp World Holdings to allow both DEFENDANT BJORKMAN AND DEFENDANT GOLDEN to continue to receive Revenue Share, have stock vested and participate in eXp events while simultaneously disallowing the Plaintiffs to separate from DEFENDANT GOLDEN AND DEFENDANT's upline, essentially forcing them to pay their assailants.

240.   As a result of DEFENDANT SANFORD's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT SANFORD.

241.   DEFENDANT's conduct was a substantial factor in causing Plaintiffs severe emotional distress.

**Count IX**

**Negligence**

**All Plaintiffs Against All Defendants**

242.   Plaintiffs reallege paragraphs 1 to 241 as if fully set forth herein.

243.   DEFENDANTS, and each of them, owed a Duty to Plaintiffs.

244.   DEFENDANTS fell below the standard of care required for the reasonable person and resulted in the negligent breach of duties owed to Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES

245.   As a result of DEFENDANTS' breach of their duties, Plaintiffs suffered legally compensable emotional distress damages, and they are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANTS.

246.   The DEFENDANTS' negligence was a substantial factor in causing Plaintiffs' serious emotional distress.

### <u>Count X</u>
### NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### All Plaintiffs Against DEFENDANT eXp REALTY and DEFENDANT SANFORD

247.   Plaintiffs reallege paragraphs 1 to 246 as if set forth fully herein.

248.   DEFENDANT eXp REALTY and DEFENDANT SANFORD retained DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

249.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN were unfit to perform the work for which they were retained.

250.   DEFENDANT eXp REALTY and DEFENDANT SANFORD knew or should have known that DEFENDANT GOLDEN and DEFENDANT BJORKMAN were and/or became unfit and that this unfitness created a particular risk to others. These DEFENDANTS knew of each other well before their employment of DEFENDANT eXp REALTY, as such they knew of should have known about DEFENDANT BJORKMAN and DEFENDANT GOLDEN's behavior prior to hiring. (DEFENDANT SANFORD, DEFENDANT GOVE and DEFENDANT GOLDEN all knew each other from Keller

Williams and DEFENDANT GOLDEN knew DEFENDANT BJORKMAN from the Real

Estate Owned market).

251.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN's unfitness

harmed PLAINTIFFS; and

252.   DEFENDANT eXp REALTY and DEFENDANT SANFORD's negligence in

hiring/supervising/and retaining DEFENDANT GOLDEN and DEFENDANT

BJORKMAN was a substantial factor in causing PLAINTIFFS' harm.

**Count XI**
**Loss of Consortium**
**John Doe 1 against Defendants**

253.   JOHN DOE 1 incorporates by reference the allegations in paragraphs 1-252 as

if fully set forth herein.

254.   As a direct and proximate result of DEFENDANTS' tortious actions and

JANE DOE 3's resulting injuries described above, JOHN DOE 1 has suffered damages

arising from the loss of JANE DOE 3's services, society, companionship, and sexual

relations.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.       For past, present, and future general damages in an amount to be determined at

trial;

FIRST AMENDED COMPLAINT FOR DAMAGES

2.     For past, present, and future special damages, including but not limited to past, present and future lost earnings, economic damages, and others in an amount to be determined at trial;

3.     For interest as allowed by law;

4.     For civil penalties as provided by law;

5.     For any applicable costs of said suit;

6.     For any appropriate punitive or exemplary damages; and

7.     For such other and further relief as the Court may deem proper. The amount of damages sought in this Complaint exceeds the jurisdictional limits of this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Plaintiffs demand a trial by a jury on all of the triable issues of this Complaint.

Dated:   March 23, 2023                    Respectfully submitted,

by: **LENZE LAWYERS, PLC**

/s/ Jennifer A. Lenze
Jennifer A. Lenze, Esq.

**COHEN HIRSCH, LP**
Brooke F. Cohen, Esq.
Texas Bar No. 24007019
brooke@cohenhirsch.com
Andrea S. Hirsch, Esq.
GA Bar No. 666557
andrea@cohenhirsch.com
*Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT FOR DAMAGES