**HANGER, STEINBERG, SHAPIRO & ASH**
MARC S. SHAPIRO, SBN 155791
CHRISTOPHER G. KERR, SBN 262667
Email: mss@hssalaw.com; ck@hssalaw.com
21031 Ventura Blvd. Suite 800
Woodland Hills, CA 91364
Telephone: 818-226-1222
Facsimile: 818-226-1215

**CHESNOFF & SCHONFELD**
RICHARD A. SCHONFELD, SBN 202182
Email: rschonfeld@cslawoffice.net
520 S. 4th Street
Las Vegas, NV 89101
Telephone: 702-384-5563
Facsimile: 702-598-1425
Attorneys for Defendant
Michael Bjorkman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIOLA ACEVEDO, JANE DOE 1, JANE DOE 2, JANE DOE 3, and JOHN DOE 1,<br><br>Plaintiffs,<br><br>v.<br><br>EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT GOVE; And DOES 1-10<br><br>Defendants. | Case No. 2:23-cv-01304-AB-AGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L. BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:  July 28, 2023<br>Time:  10:00 a.m.<br>Ctrm.: 7B<br><br>Judge: Andre Birotte, Jr.<br><br>Trial Date:    None Set |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

Defendant Michael L. Bjorkman hereby submits his points and authorities in support of his Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim on which relief can be granted, for lack of subject matter jurisdiction, and for insufficient service of

i

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

2   process and violation of FRCP Rule 4(m).

3          Dated this 27th day of June, 2023.

4
                                          Respectfully Submitted:
5
                                          HANGER, STEINBERG, SHAPIRO & ASH
6

7          ___/s/ Marc S. Shapiro
                                          MARC S. SHAPIRO
8                                         21031 Ventura Blvd. Suite 800
                                          Woodland Hills, CA 91364
9
                                          CHESNOFF & SCHONFELD
10         _____/s/ Richard A. Schonfeld
                                          RICHARD A. SCHONFELD
11                                        520 S. 4th Street
                                          Las Vegas, Nevada 89101
12                                        Attorneys for Michael Bjorkman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

2

3

**TABLE OF CONTENTS**

4   TABLE OF AUTHORITIES ........................................................................... iv

5   I.   RULE 12(b)(6) MANDATES SUMMARY DISMISSAL OF THE PLAINTIFFS' CLAIM OF A VIOLATION OF

6       18 U.S.C. § 1591 (COUNT 1) ............................................................... 1

7       A.   Legal Standard for Motion to Dismiss ................................................ 1

8       B.   The TVPA Requires The Existence Of A "Commercial Sex Act," Among Other Elements,

9            To Survive Scrutiny Under Rule 12(b)(6) ........................................... 3

10      C.   Argument............................................................................ 5

11           1.   Because None Of The Principal Plaintiffs Allege A "Sex Act" That Is "Commercial,"

12                Their Claims Under Count 1 Fail As A Matter Of Law ............................ 5

13           2.   Even If The "Commercial" Element Was Established, Additional Deficiencies Mandate

14                Dismissal of Count 1 .......................................................... 9

15                a.   Failure to Allege Any "Sex Act" ......................................... 9

16                b.   Failure to Allege "Enticement" Or Recruitment" .......................... 12

17  II.  THE DISMISSAL OF THE PLAINTIFFS' ONLY FEDERAL COUNT AGAINST MR. BJORKMAN (COUNT 1)

18      MANDATES THE DISMISSAL OF THE REMAINING STATE LAW CLAIMS (COUNTS 4, 5, 6 AND 9),

19      DUE TO LACK OF SUBJECT MATTER JURISDICTION, UNDER RULE 12(b)(1) .................... 14

20  III. EVEN IF PLAINTIFFS' STATE LAW CLAIMS ARE NOT DISMISSED FOR LACK OF SUBJECT MATTER

21      JURISDICTION, THEY ARE TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS

22      (COUNTS 4, 5, 6 AND 9) .......................................................... 16

23  IV.  THE LOSS OF CONSORTIUM CLAIM OF JOHN DOE FAILS .................................. 18

24  V.   LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE ...... 18

VI.  FINALLY, PLAINTIFFS' COMPLAINT MUST BE DISMISSED WITHOUT PREJUDICE DUE TO INSUFFICIENT SERVICE OF PROCESS UNDER RULE 12(b)(5) AND RULE 4(m) .................. 19

## TABLE OF AUTHORITIES

**Cases**

*Ardolf v. Weber,* 332 F.R.D. 467, 471 – 474 (S.D.N.Y 2019) ........................ 5, 8, 9, 13, 14

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ......................................................... 1, 2, 5, 12

*ATSI Comm., Inc. v. Shaar Fund, Ltd.,* 493 F. 3d 87, 98 (2d Circ. 2007) ......................... 2

*Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570 (2007) .......................................... 1, 2, 12

*Boyce v. Weber,* 2021 WL 2821154 (S.D.N.Y. July 7, 2021) ......................................... 10

*Brooks v. Clark Cnty.,* 828 F. 3d 910, 916 (9th Cir. 2016) .................................................. 1

*Cangemi v. United States,* 13 F. 4th 115, 134 (2d Cir. 2021) ........................................... 15

*Canosa v. Ziff,* 18-CV-4115 (PAE), 2019 WL 4989865 (S.D.N.Y Jan. 28, 2019) ..... 4, 6, 8

*Chinatown Neighborhood Ass'n v. Harris,* 794 F.3d 1136, 1144 (9th Cir. 2015) ............ 19

*Contreras v. Wray,* No. CV 21-9797-JVS (JPR), 2022 WL 3904004 C.D.Cal. June 15, 2022) ....................................................................................................................................... 20

*Corradino v. Liquidnet Holdings Inc.,* No. 19 CIV 10434 (LGS) 2021 WL 2853362 (S.D.N.Y. July 8, 2021) ................................................................................... 1, 2, 4, 8, 9

*David v. Weinstein Co. LLC,* 431 F. Supp 3d 290 (S.D.N.Y. 2019) .................................. 3

*Eckhart v. Fox News Network, LLC,* No. 20-CV-5593 (RA), 2021 WL 4124616 (S.D.N.Y. Sept 9, 2021) ................................................................................................... 3, 4, 10

*Fischer v. Rosenthal & CO.,* 481 F. Supp. 53, 57 (N.D. Tex. 1979) .............................. 15

*Foley v. Wells Fargo Bank, NA.,* 772 F.3d 63, 72 (1st Cir. 2014) ...................................... 1

*Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 7979, 803 (2005) ............................ 16, 17

*Geiss v. Weinstein Holdings LLC,* 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) ......... 3, 5, 8

*Gelin v. Shuman,* 35 F. 4th 212, 219 (4th Cir. 2022) ....................................................... 19

*Huimin Song v. County of Santa Clara,* 2013 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 25, 2013) ................................................................................................................................. 16

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L. BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110, 1112 (1988)............................................. 17

*LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284-285 (2012).................................... 18

*Lockhart v. Logistics LLC*, No. CV 21-8169 FMO (KESx), 2022 WL 504597 (C. D. Cal. Feb. 18, 2022) ........................................................................................................................ 20

*Lozano v. Alvarez,* 697 F.3d 41, 56 (2d Circ. 2012) .......................................................... 12

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971) .............. 16

*New England Computer Syst., Inc. v Bartermax, Inc.,* No. CIV. A. 88-1930-MA, 1989 WL 7150 ....................................................................................................................................... 15

*Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) ...............3, 4, 8-10, 12, 13

*Norgart v. Upjohn Co.,* 21 Cal. 4th 383,397-398 (1999) ............................................. 16,17

*Rutman Wine Co.v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987) ................. 18

*Smilecare Dental Grp. V. Delta Dental Plan of California,* 858 F. Supp. 1035, 1037 (C.D. Cal. 1994) .......................................................................................................................... 1, 2

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017)................................. 1, 7, 12

*Stone v. United States,* 373 F.3d 1129, 1132 (11th Cir. 2004) ...................................... 4, 18

*U.S. v. Gagliardi,* 506 F.3d 140, 147 (2d Cir. 2007) ........................................................ 13

*United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966) .................................... 15

*United States v. Hornbuckle,* 784 F.3d 549, 553 (9th Cir. 2015) ..................................... 10

*United States v. Taylor,* 44 F.4th 779, 789 (8th Cir 2022), *cert. denied*, 143 S. Ct. 843 (2023) ..................................................................................................................................... 9

*Unruh-Haxton v. Regents of University of California,* 162 Cal. App.4th 343, 357 (2008) ............................................................................................................................................... 16

Wolfe v. Strankman, 392 F. 3d 358,362 (9th Cir. 2004)................................................... 14

**Statutes**

*18 U.S.C. § 1591* ....................................................................................3, 5, 9, 10, 12

*18 U.S.C. § 2246(2)*................................................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L. BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## RULE 12(b)(6) MANDATES SUMMARY DISMISSAL OF THE PLAINTIFFS' CLAIM OF A VIOLATION OF 18 U.S.C. § 1591 (COUNT 1)

### A.   Legal Standard For Motion To Dismiss

To assess the sufficiency of a Complaint when the defense seeks to dismiss it under Rule 12(b)(6), the Court "accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party." *Corradino v. Liquidnet Holdings Inc*., No. 19 CIV. 10434 (LGS), 2021 WL 2853362, at *2 (S.D.N.Y. July 8, 2021) (citing *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2018)). Critically, however, the reviewing Court "gives 'no effect to legal conclusions couched as factual allegations.'" *Id.* (quoting *Stadnick v. Vivint Solar, Inc*., 861 F.3d 31, 35 (2d Cir. 2017). In this regard, "[t]o withstand a motion to dismiss, a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Court reviewing Rule 12(b)(6) motions should not act simply as turnstiles, uncritically "waving through" baseless claims—and, in so doing, forcing litigants to engage, at the very least, in costly, time-consuming discovery. *See, e.g*., *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("Thus, a primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario . . . , the plaintiff could never win."); *Brooks v. Clark Cnty*., 828 F.3d 910, 916 (9th Cir. 2016) ("Absolute immunity . . . all but guarantees swift dismissals under Rule 12(b)(6), thereby sparing its beneficiaries the many different costs (pecuniary and otherwise) that litigation entails."); *Smilecare Dental Grp. v. Delta Dental Plan of California*, 858 F. Supp.

1035, 1037 (C.D. Cal. 1994), *aff'd sub nom. SmileCare Dental Grp. v. Delta Dental Plan of California, Inc*., 88 F.3d 780 (9th Cir. 1996) (noting "prohibitive . . . costs of discovery" in fact-intensive cases such as antitrust cases).

Finally, to ensure that baseless claims are promptly dismissed, the Supreme Court emphasizes that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "It is not enough for a plaintiff to allege facts that are consistent with liability; [rather,] the complaint must 'nudge[ ]' claims 'across the line from conceivable to plausible.'" *Corradino*, 2021 WL 2853362, at *2 (quoting *Twombly*, 550 U.S. at 570). Stated slightly differently, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

It is with these principles in mind that the Court's considers whether Count 1 of the present Complaint—which proscribes interstate sex trafficking, but which has been expanded to cover extreme forms of "casting couch" sex abuse, as seen in the "Harvey Weinstein cases"—can surmount Rule 12(b)(6)'s evidentiary hurdles. *See* ECF No. 30 ("Am. Comp.") at ¶¶ 85-88, 179-191 (Count 1 charges defendant Bjorkman with violation of 18 U.S.C. §§ 1591, 1595, that is, the Trafficking Victim's Protection Act or "TVPA").[1]

*///*

---

[1] In addition to Count 1, the Amended Complaint charges Mr. Bjorkman in five state law counts: counts 4 (sexual battery), 5 (civil battery), 6 (intentional infliction of emotional distress), 9 (negligence), and 11 (loss of consortium). While the present motion seeks dismissal only of Count 1 (and, any additional remedies flowing from the consequent loss of federal jurisdiction), Mr. Bjorkman does not waive his right to challenge—at a later date, and in the appropriate forum—any of these five state law counts, either.

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**B.** **The TVPA Requires The Existence Of A "Commercial Sex Act," Among Other Elements, To Survive Scrutiny Under Rule 12(b)(6)**

Section 1591 of the TVPA provides, in relevant part:

Whoever knowingly—

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) knowing . . . that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, . . .

shall be punished . . . .

18 U.S.C. § 1591.

Section 1595, in turn, "establishes a private right of action for victims of such conduct to bring civil suits against their traffickers." *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *7 (S.D.N.Y. Sept. 9, 2021), *on reconsideration in part* at 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022).

To "reflect modern reality," *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018), courts have applied the TVPA to factual scenarios that extend beyond the scope initially imagined by Congress, whose goals were: 1) to criminally prosecute interstate sex trafficking, and 2) to provide federal civil remedies to those victims who have suffered from such sexual trafficking. Thus, explaining this expanded application into "Weinstein-type" scenarios, one court has explained:

Most TVPA cases present claims of archetypal sex trafficking—that is, forced prostitution or sexual slavery . . . . But in light of the plain text of the statute, numerous courts . . . have also applied the TVPA to cases where a victim claims to have been forced or defrauded into sexual activity with the promise of career advancement. *See David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290 (S.D.N.Y. 2019); *Geiss v. Weinstein Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019);

3

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L. BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018); *Canosa v. Ziff*, 18-CV-4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019).

*Eckhart*, 2021 WL 4124616, at *7 (referring to the latter-cited cases as "the Weinstein cases"); *see also Noble*, 335 F. Supp. 3d at 515 (Section 1595 "requires broad interpretation" to accomplish its "remedial" purpose), 521 n.8 (S.D.N.Y. 2018) (in one of the "Weinstein cases," "[t]he concept of the 'casting couch,' in which aspiring actors and actresses are promised valuable professional opportunities in exchange for sexual favors, has been in the American lexicon for nearly a century.");

To state a claim under Section 1591 (and, its civil counterpart, Section 1595), the plaintiff must "adequately plead" that the defendant:

> knowingly and in interstate or foreign commerce: (1) recruited, *enticed*, harbored, transported, provided, obtained, or maintained by any means a person; (2) "*knowing*, or in reckless disregard of the fact, that *means of force*, threats of force, fraud . . . or any combination of such means *will be used*"; (3) "to *cause* the person to *engage in a commercial sex act*."

*Noble*, 335 F. Supp. 3d at 515 (quoting Section 1591) (emphases added); *see Corradino*, 2021 WL 2853362, at *3 (similar formulation).

The four principal plaintiffs[2] essentially allege that Mr. Bjorkman—along with EXP Realty, LLC, EXP World Holdings, Inc. (the "corporate entities"), and individual defendants—enticed or recruited them into attending various corporate "networking events;" at these events (the allegations

---

[2] As used in this Motion, "principal plaintiffs" refers to Ms. Acevedo (*see* Am. Comp. at ¶¶89-106), Jane Doe 1 (*see* Am. Comp. at ¶¶107-130), Jane Doe 2 (*see* Am. Comp. at ¶¶131-146), and Jane Doe 3 (*see* Am. Comp. at ¶¶147-159), each of whom pleads a substantive cause of action against Mr. Bjorkman in Count 1 (charging offenses under Sections 1591 and 1595). The fifth plaintiff, identified as John Doe 1, alleges only that he is the husband of Jane Doe 3 and has suffered a "loss of consortium" as a result of his wife's alleged injury. *See* Am. Comp. at ¶162. Because John Doe 1's claim under Count 1 is wholly derivative of Jane Doe 3's claim under that same count, dismissal of the latter's claim compels dismissal of the husband's consortium claim. *See, e.g.*, *Stone v. United States*, 373 F.3d 1129, 1132 (11th Cir. 2004) ("Because the United States could not be found negligent as to Tiffany Stone, the district court did not err by holding that her parents' derivative loss of consortium claims likewise failed as a matter of law.").

continue) Mr. Bjorkman supposedly 1) drugged them into unconsciousness (usually, by allegedly spiking their alcoholic drinks with GHB, the "date rape drug"); 2) sexually assaulted them, and then 3) denied everything. The question under Rule 12(b)(6), then, is whether plaintiffs' the First Amended Complaint ("Am. Comp.") sets forth sufficient *facts*—as opposed to "[t]hreadbare recitals . . . , supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678—necessary to satisfy all the statutory elements set forth in the TVPA and Count 1.

For at least two reasons, the Amended Complaint falls far short of making this showing. First—because *none* of the four plaintiffs have credibly pled a fact-based "*commercial* sex act" as to Count 1—Rule 12(b)(6) compels immediate dismissal of that Count as to all plaintiffs. *See infra* at 6-9 (discussing failure to credibly allege that the "sex acts" at issue were "commercial"). And second—in the event this Court determines that further inquiry is necessary—certain of the four principal plaintiffs have failed to credibly make a fact-based showing of: 1) a "sex act;" or 2) "enticement." *See infra* at 10-19 (discussing additional deficits beyond failure to demonstrate the "commercial" element). For either of these reasons, therefore, this Court should grant the instant motion and dismiss Count 1 as to Mr. Bjorkman.

## C.    **Argument**

1.    *Because None Of The Principal Plaintiffs Allege A "Sex Act" That Is "Commercial," Their Claims Under Count 1 Fail As A Matter Of Law*

TVPA provides that a "commercial sex act" is "any sex act, on account of which *anything of value* is given or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). To establish something of "value," the TVPA defines "commercial" to include "enticement of victims by means of *fraudulent promises of career advancement*, for the purposes of engaging them in consensual or . . . non-consensual *sexual activity*." *Geiss*, 383 F. Supp. 3d at 168 (emphasis added) (declining to dismiss TVPA claims where, unlike Mr. Bjorkman in the present case, the complaint alleged that

Weinstein [1] promised plaintiffs career advancement and, [2] during private meetings, sexually assaulted them); *accord Ardolf v. Weber*, 332 F.R.D. 467, 471-73 (S.D.N.Y. 2019) (declining to dismiss TVPA claims against renown photographer Bruce Weber where the complaint alleged that Weber enticed [1] plaintiffs with the prospect of modeling career advancement, [2] fraudulently convinced them to be alone with him for a "breathing exercise" and [3] sexually molested them during photoshoots); *Canosa*, 2019 WL 498865, at * 2, 23 (declining to dismiss TVPA claims against Harvey Weinstein where the complaint alleged that Weinstein [1] met with plaintiff "under the guise of working together on productions," and "[2] "t[ook] advantage of those meetings and his power as a well-known producer to sexually assault and intimidate her"). These cases thus show that the "commercial" element can be established where it is credibly alleged that the defendant made a fraudulent promise of career advancement in exchange for (*i.e.*, as *quid pro quo* for) the aspiring plaintiff's provision of some sort of "sexual activity."

No such *quid pro quo* exists here. Despite its inflated length, the Amended Complaint alleges no facts evidencing some sort of *quid pro quo* (that is, a bargained-for *exchange*) between Mr. Bjorkman and *any* of the plaintiffs. To the contrary, all Mr. Bjorkman supposedly did—based on the facts alleged in the Amended Complaint—was invite the plaintiffs to attend corporate outings, and to remind them of what they (as real estate agents) surely knew already: that their attendance at such events is a good way to "network" and, hopefully, build up their client bases and generate greater revenue. Nowhere in any of the allegations, however, are any *facts* establishing (or, plausibly suggesting) that Mr. Bjorkman promised any plaintiff a career benefit *in exchange for* their attendance at the event and, subsequently, their alleged provision of sexual favors at the event.

Plaintiffs try to shore up this fatal deficit by flatly alleging that Mr. Bjorkman drugged and assaulted the plaintiffs at those corporate outings. This effort fails, however, for at least two reasons.

First, as will be discussed *infra* at 10-12, the plaintiffs set forth no *facts* demonstrating that Mr. Bjorkman perpetrated a "sex act" at all: rather, for example, Jane Doe 3 simply asserts that, after meeting with Mr. Bjorkman and going for a walk with him, she: 1) woke up nude in her hotel room, but somehow 2) "does recall being sexually assaulted by [Mr. Bjorkman] that evening," in some unexplained, undescribed manner. Such fact-free recitations are, in essence, legal conclusions—conclusions that are entitled to no judicial deference and that fall short of Rule 12(b)(6). *Compare, e.g.*, *Stadnick*, 861 F.3d at 35 (reviewing Court gives "no effect to legal conclusions couched as factual allegations").

Second, plaintiffs' collective allegations do *nothing* to establish that the alleged assaults (that is, those alleged "sex acts") were "*commercial*"—that is, the result of any *quid pro quo* or bargained-for exchange.[3] Thus—and in sharp contrast to the allegations in the "Weinstein cases"—the present plaintiffs allege nothing commercial. None of these plaintiffs remotely suggests—as an allegation of fact—any enticement along the lines of: "If you sleep with me, then I will boost your

_____

[3] The absence of any *quid pro quo* is clear from the face of the Amended Complaint. *See, e.g*., Am. Comp. at ¶¶94 (Acevedo is advised only that "it would be good for her career" to attend), 99-100 (Acevedo alleges that, with nothing "of value" having been exchanged, Bjorkman drugs her; further alleges that, after she wakes up naked, he sexually assaults her), 112 (Jane Doe 1 alleges merely that she "attended a real estate networking event" in California in 2019), 113-114 (alleging that she had two drinks in total), 115-117 (alleging that, upon going up to a "get-together" in one of the hosts' hotel rooms, Mr. Bjorkman "handed her a drink;" Jane 1 thereafter alleges that she "blacked out" and woke up the next morning "naked and alone in her hotel room"), 124 (Jane Doe 1 alleges that Mr. Bjorkman subsequently admits "that they did have sex at the last event"), 131 (Jane Doe 2 alleges simply that she was "invited to attend an EXP Realty recruiting event" in Las Vegas), 135-137 (Jane Doe 2 alleges she attended a "get-together" inside of Mr. Bjorkman's and another defendant's hotel suite, where had one drink), 139-141 (Jane Doe 2 went to dinner, where she had only a "limited memory for the remainder of the evening," and woke up the next morning "nude in her own bed"), 144 ("several people," who are unnamed, allegedly tell Jane Doe 2 that "she was drugged/rendered incapacitated" in some unnamed manner by Mr. Bjorkman), 148 (Jane Doe 3 alleges that it was "marketed to her" that attending a recruiting event in Las Vegas "would be good for her real estate career"), 150 (alleging only that she "went to" Mr. Bjorkman and another defendant's suite for a "get-together," and that she and Mr. Bjorkman "went for a walk"), 151 (alleges that she went back to Mr. Bjorkman's suite, where her memory became "spotty and limited"), 152 (alleging no further facts, Jane Doe 3 simply concludes that she "does recall being sexually assaulted by [Mr. Bjorkman] that evening").

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L. BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

career at EXP Realty," or: "I'll get you a meeting with the top gun at EXP Realty, but you need to come to my hotel room later tonight to talk it over with me alone."

To the contrary—far from alleging that a "thing of value" was ever bargained for—the present allegations, at most, outline common law actions sounding in state law battery, *not* federal actions under the TVPA. Nothing, in other words, resembles the "commercial" allegations discussed above, where—*in exchange for* movie mogul's Weinstein's specific promises of career advancement (*e.g.*, a role in an upcoming movie, a break in the world of modeling, and the like)—Weinstein's victims were unlawfully enticed into meeting with him in private settings. *Compare, e.g., supra* at 6-7 (noting differences between the instant allegations and the "commercial allegations" in *Geiss*, *Ardolf*, and *Canosa*); *compare also Noble*, 335 F. Supp. 3d at 521 (in contrast to this case, *Noble* finds that "[e]ven if the prospect of a film role, of a modeling meeting, and of a continued professional relationship with [Weinstein's Company] were not 'things of value' sufficient to satisfy commercial aspect of the sex act definition, Noble's reasonable expectation of receiving those things in the future, based on *Harvey's repeated representations that she would*, is sufficient") (emphasis added).

This same result was reached in *Corradino*. There, the facts—rightly dismissed under Rule 12(b)(6)—were *still* stronger than conclusory claims scraped together here, against Mr. Bjorkman:

> Setting aside whether the sexual harassment Plaintiff experienced amounts to a "sex act," there is no indication that such acts were commercial, meaning in exchange for something of value. The prospect of career advancement can render a sex act commercial in nature . . . . While the Complaint alleges that Merrin and other Liquidnet executives propositioned Plaintiff for sex on several occasions, *it does not allege that they ever proposed any sort of quid pro quo, like sex for career advancement*. *See Ardolf*, 332 F.R.D. at 478 (treating the prospect of career advancement as a thing of value). In fact, the Complaint alleges that despite Plaintiff's repeated refusals to engage in sex . . ., she was promoted . . . . Plaintiff points to allegations that the Head of EMEA told her she should date Merrin to advance her career and that "some [women] would not care and just be with him to get ahead because he has a lot of money."

> *However, the Complaint never links these statements back to Merrin or provides any indication that Merrin promised Plaintiff career advancement in exchange for a relationship and/or sex.*

*Corradino*, 2021 WL 2853362, at *3 (emphases added). The *Corradino* plaintiff's failure to allege a "sex act" that was "commercial" thus mandated summary dismissal of the TVPA claims against defendant Merrin, as well as his (and the plaintiff's) corporate employer. Accordingly, because the same principles apply here, plaintiffs' failure to plead a "commercial sex act" compels dismissal.[4]

    2.    *Even If The "Commercial" Element Was Established, Additional Deficiencies Mandate Dismissal of Count 1.*

    a.    **Failure to Allege Any "Sex Act"**

While all four plaintiffs fail to allege that the "sex act" at issue was "commercial," two of them—that is Jane Doe 2 and Jane Doe 3—fail to allege any "sex act" *at all*.

As noted, a "commercial sex act" under Section 1591(e)(3) embraces "*any* sex act . . . ." *Noble*, 335 F. Supp. 3d at 520 (emphasis added). And, given the statute's remedial intent—coupled with Congress's use of the word "any"—the courts broadly interpret the term, "sex act." *See id.* at 522 ("Congress's decision to use the modifier 'any' within the phrase 'any sex act' in Section 1591(e)(3) suggests an intent to expand 'sex act' beyond a limited set of activities that involve contact between, or penetration by, two sets of genitalia."); *see also United States v. Taylor*, 44 F.4th 779, 789 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 843 (2023) (court "decline[s]" to narrowly "restrict 'sex act' as used in 18 U.S.C. § 1591 . . . by incorporating a definition set forth in 18 U.S.C. § 2246(2), which expressly limits its application to . . . offenses" that require contact or touching).

---

[4] As in this case, *Corradino* found additional evidentiary deficits mandating dismissal on alternate bases. *See id.* at *4 ("Even if the Complaint had pleaded a commercial sex act, it does not allege that 'force, threats of force, fraud or coercion' were used to cause Plaintiff to engage in such an act. 'The TVPA requires Plaintiffs to plausibly allege that Defendant enticed them knowing that he would use fraud or force to cause a commercial sex act to take place.'") (quoting *Ardolf*, 332 F.R.D. at 475)).

9

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

But it is one thing to interpret a remedial statute broadly; it is quite another (and, quite wrong) to interpret it irrationally, or in a manner that strains credulity. Thus, a federally actionable "sex act" under the TVPA—while not necessarily requiring genital contact or penetration—still requires *some degree* of "sexual gratification" or attempted sexual gratification. *See, e.g.*, *Noble*, 335 F. Supp. 3d at 522–23 ("By forcibly 'rubbing [the plaintiff's] vagina," and forcing Noble to, among other things, "masturbate him' to ejaculation, Harvey's conduct meets the statutory definition of 'any sex act' from Section 1591(e)(3) . . . .") (noting that "[s]ex act is defined by Merriam Webster's Dictionary alternately as 'coitus,' and '*an act performed with another for sexual gratification*.'") (emphasis added); *Eckhart*, 2021 WL 4124616, at *3 (a "sex act" is sufficiently stated under Section 1591(e)(3) where the plaintiff alleges: "Later that day, [defendant] told [plaintiff] to meet him in the guest offices . . . . When she arrived, he pinned her to a wall, subjected her to forceful and unwanted kissing, and physically forced her to perform oral sex on him against her will."); *Boyce v. Weber*, 2021 WL 2821154, at *1 (S.D.N.Y. July 7, 2021) (alleges under TVPA that, "during a one-on-one photoshoot, Weber directed him to remove his shirt, pants, and underwear and then took [plaintiff's] hand and used it to rub [plaintiff's] genitals and then to touch Weber's own genitals through Weber's pants"); *cf. United States v. Hornbuckle*, 784 F.3d 549, 553 (9th Cir. 2015) ("[A] conviction for sex trafficking . . . under 18 U.S.C. § 1591 does not require that the victim actually commit a sex act.").

Neither Jane Doe 2 and Jane Doe 3 allege any such "sex acts."[5] Jane Doe 2 alleges that— while voluntarily attending a corporate recruiting event—she "poured herself one cup of vodka and

---

[5] Without waiving his right to later contest the sufficiency of Acevedo's or Jane Doe 1's claims under Count 1 (*e.g.*, by way of summary judgment or trial), Mr. Bjorkman does not dispute, for purposes of Rule 12(b)(6), that these two plaintiffs have alleged "sex acts" within the meaning of the TVPA. *See* Am. Comp. at ¶¶100 (Acevedo alleges that Mr. Bjorkman "exposed himself" and "attempted to engage her in sexually inappropriate sexual contact" in his hotel bathroom), 116-118 (Jane Doe 1 alleges blacking out after taking a drink from Mr. Bjorkman; further alleges that she

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

water, which she sipped" during a "get-together" in a hotel suite shared by Mr. Bjorkman and another defendant (Am. Comp. at ¶¶135-137); that she then ate dinner with her friends (evidently, not including Mr. Bjorkman) at a separate hotel (*id*. at ¶138); that she became ill and suffered from a "limited memory" at dinner (*id*. at ¶¶139-140); and that she woke up "nude" and "feeling groggy" in her hotel room "the next morning."[6] Nothing in these allegations, even if deemed true for the present purposes, alleges any sort of "sex act" committed *by* Mr.  Bjorkman *against* Jane Doe 2.

Jane Doe 3's attempts to manufacture (and, plausibly plead) a federally recognized "sex act" fare even worse. Jane Doe 3 alleges that—while attending an event she was told "would be good for her real estate career" (Am. Comp. at ¶148)—she 1) "went to" Mr. Bjorkman's suite for a "get-together," 2) "went for a walk" with him, 3) "gambled at the casino" (*id*. at ¶¶150), and, 4) "returned" Mr. Bjorkman's suite, where she developed a "spotty and limited" memory. *Id*. at ¶151. She does not allege that Mr. Bjorkman touched her in any manner, or handed her a drink, or demanded sex from her. Rather Jane Doe 3 simply adds, in conclusory fashion, the following statement: "Jane Doe 3 does recall being sexually assaulted by defendant Bjorkman that evening." *Id*. at ¶152. If any case law holds that any similar allegation is factually sufficient to demonstrate a defendant's commission of a "sex act" under the TVPA, Mr. Bjorkman has not found it.[7]

---

"saw blood from her vagina" the next morning), 124 (Jane Doe 1 alleges that Mr. Bjorkman "finally admitted that they did have sex at the last event").

[6] Seemingly aware that none of these allegations constitute a "sex act," Jane Doe 2, irrelevantly alleges that—the day before the alleged assault—Mr. Bjorkman 1) invited her to have a cigarette with him at the hotel pool, and 2) invited her up to his and the other defendant's suite, where the two men and another woman allegedly "pressured [her] to stay and have another drink," which she declined. Am. Comp. at ¶145. Jane Doe 2 does not—and cannot—explain how these irrelevant claims (intended merely to "dirty up" Mr. Bjorkman) have anything to do with the TVPA's requirement of a legally cognizable "sex act"—much less a "commercial" one.

[7] To the extent they try to allege facts (*e.g*., to paraphrase: "I had a drink in the defendant's suite," "My memory became spotty," "He invited me up to his hotel room," or "Other people told me that he did this to other women."), such allegations still fail to show that a "sex act" *—of any sort—*

---

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1    The bottom line is that—in an attempt to state a federal cause of action—Jane Doe 2 and

2    Jane Doe 3 have simply chronicled a series of "[t]hreadbare recitals . . . , supported by mere

3    conclusory statements." *Iqbal*, 556 U.S. at 678 (adding that such recitals "do not suffice"). As such,

4    they do not make a plausible showing of liability: rather, these are just the sort of fact-free efforts

5    the federal rules were designed to screen out. *See, e.g.*, *Twombly*, 550 U.S. at 570 (non-movant must

6    set forth "enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs

7    here have not nudged their claims across the line from conceivable to plausible, their complaint must

8    be dismissed."). For this additional reason, therefore, Jane Doe 2 and Jane Doe 3's claims under

9    Count 1 must be dismissed.

10

11        **b.    Failure to Allege "Enticement" Or Recruitment"**

12        Finally, none of the four plaintiffs allege that Mr. Bjorkman "enticed" or "recruited" them

13    (much less "coerced" or "obtained" them) into providing him with some sort of "sexual

14    gratification." *Noble*, 335 F. Supp. 3d at 522-23 (sex act "is defined . . . as 'coitus,' and 'an act

15    performed with another for sexual gratification.'"); *see also* 18 U.S.C. § 1591(a)(1) ("Whoever

16    knowingly, in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports,

17    provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . .").

18

19        As with the term "sex act," the TVPA does not define "entice" or "recruit" in § 1591(a).

20    Accordingly, the courts apply "ordinary or natural" meanings to these undefined terms:

21

22        Where a term is undefined in a statute, Courts will "normally construe it in
          accord with its ordinary or natural meaning." *Lozano v. Alvarez*, 697 F.3d 41,
23        56 (2d Cir. 2012) (citing *Smith v. United States*, 508 U.S. 223, 228 (1993))
          (defining the term "settled" according to its ordinary meaning); *see also U.S. v.*

24

_____

25    ever occurred. Moreover—to the extent they recite not facts but bare legal conclusions (e.g., "Jane
      Doe 3 does recall being sexually assaulted by defendant Bjorkman . . . ."), these are plainly
26    deficient, even at the Rule 12(b)(6) stage. *See, e.g., Stadnick*, 861 F.3d at 35 (affirming district
      court's dismissal under Rule 12(b)(6), after "accepting all factual allegations as true, but giving no
27    effect to legal conclusions couched as factual allegations") (emphasis added).

28
_____
12
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007) ("The words 'attempt,' 'persuade,' 'induce,' 'entice,' or 'coerce,' though not defined in the statute, are words of common usage that have plain and ordinary meanings.") (emphasis added) (citations omitted).

In this regard, the use of the term "entice" in the TVPA means that the perpetrator *attracts the victim by offering something that arouses hope or desire*. *See* MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/entice (last visited June 15, 2019) (defining "entice" as "to attract artfully or adroitly or by arousing hope or desire.") (emphasis added); *Noble*, 335 F. Supp. 3d at 517 (same). Similarly, the term "recruit" in the TVPA means that the perpetrator somehow secured the services of the victims. *See* Recruit, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam.webster.com/dictionary/recruit (last visited June 17, 2019) (defining "recruit" as "*to secure the services of*"); *Noble*, 335 F. Supp. 3d at 517, n.6 (same).

*Ardolf v. Weber*, 332 F.R.D. 467, 474 (S.D.N.Y. 2019) (emphases added).

These "ordinary" definitions contain nothing to support a claim of "enticement" or "recruitment." On its own terms, Mr. Bjorkman invited two people (Ms. Acevedo and Jane Doe 3, not the other Jane Does) to attend company recruiting events held in various hotels. In doing so, Mr. Bjorkman allegedly told Ms. Acevedo and Jane Doe 3 nothing more than that their attendance would be good for their careers, insofar as they provided opportunities to "network" and thus generate revenue. *See, e.g.*, Am Comp. at ¶¶ 94 (Ms. Acevedo is told only that "it would be good for her career" to attend), 148 (Jane Doe 3 is allegedly only told that it "would be good for her real estate career"); *but compare* Am Comp. at ¶¶ 112 (Jane Doe 1 not even told it will help her career; she alleges *only* that she "attended a real estate networking event . . . for the purpose of learning during the day and recruiting real estate agents to join [the company] by night"), 131-146 (Jane Doe 2 fails to allege that she was even told to attend the event; she *only* alleges (at ¶131) that she "was invited to attend").

None of the foregoing allegations comes close to establishing a plausible claim that Mr. Bjorkman "enticed" any of the plaintiffs (even Ms. Acevedo and Jane Doe 3, who at least tried to

advance relevant, albeit meritless, facts) into attending these company events. *Ardolf*, 332 F.R.D. 474 (emphasis added). Nor do such remarks constitute "recruitment" of "victims" of sex trafficking in any realistic sense: reminding one's colleagues that they should attend corporate functions does not "mean[] that [Mr. Bjorkman] somehow secured the [sexual] services of the[se imagined] victims." *Id*. Thus, in addition to failing to plausibly show that a "commercial sex act" occurred, 1) Ms. Acevedo and Jane Doe 3 have insufficiently alleged "enticement" and "recruitment," and 2) the other two plaintiffs have made no specific allegations (of "enticement" or "recruitment") *at all*. For this alternate reason, therefore, this Court should grant the instant motion and dismiss the TVPA claims in Count 1 of the Amended Complaint.

## II.

### THE DISMISSAL OF THE PLAINTIFFS' ONLY FEDERAL COUNT AGAINST MR. BJORKMAN (COUNT 1) MANDATES THE DISMISSAL OF THE REMAINING STATE LAW CLAIMS (COUNTS 4, 5, 6 AND 9), DUE TO LACK OF SUBJECT MATTER JURISDICTION, UNDER RULE 12(b)(1)

This Court's dismissal of Count 1 for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)) has the additional—and, jurisdictionally conclusive—effect of divesting this Court of subject matter jurisdiction over the remaining state claims against Mr. Bjorkman. *See* Fed. R. Civ. P. 12(b)(1) (defendant may file motion to dismiss based on "lack of subject matter jurisdiction"); *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (noting that "[i]n a facial attack [asserting lack of subject matter jurisdiction], the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction").

As shown above, the facts alleged in the instant Complaint fail to state a cognizable claim under Rule 12(b)(6) of a TVPA violation. Because dismissal of that count—*i.e.*, the *only* jurisdiction-vesting count in the complaint—eliminates the *only* basis for federal subject matter

jurisdiction in this case, the plaintiffs' remaining pendent state law counts against Mr. Bjorkman (alleged in Counts 4, 5, 6 and 9) must be dismissed, as well. *See, e.g.*, *New England Computer Sys., Inc. v. Bartermax, Inc.*, No. CIV. A. 88-1930-MA, 1989 WL 71450, at *7 (D. Mass. Jan. 5, 1989) (because the "plaintiffs' complaint fails to establish that the defendants engaged in a pattern of racketeering activity as required by RICO," and "[b]ecause the RICO claim is the only allegation asserting a basis for federal jurisdiction—all other counts being pendent—counts I through VI are also dismissed.") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)); *Fischer v. Rosenthal & Co.*, 481 F. Supp. 53, 57 (N.D. Tex. 1979) (court's dismissal of the solitary federal claim (brought under Rule 10b-5 and s 10(b) of the Securities Exchange Act) mandates further dismissal of state claims: "Plaintiff's pendent claims based upon the Texas Securities Act, the Texas Deceptive Trade Practices Act, and common law fraud must also be dismissed for lack of subject matter jurisdiction, there being no federal claims remaining and no diversity of citizenship between the parties.").

Under Rule 12(b)(1), therefore, Counts 4, 5, 6 and 9—following the dismissal of the only "federal question" count under Rule 12(b)(6)—must also be dismissed for lack of subject matter jurisdiction. *See, e.g., Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *cf. Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) ("Where a district court dismisses all federal claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, . . . the district court is precluded from exercising supplemental jurisdiction over the remaining state-law claims.") (discussing 28 U.S.C. § 1367(a)).

# III.

## EVEN IF PLAINTIFFS' STATE LAW CLAIMS ARE NOT DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, THEY ARE TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS (COUNTS 4, 5, 6 AND 9)

As shown above, the dismissal (under Rule 12(b)(6)) of plaintiffs' sole federal claim (Count 1) further compels the dismissal of their state law claims against Mr. Bjorkman (set forth in Counts 4, 5, 6 and 9) , based on lack of subject matter jurisdiction. Nevertheless, even if this Court were to find that it still retains subject matter jurisdiction over the state law claims, those claims must be dismissed as time-barred under the applicable statute of limitations. California Code of Civil Procedure section 335.1 provides a two-year limitations period to bring claims based on assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another. *See Huimin Song v. County of Santa Clara*, 2013 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 25, 2013) (two-year statute of limitations for negligent hiring, training, and retention claims); *Unruh-Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 357 (2008) (the statute of limitations for intentional infliction of emotional distress is two years).

The general rule states that a cause of action accrues (that is, "starts" the limitations period) at "the time when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 187 (1971). A corollary to the general rule of accrual (which focuses on the completion of the elements of the offense) is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. *See Norgart*, 21 Cal.4th at 397; *Neel*, 6 Cal.3d at 187; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 803 (2005).

Under the discovery rule, a plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." *Norgart*, 21 Cal.4th at 398, (citing *Jolly v. Eli Lilly & Co*., 44 Cal.3d 1103, 1110 (1988); *Gutierrez v. Mofid*, 39 Cal.3d 892, 897 (1985) ("[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run *no later than the time the plaintiff learns, or should have learned, the facts essential to his claim*") (emphasis added). Under the discovery rule, suspicion of one or more of the elements of a cause of action—coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *See, e.g*., *Norgart*, 21 Cal.4th at 398 n.3; *Jolly*, 44 Cal.3d at 1112; *Fox*, 35 Cal.4th at 803.

Here, as alleged against Mr. Bjorkman, plaintiffs' battery claims (Count 4 and 5), and their claims of emotional distress (Count 6) and negligence (Count 9) are time-barred. Ms. Acevedo alleges Bjorkman assaulted her on July 20, 2018; Jane Doe 1 alleges Bjorkman assaulted her in April 2019; and Jane Doe 2 and Jane Doe 3 allege Bjorkman assaulted both in August 2020. Not only did all four plaintiffs *know* about the alleged assaults (be they labelled sexual or civil) at or about the time they allegedly occurred, but, in addition: 1) Jane Doe 2 and Jane Doe 3 *reported* Mr. Bjorkman's alleged assaults to EXP's managers and supervisors in August 2020 (Am. Comp. at ¶164), while 2) Jane Doe 1 *reported* Bjorkman's alleged April 2019 assault to EXP's executive leadership in October 2020 (Am. Comp. at ¶129).

Accordingly, the three Jane Doe plaintiffs' own allegations prove conclusively that they *knew* about their alleged injuries as of August and October 2020, respectively. Moreover, because Ms. Acevedo alleges that Mr. Bjorkman tried to engage her in sexual conduct in the bathroom the morning after he allegedly drugged and assaulted her, this plaintiff *knew* about her

own injuries not later than July 20, 2018. *See* Am. Comp. at ¶99-100 (alleging that the encounter in the hotel bathroom occurred "the next morning" after July 20, 2018.

Given this irreducible chronology (supplied by plaintiffs themselves), their time to bring their state law causes of action against Mr. Bjorkman expired in 1) July 2020 for Ms. Acevedo, 2) August 2022 for Plaintiffs Jane Doe 2 and Jane Doe 3, and 3) October 2022 for Jane Doe 1 (if not earlier, in April 2019). Plaintiffs, however, filed this action in February 2023—at least four months too late, even under the most lenient limitations scenario. Plaintiffs' negligence and intentional tort causes of action thus violate the applicable statute of limitations and, consequently, must be dismissed.

## IV.

## THE LOSS OF CONSORTIUM CLAIM OF JOHN DOE FAILS

The fifth plaintiff, identified as John Doe 1, alleges only that he is the husband of Jane Doe 3 and has suffered a "loss of consortium" as a result of his wife's alleged injury. See Am. Comp. at ¶¶162, 254. Because John Doe 1's claims are wholly derivative of Jane Doe 3's claims, dismissal of the latter's claims compel dismissal of the husband's consortium claim. See, e.g., *Stone v. United States*, 373 F.3d 1129, 1132 (11th Cir. 2004). ("Because the United States could not be found negligent as to Tiffany Stone, the district court did not err by holding that her parents' derivative loss of consortium claims likewise failed as a matter of law.") *See also*, *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284-285 (2012).

## V.

## LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE

While the Ninth Circuit has a liberal policy favoring amendments, a court need not grant leave to amend where amendment would be futile. *Rutman Wine Co. v. E. & J. Gallo Winery*,

829 F.2d 729, 738 (9th Cir. 1987); *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015).

If the Court grants Mr. Bjorkman's Motion to Dismiss as to the TVPRA claims and/or the Motion to Dismiss related to the statute of limitations, any amendment would be futile as the plaintiffs cannot plead any set of facts that would entitle them to relief.

## VI.

### FINALLY, PLAINTIFFS' COMPLAINT MUST BE DISMISSED WITHOUT PREJUDICE DUE TO INSUFFICIENT SERVICE OF PROCESS UNDER RULE 12(b)(5) AND RULE 4(m)

Rule 12(b)(5) of the Federal Rules of Civil Procedure compels either outright dismissal of a complaint or the setting of a specific "service deadline" in cases of "insufficient service of process." "Insufficient service" encompasses untimely service of a complaint upon an individual defendant. Thus, the Fourth Circuit notes that, "[i]n its first sentence, Rule 4(m) provides, 'If a defendant is not served within 90 days after the complaint is filed, the court . . . *must*' do one of two things—'[1] dismiss the action without prejudice against that defendant or [2] order that service be made within a specified time.'" *Gelin v. Shuman*, 35 F.4th 212, 219 (4th Cir. 2022) (quoting Fed. R. Civ. P. 4(m) (emphasis supplied by *Gelin* Court).

Here, the plaintiffs filed their original "Complaint for Damages" against the corporate defendants and Mr. Bjorkman (in his individual capacity) on February 22, 2023. *See* ECF No. 1. The plaintiffs thus had 90 days from the date of that original complaint—or, until not later than **May 23, 2023**—to personally serve Mr. Bjorkman, or obtain from him a jurisdictionally sufficient waiver of service. Because, however, plaintiffs did not seek to serve Mr. Bjorkman by publication until June 2, 2023, already past the deadline for service, this Honorable Court

should-in addition to the other remedies sought in this motion to dismiss—dismiss the complaint for this additional reason, as well.[89]

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety.

Dated this 27th day of June, 2023.

Respectfully Submitted:

HANGER, STEINBERG, SHAPIRO & ASH

   /s/ Marc S. Shapiro
MARC S. SHAPIRO
21031 Ventura Blvd. Suite 800
Woodland Hills, CA 91364

CHESNOFF & SCHONFELD

   /s/ Richard A. Schonfeld
RICHARD A. SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Attorneys for Michael Bjorkman

---

[8] The plaintiffs' filing of a First Amended Complaint (on March 23, 2023, *see* ECF No. 30) does not resuscitate their jurisdictional non-complaiance, as that later filing—which, like the original Complaint, 1) names Mr. Bjorkman as an individual defendant, and 2) alleges the same causes of action against him—does not "restart the 90-day service-of-process "clock" mandated by Rule 4(m). *See, e.g.*, *Contreras v. Wray*, No. CV 21-9797-JVS (JPR), 2022 WL 3904004, at *4 (C.D. Cal. June 15, 2022), *report and recommendation adopted*, No. CV 21-9797-JVS (JPR), 2022 WL 3910472 (C.D. Cal. Aug. 30, 2022) ("The filing of Plaintiff's proposed amended complaint naming these same Defendants wouldn't reset the service clock.") (citing *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) (observing that Rule 4(m)'s time limit "is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint"); *Lockhart v. Logistics LLC*, No. CV 21-8169 FMO (KESx), 2022 WL 504597, at *1 n.2 (C.D. Cal. Feb. 18, 2022) (same)).
[9] The plaintiffs asserted in their Ex Parte Application for Service by Publication that Mr. Bjorkman avoided service. However, such is not the case. Rather, plaintiffs were ineffectual in their service attempts through no fault of Mr. Bjorkman. Moreover, the assertions regarding avoidance of service are irrelevant as plaintiffs failed to secure authorization from the Court to serve by publication within the time frame provided under Rule 4(m) and therefore failed to serve Mr. Bjorkman within the requisite time frame.

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MICHAEL L.
BJORKMAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT