Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 91765
T: (310) 322-8800
F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019 PHV Admitted
Andrea Hirsch, Esq. GA Bar No. 666557 PHV Admitted
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FABIOLA ACEVEDO, TAMI SIMS, CHRISTIANA LUNDY and JANE DOE 3**, <br><br> Plaintiffs, <br><br> v. <br><br> **EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT GOVE; and DOES 1-10,** <br><br> Defendants. | **CASE NO. 2:23-cv-01304-AB-AGR** <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES FOR:** <br><br> 1) **Violation of 18 U.S.C. § 1591** <br> 2) **Violation of 18 U.S.C. § 1591** <br> 3) **Violation of 18 U.S.C. § 1591** <br> 4) **Sexual Battery** <br> 5) **Civil Battery** <br> 6) **Civil Battery** <br> 7) **Intentional Infliction of Emotional Distress** <br> 8) **Intentional Infliction of Emotional Distress** <br> 9) **Intentional Infliction of Emotional Distress** <br> 10) **Intentional Infliction of Emotional Distress** |

1

**11) Negligence:**
**12) Negligent Hiring, Retention &**
**Supervision**

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs FABIOLA ACEVEDO, TAMI SIMS, CHRISTIANA LUNDY and JANE

DOE 3, complaining of Defendants; eXp REALTY, LLC, eXp WORLD HOLDINGS,

INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT

GOVE; and DOES 1-10, (hereinafter referred to as "Defendants") by their attorneys Cohen

Hirsch, LP, and Lenze Lawyers, PLC, respectfully sets forth and alleges the following,

upon information and belief:

## PRELIMINARY STATEMENT

1.      This is a case about profit over safety. It's about the drugging and sexual

assault of women, real estate agents, brought in as recruits to a large real estate corporation

operated in a pyramid-style scheme. This case is about this corporation's longstanding

culture—their pattern and practice—of creating an environment that allowed these assaults,

then silencing those whose accounts of sexual harassment and assault would impact profit.

2.      This civil action for damages is brought under the Federal sex trafficking

statute, 18 U.S.C. §§1591, 1595, as well as other state law actions.  It arises from

DEFENDANT MICHAEL BJORKMAN and DEFENDANT DAVID GOLDEN's ongoing

venture to entice women to travel in interstate commerce, recruit real estate agents with the

promise of career advancement and coaching, and use their considerable influence in the

SECOND AMENDED COMPLAINT FOR DAMAGES

real estate industry on these other real estate agents behalf, knowing that they would use means of force, fraud or coercion to cause these women to engage in a sex act (the "Venture"). DEFENDANT GLENN SANFORD, DEFENDANT BRENT GOVE, eXp REALTY LLC and eXp World Holdings, Inc. (hereinafter collectively, "DEFENDANT eXp REALTY" or "eXp"), all knew of such actions yet turned a blind eye, propelled by the continued financial benefits they received. All DEFENDANTS collectively had a common purpose of monetary gain which was achieved through recruitment activities.

## JURISDICTION

3.     This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1595, which provides the district courts of the United States jurisdiction over violations of 18 U.S.C. § 1591.

4.     This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the related federal claims over which this Court has original jurisdiction.

5.     This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. §1595.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims took place in this District, and DEFENDANT MICHAEL L. BJORKMAN resided in this district and division at all times complained of herein.

**PLAINTIFFS**

7.     Plaintiff, FABIOLA ACEVEDO is a citizen of Florida and is a licensed real estate agent with DEFENDANT eXp REALTY.

8.     Plaintiff, TAMI SIMS (formerly referred to as JANE DOE 1) is a citizen of Tennessee and a licensed real estate agent with DEFENDANT eXp REALTY.

9.     Plaintiff, CHRISTIANA LUNDY (formerly referred to JANE DOE 2), is a citizen of California and is a licensed real estate agent with DEFENDANT eXp REALTY.

10.     Plaintiff, JANE DOE 3, is a citizen of Florida and is a licensed real estate agent formerly associated with DEFENDANT eXp REALTY.   The name utilized by this Plaintiff in this Complaint is fictitious to protect her privacy as a survivor of sexual assault that she suffered as a result of the Defendants' conduct.

**DEFENDANTS**

11.     DEFENDANT eXp WORLD HOLDINGS, INC. is a corporation duly organized and existing under and by virtue of the State of Delaware and has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

12.     DEFENDANT eXp REALTY, LLC is a corporation duly organized and existing under and by virtue of the State of Washington has its principal place of business at 2219 Rimland Drive, Suite 301, Bellingham, Washington 98226.

13.     Based upon information and belief, DEFENDANT MICHAEL BJORKMAN is a citizen of the State of California and resides in Ventura County, CA and a former real estate agent with DEFENDANT eXp REALTY, was an "Influencer" (defined *infra*) at

4

DEFENDANT eXp REALTY and is a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp Realty.

14.    DEFENDANT DAVID S. GOLDEN is a citizen of the State of Nevada and a real estate agent with DEFENDANT eXp REALTY, an "Influencer" (defined *infra*) at DEFENDANT eXp REALTY and a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp REALTY.

15.    DEFENDANT GLENN SANFORD is a citizen of the State of Washington, the Founder of eXp Realty, and is Agent #1 in the Revenue Share Program (defined *infra*) with DEFENDANT eXp REALTY.

16.    DEFENDANT BRENT GOVE is a citizen of Puerto Rico and a real estate agent with DEFENDANT eXp REALTY, a top "Influencer" (defined *infra*) at DEFENDANT eXp Realty and a current Revenue Share Participant (defined *infra*) with DEFENDANT eXp Realty.

17.    The true names and capacities, whether corporate, associate, individual or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the DEFENDANTS designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to Plaintiffs, as herein alleged. Plaintiffs will seek leave to amend this Complaint to show their names and capacities when the same have been ascertained.

SECOND AMENDED COMPLAINT FOR DAMAGES

## EXP REALTY, LLC AND EXP WORLD HOLDINGS, INC.
## ("DEFENDANT eXp REALTY")

18.    DEFENDANT eXp REALTY is a multi-level marketing real estate company that is publicly traded on the NASDAQ.  It is touted as a cloud-based model with a global community.

19.    According to DEFENDANT eXp REALTY, it is "fastest growing residential real estate brokerage on the planet."  As of October 2022, DEFENDANT eXp REALTY exceeded 85,000 agents worldwide, and as of November 2022, eXp World Holdings reported Third Quarter Revenue of $1.2 Billion.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

20.    Also, according to DEFENDANT eXp REALTY, it is the largest independent brokerage on the planet.

SECOND AMENDED COMPLAINT FOR DAMAGES

https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

**Control and Agency Over Defendant Golden and Defendant Bjorkman**

21.    DEFENDANT eXp REALTY, created by DEFENDANT GLENN SANFORD, has two businesses. One business is the traditional real estate business of buying and selling homes. The other business is a multi-level-marketing pyramid scheme which financially rewards the participants for recruitment of new agents, not for selling real estate.

22.    The Venture at issue centers around the recruitment of agents into eXp REALTY's Revenue Share Program (also referred to as the "multi-level marketing" or "pyramid scheme").[1]

---

[1] https://www.sec.gov/oiea/investor-alerts-bulletins/investor-alerts-ia-pyramid

SECOND AMENDED COMPLAINT FOR DAMAGES

23.    For this pyramid scheme to work, continuous recruitment of new agents is essential, without which it will collapse. To fund this pyramid scheme, each recruited agent must pay a monthly fee of $85.00, which amounts to $1,020.00 a year.

24.    As of January 2024, DEFENDANT eXp REALTY had more than 89,000 agents worldwide.

25.    DEFENDANT GOVE is a central figure in the pyramid scheme by virtue of his personal downline of agents that make up more than 20% (approximately 20,000 agents) of eXp REALTY. DEFENDANT GOVE is the third top Recruiter at eXp Realty and intricately involved in the recruitment of many agents to his downline.

26.    DEFENDANT GOLDEN and DEFENDANT BJORKMAN are in DEFENDANT GOVE'S downline in the pyramid. DEFENDANT GOVE in fact directly recruited DEFENDANT GOLDEN into his downline after DEFENDANT GOLDEN reached out to DEFENDANT GOVE about the possibility of joining eXp. After what DEFENDANT GOVE himself proclaimed to be a long one on one conversation, DEFENDANT GOVE recruited DEFENDANT GOLDEN into his downline and started calling him in public by the name "Golden Delicious."

27.    Because DEFENDANT GOLDEN and DEFENDANT BJORKMAN were two of DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY's most successful recruiters, DEFENDANTS GOVE, SANFORD and eXp REALTY all financially benefitted from the recruitment activities of DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

SECOND AMENDED COMPLAINT FOR DAMAGES

28.    DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY, instructed, required, and provided DEFENDANT BJORKMAN and DEFENDANT GOLDEN with the means and methods on how to entice agents and how to join eXp REALTY's pyramid, and more specifically, how to join their personal downline within the pyramid.

29.    DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY provided DEFENDANT BJORKMAN and DEFENDANT GOLDEN with scripts, tools, and training on how to recruit agents into eXp's Revenue Share pyramid; the excessive and incessant online presence and videos of all DEFENDANTS provide extensive examples of ways in which DEFENDANT GOVE, SANFORD and eXp gave DEFENDANT BJORKMAN AND DEFNDANT GOLDEN the sales tools and training necessary for recruitment activities.

30.    DEFENDANT eXp requires all of its agents, including DEFENDANT BJORKMAN and DEFENDANT GOLDEN to follow the eXp AGENT ATTRACTION Best Practices Guide, the eXp Agent Attraction Success Strategy, and eXp REALTY's Policies and Procedures; DEFENDANT eXp REALTY controls all of its agents with respect to recruitment.

31.    DEFENDANT eXp REALTY required that DEFENDANT BJORKMAN and DEFENDANT GOLDEN use its branding and logos; it further provided them with databases, access to computer systems, company websites, forms, and documents; all of which they were required to use.

9

32.    DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE exercised considerable control over DEFENDANT BJORKMAN AND DEFENDANT GOLDEN by giving them the means and methods to recruit agents to eXp.

33.    DEFENDANT GOLDEN and DEFENDANT BJORKMAN were agents of DEFENDANT eXp REALTY.

34.    Likewise, DEFENDANT BJORKMAN and DEFENDANT GOLDEN relied on DEFENDANT GOVE, DEFENDANT SANFORD, and DEFENDANT eXp REALTY's methods and instructions when actively recruiting agents for eXp REALTY.

35.    DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY taught DEFENDANT BJORKMAN and DEFENDANT GOLDEN that the key to "Agent Attraction", i.e., recruitment into the eXp REALTY pyramid, is to project an image of success – both personally and professionally.

36.    DEFENDANT eXp REALTY went to great lengths to showcase the success and wealth of its top influencers in order to convince others to join the pyramid and to attain the same level of prosperity. This tactic repeatedly shows top agents sharing pictures of their yachts, airplanes, vacation properties, moves to Puerto Rico to the Compound for tax purposes and generally showcasing much money they make each month due to their participation in the pyramid.

37.    DEFENDANT GOVE personally trained DEFENDANT GOLDEN and DEFENDANT BJORKMAN on how to attract agents to eXp REALTY; in fact,

SECOND AMENDED COMPLAINT FOR DAMAGES

DEFENDANT GOLDEN stated in a video with DEFENDANT GOVE, that he called on DEFENDANT GOVE and other top eXp agent Influencers, "a million times" to get training help.

38.     This training included inviting agents to events held at beautiful, exotic locations, where successful real estate agents would meet in order to "rub shoulders" with the "Who's Who" at eXp, naming the big Influencers/Agent Attractors, with whom they were encouraged to develop relationships, as well as to be trained on how to utilize and to parrot the well-oiled recruitment techniques perfected by higher ups at eXp REALTY.

39.     DEFENDANT GOVE also recommended, and still recommends to this day, that agents "share hotel rooms" and encourages attendance at parties where he praises the fact that they have bars stocked with copious amounts of alcohol; the all-inclusive price that includes open bars is touted frequently in DEFENDANT GOVE's solicitation for DEFENDANT eXp REALTY's recruiting events, as well as the encouragement to "rub shoulders" with the top influencers at eXp.

40.     Using the materials and knowledge obtained from DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY, DEFENDANTS BJORKMAN and GOLDEN also went to great lengths to showcase themselves as successful businessmen and leaders in the real estate industry by speaking at eXp REALTY events and hosting their own eXp REALTY recruitment events.

SECOND AMENDED COMPLAINT FOR DAMAGES

41.     At these recruitment events, DEFENDANTS BJORKMAN and GOLDEN promised agents that they would attain prosperity if they joined their downline in the pyramid.

42.     DEFENDANTS BJORKMAN and GOLDEN espoused the importance of attending their events so that agents could be in the room with top influencers like DEFENDANT GOVE.

43.     Both prospective eXp REALTY agents and agents wanting to grow their downline, believed that in order for them to develop their professional networks and become successful eXp REALTY agents like DEFENDANTS GOVE, BJORKMAN and GOLDEN, they had to be "in the room where it happens", rubbing shoulders with the agent influencers that DEFENDANT eXp REALTY often put on stage, promoted in online videos, highlighted in their eXp Life magazine, or otherwise promoted visibly and regularly.

44.     DEFENDANTS BJORKMAN and GOLDEN made sure that each of their events were fully stocked with copious amounts of alcohol and drugs, including GHB, which is commonly referred to as a date-rape drug.

45.     DEFENDANTS GOLDEN and BJORKMAN would then surreptitiously slip attendees intoxicants, or fraudulently induce them to take intoxicants, which would cause them to appear and to act as if they were attracted to DEFENDANTS BJORKMAN and GOLDEN and their friends – thereby elevating DEFENDANTS GOLDEN and

BJORKMAN's status at eXp – all in the name of appearing successful and consequently better recruiters for eXp REALTY.

46.    It was known that after an evening at these events, DEFENDANTS BJORKMAN and GOLDEN would share videos and pictures of women they had drugged.

47.    DEFENDANT GOVE enticed PLAINTIFFS and others to travel to recruitment events for the purpose of increasing the number of agents in his downline.

48.    As a result of these recruiting events, DEFENDANT GOVE benefited by the growth of his own downline, as did DEFENDANT SANFORD and DEFENDANT eXp.

49.    Because the success of DEFENDANTS GOLDEN and BJORKMAN directly impacted DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY, they routinely assisted DEFENDANTS GOLDEN and BJORKMAN in cultivating their image of success.

50.    DEFENDANT GOVE was keenly aware of the methods DEFENDANTS BJORKMAN and GOLDEN used at their recruitment events.

51.    DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY maintained and controlled DEFENDANT BJORKMAN and DEFENDANT GOLDEN's recruitment activities sufficient to establish vicarious or agency liability under the TVPRA.

52.    According to DEFENDANT eXp REALTY's most recent Proxy Statement dated April 27, 2022, DEFENDANT eXp REALTY maintains a revenue-sharing plan whereby each of its agents and brokers participate in and can receive monthly and annual

residual overrides on the gross commission income resulting from transactions consummated by agents and brokers who they have attracted to eXp REALTY. Agents and brokers are eligible for Revenue Share based on the number of producing Front-Line Qualifying Active ("FLQA") agents they have attracted to eXp REALTY.  An FLQA is an agent or broker that an agent or broker has personally attracted to eXp REALTY who has met specific sales transaction volume requirements. In other words, their "recruits".

53.    Under DEFENDANT eXp REALTY's agent's agreement, vesting can occur with respect to both stock option and the Revenue Share Program. Pursuant to DEFENDANT eXp REALTY's Revenue Share Vesting Policy, to qualify for revenue share vesting, a "Participant" must meet several conditions including be affiliated with the Company for not less than 36 months.  A Participant shall be considered "Vested" in the Revenue Share Plan's eXpansion Revenue Share (sharing in the income from your recruited agents) and will continue to receive the benefits provided under the Revenue Share Plan even after a Participant disassociates from the Company (so long as they do not go to a competitor).

54.    DEFENDANT eXp REALTY automatically enrolls its agents into the eXp Revenue Share Plan and heavily encourages and incentivizes its agents to become a "Sponsor Agent".   DEFENDANT eXp REALTY calls this "Agent Attraction".

55.    DEFENDANT eXp REALTY directs, trains and teaches its Sponsor Agents how to recruit and entice other real estate agents ("Recruited Agents") to join

14

SECOND AMENDED COMPLAINT FOR DAMAGES

DEFENDANT eXp REALTY via DEFENDANT eXp REALTY's Revenue Share Pyramid.

56.    By participating in DEFENDANT eXp REALTY's Revenue Share Pyramid, Sponsor Agents receive substantial monetary compensation directly from DEFENDANT eXp REALTY.  The higher a Sponsor Agent is placed in the Revenue Share Pyramid (or stated another way, the more tiers of Recruited Agents that a Sponsor Agent can lock into their "downline" – downline being defined as agents they have recruited) the more money DEFENDANT eXp REALTY pays the Sponsor Agent and the more money DEFENDANT eXp REALTY and DEFENDANT SANFORD make (he is Agent #1, at the top of the pyramid).



Earn **revenue share** for attracting new agents to eXp

| | eXpansion Share % of AGCI | eXponential Share % of AGCI | FLQA Count Needed | |
| --- | --- | --- | --- | --- |
| TIER 1 | /// | 3.5% | 0 - 4 | |
| TIER 2 | .2% | 3.8% | 5 - 9 | |
| TIER 3 | .1% | 2.4% | 10 - 14 | |
| TIER 4 | .1% | 1.4% | 15 - 19 | |
| TIER 5 | .1% | 0.9% | 19 - 24 | |
| TIER 6 | .5% | 2.0% | 25 - 39 | |
| TIER 7 | .5% | 4.5% | 40+ | |

eXp agents can sponsor agents to join the company

Earn a percentage of revenue – eXp pays the revenue share, not the agent – when your sponsored agents close a transaction. Earn revenue share until your sponsored agent reaches their annual commission cap.

AGCI = Adjusted Gross Commission Income
FLQA = Front-Line Qualifying Agent

[https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf](https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf)

57.    In addition, Sponsor Agents get a stock award in DEFENDANT eXp REALTY every time their Recruited Agent sells a property.

58.    Typically, and as was the case for the Plaintiffs, DEFENDANT eXp REALTY's top recruiting Sponsor Agents ("Influencers") would invite prospective and current DEFENDANT eXp REALTY real estate agents to social networking events ("eXp REALTY Recruiting Events") for the purpose of recruiting, enticing and soliciting other real estate agents to join DEFENDANT eXp REALTY or to retain current DEFENDANT eXp REALTY real estate agents.

59.    DEFENDANT eXp REALTY receives a direct financial benefit every time a Sponsor Agent recruits a real estate agent into their downline, including, but not limited to the following: 20% of all commissions earned by the Recruited Agent; $149 start-up fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $85/month cloud brokerage fee paid by the Recruited Agent to DEFENDANT eXp REALTY; $25 transaction review fee paid by the Recruited Agent to DEFENDANT eXp REALTY; and a $40 risk management fee paid by the Recruited Agent to DEFENDANT eXp REALTY.



https://expREALTYgrowth.com/wp-content/uploads/2023/01/U.S.-eXp-Explained-Q3-2022.pdf

16

SECOND AMENDED COMPLAINT FOR DAMAGES

60.     DEFENDANT eXp REALTY also receives a direct financial benefit from every Recruited Agent in the amount of $250 a month if the Recruited Agent fails to generate a minimum of $5,000 gross commission income or fails to close two qualifying sale transactions within the preceding six full months. Although the standard contract states that all agents share 20% of their commissions, DEFENDANT eXp REALTY makes exceptions to this rule for select Influencers they want to recruit to DEFENDANT eXp REALTY to attract more agents and increase certain Influencers' Revenue Share, to the detriment of DEFEDANT eXp REALTY's shareholders.

61.     DEFENDANT eXp REALTY has a symbiotic relationship with its top agents/"Influencers".  DEFENDANT eXp REALTY's part of the relationship is to put top Influencers in the position to be able to increase the agent count by any means necessary. The Influencers' role is to recruit as many agents as possible to keep the Revenue Share pyramid from collapsing.

62.     For this reason, DEFENDANT eXp REALTY went to great lengths to promote the wealth and success of its Influencers.  As part of this strategy spearheaded by eXp President David Conord, DEFENDANT eXp REALTY profiles its top agents. One such way the agents were profiled was on eXpLife, which is a website run by DEFENDANT eXp to promote its agents.

63.     DEFENDANT eXp REALTY was run by an executive leadership team which made decisions relevant to the instant actions and individuals involved. At all relative times it included, but was not limited to: DEFENDANT SANFORD, Jason Gesing, Jeff

17

Whiteside, Jim Bramble, David Conord, Michael Valdez, Courtney Keating, and Cory Haggard. This leadership team also included top Alpha Influencer Brent Gove.

## DEFENDANT MICHAEL L. BJORKMAN AND DEFENDANT DAVID S. GOLDEN

64.    In 2018, DEFENDANT BJORKMAN, a licensed real estate agent in the state of California, was recruited by DEFENDANT GOLDEN to join DEFENDANT eXp REALTY.

65.    Prior to joining DEFENDANT eXp REALTY, DEFENDANT BJORKMAN was an agent at Remax.

66.    DEFENDANT BJORKMAN joined DEFENDANT eXp REALTY in 2018 and named DEFENDANT GOLDEN as his Sponsor Agent.

67.    DEFENDANT BJORKMAN has been a self-described "leader" in the real estate industry and was one of DEFENDANT eXp REALTY's top recruiters/Influencers, who generated a substantial part of his income, not from selling real estate, but by recruiting real estate agents to join DEFENDANT eXp REALTY.[2]

68.    According to DEFENDANT BJORKMAN, at DEFENDANT eXp REALTY, "your net worth directly relates to your network."[3] DEFENDANT BJORKMAN develops

---

[2] "Exp Agent Attraction Boot Camp Mike Bjorkman. How to recruit agents." https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

[3] https://video.search.yahoo.com/search/video?fr=mcafee&ei=UTF-8&p=exp+agent+attraction+video&type=E210US91088G0#id=10&vid=7acfc0304d9dbbc6d3e6ff4359aad6ce&action=view

SECOND AMENDED COMPLAINT FOR DAMAGES

his network by making recruits feel like a part of his "family", caring for them and helping them succeed in their careers.

69.    DEFENDANT BJORKMAN does this by building a false relationship based on trust and emotional connection, only then to manipulate, exploit and abuse these relationships.

70.    At DEFENDANT eXp REALTY'S direction and using their recruiting techniques, DEFENDANT BJORKMAN recruited downline agents by inviting them to travel to DEFENDANT eXp networking events in various states and Mexico. DEFENDANT BJORKMAN stressed the critical importance of these events to his recruits in furthering their career because DEFENDANT eXp Realty was all about recruiting agents.

71.    On March 8, 2021, DEFENDANT BJORKMAN was arrested in Miami-Dade County for two (2) counts of sexual assault of JANE DOE 3.

72.    In conjunction with that arrest, the Las Vegas Police Department issued a Declaration of Warrant/Summons, Event Number 200900070704 ("Warrant"), a 27-page report, which lays out its in-depth criminal investigation describing multiple occasions of multiple women being drugged and assaulted by DEFENDANT BJORKMAN while attending eXp REALTY Recruiting Events.

73.    As described in the Warrant, there is a long history, dating back to 2000, of multiple women accusing DEFENDANT BJORKMAN of both drugging and sexually assaulting them.

SECOND AMENDED COMPLAINT FOR DAMAGES

74.     One of the incidents detailed in the Warrant, details the rape of a real estate agent that occurred in 2007.  That same agent joined eXp REALTY in 2018.  Shortly after joining eXp REALTY, she ran into DEFENDANT BJORKMAN at eXpCon in New Orleans in October 2018.

75.     Seeing DEFENDANT BJORKMAN associated with the same company she just joined as a real estate agent caused this agent to suffer extreme emotional distress, at which time she told her Sponsor Agent Frank Crandall that DEFENDANT BJORKMAN had assaulted her in 2007 and that she could not work for a company where he worked. Shortly thereafter, this agent reached out to eXp REALTY'S Designated California Broker, Debbie Penny.  Ms. Penny never replied to this agent's attempts to contact her.  Frustrated with the lack of support, this agent left eXp Realty.

76.     According to a Las Vegas Police Report, around April or May 2018, an eXp REALTY Agent attended a real estate networking event in Denver, Colorado. One evening during the conference, the eXp REALTY Agent went to the bar with several other event attendees, including DEFENDANT BJORKMAN.

77.     This eXp REALTY Agent only had one drink at the bar and does not recall how she got the drink.  After having that drink, the eXp REALTY Agent stood up and immediately felt woozy and shaky.  DEFENDANT BJORKMAN immediately noticed she was sick and told her that she had been drugged, that she needed to eat and that she should not leave the bar with anyone except for him.  This eXp REALTY Agent does not recall the rest of the evening.  After learning about other women being drugged and assaulted by

20

DEFENDANT BJORKMAN, this now former eXp REALTY Agent has come to the conclusion that she was also drugged by DEFENDANT BJORKMAN.

78.    According to a Las Vegas Police Report, in early February 2019, another eXp REALTY Agent attended a real estate networking event in Maui, Hawaii.  During the event, this eXp REALTY Agent had two drinks with DEFENDANT BJORKMAN. Soon after, this eXp REALTY Agent began slipping in and out of consciousness and had to be taken to Maui Hospital. Despite only having two drinks, this eXp REALTY Agent had a Blood Alcohol Content of .21 (nearly three times the legal limit).  This eXp REALTY Agent now believes that she was drugged with alcohol powder and believes that DEFENDANT BJORKMAN was the individual who drugged her.

79.    The Las Vegas Police Report detailed yet another incident involving a different agent that occurred in or around May-June 2019. In this instance, a real estate agent and her husband attended an eXp recruiting event in Coronado, California. DEFENDANT BJORKMAN invited her and her husband to brunch.  They each had one glass of wine and then DEFENDANT BJORKMAN invited them to DEFENDANT GOLDEN and DEFENDANT BJORKMAN's suite utilized for eXp recruiting parties. While in the suite, DEFENDANT GOLDEN arrived.  The real estate agent and her husband were each offered a mixed drink.  Soon after, the real estate agent had limited memory of the rest of the day, missed pre-arranged dinner plans, missed many text messages, and did not wake up until the following morning. This agent believes she was

drugged, but at the time, did not know who was responsible.  This agent joined eXp REALTY in October 2019 and named DEFENDANT BJORKMAN as her sponsor.

80.    Per the Las Vegas Police Report, later that year, in December 2019, this same eXp REALTY agent traveled to Puerto Rico to visit top eXp REALTY influencer and eXp REALTY then Board Member Gene Frederick.  Rosie Rodriquez, an agent in her upline and DEFEDANT GOLDEN's direct eXp sponsor, also was supposed to attend the event but cancelled at the last moment.  Consequently, this eXp REALTY Agent was staying at a rental home alone with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

81.    This eXp REALTY Agent was so fearful during her stay due to inappropriate sexual comments and actions said and done by both DEFENDANT BJORKMAN and DEFENDANT GOLDEN that she locked her door to her bedroom each night to prevent them from entering. As they tried to wiggle the door open, she stayed on the phone with her husband throughout the night.

82.    Due to being so uncomfortable, she left the trip a day early and asked eXp REALTY Board Member Gene Frederick to drive her to the airport, which he did.  On February 25, 2020, DEFENDANT GOLDEN flew to her hometown in Minnesota to attend an eXp REALTY recruiting event.  Sometime thereafter, this eXp REALTY Agent contacted eXp REALTY to request that she no longer be in DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S downline.

83.    As noted by one of the witnesses in the Warrant, after DEFENDANT

BJORKMAN drugged and assaulted certain women, DEFENDANT BJORKMAN has

contacted them, "threatening" them not to say anything.

84.    According to the State of California Department of Real Estate,

DEFENDANT BJORKMAN was affiliated with DEFENDANT eXp REALTY's Broker

License from August 13, 2018 to September 18, 2020.  Under the terms of DEFENDANT

eXp REALTY's Revenue Share Plan, should an agent no longer have their license with

DEFENDANT eXp REALTY, then they no longer would be entitled to participate in

DEFENDANT eXp REALTY's Revenue Share Plan.

85.    DEFENDANT BJORKMAN no longer holds his real estate license under

DEFENDANT eXp REALTY. DEFENDANT BJORKMAN, however, still holds a

California real estate license.

86.    As of September 18, 2020, DEFENDANT BJORKMAN's license was no

longer connected to eXp REALTY; however, DEFENDANT BJORKMAN to this day is

still a Participant in DEFENDANT eXp Realty's Revenue Share Program.[4]

87.    Pursuant to DEFENDANT eXp's standard Agent Agreement, to become a

Vested Participant, an agent must be affiliated (licensed with DEFENDANT eXp

REALTY as the brokerage) with the Company for not less than 36 months.

---

[4] Plaintiff Sims was entitled to half of the Revenue Share of DEFENDANT BJORKMAN;
however, DEFENDANT eXp REALTY is giving 100% of the Revenue Share to DEFENDANT
BJORKMAN and none to Plaintiff Sims.

23

88.     Despite the fact that DEFENDANT BJORKMAN did not meet the requirements to become a Vested Participant, upon information and belief, DEFENDANT eXp REALTY allowed DEFENDANT BJORKMAN to vest.

89.     Conversely, DEFENDANT eXp REALTY did not allow did not grant the same vesting exception to Jane Doe 3.

90.     After learning about the incidents related to Plaintiff Lundy and Jane Doe 3, described in detail below, DEFENDANT eXp REALTY removed DEFENDANT BJORKMAN from their license but continued to allow him to go to eXp events, continued to socialize with him and continued to pay him substantial amounts of money each month because he was a top Influencer.

91.     DEFENDANT eXp REALTY would not allow Plaintiffs who had DEFENDANT BJORKMAN as their sponsor to move lines, forcing them to financially support their rapist.

92.     In 2017, DEFENDANT GOLDEN was introduced to DEFENDANT eXp REALTY by a DEFENDANT eXp REALTY recruiting agent named Rosie Rodriguez.

93.     As of February 1, 2018, DEFENDANT GOLDEN joined DEFENDANT eXp REALTY and named Rosie Rodriguez as his Sponsor Agent.

94.     According to the Nevada Department of Real Estate, DEFENDANT GOLDEN is currently an active agent affiliated with DEFENDANT eXp REALTY.

SECOND AMENDED COMPLAINT FOR DAMAGES

95.    DEFENDANT GOLDEN is one of DEFENDANT eXp REALTY's top

recruiters/Influencers and generates the majority of his income not from selling real estate

but by recruiting real estate agents to join DEFENDANT eXp REALTY.

96.    DEFENDANT GOLDEN develops his network by building a false

relationship based on trust and emotional connection, only then to manipulate, exploit and

abuse these relationships.

97.    Multiple women informed the Las Vegas Police Investigator that they

personally saw DEFENDANT GOLDEN with GHB[5] and other illicit substances on

multiple occasions, and they believe those substances supplied by DEFENDANT

GOLDEN were used to drug them so that they could be sexually assaulted at

DEFENDANT eXp REALTY Recruitment Events.  Many of these women also informed

the Las Vegas investigator that DEFENDANT GOLDEN was a participant in the sexual

assaults that occurred at DEFENDANT eXp REALTY Recruitment Events.

98.    As part of its investigation and as detailed in the Warrant, several victims are

aware that DEFENDANT BJORKMAN and DEFENDANT GOLDEN made videos of

their sexual assaults.

---

[5] GHB (Gamma-Hydroxybutyric Acid) is commonly known as the "date rape drug.  It comes in a liquid or as a white powder that is
dissolved in water, juice, or alcohol.  In liquid form, GAB is clear and colorless.  When taken, it can cause hallucinations, euphoria,
drowsiness, decreased anxiety, excited and aggressive behavior.  Overdose symptoms include unconsciousness, seizures,
slowed heart rate, greatly slowed breathing, lower body temperature, vomiting, nausea, coma, and death.  Source:
https://www.dea.gov/factsheets/ghb-gamma-hydroxybutyric-acid

GHB's liquid form allows it to be slipped into drinks, and its sedative effects prevent victims from resisting sexual assault.
GHB can also cause amnesia, meaning that when people recover from the drug's effects, they may not remember what
happened.  https://www.camh.ca/en/health-info/mental-illness-and-addiction-
index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,symptoms%20if%20they
%20abruptly%20stop%20using%20the%20drug

SECOND AMENDED COMPLAINT FOR DAMAGES

99.     DEFENDANT BJORKMAN and DEFENDANT GOLDEN made it known to many of the women they drugged and assaulted that they had valuable and explicit videos and pictures of the women.

100.    As part of its investigation, the police obtained a search warrant for DEFENDANT GOLDEN's cell phone.  The police conducted a digital extraction of the phone, the results of which remain in police custody.  Upon information and belief, some of the photos and videos recovered from the DEFENDANT GOLDEN's phone contain evidence that supports the allegations set forth in this Complaint.

101.    DEFENDANT BJORKMAN and DEFENDANT GOLDEN would on a regular basis sponsor recruitment events to entice agents to join eXp Realty.  A key part of their recruitment at the direction of DEFENDANT eXp REALTY was to create an image of "success" which consisted of being surrounded by beautiful women whom they could sexually exploit.

102.    DEFENDANT eXp REALTY was aware of these recruitment events, including of what went on at these events, held by DEFENDANT BJORKMAN and DEFENDANT GOLDEN and financially benefitted from them.

103.    Despite knowing of DEFENDANT GOLDEN'S criminal actions, DEFENDANT eXp REALTY took no action to remove DEFENDANT GOLDEN from DEFENDANT eXp REALTY and continued to promote him as one of their respected agents as seen on its website life.exprealty.com.

104.   DEFENDANT eXp REALTY decided to take no action against DEFENDANT GOLDEN because DEFENDANT GOLDEN provided a long line of agents below him without which his upline, consisting of DEFENDANT GOVE and DEFENDANT SANFORD and others in the upline would lose substantial income.

**DEFENDANT BRENT GOVE AND DEFENDANT GLENN SANFORD**

105.   DEFENDANT GOVE is one of eXp REALTY's top recruiters.  According to his own website, DEFENDANT GOVE has close to 20,000 agents in his downline which translates into more than a fifth of all of DEFENDANT eXp REALTY's agents.

106.   DEFENDANT GOVE was aware of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's recruitment events and would often tell other agents that he was living vicariously through DEFENDANT GOLDEN.

107.   DEFENDANT GOVE held his own recruiting events where upon information and belief women were assaulted by DEFENDANT BJORKMAN and/or DEFENDANT GOLDEN who were invited to these events by DEFENDANT GOVE.

108.   DEFENDANT SANFORD is Agent #1. He is the founder of eXp Realty and is at the top of the Revenue Share Pyramid.

109.   When reports of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's criminal conduct became public knowledge a small minority of DEFENDANT eXp REALTY's corporate leadership expressed a strong desire to terminate DEFENDANT BJORKMAN and DEFENDANT GOLDEN's association with DEFENDANT eXp REALTY.

27

110.   Upon information and belief, DEFENDANT GOVE threatened to pull his entire team, one-fifth of the entire company, from DEFENDANT eXp REALTY if DEFENDANT eXp REALTY removed DEFENDANT BJORKMAN AND DEFENDANT GOLDEN from DEFENDANT eXp REALTY.

111.   Upon information and belief, DEFENDANT SANFORD, DEFENDANT GOVE and others came to an agreement whereby they would allow DEFENDANT GOLDEN to remain at DEFENDANT eXp REALTY and continue to promote him and to remove DEFENDANT BJORKMAN from their license but continue to pay him his Revenue Share contrary to their own policies.

112.   DEFENDANT SANFORD had actual knowledge about DEFENDANT BJORKMAN AND DEFENDANT GOLDEN's criminal activities with respect to Jane Does 1, 2, and 3 as well as others; this was made public by a Facebook post in September 2020, but on information and belief, actual knowledge predated this post.

113.   Upon information and belief, when DEFENDANT eXp REALTY and DEFENDANT SANFORD knew about the multiple assaults, he was asked what would he do when this came out publicly. DEFENDANT SANFORD's response was to say, so what, it is only going to be in the news cycle for 3-5 days, and nothing will happen.

114.   Rather than conducting a legitimate investigation into the Plaintiffs' complaints regarding DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT GOVE AND DEFENDANT SANFORD

SECOND AMENDED COMPLAINT FOR DAMAGES

did a cost benefit analysis and decided it made economic sense to continue to pay DEFENDANT GOLDEN AND DEFENDANT BJORKMAN.

115.    DEFENDANT GOVE AND DEFENDANT SANFORD repeatedly acted as if they were hearing the assault complaints for the first time even though they were personally made aware repeatedly through the proper chain of command and direct communications about these assaults over the years. They put monetary gain over the wellbeing of the PLAINTIFFS.

116.    DEFENDANT SANFORD, DEFENDANT GOVE, DEFENDANT BJORKMAN and DEFENDANT GOLDEN gaslit the Plaintiffs in concert, shaming and blaming the Plaintiffs, holding these horrific moments over their heads.[6]

117.    By choosing to allow DEFENDANT GOLDEN AND DEFENDANT BJORKMAN's behavior to go unchecked for years simply so they could continue to reap the financial benefits provided by DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT GOVE and DEFENDANT SANFORD were complicit in allowing assaults to occur.

118.    The DEFENDANTS, acting with a common purpose to recruit new agents, to maintain downlines, financially benefitted from allowing this behavior to occur.

---

[6] Due to the drugging and gaslighting, Plaintiffs' state law causes of action are tolled based on their delayed discovery.

SECOND AMENDED COMPLAINT FOR DAMAGES

119.    Additionally, DEFENDANT eXp REALTY attempted to cover up the criminal conduct of DEFENDANTS BJORKMAN and GOLDEN through the attempted use of Non-Disclosure Agreements.

120.    Upon information and belief, DEFENDANT GOVE actively attempted to solicit agents to make false statements to extricate DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

## LEGAL BACKGROUND

### 18 U.S.C. § 1591

121.    The federal sex trafficking statute, 18 U.S.C. § 1591, outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States. It is to be construed expansively because it serves a remedial purpose and uses intentionally broad language.

122.    The federal sex trafficking statute, 18 U.S.C. § 1591(a), criminalizes any person acting in interstate or foreign commerce, or within the territorial or maritime jurisdiction of the United States, who knowingly:

(1)    recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;

(2)    benefits, financially or by receiving anything of value, from participation in a [sex trafficking] venture which has engaged in an act described in violation of paragraph (1);

knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, …

123.   18 U.S.C. § 1591(d) criminalizes "obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of this section."

124.   18 U.S.C. § 1595, provides a civil remedy to victims of sex trafficking crimes, including violations of 18 U.S.C. § 1591(a) and § 1591(d), against the perpetrator of such crimes and against anyone else who knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in a sex trafficking crime. 18 U.S.C. §1595(a).

## ALLEGATIONS RELATING TO PLAINTIFFS

### *Fabiola Acevedo*

125.   In early 2018, during a real estate networking event, DEFENDANT GOLDEN first began trying to recruit Ms. Acevedo to join DEFENDANT eXp REALTY.

126.   DEFENDANT GOLDEN explained to Ms. Acevedo that if she joined DEFENDANT eXp REALTY, it was important whom she chose as her Sponsor Agent as this person would provide her with important connections and coaching to help her grow her real estate business.

127.   Ms. Acevedo had known DEFENDANT GOLDEN as a leader in the real estate business for some time and trusted him and his guidance.

128.   After many conversations with DEFENDANT GOLDEN, Ms. Acevedo decided she wanted to join DEFENDANT eXp REALTY and have DEFENDANT GOLDEN as her Sponsor Agent.

129.   A contract was sent to Ms. Acevedo to join DEFENDANT eXp REALTY and Ms. Acevedo named DEFENDANT GOLDEN as her Sponsor Agent.  Soon after, DEFENDANT GOLDEN recalled the contract and told Ms. Acevedo that instead of naming DEFENDANT GOLDEN as her Sponsor Agent, she should name DEFENDANT BJORKMAN as her Sponsor Agent telling Ms. Acevedo that it would be better for her professional growth to have two Sponsor Agents, DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

130.   DEFENDANT GOLDEN then explained to Ms. Acevedo that DEFENDANT BJORKMAN had already purchased tickets to a real estate networking event hosted by the Closing Table at the Pelican Hill Hotel in Pelican Hill, California on July 20-22, 2018 and that it would be good for her career to go to this event as DEFENDANT BJORKMAN'S guest.

131.   Arriving a day before the start of the conference, DEFENDANT GOLDEN's (and DEFENDANT eXp REALTY's) Sponsor Agent, Rosie Rodriguez invited Ms. Acevedo to tour her eXp REALTY office and stay the night at her guest house.

SECOND AMENDED COMPLAINT FOR DAMAGES

132.   The next day, on July 20, 2018, Ms. Rodriguez dropped off PLAINTIFF ACEVEDO at the Pelican Hill Hotel for the networking conference. During the drive, Ms. Rodriguez and DEFENDANT GOLDEN were on a phone conference call and DEFENDANT GOLDEN. PLAINTIFF ACEVEDO made DEFENDANT GOLDEN aware that she was in the car with Ms. Rodriguez.

133.   Upon checking in, the hotel informed PLAINTIFF ACEVEDO that she did not have a room reserved in her name and that the hotel was sold out and there were no more rooms available. Upset, PLAINTIFF ACEVEDO called DEFENDANT GOLDEN about the lack of accommodations.  DEFENDANT GOLDEN told her to stay in DEFENDANT BJORKMAN's hotel room, that she could trust him, that they were "family".

134.   Based on a long-term platonic friendship with DEFENDANT GOLDEN, PLAINTIFF ACEVEDO trusted him and agreed to stay in DEFENDANT BJORKMAN's room which had separate beds.

135.   That evening, PLAINTIFF ACEVEDO had a single cocktail with DEFENDANT BJORKMAN and others at the hotel bar. Thereafter, she remembers nothing until the next morning whereupon she awoke naked in DEFENDANT BJORKMAN'S hotel room.  Another woman and DEFENDANT BJORKMAN were in the other bed naked.  Another man was on the floor clothed.

136.    Disoriented and in shock, PLAINTIFF ACEVEDO ran to the bathroom to shower only to have DEFENDANT BJORKMAN come into the bathroom naked, exposing himself to her and attempting to engage her in inappropriate sexual contact.

137.    The day the conference started, July 20, 2018, DEFENDANT eXp REALTY sent PLAINTIFF ACEVEDO a new offer to join DEFENDANT eXp REALTY.  Uncertain and confused about the events at the conference, PLAINTIFF ACEVEDO signed the agreement on July 23, 2018, naming DEFENDANT BJORKMAN as her Sponsor Agent.

138.    All DEFENDANT eXp REALTY Agents that participate in DEFENDANT eXp REALTY's Revenue Share pyramid have an "upline."  PLAINTIFF ACEVEDO's eXp REALTY "upline" is as follows:

| Level | eXp Sponsor Agent |
|-------|-------------------|
| TIER 7 | Sheila Fejeran |
| TIER 6 | Colby Anne Casoria |
| TIER 5 | Brent Gove |
| TIER 4 | Rick Geha |
| TIER 3 | Rosie Rodriguez |
| TIER 2 | David Golden |
| TIER 1 | Michael Bjorkman |

139.    As a result of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture, PLAINTIFF ACEVEDO was deeply traumatized and unable to work as a real estate agent.  However, she continued to pay all fees required by DEFENDANTS.

140.    On March 7, 2022, PLAINTIFF ACEVEDO attended a conference where she saw and spoke to DEFENDANT SANFORD, current CEO of DEFENDANT eXp

REALTY about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents based on his position as the CEO of DEFENDANT eXp REALTY, DEFENDANT SANFORD did nothing to assist PLAINTIFF ACEVEDO and acted as if he was hearing about their behavior for the very first time, thus gaslighting PLAINTIFF ACEVEDO.

141.   On or about June 9, 2022, PLAINTIFF ACEVEDO spoke with Jason Gesing, who at that time was the CEO of DEFENDANT eXp REALTY, about the 2018 incident and what she experienced thereafter.  Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents from his position as the CEO of DEFENDANT eXp REALTY, Mr. Gesing did nothing to assist PLAINTIFF ACEVEDO.

142.   In addition to not receiving any substantive help from either DEFENDANT SANFORD or Gesing, PLAINTIFF ACEVEDO reached out to multiple people at DEFENDANT eXp REALTY asking for assistance.  No substantive help was provided to PLAINTIFF ACEVEDO.

### Plaintiff Sims

143.   PLAINTIFF SIMS is a real estate agent and former business partner with DEFENDANT BJORKMAN.

144.   After DEFENDANT BJORKMAN joined DEFENDANT eXp REALTY, DEFENDANT BJORKMAN recruited PLAINTIFF SIMS to join DEFENDANT eXp

REALTY.  Initially, she refused to join because she knew if she named DEFENDANT

BJORKMAN as her Sponsor Agent, DEFENDANT GOLDEN would be in her "upline."

145.   PLAINTIFF SIMS was weary to have DEFENDANT GOLDEN in her upline

because DEFENDANT BJORKMAN would constantly tell her that DEFENDANT

GOLDEN was a "dirtbag" and a "rapist."  DEFENDANT BJORKMAN also told

PLAINTIFF SIMS that despite DEFENDANT GOLDEN's moral failings, he felt that he

owed DEFENDANT GOLDEN.

146.   After incessant recruiting efforts, PLAINTIFF SIMS agreed to join

DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor

Agent.  DEFENDANT BJORKMAN told PLAINTIFF SIMS in multiple communications

were 50/50 partners and that they would divide the Revenue Share, Stock and any financial

gain from eXp 50/50.

147.   PLAINTIFF SIMS's DEFENDANT eXp REALTY "upline" is as follows:

| Level | eXp Sponsor Agent |
|---|---|
| TIER 7 | Sheila Fejeran |
| TIER 6 | Colby Anne Casoria |
| TIER 5 | Brent Gove |
| TIER 4 | Rick Geha |
| TIER 3 | Rosie Rodriguez |
| TIER 2 | David Golden |
| TIER 1 | Michael Bjorkman |

148.   On April 11, 2019, PLAINTIFF SIMS attended a real estate networking event

hosted by The Closing Table at a hotel in Beverly Hills, CA for the purpose of learning

during the day and recruiting real estate agents to join DEFENDANT eXp REALTY at night.

149.    PLAINTIFF SIMS and DEFENDANT BJORKMAN went to the dinner with other conference attendees.  PLAINTIFF SIMS had a single glass of wine at dinner.

150.    After dinner, PLAINTIFF SIMS went to the hotel bar and had one drink.

151.    Later that evening, one of the event hosts invited everyone to his room for a get-together.  PLAINTIFF SIMS didn't want to go to the event but felt pressured to network and recruit other agents to join DEFENDANT eXp REALTY since that was the purpose of the trip.

152.    When they arrived at the host's room, DEFENDANT BJORKMAN handed her a drink.

153.    Shortly thereafter, PLAINTIFF SIMS blacked out until the next morning when she woke up naked and alone in her hotel room.  The room was in disarray, and she could tell room service had been there, but she had spotty memory of it and was trying to decipher what had occurred.

154.    She immediately went to the bathroom.  She felt sick, saw blood from her vagina and experienced pain.

155.    Soon after, the phone rang, and it was DEFENDANT BJORKMAN calling her.  By this time, she was starting to get flashes of memories from the night before. PLAINTIFF SIMS immediately asked DEFENDANT BJORKMAN, "What happened? What did you do?"   She accused him of having sex with her.  Rather than admit that they

had sexual intercourse, DEFENDANT BJORKMAN gaslit her and repeatedly told her that she was crazy and that nothing happened.

156.    Later that day, PLAINTIFF SIMS told DEFENDANT BJORKMAN that she thinks she was "roofied" the night before.  DEFENDANT BJORKMAN replied that he must have been "roofied" as well and continued to gaslight her, telling her that she was crazy and that nothing happened.

157.    A few days after she was raped, DEFENDANT BJORKMAN sent her a video from the night of the rape in an effort to "prove" she was drunk.  The video shows that PLAINTIFF SIMS was hallucinating and acting completely out of character.   Despite having only three (3) drinks during the entire evening, PLAINTIFF SIMS has no memories of the events depicted in the video.

158.    On April 27, 2019, PLAINTIFF SIMS and DEFENDANT BJORKMAN traveled from California to San Antonio, Texas for another real estate networking event (hosted by a networking group called "Club Wealth") to recruit agents to join DEFENDANT eXp REALTY.

159.    While in San Antonio, PLAINTIFF SIMS was still questioning her sanity and would repeatedly ask DEFENDANT BJORKMAN if he had assaulted her/penetrated her while she was incapacitated at the last event they attended.

160.    After repeated questioning, DEFENDANT BJORKMAN finally admitted that they did have sex at the last event.  He told her he lied because he didn't want to "embarrass" her.  DEFENDANT BJORKMAN went on to explain that PLAINTIFF SIMS

38

was "fucked up" and out of control, was hitting on him and was all over him.
DEFENDANT BJORKMAN did not confess that he had drugged her which is why she
was behaving so out of character.

161.    At that moment, PLAINTIFF SIMS decided she would start the difficult
process of leaving the business they had built together, but because of their business and
financial entwinement, she knew it would take some time before she could completely
distance herself from him.

162.    PLAINTIFF SIMS considered at that point reporting him to the authorities but
thought no one would believe her.  She did confide in some friends about what had
happened.

163.    As soon as she was able to do so, PLAINTIFF SIMS severed all ties with
DEFENDANT BJORKMAN.

164.    As a result of being drugged/rendered incapacitated and being assaulted,
PLAINTIFF SIMS has suffered extreme emotional distress, has PTSD and has lost
business opportunities which significantly impacted her income.

165.    After hearing that other eXp Agents had a similar experience of being drugged
and raped by DEFENDANT BJORKMAN and/or DEFENDANT GOLDEN, PLAINTIFF
SIMS reported the assault by DEFENDANT BJORKMAN in or around October 6, 2020 to
Cory Haggard, a member of the eXp executive leadership.   During that call, Plaintiff Sims
reported to eXp her upline agents' wrongdoing, including but not limited to the following:

- In or around 2014, DEFENDANT BJORKMAN told her to stay away from DEFENDANT GOLDEN because he will drug you and rape you;
- DEFENDANT BJORKMAN showed her videos of DEFENDANT GOLDEN where he was completely naked performing sex acts with women;
- DEFENDANT BJORKMAN and DEFENDANT GOLDEN used their recruitment parties to bring agents into eXp;
- In February 2019, DEFENDANT BJORKMAN was trying to recruit an agent who was drugged and paramedics were called and took her to a hospital;
- DEFENDANT BJORKMAN and DEFENDANT GOLDEN would get people drunk and then get them to sign to join eXp.

166. PLAINTIFF SIMS repeatedly requested to be moved from DEFENDANT GOLDEN and DEFENDANT BJORKMAN's line. After months of these repeated requests, they agreed to move her but refused to pay her the part of the Revenue Share they were sending to DEFENDANT BJORKMAN.

### *Plaintiff Lundy*

167. PLAINTIFF LUNDY was invited to attend an eXp REALTY Recruiting Event at the Wynn and Encore Hotel and Casino in Las Vegas, NV, from August 27, 2020 to August 30, 2020. The event was hosted by DEFENDANT GOLDEN and DEFENDANT BJORKMAN as an eXp recruiting event.

168. On Friday, August 28, 2020, PLAINTIFF LUNDY and other attendees took an event-provided bus from their hotel to an eXp REALTY Recruitment Event held at the guest speaker, Jon Cheplak's house, in Henderson, NV. Attending the event were many DEFENDANT eXp REALTY real estate agents, including DEFENDANT GOVE.

40

169.    Discussed at this eXp REALTY Recruitment Event was Agent Attraction and DEFENDANT eXp REALTY's Revenue Share pyramid.

170.    After the event, the bus returned them to their hotel (Wynn).  PLAINTIFF LUNDY and a couple of friends planned on going to dinner that evening but first, they wanted to stop by a get-together held by two of the event's hosts, DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

171.    That evening, DEFENDANT BJORKMAN and DEFENDANT GOLDEN held the get-together inside of their suite, at the Encore Hotel and Casino.  DEFENDANT BJORKMAN and DEFENDANT GOLDEN invited event attendees to their suite for drinks, snacks, and to hang out that evening.

172.    After arriving, PLAINTIFF LUNDY poured herself one cup of vodka and soda water, which she sipped during the event.

173.    PLAINTIFF LUNDY continually added soda water to the drink and never added more vodka.  This was the only alcoholic beverage she drank over the course of the entire evening, and she did not finish the entire drink.

174.    After the party, PLAINTIFF LUNDY and some of her friends left for Caesar's Palace where they had dinner.

175.    PLAINTIFF LUNDY recalls leaving the eXp REALTY Recruiting Event but has very limited memory for the remainder of the evening.

SECOND AMENDED COMPLAINT FOR DAMAGES

176.   While at dinner, PLAINTIFF LUNDY recalls having to excuse herself from the table to go to the bathroom and vomit.  She also recalls sitting at the dinner table but has no memory of leaving the dinner.

177.   PLAINTIFF LUNDY next recalls waking up the next morning with a headache, feeling very groggy and was nude in her own bed in her hotel room.

178.   PLAINTIFF LUNDY has since shared her experience with co-workers who were with her that evening.  Based on her conversations with them she learned that she went to the bathroom multiple times while at dinner, and she was gone for so long that her friends had to go to the restroom to find her.  PLAINTIFF LUNDY has no memory of this happening.

179.   In addition to discussing the evening with her friends, PLAINTIFF LUNDY posted about this experience on her Facebook page but did not publicly provide DEFENDANT BJORKMAN or DEFENDANT GOLDEN's name in the post.  As a result, she discovered that other women associated with DEFENDANT eXp REALTY had been rendered incapacitated, drugged, and sexually assaulted after attending the same and other eXp REALTY Recruiting Events.

180.   After speaking with several people, PLAINTIFF LUNDY realized that she was drugged/rendered incapacitated by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

181.   In addition, on the evening before PLAINTIFF LUNDY was drugged, DEFENDANT BJORKMAN and DEFENDANT GOLDEN rented a cabana at the Wynn

42

hotel pool. As the rest of the party was leaving, DEFENDANT BJORKMAN invited PLAINTIFF LUNDY to stay behind and have a cigarette with him, which she did. He then said that everyone was going back up to the suite, so she followed him. When PLAINTIFF LUNDY got there, it was only DEFENDANT GOLDEN and his girlfriend present. They pressured PLAINTIFF LUNDY to stay and have another drink, but PLAINTIFF LUNDY declined the invitation and returned to her hotel room.

182.    As a result of being drugged/rendered incapacitated and having no memory of the events that happened later, PLAINTIFF LUNDY has suffered extreme emotional distress; has lost business opportunities, including but not limited to, a lucrative position she had coaching other real estate agents, speaking and marketing opportunities. PLAINTIFF LUNDY continues to live in fear of running into DEFENDANT BJORKMAN and DEFENDANT GOLDEN at real estate events, so much so that for a significant period of time, she was unable to attend any networking events which significantly impacted her income.

### Jane Doe 3

183.    At all times relevant to this Complaint, JANE DOE 3 was a real estate agent for DEFENDANT eXp REALTY.

184.    In August of 2020, JANE DOE 3 was invited to attend an event in Las Vegas by her Sponsor Agent DEFENDANT BJORKMAN, and his Sponsor Agent DEFENDANT GOLDEN. It was marketed to her as an eXp REALTY Recruiting Event that would be good for her real estate career to attend.

43

185.    On Thursday, August 27, 2020, JANE DOE 3 traveled from Florida to Las Vegas, NV to attend the eXp REALTY Recruiting Event which was held at multiple locations including the Encore Hotel and Casino where JANE DOE 3 had a hotel room.

186.    On Saturday, August 29, 2020, JANE DOE 3 went to DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S hotel suite for another DEFENDANT eXp REALTY group get-together.  JANE DOE 3 remembered DEFENDANT GOLDEN becoming upset during the evening, so she and DEFENDANT BJORKMAN went for a walk on the Las Vegas Strip and gambled at the casino.

187.    After gambling for a while, JANE DOE 3 and DEFENDANT BJORKMAN returned to DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S hotel suite. JANE DOE 3's memory is spotty and limited from this point forward.

188.    JANE DOE 3 does recall being sexually assaulted by DEFENDANT BJORKMAN that evening.

189.    JANE DOE 3 also recalls witnessing both DEFENDANT BJORKMAN and DEFENDANT GOLDEN consume GHB from a plastic "5 Hour Energy" bottle.  They both told her that they take GHB recreationally.7

---

7 People who use GHB regularly can develop tolerance to the effects of the drug.
https://www.camh.ca/en/health-info/mental-illness-and-addiction-index/ghb/#:~:text=People%20who%20use%20GHB%20regularly%20can%20develop%20tolerance,sym
ptoms%20if%20they%20abruptly%20stop%20using%20the%20drug.

190.   A few weeks after the sexual assault, JANE DOE 3 discussed the incident with DEFENDANT GOLDEN.  DEFENDANT GOLDEN encouraged her to lie about it when interviewed by the police.

191.   After the incident, JANE DOE 3 received many threatening messages from people associated with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

192.   Upon information and belief, on or around January of 2021, DEFENDANT GOVE was reaching out to multiple eXp agents requesting that they submit false statements to the Las Vegas investigator to help DEFEDANTS GOLDEN and DEFENDANT BJORKMAN.

193.   On March 3, 2021, JANE DOE 3 directly discussed with DEFENDANT GOVE the assault that occurred in Las Vegas in 2020. DEFENDANT GOVE had been present at the 2020 event and had seen that JANE DOE 3 had been out of her mind which was completely out of character.

194.   On March 3, 2021, she expressed the pain she felt at knowing that leaders at eXp, including DEFENDANT GOVE knew about DEFENDANT GOLDEN and DEFENDANT BJORKMAN'S illegal actions for years prior to her assault and did nothing. During this conversation with JANE DOE 3, DEFENDANT GOVE acted as if he had no idea what she was talking about and kept saying he "hoped it wasn't true" even though she kept telling him it was true and even though he already knew it was true at this time.

45

195.    As a result of this incident, JANE DOE 3 has suffered and continues to suffer from PTSD and extreme emotional distress all of which have negatively impacted and continue to negatively impact every facet of her life.

**ALLEGATIONS RELATING TO DEFENDANT eXp REALTY,
DEFENDANT SANFORD AND DEFENDANT GOVE**

196.    While at eXp REALTY Recruiting Events, DEFENDANT GOLDEN and DEFENDANT BJORKMAN used illegal drugs; surreptitiously drugged and rendered incapacitated other agents and sexually assaulted them and videotaped/photographed their actions. On information and belief, this was known by DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE throughout the duration of their affiliation with DEFENDANT eXp REALTY.

197.    After PLAINTIFF LUNDY and JANE DOE 3 informed DEFENDANT eXp REALTY about what happened to them in Vegas in August 2020, PLAINTIFF SIMS also reported to DEFENDANT eXp REALTY what had happened to her.

198.    PLAINTIFF SIMS requested a Sponsor change so that she no longer had to be in DEFENDANT BJORKMAN and DEFENDANT GOLDEN's downline.

199.    Rather than immediately granting her request, DEFENDANT eXp REALTY resisted because they thought more women would come forward and ask to change their Sponsors upon the basis they were sexually assaulted as well. DEFENDANT eXp REALTY waited several months to make this change.

200.   On March 9, 2021, DEFENDANT BJORKMAN was arrested on two counts of sexual assault.

201.   Upon information and belief, certain members of the Leadership Team and/or Board of Directors suggested ways in which DEFENDANT eXp could help the sexual assault survivors which included switching their sponsors so they would not be forced to pay up to their assailants, allowing them to be heard by Leadership, and creating a safe space for reporting. DEFENDANT SANFORD explicitly rejected these requests.

202.   Moreover, on information and belief, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct DEFENDANT eXp REALTY Board Member, Gene Frederick continued to socialize publicly with DEFENDANT BJORKMAN and DEFENDANT GOLDEN.



*Picture dated December 30, 2021, posted on Facebook (From left to right, Michael DEFENDANT BJORKMAN, David DEFENDANT GOLDEN, Gene Frederick)*

SECOND AMENDED COMPLAINT FOR DAMAGES

203.   Similarly, after having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S illegal conduct, DEFENDANT eXp REALTY (former) CEO Jason Gesing and DEFENDANT GOVE continue to work closely with DEFENDANT GOLDEN.



*Photo dated April 12, 2022, posted on DEFENDANT GOLDEN's publicly accessible Facebook Account*

204.   When JANE DOE 3 complained to DEFENDANT eXp REALTY about the August 2020 Vegas incident and sought assistance from DEFENDANT eXp REALTY, Gene Frederick, an eXp REALTY board member was heard saying, "[Jane Doe 3] wants [DEFENDANT GOLDEN] fired, and we all know that's not going to happen."

SECOND AMENDED COMPLAINT FOR DAMAGES

205. On March 7, 2022, PLAINTIFF ACEVEDO attended a conference where she saw and spoke to DEFENDANT SANFORD current CEO of DEFENDANT eXp REALTY about the 2018 incident and what she experienced thereafter. Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents based on his position as the CEO of DEFENDANT eXp REALTY, DEFENDANT SANFORD did nothing to assist Ms. Acevedo.

206. On or about June 9, 2022, PLAINTIFF ACEVEDO spoke with Jason Gesing, who at that time was the CEO of DEFENDANT eXp REALTY, about the 2018 incident and what she experienced thereafter. Despite already knowing about DEFENDANT BJORKMAN's and DEFENDANT GOLDEN's pattern and practice of predatory sexual conduct toward DEFENDANT eXp REALTY agents from his position as the CEO of DEFENDANT eXp REALTY, Mr. Gesing did nothing to assist PLAINTIFF ACEVEDO.

207. In addition to not receiving any substantive help from either DEFENDANT SANFORD or Gesing, PLAINTIFF ACEVEDO reached out to multiple people at DEFENDANT eXp REALTY asking for assistance. No substantive help was provided to PLAINTIFF ACEVEDO.

208. Upon information and belief, another eXp REALTY agent, not named in this Complaint, informed eXp REALTY that she was raped by DEFENDANT GOLDEN and requested that he no longer be her Sponsor Agent. DEFENDANT eXp REALTY flatly denied her request.

49

209.   DEFENDANT eXp REALTY knew or should have known of DEFENDANT BJORKMAN'S and DEFENDANT GOLDEN'S Venture, yet rather than terminating DEFENDANT BJORKMAN and DEFENDANT GOLDEN, DEFENDANT eXp REALTY elected to continue to ignore pleas from other eXp agents who'd been assaulted and profit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN and their downline.

210.   DEFENDANT eXp REALTY, despite knowing of DEFENDANT BJORKMAN and DEFENDANT GOLDEN'S Venture, chose to financially benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN's Venture and continues to receive value from the relationships even today. In the same vein, after allegations of sexual harassment against a past President of DEFENDANT eXp REALTY, DEFENDANT eXp REALTY silenced and in certain instances terminated women who had knowledge and complained about this behavior.

## Count I
### Violation of 18 U.S.C. § 1591
**All Plaintiffs Against DEFENDANT MICHAEL BJORKMAN**

211.   Plaintiffs reallege paragraphs 1 to 210 as if fully set forth herein.

### *Fabiola Acevedo*

212.   DEFENDANT BJORKMAN caused PLAINTIFF ACEVEDO to travel from Florida to California to be his guest at a real estate networking event for the purpose of recruiting, enticing, or soliciting PLAINTIFF ACEVEDO to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

50

213.   DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated PLAINTIFF ACEVEDO for the purpose of engaging her in a sex act.

214.   DEFENDANT BJORKMAN attempted to engage PLAINTIFF ACEVEDO in a sex act.

215.   Upon leaving the event, confused about what had happened, PLAINTIFF ACEVEDO joined DEFENDANT eXp REALTY naming DEFENDANT BJORKMAN as her Sponsor Agent based on the promises from DEFENDANT BJORKMAN that he would help her with her real estate career.

### Plaintiff Sims

216.   DEFENDANT BJORKMAN caused PLAINTIFF SIMS to travel from California to multiple states to attend eXp REALTY Recruiting Events for the purpose of recruiting other real estate agents to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

217.   DEFENDANT BJORKMAN surreptitiously drugged and caused PLAINTIFF SIMS to be incapacitated for the purpose of engaging her in a sex act and causing her to engage in a sex act without her consent.

218.   BJORKMAN surreptitiously took highly valuable videos and pictures of PLAINTIFF SIMS while she was drugged without her consent.

### Plaintiff Lundy

219.   DEFENDANT BJORKMAN caused PLAINTIFF LUNDY to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of

recruiting, enticing, or soliciting PLAINTIFF LUNDY to join DEFENDANT eXp REALTY and name DEFENDANT BJORKMAN as her Sponsor Agent.

220.    DEFENDANT BJORKMAN surreptitiously drugged and rendered incapacitated PLAINTIFF LUNDY for the purpose of engaging her in a sex act.

221.    After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his downline continued to try to recruit PLAINTIFF SIMS to select DEFENDANT BJORKMAN or a member of his downline as her Sponsor Agent.  Although PLAINTIFF LUNDY did eventually decide to join DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

**Jane Doe 3**

222.    DEFENDANT BJORKMAN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

223.    DEFENDANT BJORKMAN surreptitiously drugged and rendered JANE DOE 3 incapacitated for the purpose of engaging her in a sex act and caused her to engage in a sex act without her consent.

224.    After the event, DEFENDANT BJORKMAN gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

## Count II
### Violation of 18 U.S.C. § 1591
### All Plaintiffs Against DEFENDANT DAVID GOLDEN

225.    Plaintiffs reallege paragraphs 1 to 224 as if fully set forth herein.

### *Plaintiff Acevedo*

226.    DEFENDANT GOLDEN caused PLAINTIFF ACEVEDO to travel from Florida to California to be DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN'S, guest at a real estate networking event for the purpose of recruiting, enticing. or soliciting PLAINTIFF ACEVEDO to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN'S downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

227.    DEFENDANT GOLDEN enticed PLAINTIFF ACEVEDO to stay with DEFENDANT BJORKMAN, knowing DEFENDANT BJORKMAN would attempt to drug and render her incapacitated so he could sexually assault PLAINTIFF ACEVEDO.

228.    DEFENDANT BJORKMAN surreptitiously drugged PLAINTIFF ACEVEDO for the purpose of engaging her in a sex act.

229.    DEFENDANT BJORKMAN attempted to engage PLAINTIFF ACEVEDO in a sex act.

230.    Upon leaving the event, PLAINTIFF ACEVEDO joined DEFENDANT eXp REALTY naming DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent based on the promises from DEFENDANT

SECOND AMENDED COMPLAINT FOR DAMAGES

BJORKMAN that he and DEFENDANT GOLDEN would help her with her real estate career.

### *Plaintiff Lundy*

231.    DEFENDANT GOLDEN caused PLAINTIFF LUNDY to travel from California to Nevada to attend an eXp REALTY Recruiting Event for the purpose of recruiting, enticing or soliciting PLAINTIFF LUNDY to join DEFENDANT eXp REALTY and name DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, as her Sponsor Agent.

232.    DEFENDANT BJORKMAN surreptitiously drugged PLAINTIFF LUNDY rendering her incapacitated for the purpose of engaging her in a sex act with drugs supplied by DEFENDANT GOLDEN.

233.    After the eXp REALTY Recruiting Event, DEFENDANT BJORKMAN and his upline continued to try to recruit PLAINTIFF SIMS to select DEFENDANT BJORKMAN as her Sponsor Agent.  Although PLAINTIFF LUNDY did eventually decide to join DEFENDANT eXp REALTY, she selected another individual not associated with DEFENDANT BJORKMAN or his upline as her Sponsor Agent.

### *Jane Doe 3*

234.    DEFENDANT GOLDEN caused JANE DOE 3 to travel from Florida to Nevada to attend an eXp REALTY Recruiting Event for the purpose of assisting JANE DOE 3 with her real estate career.

235.   With drugs supplied by DEFENDANT GOLDEN, DEFENDANT BJORKMAN surreptitiously drugged JANE DOE 3 for the purpose of rendering her incapacitated so he could engage her in a sex act and cause her to engage in a sex act without her consent.

236.   After the event, DEFENDANT GOLDEN's downline agent, DEFENDANT BJORKMAN, gave JANE DOE 3 a highly valuable Front Line Qualifying Agent.

## Count III

### Participating in a Venture in Violation of 18 U.S.C. §1595
### All Plaintiffs Against DEFENDANT GOLDEN, DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE

237.   Plaintiffs reallege paragraphs 1 to 236 as if fully set forth herein.

238.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN are two of DEFENDANT eXp REALTY's top recruiters, whereby DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE share in the common purpose of allowing DEFEDANT BJORKMAN AND DEFENDANT GOLDEN to recruit in any way necessary to secure and to maintain agents, and thus receive, a direct financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN's recruitment of new agents into all of their common downline.

239.   DEFENDANT GOLDEN receives a financial benefit from DEFENDANT BJORKMAN's downline of Recruited Agents.

240.   DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE knew or should have known that DEFENDANT GOLDEN and

55

DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events.

241.   DEFENDANT GOLDEN knew that DEFENDANT BJORKMAN used drugs to sexually assault other eXp REALTY real estate agents and prospective eXp REALTY real estate agents at eXp REALTY Recruitment Events

242.   After having actual knowledge of DEFENDANT BJORKMAN and DEFENDANT GOLDEN's illegal conduct, DEFENDANT eXp REALTY, DEFENDANT SANFORD AND DEFENDANT GOVE continued to endorse, support and promote DEFENDANT GOLDEN's and DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT BJORKMAN and DEFENDANT GOLDEN activities.

243.   After having actual knowledge of DEFENDANT BJORKMAN's illegal conduct, DEFENDANT GOLDEN continued to endorse, support and promote DEFENDANT BJORKMAN's recruiting efforts as a means to continue receiving a financial benefit from DEFENDANT GOLDEN activities.

## Count IV
### Sexual Battery
### Plaintiffs Acevedo, Sims, and Jane Doe 3 Against DEFENDANT BJORKMAN

244.   Plaintiffs reallege paragraphs 1 to 242 as if fully set forth herein.

56

245.   Through his conduct, DEFENDANT BJORKMAN placed PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3 in a state of perpetual fear of imminent, unwanted, physical, and sexual contact.

246.   Through conduct including, but not limited to, the conduct describing the sexual assault of PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3, DEFENDANT BJORKMAN intentionally and unlawfully touched PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3 without their consent.  This unwanted and unlawful, sexual physical touching caused PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3 to suffer great anxiety about the possibility of further unwanted sexual touching and sexual assault.

247.   PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3 did not consent to this contact.

248.   As a result of DEFENDANT BJORKMAN's conduct, PLAINTIFF ACEVEDO, PLAINTIFF SIMS, and JANE DOE 3 suffered legally compensable harm including pain and suffering, loss of enjoyment of life, mental anguish, injury to reputation, humiliation, emotional distress damages, and costs of medical treatment necessary to address the psychological damages caused by DEFENDANT BJORKMAN's conduct.

## Count V
### Civil Battery
### Plaintiffs Acevedo, Sims, and Lundy Against DEFENDANT BJORKMAN

249.   Plaintiffs reallege paragraphs 1 to 248 as if fully set forth herein.

57

250.    Through his conduct, DEFENDANT BJORKMAN intentionally placed a drug in the Plaintiffs' drink without their knowledge or consent with the intent to harm/touch and did harm/touch Plaintiffs.

251.    By placing a drug in the Plaintiffs' drinks, DEFENDANT BJORKMAN, caused the Plaintiffs to unknowingly ingest the drug and be touched for which they did not consent.

252.    DEFENDANT BJORKMAN caused Plaintiffs to suffer harm and offense through the unwanted touching.

253.    DEFENDANT BJORKMAN'S actions in causing Plaintiffs to consume a drug without their knowledge or consent and be touched which would be offensive to a reasonable person.

254.    As a direct and proximate result of DEFENDANT BJORKMAN's actions, Plaintiffs have suffered losses including, but not limited to, past and future medical expenses, loss of income, pain and suffering, mental anguish, embarrassment, humiliation, and emotional distress.

255.    In causing the Plaintiffs to consume a drug without their knowledge or consent, DEFENDANT BJORKMAN acted intentionally, for an evil motive, and with reckless indifference Plaintiffs' right to be free from harmful or offensive contact. Accordingly, Plaintiffs are entitled to punitive damages in addition to economic and noneconomic relief.

### Count VI

### Civil Battery

### Plaintiff Lundy Against DEFENDANT GOLDEN

256.    Plaintiffs reallege paragraphs 1 to 255 as if fully set forth herein.

257.    Through his conduct, DEFENDANT GOLDEN intentionally placed a drug in PLAINTIFF LUNDY'S drinks without her knowledge or consent with the intent to harm/touch and caused Plaintiff to be touched.

258.    By placing a drug in PLAINTIFF LUNDY'S drinks, DEFENDANT GOLDEN, caused PLAINTIFF LUNDY to unknowingly ingest the drug and be touched for which they did not consent.

259.    DEFENDANT GOLDEN caused PLAINTIFF LUNDY to suffer harm and offense through the unwanted touching.

260.    DEFENDANT GOLDEN'S actions in causing PLAINTIFF LUNDY to consume a drug without her knowledge or consent and be touched which would be offensive to a reasonable person.

261.    As a direct and proximate result of DEFENDANT GOLDEN's actions PLAINTIFF LUNDY has suffered losses including, but not limited to, past and future medical expenses, loss of income, pain and suffering, mental anguish, embarrassment, humiliation, and emotional distress.

262.    In causing PLAINTIFF LUNDY to consume a drug without her knowledge or consent, DEFENDANT GOLDEN acted intentionally, for an evil motive, and with

reckless indifference to PLAINTIFF LUNDY'S right to be free from harmful or offensive contact. Accordingly, PLAINTIFF LUNDY is entitled to punitive damages in addition to economic and noneconomic relief.

## Count VII
### Intentional Infliction of Emotional Distress
### All Plaintiffs Against DEFENDANT BJORKMAN

263.   Plaintiffs reallege paragraphs 1 to 262 as if fully set forth herein.

264.   DEFENDANT BJORKMAN's conduct toward the Plaintiffs was extreme and outrageous.

265.   DEFENDANT BJORKMAN intentionally caused Plaintiffs emotional distress by subjecting them to forceful sexual touching and assault, or other actions taken with reckless disregard of Plaintiffs' emotional well-being.

266.   As a result of DEFENDANT BJORKMAN's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT BJORKMAN.

267.   DEFENDANT BJORKMAN's conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

## Count VIII

### Intentional Infliction of Emotional Distress

### Plaintiffs Acevedo, Sims, and Lundy Against DEFENDANT GOLDEN

268.    Plaintiffs reallege paragraphs 1 to 267 as if fully set forth herein.

269.    DEFENDANT GOLDEN's conduct toward the Plaintiffs was extreme and outrageous.

270.    DEFENDANT GOLDEN intentionally caused Plaintiffs emotional distress by subjecting them to forceful sexual touching and assault, or other actions taken with reckless disregard of Plaintiffs' emotional well-being.

271.    As a result of DEFENDANT GOLDEN's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT GOLDEN.

272.    DEFENDANT GOLDEN's conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

## Count IX
### Intentional Infliction of Emotional Distress
### Plaintiffs Acevedo, Sims, and Lundy Against DEFENDANT GOVE

273.    Plaintiffs reallege paragraphs 1 to 272 as if fully set forth herein.

274.    DEFENDANT GOVE's conduct toward the Plaintiffs was extreme and outrageous.

275.    DEFENDANT GOVE intentionally caused Plaintiffs emotional distress by publicly socializing with DEFENDANT BJORKMAN and DEFENDANT GOLDEN after he was personally told by multiple plaintiffs that DEFENDANT BJORKMAN AND DEFENDANT GOLDEN drugged and assaulted them.

276.    DEFENDANT GOVE intentionally caused Plaintiffs emotional distress by continuing to support publicly DEFENDANT BJORKMAN AND DEFENDANT GOLDEN after he was personally told by multiple plaintiffs that DEFENDANT BJORKMAN AND DEFENDANT GOLDEN drugged and assaulted them.

277.    Upon information and belief, DEFENDANT GOVE intentionally caused Plaintiffs' emotional distress by soliciting false statements to be given to the Las Vegas Police Investigator in support of DEFENDANT GOLDEN AND DEFENDANT BJORKMAN to keep his Revenue Share and agent count intact in reckless disregard of Plaintiffs' emotional well-being.

278.    As a result of DEFENDANT GOVE's conduct, the Plaintiffs suffered legally compensable emotional distress damages and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT BJORKMAN and DEFENDANT GOLDEN.

279.    DEFENDANT's conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

## Count X
### Intentional Infliction of Emotional Distress
### Plaintiffs Acevedo, Sims and Lundy Against DEFENDANT SANFORD

280.   Plaintiffs reallege paragraphs 1 to 279 as if fully set forth herein.

281.   DEFENDANT SANFORD's conduct toward the Plaintiffs was extreme and outrageous.

282.   DEFENDANT SANFORD intentionally caused Plaintiffs emotional distress by discounting, dismissing and disregarding Plaintiffs' repeated reports of assault be DEFENDANT BJORKMAN AND DEFENDANT GOLDEN, two of his top recruiting agents.

283.   DEFENDANT SANFORD not only ignored Plaintiffs' pleas for help, but he also made the executive decision as the Chairman of the Board and CEO of eXp World Holdings to allow both DEFENDANT BJORKMAN AND DEFENDANT GOLDEN to continue to receive Revenue Share, have stock vested and participate in eXp events while simultaneously disallowing the Plaintiffs to separate from DEFENDANT GOLDEN AND DEFENDANT's upline, essentially forcing them to pay their assailants.

284.   As a result of DEFENDANT SANFORD's conduct, the Plaintiffs suffered legally compensable emotional distress damages, and are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANT SANFORD.

285.    DEFENDANT's conduct was a substantial factor in causing Plaintiffs severe emotional distress.

## Count XI

### Negligence

### Plaintiffs Acevedo, Sims and Lundy Against All Defendants

### Plaintiff Jane Doe 3 Against Defendant Bjorkman

286.    Plaintiffs reallege paragraphs 1 to 285 as if fully set forth herein.

287.    DEFENDANTS, and each of them, owed a Duty to Plaintiffs.

288.    DEFENDANTS fell below the standard of care required for the reasonable person and resulted in the negligent breach of duties owed to Plaintiffs.

289.    As a result of DEFENDANTS' breach of their duties, Plaintiffs suffered legally compensable emotional distress damages, and they are also entitled to reimbursement for all costs associated with the treatment of the severe emotional distress inflicted by DEFENDANTS.

290.    The DEFENDANTS' negligence was a substantial factor in causing Plaintiffs' serious emotional distress.

## Count XII

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

### All Plaintiffs Against DEFENDANT eXp REALTY and DEFENDANT SANFORD

291.    Plaintiffs reallege paragraphs 1 to 290 as if set forth fully herein.

292.    DEFENDANT eXp REALTY and DEFENDANT SANFORD retained DEFENDANT GOLDEN and DEFENDANT BJORKMAN.

64

293.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN were under the control of DEFENDANT eXp REALTY.

a.   Per the Independent Contractor Agreement ("ICA") DEFENDANT GOLDEN and DEFENDANT BJORKMAN were only allowed to work as "Real Estate Salesperson" or other such equivalent title as the state recognizes (i.e., broker, qualifying broker, principal broker, licensee, etc.) exclusively for the Company". (emphasis added).

b.   With respect to the Sale of Real Estate the Control of eXp included but was not limited to the following: Duties set forth in the ICA related to the sale of home which included listing properties for sale under the eXp Realty brokerage brand, promptly uploading adding all listing contracts, purchase contracts, leases, referrals and any other transaction documentation into the transaction management system within two business days of execution date; the solicitation and marketing necessary to generate new listings or generating new buyers; such other services pertaining to the real estate business of the Company; ensuring all fees, commissions or other compensation earned by Contractor in connection with the sale, lease or rental of real estate and any interest therein or service in relation thereto are made payable to the Company." If an Agent has not completed and closed three residential real estate sales in the state they were licensed in prior to joining eXp they are automatically enrolled in the eXp Mentor Program Agreement.

c.   DEFENDANT GOLDEN and DEFENDANT BJORKMAN were required to use the eXp brand in their marketing and recruiting efforts/emails/communications/branding.

d.   With respect to the REVENUE SHARE PLAN, DEFENDAND GOLDEN and DEFENDANT BJORKMAN were required to follow The Revenue Share Plan guidelines are attached to the ICA and required to be executed and

65

acknowledged by all Agents.

e. DEFENDANT GOLDEN and DEFENDANT BJORKMAN in their employment were required to follow a set of policies in their retention of prospective agents and their ultimate retention. These included, but were not limited to the requirement of a potential new agent to sign an "ICA" with their name listed as the Sponsor; the inability for sponsor change without 100 percent agreement of all agents in an upline and the requirement for each agent to pay an on-time fee of $1,000 to facilitate a change of sponsorship; Monthly fees which included: sign-up Fees, Technology Fee, eXp University Tuition, Broker Review Fee, Risk Management Fee, Transaction Fee, Revenue Share Participation Fee.

f. DEFENDANT GOLDEN and DEFENDANT BJORKMAN, like other agents were automatically enrolled in the eXp Revenue Share Plan, Per Addendum B in the eXp Revenue Share Plan.

g. DEFENDANT GOLDEN and DEFENDANT BJORKMAN, like other agents were required to sign the Agent Equity Program Participation Election Form allowing eXp World Holdings, Inc. to issue shares at their discretion of the restricted common stock to the Company's agents and brokers.

h. DEFENDANT GOLDEN and DEFENDANT BJORKMAN (include section on insurance requirements)

294.    DEFENDANT GOLDEN and DEFENDANT BJORKMAN had the opportunity for profit and loss depending on their managerial skill.

a. DEFENDANT GOLDEN and DEFENDANT BJORKMAN increased profit based on their role as "Apex Agents"

b. Being an "Apex Agent" means being successful in recruiting new agents that they enticed based on their flashy recruiting efforts.

66

295.  eXp could terminate DEFENDANT GOLDEN and DEFENDANT BJORKMAN at will per their ICA.

a.  The "ICA" indicates that there was the potential for "significant financial loss.

b.  "Significant financial loss" is defined to include but not be limited to pending transactions, revenue share and stock awards."

296.  DEFENDANT GOLDEN and DEFENDANT BJORKMAN were required to be licensed Real Estate Agents, but no special skill was required in the recruitment aspect of the multi-level-marketing aspect.

297.  The services rendered by DEFENDANT GOLDEN and DEFENDANT BJORKMAN as "APEX agents" was integral to the eXp business model as discussed supra. Without this role, eXp, and its multi-level marketing model fails.

298.  DEFENDANT GOLDEN and DEFENDANT BJORKMAN were unfit to perform the work for which they were retained.

299.  DEFENDANT eXp REALTY and DEFENDANT SANFORD knew or should have known that DEFENDANT GOLDEN and DEFENDANT BJORKMAN were and/or became unfit and that this unfitness created a particular risk to others. These DEFENDANTS knew of each other well before their employment of DEFENDANT eXp REALTY, as such they knew of should have known about DEFENDANT BJORKMAN and DEFENDANT GOLDEN's behavior prior to hiring. (DEFENDANT SANFORD, DEFENDANT GOVE and DEFENDANT GOLDEN all knew each other from Keller

SECOND AMENDED COMPLAINT FOR DAMAGES

Williams and DEFENDANT GOLDEN knew DEFENDANT BJORKMAN from the Real

Estate Owned market).

300.    DEFENDANT GOLDEN and DEFENDANT BJORKMAN's unfitness

harmed PLAINTIFFS; and

301.    DEFENDANT eXp REALTY and DEFENDANT SANFORD's negligence in

hiring/supervising/and retaining DEFENDANT GOLDEN and DEFENDANT

BJORKMAN was a substantial factor in causing PLAINTIFFS' harm.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.    For past, present, and future general damages in an amount to be determined at

trial;

2.    For past, present, and future special damages, including but not limited to past,

present and future lost earnings, economic damages, and others in an amount to be

determined at trial;

3.    For interest as allowed by law;

4.    For civil penalties as provided by law;

5.    For any applicable costs of said suit;

6.    For any appropriate punitive or exemplary damages; and

7.    For such other and further relief as the Court may deem proper. The amount of

damages sought in this Complaint exceeds the jurisdictional limits of this Court.

SECOND AMENDED COMPLAINT FOR DAMAGES

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2

3          Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Plaintiffs demand a

4    trial by a jury on all of the triable issues of this Complaint.

5    Dated:   February 28, 2024                          Respectfully submitted,

6

7                                              by: **LENZE LAWYERS, PLC**

8                                                  /s/ Jennifer A. Lenze_____

9                                                  Jennifer A. Lenze, Esq.

10                                                **COHEN HIRSCH, LP**

11                                                Brooke F. Cohen, Esq.

12                                                Texas Bar No. 24007019
                                                  brooke@cohenhirsch.com

13                                                Andrea S. Hirsch, Esq.

14                                                GA Bar No. 666557
                                                  andrea@cohenhirsch.com

15                                                *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all counsel of record via ECF this 28TH day of February 2024.

/s/ Jennifer A. Lenze
Jennifer A. Lenze

SECOND AMENDED COMPLAINT FOR DAMAGES