Jennifer A. Lenze, Esq., CA Bar No. 246858
LENZE LAWYERS, PLC
999 Corporate Drive, Suite 100
Ladera Ranch, CA 91765
T: (310) 322-8800
F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019 PHV admitted
Andrea Hirsch, Esq. GA Bar No. 666557 PHV admitted
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for PLAINTIFFS*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FABIOLA ACEVEDO, et al.,** ) | **CASE NO. 2:23-cv-01304-AB-AGR** |
| ) | |
| **Plaintiffs,** ) | **PLAINTIFFS' REPLY IN SUPPORT** |
| ) | **OF MOTION FOR LEAVE TO FILE** |
| **v.** ) | **THIRD AMENDED COMPLAINT** |
| ) | |
| **EXP REALTY, LLC, et al.,** ) | **Hearing Date:  September 26, 2025** |
| ) | **Judge:          Andre Birotte** |
| **Defendants.** ) | |
| _____ ) | |

# **<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ....................................................................................... 1

II. ARGUMENT ............................................................................................ 2

  A. Plaintiffs Were Diligent in Seeking Leave to Amend to Bring a Claim for Fraudulent Misrepresentation...……………………………………..……………2

    1.   The Keating Recording: Defendants' Reliance on the audio file produced by Jennifer Van Burkleo Is Misplaced—It Identifies Ms. Keating's Feelings about eXp's Competence, Not Rule 9(b) Misrepresentations ................................................ 4

    2.   The Haggard Testimony: Defendants' Reliance on the Haggard Excerpt Is Misplaced—It Identifies Policies and Repositories, Not Rule 9(b) Misrepresentations ................................................................. 5

    3.   Once Plaintiffs Knew, Plaintiffs Acted with Diligence. ..................................... 6

  B. Having Satisfied the Diligence Requirement, Plaintiffs Have Also Established Leave Should Be Granted Under 15(A)……………………………..……...8

    1.   Not Futile—Economic-Loss Rule Does Not Bar Intentional Fraud ................. 9

    2.   No Undue Delay ............................................................................. 10

III. CONCLUSION ...................................................................................... 10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Cases

2010 U.S. Dist. LEXIS 148269 (C.D. Cal. Jan. 4, 2010)....................................................8

*Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-cv-00046, 2016 WL 3126108 (E.D. Cal.
June 2, 2016)..............................................................................................................7

*Cornish v. Odyssey Health Care, Inc.*, CV 09-0014, 2009 WL 10671024 (C.D. Cal Sept
22, 2009)....................................................................................................................8

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003) ............................8

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421
(E.D. Cal. Dec. 15, 2006) ..........................................................................................7

*In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716 (9th Cir. 2013)
.............................................................................................................................2, 7

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ............................1

*Lazar v. Superior Court*, 12 Cal. 4th 631(1996) ................................................................9

*Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, No. 2:22-cv-07434-DSF-JEM,
2024 LX 192469 (C.D. Cal. July 26, 2024) ..............................................................7

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991–93 (2004)................9

Rule 16..................................................................................................................................7

Rule 9(b) ....................................................................................................................3, 4, 5, 8

*Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 290 Cal. Rptr. 3d 834 505 P.3d 625
(2022)......................................................................................................................10

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal.
2011)..........................................................................................................................9

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers
Int'l Union ALF-CIO, CLC, v. ConocoPhillips Co.*, No. 08-cv-2068-PSG-FFM, 2009
U.S. Dist. LEXIS 22889, 2009 WL 650730 (C.D. Cal. Mar. 12, 2009) ........................8

**Rules**

Rule 15 ........................................................................................................ 8

Rule 15(a) ............................................................................................... 10

Rule 16(b) ................................................................................... 1, 8, 10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

# I.  INTRODUCTION

Rule 16(b) asks one question: Were Plaintiffs diligent? The record is unequivocal. Plaintiffs began serving discovery into the investigation of Defendants Bjorkman and Golden at the inception of the discovery period and repeatedly served discovery on this topic due to an inability to get a clear response. Plaintiffs met and conferred with the eXp Defendants on innumerable occasions, sought discovery conferences, took Rule 30(b)(6) testimony on how eXp investigates complaints related to sexual misconduct, and vigorously pursued custodial Workplace-Chat productions that the eXp Defendants did not produce until April-July of 2025—fifteen months after the pleading deadline.

Within weeks of receiving the defense-controlled materials, Plaintiffs noticed their intent to amend[1] (June 24, 2025), circulated a redline (July 6, 2025), then received a smoking gun document (July 18, 2025), deposed Cory Haggard about said document (August 20, 2025), revised the TAC and filed (August 29, 2025).[2] This sequence meets the diligence standard under *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609–10 (9th Cir. 1992) and mirrors the posture in which the Ninth Circuit finds good cause when newly produced materials supply

---

[1] It is important to note, Plaintiffs do not seek to modify the global schedule; they only seek leave to file a conforming TAC based on post-deadline evidence that was in eXp's custody and produced more than a year *after* the initial request.

[2] Also, during this April to August 2025 period, Plaintiffs took thirteen (13) depositions.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

missing facts. *See In re Western States Wholesale Natural Gas Antitrust Litig.*, 715
F.3d 716, 737–38 (9th Cir. 2013).

As to ratification, Defendants argue it is not an independent cause of action
but only a theory of vicarious liability. (ECF No. 312 at 11-12). Based on that
representation, Plaintiffs will withdraw their request for leave to add a separate
ratification count. Instead, they will pursue ratification as an alternative liability
theory under existing tort claims and respectfully request that the Court clarify and
deem the proposed ratification count withdrawn as moot, without prejudice to
raising ratification at summary judgment and trial. The TAC already pleads the
operative facts—knowledge, failure to repudiate, and continued benefit—providing
ample notice and leaving Defendants no claim of prejudice. In the alternative, if
the Court prefers a separate vehicle for clarity, Plaintiffs request leave to conform
the pleadings to the proof.

## II. ARGUMENT

### A.    Plaintiffs Were Diligent in Seeking Leave to Amend to Bring a Claim for Fraudulent Misrepresentation

Plaintiffs' proposed fraud claim is not—as the eXp Defendants recast it—
that eXp "fail[ed] to conduct an adequate investigation of Plaintiffs' internal
complaints regarding Bjorkman and Golden." (ECF No. 312 at 6:11–14.) The
claim is that eXp affirmatively misrepresented to Plaintiffs that it was

investigating/had investigated, when, in fact, none occurred, and none was ever

intended. (TAC at 71-82, lines 311-357).

The eXp Defendants argue Plaintiffs "knew" the underlying facts based on a

single reference from the FAC which states:

> Rather than conducting a *legitimate* investigation into the
> Plaintiffs' complaints regarding DEFENDANT BJORKMAN and
> DEFENDANT GOLDEN, DEFENDANT eXp REALTY,
> DEFENDANT GOVE AND DEFENDANT SANFORD did a cost
> benefit analysis and decided it made economic sense to continue to
> pay DEFENDANT GOLDEN AND DEFENDANT BJORKMAN.

FAC (ECF No. 30 Para 78). This language reflected Plaintiffs' belief at that time

that eXp had conducted a flawed, profit-driven investigation. What Plaintiffs did

not and could not allege because they did not know until recently from post-

deadline Workplace chats and testimony: that eXp told Plaintiffs it was

investigating when it was not and never had any intention to investigate Plaintiffs'

complaints. Those are Rule 9(b) particulars that could not be pled until

Defendants' April - July 2025 productions. *See* ECF No. 303-2 (ECF No. 303-2,

Hirsch Decl. ¶¶ 21, 23–26, 28–31).

Alternatively, the eXp Defendants claim Plaintiffs should have known by

May or August 2024 based on (1) a 13-second audio clip of a conversation

between Chief Marketing Officer Courtney Keating and her employee Jennifer

Van Burkleo, and (2) 30(b)(6) testimony of Cory Haggard given on Aug. 27,

2024.[3] However, neither provides Rule 9(b) misrepresentations.

### 2. The Keating Recording: Defendants' Reliance on the audio file produced by Jennifer Van Burkleo Is Misplaced—It Identifies Ms. Keating's Feelings about eXp's Competence, Not Rule 9(b) Misrepresentations

The sole evidence the eXp Defendants use as proof that the Plaintiffs had

knowledge of the facts underlying their fraud claim by May 2024 is a 13 second

audio clip from a recording of a conversation between Courtney Keating and

Jennifer Van Burkleo in which Ms. Keating, *not* Ms. Van Burkleo (as the eXp

Defendants erroneously claimed in their Opposition) states the following:

> Did Fabiola come to me? Yes. Did we, did we pay attention
> to her? Yeah, we did. Do I think we handled it well? Um... I
> don't think we    I think    here's what I think: I think for us
> to say that we handled this well would be a joke.

ECF No. 312 at 7:6-16

For context, Ms. Keating sat on the Agent Compliance Committee. She was

deposed Jan. 10, 2025, but the deposition remains unfinished. (Hirsch Decl. ¶ 2).

---

[3] eXp also seemingly relies on an internal Workplace Chat consisting of Cory Haggard summarizing a call he had with Plaintiff Sims as proof that Plaintiffs knew of eXp's ratification of Defendant Bjorkman as early as March 8, 2021.  (ECF No. 312-1; ¶ 3)  To the extent eXp relies on that Workplace Chat for purposes of establishing notice of fraud, it is important to note that when Ms. Sims testified about the conversation she had with Haggard, she stated the opposite: "Cory led me to believe through those conversations that Mr. Bjorkman was not getting paid the revenue share anymore. He made me believe that it was actually being absorbed by eXp at that time." (Hirsch Decl. ¶ 4).

At her deposition, Ms. Keating admitted she had no real estate knowledge, lacked training for the Committee role, could not recall specifics of any investigation into Plaintiffs' complaints, and did not testify to any statements that could have satisfied the strict Rule 9(b) requirements (Hirsch Decl. ¶ 3). Keating's belief that eXp's handling was a "joke" suggests, at most, that an investigation occurred but was inadequate, not that an investigation never took place.

### 3.    The Haggard Testimony: Defendants' Reliance on the Haggard Excerpt Is Misplaced—It Identifies Policies and Repositories, Not Rule 9(b) Misrepresentations

The eXp Defendants also point to Mr. Haggard's Aug. 27, 2024, 30(b)(6) testimony claiming that Plaintiffs "should have known" at that time about their ability to bring a fraud claim. The excerpts the eXp Defendants cite simply describe (i) what systems store complaints and investigation evidence, (ii) where such proof would reside if it existed, and (iii) migration gaps and lack of access to legacy systems. (ECF No. 312-1; Pallares Decl. Ex. A).  None of this was a representation that eXp had investigated or had not investigated Plaintiffs' complaints. It merely identified where evidence of an investigation would have been had one occurred. The Rule 9(b) particulars came with Defendants' April-August 2025 productions and testimony, not before.

### 4.        Once Plaintiffs Knew, Plaintiffs Acted with Diligence.

After ostensibly conceding that Plaintiffs may not have had access to the underlying facts compromising their fraud claim until June or July of 2025, the eXp Defendants finally reach the heart of their diligence argument—the period between receipt of discovery and filing the instant motion, between 2-3 months, was too long. In response to that argument, it is important to understand the chronology of events. Between April and July, eXp produced over 11,000 pages of discovery and finally made key witnesses--Director of Compliance Cory Haggard, President of Growth Dave Conord, former CEO Jason Gesing, and California State Broker Debbie Penny--available after months of pursuit by Plaintiffs.

On June 24, upon completion of some of the key depositions, Plaintiffs noticed their intent to amend. On July 6, Plaintiffs circulated a draft, after which Plaintiffs received a critical July 18 production confirming eXp never intended to investigate. This critical production included Cory Haggard and Jim Nuth's statements to Defendant Bjorkman that eXp was never going to do an investigation.  (Hirsch Decl. ¶ 5).

Plaintiffs subsequently filed the TAC on Aug. 29, 2025. Courts routinely find diligence with similar intervals needed to analyze new evidence and plead fraud with specificity. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715

F.3d 716, 737–38 (9th Cir. 2013); *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-cv-00046, 2016 WL 3126108, at *4 (E.D. Cal. June 2, 2016*); see also Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, No. 2:22-cv-07434-DSF-JEM, 2024 LX 192469, at *8-9 (C.D. Cal. July 26, 2024)(finding although Plaintiffs did not provide a sufficient explanation for a three-month delay, the Court considered Defendants' delay in providing relevant discovery to Plaintiffs.)[4]

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421, at *9–16 (E.D. Cal. Dec. 15, 2006), confirms diligence under Rule 16 where new facts emerged in discovery, the record was voluminous, and the motion followed within two months of a key deposition.  Rather than addressing *Fru-Con Constr. Corp.,* Defendants rely on two Minute Orders: *Brown v. AT&T* and *Cornish v. Osprey Healthcare*. In *Brown*, the plaintiff missed a 21-day amendment window, disregarded the cutoff, and delayed another two months despite defense counsel's conditional agreement not to oppose—offering only inadvertence, not new facts. 2010 U.S. Dist. LEXIS 148269 (C.D. Cal. Jan. 4, 2010). Here, Plaintiffs' timing was dictated by Defendants' post-deadline productions, not neglect.

---

[4] In *Leprino*, the court in finding good case to modify the scheduling order to allow Plaintiffs to amend the complaint considered, "the significant barriers Plaintiffs have faced in litigating this case, particularly Defendants' sole control of and reluctance to provide, the relevant records and information." *See Leprino* at *8.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

*Cornish* is likewise inapposite. There, the movant ignored Rule 16, failed to

explain a two-month lag after a May 29, 2009, 30(b)(6) deposition, and relied on

"new" facts already present in her own productions. *Cornish v. Odyssey Health

Care, Inc.*, CV 09-0014, 2009 WL 10671024 at *1-2 (C.D. Cal Sept 22, 2009). By

contrast, Plaintiffs' critical facts were solely in eXp's custody and produced long

after the amendment cutoff. Plaintiffs acted promptly once those materials supplied

the Rule 9(b) particulars. That is diligence under Rule 16(b), not the unexplained

delay that doomed the motion in *Cornish*.

**B.     Having Satisfied the Diligence Requirement, Plaintiffs Have Also
         Established Leave Should Be Granted Under 15(A)**

The party opposing amendment bears the burden of showing prejudice,

undue delay, bad faith, or futility of amendment. *See United Steel, Paper &

Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union ALF-

CIO, CLC, v. ConocoPhillips Co*., No. 08-cv-2068-PSG-FFM, 2009 U.S. Dist.

LEXIS 22889, 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009).  Prejudice to the

opposing party is the most important factor in the Rule 15 analysis. *See Eminence

Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ("[I]t is the

consideration of prejudice to the opposing party that carries the greatest weight" as

"[p]rejudice is the touchstone of the inquiry under Rule 15(a)").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Here, the eXp Defendants do not even attempt to argue prejudice, and therefore, have waived it. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,* 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment"). Instead, the eXp Defendants address only two factors: futility and undue delay, so Plaintiffs will respond in kind.

### 1.    Not Futile—Economic-Loss Rule Does Not Bar Intentional Fraud

The eXp Defendants' futility argument falls flat under controlling California Supreme Court precedent. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991–93 (2004) (holding the economic-loss rule does *not* bar claims for intentional misrepresentation and fraudulent concealment). *See also Lazar v. Superior Court*, 12 Cal. 4th 631, 638–40 (1996) (holding promissory fraud/fraudulent inducement is actionable notwithstanding a contract).[5] Moreover, the economic loss doctrine does not apply to Plaintiffs' proposed fraud claim because their damages include emotional distress and PTSD (physical injury) and

---

[5] In a footnote, the eXp Defendants also rely on *Baldwin Park Unified Sch. Distr v. Genesis Mgmt and Ins. Servs. Corp.*, CV 16-9349, 2017 WL 5635018 (CD Cal. July 10, 2017). In *Baldwin Park*, the court found the complaint lacked any affirmative undertaking or commitment, and therefore, could not support promissory fraud. Here, Plaintiffs allege the eXp Defendants affirmatively represented they were conducting (or had conducted) an investigation and concealed a lack thereof—quintessential misrepresentations of *existing* fact.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

are *not* limited to economic loss.  *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th

905, 922-23, 290 Cal. Rptr. 3d 834, 842-43, 505 P.3d 625, 632-33 (2022).

### 2.    No Undue Delay

In their response memorandum, the eXp Defendants dedicate a section of

their brief to "undue delay", yet nowhere in that section do they identify how the

proposed amendment would cause any delay, essentially waiving that argument.

(ECF No. 312 at 12-13).  Regardless, fact discovery remains open through

December 1, 2025, the last day to hear Rule 56 motions is April 3, 2026, and trial

is set for July 2026.  (ECF No. 307).  As this Court indicated in the most recent

order modifying the scheduling order, there will be no more extensions, and

therefore, delay is not possible nor wanted by Plaintiffs.

### III.  CONCLUSION

Plaintiffs were diligent. The critical evidence was produced between April–

August 2025, long after the amendment cutoff. Plaintiffs acted within weeks to

amend. That is good cause under Rule 16(b). Rule 15(a) is likewise satisfied: no

undue delay and no futility. Based on the above, Plaintiffs respectfully request that

the Court grant leave.

By: /s/ Jennifer A. Lenze

Jennifer A. Lenze (CA No 246858)
LENZE LAWYERS, PLC

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Telephone (310) 322-8800
jlenze@lenzelawyers.com

Brooke F. Cohen TX 24007019 PHV Adm
Andrea S. Hirsch, GA 666557 PHV Adm
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, Georgia 30341
Tel: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com

Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all counsel

of record via ECF this 12th day of September 2025.

/s/ Andrea S Hirsch
Andrea S Hirsch

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT