Jennifer A. Lenze, Esq., CA Bar No. 246858
LENZE LAWYERS, PLC
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Tel: (310) 322-8800 F: (310) 322-8811
jlenze@lenzelawyers.com
Attorney for Plaintiffs

Brooke Cohen, Esq., TX Bar No. 24007019 PHV Admitted
Andrea Hirsch, Esq., GA Bar No. 666557 PHV Admitted
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, Georgia 30341
Tel: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FABIOLA ACEVEDO, CHRISTY LUNDY, TAMI SIMS, MEGAN FARRELL-NELSON,
        Plaintiffs,
         v.

EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT GOVE; and DOES 1-10,
        Defendants.

Case No. 2:23-CV-01304-AB-AGR

Hon. Andrea Birotte, Jr.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS eXp REALTY, LLC and eXp WORLD HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT XIII OF THIRD AMENDED COMPLAINT**

**Hearing Date: January 9, 2026
Time: 10:00 a.m. (PT)**

i

# TABLE OF CONTENTS

**I.      INTRODUCTION** _____ **1**

**II.     LEGAL STANDARD** _____ **3**

**III.    ARGUMENT** _____ **4**

  **A.  The Economic Loss Rule Does Not Bar Plaintiffs' Fraud Claim.** _____ **4**

    1.        This Court Has Already Rejected Defendants' Economic Loss
Argument. _____ **4**

    2.        Plaintiffs Allege Post-Reporting Fraud That Caused Independent
Emotional Harm _____ **7**

  **B.      The Third Amended Complaint Plausibly Alleges Each Element of
Fraudulent Misrepresentation.** _____ **9**

    1.  Plaintiffs Adequately Allege False Statements of Existing Fact Made by the
eXp Entities. _____ **9**

      a.        The TAC Alleges Multiple Misrepresentations of Existing Fact, Not
Mere Promises of Future Conduct _____ 10

    2.  Plaintiffs Adequately Allege Scienter. _____ 13

    3.  Plaintiffs Adequately Allege Intent to Induce Reliance. _____ 15

    4.  Plaintiffs Adequately Plead Reliance and Damages. _____ 17

  **C.        Plaintiffs Plead Fraud With Particularity Under Rule 9(B).** _____ **20**

**III.    CONCLUSION** _____ **23**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

## **Cases**

Aas v. Superior Court, 24 Cal. 4th 627 (2000) ...................................................6

Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226 (1995).......................19

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...........................................................4

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................................................3

Blankenheim v. E. F. Hutton & Co. (1990) 217 Cal. App. 3d 1463, 1475 [266 Cal. Rptr. 593]......................................................................................................19

Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997) ....................................4, 23

Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951 (1997) ...........16

Erlich v. Menezes, 21 Cal. 4th 543 (1999) ....................................................6

In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig., 483 F. Supp. 3d 838 (C.D. Cal. 2020) ....................................................................2, 6

Interserve, Inc. v. Fusion Garage Pte. Ltd., 2011 U.S. Dist. LEXIS 12935, at *5–8 (N.D. Cal. Feb. 9, 2011) ......................................................................17

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992) ...........5

Lazar v. Superior Court, 12 Cal. 4th 631 (1996) .....................................9, 12

Miller v. Rykoff-Sexton, Inc., 845 F.2d 209 (9th Cir. 1988) ..........................5

Moore v. Kayport Package Express, Inc., 885 F.2d 531 (9th Cir. 1989) ..........4

N. Am. Chem. Co. v. Superior Ct., 69 Cal.Rptr.2d 446 (Cal. Ct. App. 1997)................2

No Cost Conf., Inc. v. Windstream Communs., Inc., 940 F. Supp. 2d 1285 (S.D. Cal. 2013) ................................................................................................................6

Robinson Helicopter Co. v. Dana Corp, 34 Cal. 4th 979 (2004)......................6

Sum v. FAC US, LLC, 2022 WL 2189628 (C.D. Cal. Apr. 25, 2022) .............5

iii

Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153 (1991).....................21

Usher v. City of Los Angeles, 828 F.2d 556 (9th Cir. 1987) ...........................................3

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003)..................................3, 4

Wool v. Tandem Computers Inc., 818 F.2d 1433 (9th Cir. 1987)................................12

### **Rules**

Federal Rule of Civil Procedure (FRCP) 9(b) ……………... 1, 2, 3, 4, 9, 12, 17, 20, 23

Federal Rule of Civil Procedure (FRCP) 12(b)(6)......................................................7, 9

Federal Rule of Civil Procedure (FRCP) Rule 8 .........................................................13

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## **MEMORANDUM OF POINT AND AUTHORITIES**

Plaintiffs Fabiola Acevedo, Tami Sims and Megan Farrell-Nelson (collectively referred to hereinafter as "Plaintiffs") by and through their counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss ("eXp Memo") filed by eXp Realty, LLC, eXp World Holdings, Inc., and Glenn Sanford (collectively referred to hereinafter as "Defendants") to Count XIII of the Third Amended Complaint (hereinafter referred to as "TAC"), as follows:

### I.    **INTRODUCTION**

Defendants move to dismiss Count XIII of the Third Amended Complaint ("TAC") under the false pretense that Plaintiffs' fraudulent misrepresentation claim is nothing more than a contractual dispute which Defendants state is barred by the Economic Loss Rule. This argument, put simply, is a straw man fallacy. Plaintiffs do not allege breach of contract cause of action for *solely* economic damages, but, instead, have clearly alleged all necessary elements to proceed with a claim for fraudulent misrepresentation. Further, Plaintiffs have done so with the required specificity as required by Federal Rule of Civil procedure (FRCP) 9(b). Defendants' motion fails on its own terms, ignoring both the nature of the allegations and, this Court's Order permitting the claim to proceed. [Dkt. 326].[1]

---

[1]    The Defendants ostensibly ignore the Court's Order wherein it stated: "First, with respect to futility of amendment, Defendants argue the fraudulent misrepresentation claim is barred by the

1

Specifically, Plaintiffs allege that after reporting drugging and sexual assault, Defendants falsely claimed that investigations were either underway, complete, and/or that remedial measures had been implemented. Defendants, through their Policies and Procedure stated that such occurrences would be promptly and thoroughly investigated and will be taken seriously and followed to resolution. (TAC ¶¶312-313). Yet, in actuality, no legitimate investigation ever occurred. Plaintiffs allege that Defendants knew these statements of investigation and measures taken were false and used them to deter escalation, inducing Plaintiffs to participate in a sham investigative process that caused severe emotional distress, re-traumatization, post-traumatic stress disorder, and continued exposure to unsafe conditions. (TAC ¶¶ 320–333, 349–355).

Defendants' motion also misconstrues Rule 9(b). Plaintiffs do not rely on vague assurances, generalized corporate puffery, or hindsight disagreement with business decisions. The TAC pleads with specificity who made the challenged representations,

---

economic loss rule. (*Id*. at 9-12) Under California law, "economic loss" consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits – without any claim of personal injury or damages to other property." *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F.Supp.3d 838, 847 (C.D. Cal. 2020). The rule "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form of physical harm (i.e., personal injury or property damage)." *Id*. (citing *N. Am. Chem. Co. v. Superior Ct.*, 69 Cal.Rptr.2d 446, 474 (Cal. Ct. App. 1997). In this case, the economic loss rule would not render amendment futile, as the Plaintiffs have argued that they have suffered emotional distress and PTSD as a result of Defendants actions." [Dkt. 326] at Page 1.

2

what was said, when and in what context the statements were made, why the statements

were false when made, and how Plaintiffs relied on the above by participating in what

they were led to believe was a legitimate investigative process; hence they refrained

from escalation and remained exposed to unsafe conditions. (TAC ¶¶ 320–333, 349–

355). Because the TAC pleads a fraud claim and alleges non-economic injury, and

satisfies Rule 9(b), Defendants' motion should be denied in its entirety.

## II.    <u>LEGAL STANDARD</u>

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the

merits or the evidence Plaintiffs ultimately may present. To survive dismissal, a

complaint need only allege sufficient factual matter, accepted as true, to state a

plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). In evaluating plausibility, the Court

must accept well-pleaded allegations as true, draw reasonable inferences in Plaintiffs'

favor, and may not weigh competing explanations or resolve factual disputes. *Id.*;

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Claims sounding in fraud must satisfy Rule 9(b), which requires plaintiffs to state

with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). The rule's

purpose is to provide notice of the specific misconduct alleged, not to require

evidentiary detail or proof in the complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1103 (9th Cir. 2003).  Rule 9(b) is satisfied where the complaint alleges the

"who, what, when, where, and how" of the alleged fraud. *Cooper v. Pickett*, 137 F.3d

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

616, 627 (9th Cir. 1997). Plaintiffs are not required to plead every instance of reliance, internal corporate communications, or facts uniquely within defendants' knowledge. *Vess*, 317 F.3d at 1104; *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Consistent with the rule's text, states of mind— including knowledge, intent, and purpose—may be alleged generally, and may be supported by reasonable inferences drawn from the pleaded facts. Fed. R. Civ. P. 9(b); *Ashcroft v. Iqbal*, 556 U.S. 662, at 686 (2009); *Moore*, 885 F.2d 531 at 540. Defendants' effort to collapse pleading standards into merits determinations by demanding evidentiary proof or negation of alternative explanations conflicts with controlling federal authority and must be rejected.

## III.    ARGUMENT

**A.**    The Economic Loss Rule Does Not Bar Plaintiffs' Fraud Claim**.**

Defendants' motion rests on a mischaracterization of both the TAC and the economic loss rule. Plaintiffs do not seek to transform a breach of contract for economic damages into a tort claim. Plaintiffs allege eXp failed to follow their own Policies and Procedures and allege intentional post-reporting fraud all of which caused non-economic harm, including severe emotional distress and re-traumatization.

### 1.    This Court Has Already Rejected Defendants' Economic Loss Argument.

As a threshold matter, Defendants' economic loss argument was addressed by this Court's prior order granting Plaintiffs leave to file the TAC. See footnote 1, *Supra*.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

In opposing leave, Defendants argued that Plaintiffs' fraud claim was futile because it was barred by the economic loss rule. The Court expressly rejected that contention, holding that amendment would not be futile because Plaintiffs alleged non-economic harm, including emotional distress and PTSD. *Id.* (holding amendment not futile where plaintiffs alleged non-economic harm, including emotional distress and PTSD).

Futility is a legal sufficiency determination governed by the same Rule 12(b)(6) standard Defendants now invoke. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) (recognizing futility as a basis to deny leave to amend where the proposed amendment is legally insufficient); *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) (holding that the test for futility of amendment is identical to the Rule 12(b)(6) legal sufficiency standard). Defendants identify no intervening change in law, no new facts, and no clear error warranting reconsideration.

Further, for this strawman proposition that Plaintiffs' fraudulent misrepresentation claim is foreclosed by the economic loss rule, Defendants rely solely on *Sum v. FAC US, LLC,* 2022 WL 2189628 (C.D. Cal. Apr. 25, 2022). This case is wholly distinguishable and inapplicable in the instant analysis. The *Sum* Court states clearly about the Economic Loss Rule: the Rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations," and therefore bars a tort action, "unless he can demonstrate harm above and beyond a broken contractual promise." *Id.* at *2. (internal citations omitted). There the Plaintiffs alleged fraudulent inducement by concealment *without* alleging a personal injury or damage to property

5

other than the Vehicle. *Id*. Here, Plaintiffs clearly allege they have suffered emotional

distress and PTSD.[2]

Under California law, the economic loss rule bars tort recovery only where the

alleged misconduct consists of a failure to perform contractual obligations and the

plaintiff seeks recovery for purely economic loss. *Aas v. Superior Court*, 24 Cal. 4th

627, 636–37 (2000). In *Robinson Helicopter Co. v. Dana Corp.,* the California

Supreme Court held that a defendant's knowing misrepresentation of existing fact gives

rise to tort liability even where the parties are in contractual privity and even where

some damages overlap with contract damages. *Robinson Helicopter Co. v. Dana Corp*,

34 Cal. 4th 979, 988–91 (2004). The Court emphasized that the substance of the claim

was not nonperformance, but deliberate deception. *Id.* at 990. Such are the allegations

in the instant action. *See* also *Erlich v. Menezes*, 21 Cal. 4th 543, 552–53 (1999).

Specifically, Defendants stated investigations were occurring and remedial action

had been taken when Defendants knew that no legitimate, qualified investigation

consistent with those representations had, *or would* occur. Defendants' Policies and

---

2    Defendants cite cases which are likewise inapposite. In *In re Ford Motor Co.
DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal.
2020)* plaintiffs alleged misrepresentations overlapping entirely with warranty duties
and sought only repair costs and diminished value—purely economic loss. 483 F. Supp.
3d at 848–49.
    Defendants' reliance on *No Cost Conf., Inc. v. Windstream Communs., Inc., 940
F. Supp. 2d 1285 (S.D. Cal. 2013)* confirms Plaintiff's point, as that court permitted
fraud claims based on affirmative misrepresentations independent of nonperformance.
*Id.* at 1303–07.

6

Procedures stated an investigation would be conducted which they failed to do. [TAC, ¶313].  Plaintiffs allege intentional deception based on the affirmative representations, representations that were in Defendants' own Policies and Procedures; all causing personal and emotional injury, *not* disappointed economic expectations. Therefore, the economic loss rule does not apply.

### 2. Plaintiffs Allege Post-Reporting Fraud That Caused Independent Emotional Harm

Beyond the assurances of an investigation within the Defendants Policies and Procedures, the TAC alleges that Defendants represented that Plaintiffs' reports were being investigated and handled appropriately and that Plaintiffs relied on those representations by participating in what they believed to be a legitimate investigative process. For example, the TAC alleges that the Director of Agent Compliance, Cory Haggard, told PLAINTIFF FARRELL-NELSON that "eXp was investigating" her report and, in doing so, "made PLAINTIFF FARRELL-NELSON relive the trauma of her assault by sharing the intimate details of her sexual assault again." *TAC ¶ 328.*  The TAC further alleges that Defendants represented that "eXp had terminated DEFENDANT BJORKMAN and severed all ties with him." TAC ¶ 329.

Relying on such representations, Plaintiffs were required to repeatedly recount their assaults to senior corporate officials. As the TAC alleges, Plaintiffs "repeatedly and in painful detail recounted their assaults" and did so "on the telephone and over Zoom" to numerous individuals, including eXp's Director of Agent Compliance, Chief

7

Legal Officer, President of Brokerage Operations, Chief Marketing Officer, and senior executives. TAC ¶¶ 349–350.

Critically, the TAC alleges that "[n]one of the aforementioned individuals had any trauma-informed training or any training in investigating sexual assault complaints." TAC ¶ 350. It further alleges that the Director of Agent Compliance and Chief Legal Officer, Cory Haggard and Jim Bramble respectively, both "later admitted that eXp was not qualified or equipped to conduct such an investigation," and that "eXp never disclosed this fact to any Plaintiff." TAC ¶ 351. Despite knowing that no legitimate investigation was occurring and that it lacked investigative capacity, Defendants continued to solicit Plaintiffs' accounts of what occurred and failed to retain outside investigators. TAC ¶ 352.

Most importantly, the TAC alleges that Plaintiffs would not have subjected themselves to this repeated retraumatization had they known the truth:

> [H]ad PLAINTIFFS FARRELL-NELSON, SIMS, and ACEVEDO known that eXp had no intention of ever investigating their complaints, these Plaintiffs would not have allowed themselves to be questioned on numerous occasions by unqualified individuals disclosing personal details of their assaults, causing extreme emotional distress.

TAC ¶ 355. Defendants made PLAINTIFFS tell and retell their assault **accounts** under the pretense of investigations DEFENDANTS never intended to carry out. This is not derivative or contractual harm. It is direct emotional injury caused by Defendants' intentional deception, including retraumatization and exacerbation of psychological

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

trauma.

Defendants' reliance on product-defect and warranty cases involving purely economic loss is, therefore, misplaced. Despite Defendants' assertions, Plaintiffs do not allege disappointed economic expectations. Plaintiffs allege deliberate post-assault fraud that caused severe emotional harm. Under *Robinson Helicopter* and its progeny, such claims are not barred.

**B.    The Third Amended Complaint Plausibly Alleges Each Element of Fraudulent Misrepresentation.**

Under California law, a claim for fraudulent misrepresentation requires allegations of (1) a misrepresentation of material fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). As explained below, and applying federal pleading standards, the TAC plausibly alleges each element with particularity sufficient to satisfy Rules 8 and 9(b).

**1.    Plaintiffs Adequately Allege False Statements of Existing Fact Made by the eXp Entities.**

Defendants' first argument for dismissal is that Plaintiffs "have failed to adequately allege a false statement of an existing fact by the eXp Entities." (eXp Memo at 15.) According to Defendants, the TAC alleges only aspirational policies, promises of future conduct, or vague communications by "eXp-affiliated personnel," none of which qualify as actionable misrepresentations of present fact, nor as statements attributable to the corporate defendants. (*Id*. at 15–16.) The argument mischaracterizes both the nature

9

of the statements pleaded and the agency principles governing corporate liability.

### a. The TAC Alleges Multiple Misrepresentations of Existing Fact, Not Mere Promises of Future Conduct.

As a threshold matter, the TAC does not rely solely on eXp's written policies or generalized commitments to investigate misconduct. Rather, Plaintiffs allege that after they reported drugging and sexual assault, eXp—through identified senior personnel by name and position—affirmatively represented that specific investigative actions were presently occurring or had already occurred, when in fact they had not.

For example, the TAC alleges that after PLAINTIFF FARRELL-NELSON submitted her formal complaint on September 18, 2020, Director of Agent Compliance Cory Haggard,  President of Brokerage Operations Stacey Onnen, and then Chief Executive Officer Jason Gesing, personally represented to PLAINTIFF FARRELL-NELSON on more than one occasion that "eXp and its Agent Compliance Committee were investigating her complaints." (TAC ¶ 316.) This was not a promise that an investigation would occur in the future; it was a representation that an investigation was underway at that time. The TAC expressly alleges that "[t]hese representations were not true," and further pleads supporting facts showing that no investigation or compliance committee review ever occurred. (*Id.*; *see also* TAC ¶ 320.)

Similarly, the TAC alleges that "[o]n October 6, 2020, Cory Haggard told PLAINTIFF SIMS that eXp had terminated DEFENDADNT BJORKMAN and severed all ties with him." (TAC ¶ 329.) Whether a corporate relationship has been terminated is a statement of historical or present fact, not future intent. The TAC further alleges

10

that this representation was false and known to be false when made, and that Plaintiffs later relied on eXp's "false statements that it had severed all ties with Defendant Bjorkman." (TAC ¶¶ 349, 354.)

The TAC also alleges that PLAINTIFF ACEVEDO was repeatedly led to believe that her complaint was being actively reviewed and investigated, including through requests for documentation, follow-up communications, and assurances from senior leadership. (TAC ¶¶ 333–348.) Critically, the TAC alleges that by the time these representations were made, eXp's Chief Legal Officer Jim Bramble had already decided that no investigation would be conducted. (TAC ¶ 348.) These allegations directly address falsity at the time of the statements.

The TAC further alleges that eXp never convened an Agent Compliance Committee meeting to investigate the complaints at issue, despite repeated representations that such a process was ongoing. (TAC ¶ 320.) It alleges that senior eXp personnel internally decided not to investigate while continuing to convey the opposite impression to Plaintiffs. (TAC ¶¶ 348, 353–354.) These allegations do not rely on hindsight dissatisfaction with an investigation's outcome; they allege the non-existence of the investigation itself, contemporaneous with the statements at issue.

Defendants not only gloss over the numerous false statements identified in the TAC, but Defendants also incorrectly state in their Motion to Dismiss that none of statements were made by Defendants "eXp Realty or eXp World Holdings, as opposed to certain eXp-affiliated personnel." eXp Memo at 15:13-14.  Cory Haggard, Jim

11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Bramble, Jason Gesing and Stacey Onnen are far from random "eXp-affiliated personnel." Cory Haggard is identified throughout the TAC as a member of eXp's executive leadership team and the Director of Agent Compliance. TAC ¶¶ 63, 165, 350. Stacey Onnen is identified throughout the TAC as the President of Brokerage Operations. TAC ¶ 350. Jason Gesing, at the relevant time period, was the CEO of eXp Realty and a Board Member of eXp World Holdings. TAC ¶ 350. Jim Bramble is the Chief Legal Officer of eXp World Holdings and a member of eXp's executive leadership team. TAC ¶¶ 63, 211.

At the pleading stage, whether a corporate officer possessed authority to speak on behalf of the corporation is a question of pleading sufficiency for the Court, not a factual issue for a jury. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) (holding, on demurrer, that fraud claims against a corporate employer must plead the identity of the speakers and their authority to speak, and evaluating the sufficiency of those allegations as a matter of law); *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1440 (9th Cir. 1987) (holding that Rule 9(b) is satisfied where a complaint pleads corporate fraud with particularity by identifying the misrepresentations and, where possible, the roles of the corporate officers involved, without requiring proof of authorization at the pleading stage).

In sum, Defendants' first argument fails because it rests on an inaccurate description of the TAC. Plaintiffs allege specific statements made by the eXp Defendants asserting that investigations were underway or completed, that disciplinary

actions had been taken, and that corporate relationships had been severed; none of which were accurate or true. Plaintiffs allege that these statements were false when made, explain why they were false, and identify senior corporate actors who made them while acting within the scope of their authority.

### 2. Plaintiffs Adequately Allege Scienter.

Defendants' second argument is that the TAC fails to plead scienter—*i.e.,* that Defendants knew the alleged statements were false when made or acted with intent to deceive. (eXp Memo. at 16:15–17:21.) According to Defendants, Plaintiffs rely on conclusory assertions of knowledge and intent, hindsight disagreement with corporate decision-making, or allegations of mere negligence. (*Id.*) Defendants' argument again misstates the TAC.

First and foremost, the TAC alleges that "[o]n September 18, 2020, the day eXp Realty changed DEFENDANT BJORKMAN's status from "active" to "inactive", Mr. Haggard and Mr. Nuth told DEFENDANT BJORKMAN that eXp Realty would *not* investigate Plaintiffs' allegations." TAC ¶ 324. Against that backdrop, the TAC alleges that eXp represented to PLAINTIFF FARRELL-NELSON that her complaint was being investigated by the Agent Compliance Committee, even though no such committee meeting ever occurred and no investigation existed. (TAC ¶¶ 316, 320.) The TAC further alleges that eXp personnel later admitted that the company was not qualified or equipped to conduct such investigations, nevertheless failing to disclose

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

this fact while continuing to make representations suggesting that investigations were

ongoing. (TAC ¶ 351.)

Contrary to Defendants' assertion, the TAC does not merely allege that

statements later turned out to be inaccurate. It alleges that eXp personnel knew at the

time they made the representations that no investigation was occurring or would occur.

For example, with respect to PLAINTIFF ACEVEDO, the TAC alleges that after senior

leadership requested documents and conveyed the impression that her complaint was

under review, eXp's Chief Legal Officer had already "spoken with them about [her]

complaints and had already decided that no investigation would be conducted." (TAC ¶

348.) Despite that internal decision, eXp continued to solicit information and convey

the opposite impression to her. (TAC ¶¶ 346–350.)

The same is true with respect to PLAINTIFF SIMS. Defendants, through its

employee and agent, Cory Haggard, told PLAINTIFF SIMS that the reason why eXp

had not taken any action on her request for a sponsor change was because eXp Agent

Compliance Committee members were not available to find time to meet. The Agent

Compliance committee, however, in fact, found the time to meet on October 19, 2020,

to discuss accelerating DEFENDANT BJORKMAN's vesting period, then again met

on October 21, November 10, and November 12, 2020, to discuss other people's

sponsorship changes. (TAC ¶ 322).

The TAC also pleads scienter through a consistent course of conduct that

supports an inference of intent to deceive or, at minimum, deliberate indifference to the

truth.  Specifically, the TAC alleges that eXp:

- repeatedly solicited detailed statements and documentation from Plaintiffs, creating the appearance of an investigation (TAC ¶¶ 346, 350);

- failed to convene any Agent Compliance Committee meeting to investigate the complaints (TAC ¶ 320);

- concealed from Plaintiffs that no investigation was occurring and that eXp lacked the capability to conduct one (TAC ¶¶ 351–353); and

- continued to make assurances regarding investigation and resolution despite having internally decided otherwise (TAC ¶¶ 348, 354).

Taken together, these allegations support a plausible inference that Defendants did not merely fail to investigate competently, but knowingly misrepresented that an investigation was occurring in order to induce Plaintiffs' cooperation and forestall escalation.

Defendants attempt to recharacterize Plaintiffs' allegations as, at most, negligent handling of complaints. (eXp Memo at 17.) That reframing ignores the TAC's core allegation: not that eXp conducted a flawed investigation, but that eXp affirmatively represented that an investigation existed when it did not.  The gravamen of Plaintiffs' claim is not that Defendants investigated poorly or negligently, but that Defendants affirmatively represented that an investigation would be conducted, that an investigation existed when they knew it did not, a distinction California law recognizes as the difference between negligence and fraud.

### 3.  Plaintiffs Adequately Allege Intent to Induce Reliance.

The TAC also plausibly alleges that Defendants acted with the intent to induce Plaintiffs' reliance. The California Supreme Court's decision in *Engalla v. Permanente*

15

*Medical Group, Inc.*, 15 Cal. 4th 951 (1997), squarely supports the inference of intent to induce reliance pleaded here. In *Engalla*, the Court held that intent to defraud—defined as intent to induce reliance—may be inferred where a defendant makes knowing or reckless misrepresentations and false assurances designed to influence a plaintiff's conduct or delay action. *Id.* at 977–78. The Court emphasized that intent need not be shown through direct evidence but may be established circumstantially through a course of conduct in which defendants repeatedly assured the plaintiff that a process was proceeding properly and expeditiously, while concealing facts demonstrating that the assurances were false and that delay was inherent in the system they controlled. *Id.* at 979–81. Critically, the Court found it reasonable to infer that such misrepresentations were made precisely to induce reliance—to encourage continued participation, forestall alternative action, and maintain control over the process—despite defendants' knowledge that the promised procedures were not being followed. *Id.* at 978–80.

The same inference arises here. As in *Engalla*, Defendants allegedly issued affirmative assurances that investigations were underway or completed, despite knowing that no meaningful investigation had occurred, while continuing to control the internal process and withholding information that would have revealed the falsity of those representations. These allegations plausibly support the conclusion that Defendants' statements were not benign or negligent but were made with the intent to induce Plaintiffs to rely on those assurances by continuing to cooperate, repeatedly

16

recounting traumatic events, refraining from escalation or external reporting, and remaining engaged in Defendants' internal mechanisms for supposed resolution. Under *Engalla*, such allegations are more than sufficient to plead intent to induce reliance, particularly at the motion-to-dismiss stage, where intent may be alleged generally and inferred from the surrounding circumstances and course of conduct. As in *Engalla*, Defendants alone controlled the investigative process and knew that Plaintiffs' continued cooperation and forbearance depended on Defendants' assurances that a legitimate investigation was occurring, supporting a reasonable inference that those assurances were made for the purpose of inducing reliance.

### 4. Plaintiffs Adequately Plead Reliance and Damages.

Under California law, the elements of a fraud claim include justifiable reliance and resulting damage, but federal pleading standards do not require those elements to be pleaded with heightened particularity. *See Interserve, Inc. v. Fusion Garage Pte. Ltd.*, 2011 U.S. Dist. LEXIS 12935, at *5–8 (N.D. Cal. Feb. 9, 2011) (denying motion to dismiss and holding that Rule 9(b)'s heightened pleading requirements apply to the circumstances constituting the fraud, not to the reliance and damages elements, and that reliance is adequately pleaded where plaintiffs allege how they altered their conduct to their detriment in response to the misrepresentations). As *Interserve* explains, the purpose of Rule 9(b) is to give defendants notice of the "who, what, when, where, and how" of the alleged misconduct—not to demand evidentiary detail as to reliance or

damages at the pleading stage. *Id.* at *6–7. Accordingly, a fraud claim is adequately pleaded where, as here, the complaint plausibly alleges how plaintiffs relied on defendants' misrepresentations and were harmed as a result.

In a single paragraph, Defendants argue that Plaintiffs have failed to plead the fourth and fifth elements of fraud—justifiable reliance and resulting damages—because Plaintiffs purportedly do not identify what actions they took in reliance on Defendants' misrepresentations or what damages resulted. (eXp Memo. at 18:13–19:3.) This argument fails for three independent reasons: (1) it ignores specific reliance allegations pleaded in the TAC; (2) it mischaracterizes the nature of damages alleged; and (3) it improperly demands evidentiary detail not required at the pleading stage.

Defendants assert that Plaintiffs "do not specify what they did, what action they took or what action they refrained from" in reliance on Defendants' false statements. (eXp Memo. at 18:15-18:17.) That assertion is flatly contradicted by the TAC.  The TAC alleges that Plaintiffs relied on Defendants' false statements that investigations were underway or completed by:

- cooperating with what they were told were active investigations;
- submitting detailed written statements describing drugging and sexual assault;
- participating in calls and Zoom meetings with eXp personnel;
- providing documents at eXp's request; and
- continuing to engage with eXp's internal processes rather than escalating externally.

(TAC ¶¶ 318, 346, 349–350.)

18

These allegations describe affirmative conduct taken because Plaintiffs believed Defendants' representations were true. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (holding that reliance exists where a plaintiff's conduct was altered by fraud and that a plaintiff need only show it would not have acted as it did absent the misrepresentation).[3] The TAC alleges exactly this course of conduct.

Defendants further argue that Plaintiffs fail to plead damages, suggesting that allegations of emotional distress are insufficient or unclear. (eXp Memo. at 18:17-22.) That argument misstates both the TAC and California fraud law. The TAC alleges that as a direct result of Defendants' misrepresentations and Plaintiffs' reliance on them, Plaintiffs suffered severe emotional distress and exacerbation of trauma from repeatedly recounting sexual assaults under false pretenses; loss of opportunity to pursue alternative remedies or external reporting earlier; continued affiliation with eXp and subjection to its authority based on false assurances; and delay in discovering the truth due to Defendants' concealment. (TAC ¶¶ 350, 353–357.)

Emotional distress is a cognizable form of damage in fraud claims, particularly where, as here, it flows directly from reliance on misrepresentations concerning safety,

---

[3]    "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Blankenheim v. E. F. Hutton & Co*. (1990) 217 Cal. App. 3d 1463, 1475 [266 Cal. Rptr. 593].

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

investigation, and remediation. At the pleading stage, Plaintiffs are not required to quantify damages or prove causation; they must allege a plausible causal connection. The TAC does so.

## C.    Plaintiffs Plead Fraud With Particularity Under Rule 9(B).

In addition to claiming Plaintiffs did not allege the essential elements of fraud, Plaintiffs also failed to plead those elements with particularity required for Rule 9(b). (eXp. Memo. at 19:6-21:27). As noted above in detail, the TAC belies Defendants' argument.

The TAC alleges that the misrepresentations were made by eXp Realty, LLC and eXp World Holdings, Inc., acting through their compliance and leadership channels in response to Plaintiffs' reports. (TAC ¶¶ 321–333, 353–355.) Additionally, the TAC identifies by name several individuals who made fraudulent statements, including eXp World Holdings, general counsel, Jim Bramble, and eXp Realty's director of agent compliance, Cory Haggard.  (*See e.g.,* TAC ¶¶ 316, 321, 322, 329, 330, 337, 338, 340-345, 348, 350-351).

The TAC furthermore identifies the specific content of the misrepresentations. Plaintiffs allege that Defendants represented that allegations of drugging and sexual assault had been investigated and addressed. For example, Defendants represented that eXp was investigating the incident and that Bjorkman had been terminated and severed from the company. (TAC ¶¶ 328–329).

The TAC also alleges representations that eXp's legal/compliance leadership was

20

engaged and that remedial steps were being taken. For example, Ms. Onnen told

PLAINTIFF FARRELL-NELSON: "I spoke with our senior legal counsel, and he said

Bjorkman has been removed from eXp." (TAC ¶ 327.) And Cory Haggard later

messaged PLAINTIFF FARRELL-NELSON that "eXp was looking into her

complaints related to DEFENDANT BJORKMAN." (TAC ¶ 330.) These are concrete

representations of present fact regarding whether an investigation and remedial action

occurred. *See Tarmann v. State Farm Mut. Auto. Ins. Co*., 2 Cal. App. 4th 153, 159

(1991).

Here, the TAC alleges that the misrepresentations were made after Plaintiffs

reported drugging and sexual assault and in the context of Defendants' response to

those reports and often includes the actual date the representations were made as shown

from just a sample of the allegations set forth below:

- "After receiving PLAINTIFF FARRELL-NELSON'S formal complaint on
September 18, 2020 (discussed above) the eXp DEFENDANTS, through its agents,
including but not limited to Cory Haggard, Stacey Onnen, and Jason Gesing,
personally represented to PLAINTIFF FARRELL-NELSON on more than one
occasion that eXp and its Agent Compliance Committee were investigating her
complaints. These representations were not true."  TAC ¶ 316

- "On October 4, 2020, Mr. Haggard spoke with PLAINTIFF FARRELL-
NELSON and told her again that eXp was investigating her allegations and needed
to question her about her complaints. Believing she was assisting in the
investigation, Mr. Haggard made PLAINTIFF FARRELL-NELSON relive the
trauma of the sexual assaults by sharing the intimate details of the assault again."
TAC ¶ 328

- "On October 6, 2020, Cory Haggard told PLAINTIFF SIMS that eXp had
terminated DEFENDANT BJORKMAN and severed all ties with him." TAC ¶ 329

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

- "On October 7, 2020, Cory Haggard messaged PLAINTIFF FARRELL-NELSON and told her that eXp was looking into her complaints related to DEFENDANT GOLDEN (*they were not*)." TAC ¶ 330

- "April 18, 2022, PLAINTIFF ACEVEDO received a communication from eXp stating that "eXp's Compliance Committee thoughtfully deliberated and reviewed" her complaint that she was being forced to pay the individuals who misled her and drugged her. 'After careful review, the Compliance Committee decided that a change in sponsorship will not be granted.' eXp never conducted any investigation into her complaint." TAC ¶ 336.

- "[O]n May 25, 2022, Jim Bramble wrote "Regarding your request to terminate or punish Rosie Rodriguez and David Golden, we do not possess any evidence of violations of their independent contractor agreements with eXp." TAC ¶ 341.

- "On May 27, 2022, PLAINTIFF ACEVEDO responded to Mr. Bramble asking again "**Kindly provide specifics on what you need to give me clarify** [*sic*.] **to fulfill your request for additional evidence.**" (Empasis original). Mr. Bramble responded immediately and falsely stated to PLAINTIFF ACEVEDO that "we have no such complaints other than the one you make against David and Rosie". TAC ¶¶ 343-344.

The TAC explains exactly how the representations were false when made. Plaintiffs do not rely on any hindsight disagreements with Defendants' actions. They allege that the representations were false when made because no legitimate, qualified investigation consistent with those representations occurred or were planning on occurring.

The TAC pleads the mechanism of falsity: "eXp never held any agent compliance committee meeting following an investigation to determine whether DEFENDANT BJORKMAN or DEFENDANT GOLDEN violated eXp's policies or procedures," and "eXp never conducted an investigation into whether DEFENDANT BJORKMAN drugged and sexually assaulted PLAINTIFFS FARRELL-NELSON,

22

SIMS and ACEVEDO." (TAC ¶¶ 320, 325.)

In contrast, Defendants rely on cases dismissing fraud claims where plaintiffs alleged only generalized corporate misconduct, failed to identify any specific misrepresentation, or relied on conclusory allegations of falsity. Those cases are inapposite. For example, in *Cooper v. Pickett*, the Ninth Circuit dismissed a fraud claim where plaintiffs failed to allege which statements were false and why. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Here, by contrast, the TAC identifies specific statements regarding investigations and alleges precisely why those statements were false. Defendants also invoke *Vess*, but *Vess* confirms that Rule 9(b) requires particularity sufficient to give notice—not evidentiary detail or proof. 317 F.3d at 1103–06. The TAC satisfies that standard.

### III.  <u>CONCLUSION</u>

Plaintiffs TAC plausibly pleads fraudulent misrepresentation with particularity and non-economic injury. Plaintiffs respectfully request that Defendants' Motion to Dismiss Count XIII should be denied.[4]

---

[4]    With respect to Defendants' request for additional discovery should the Court deny their Motion to Dismiss, Plaintiffs submit no additional discovery is necessary.  To the extent the Court allows additional discovery, Plaintiffs request that it be limited in scope and duration given Plaintiffs have all been deposed over multiple days and have responded to numerous written discovery requests. Plaintiffs submit that any additional discovery be limited to a minimal amount of interrogatories.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Date: December 19, 2025          By: /s/ Jennifer A. Lenze
                                      Jennifer A. Lenze (CA No 246858)
                                      LENZE LAWYERS, PLC
                                      999 Corporate Drive, Suite 100
                                      Ladera Ranch, California 92694
                                      Telephone (310) 322-8800
                                      jlenze@lenzelawyers.com


                                      Brooke F. Cohen TX 24007019 PHV Adm
                                      Andrea S. Hirsch, GA 666557 PHV Adm
                                      COHEN HIRSCH, LP
                                      5256 Peachtree Road, Suite 195-E
                                      Atlanta, Georgia 30341
                                      Tel: (678) 268-4683
                                      brooke@cohenhirsch.com
                                      andrea@cohenhirsch.com

                                      Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed and served on all counsel of record by way of the Court's CM/ECF filing system this 19th day of December 2025.

/s/ Brooke F. Cohen
Brooke F. Cohen

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS