| | |
|---|---|
| **GREENBERG TAURIG, LLP**<br>Ivy A. Wang (SBN CA 224899)<br>1840 Century Park East, Suite 1900<br>Los Angeles, California 90067-2121<br>Telephone: 310.586.7700<br>Facsimile: 310.586.7800<br>Ivy.Wang@gtlaw.com<br><br>Shauna E. Imanaka (SBN CA 315742)<br>1900 University Avenue, 5th Floor<br>East Palo Alto, California 94303<br>Telephone: 650.328.8500<br>Facsimile: 650.328.8508<br>imanakas@gtlaw.com<br><br>Joseph M. Dietrich (SBN CA 328296)<br>18565 Jamboree Road, Suite 500<br>Irvine, California 92612<br>Telephone: 949.732.6500<br>Facsimile: 949.732.6501<br>Joe.Dietrich@gtlaw.com<br><br>Daniel J. Wadley (*Admitted Pro Hac Vice*)<br>222 South Main Street, Suite 1730<br>Salt Lake City, Utah 84101<br>Telephone: 801.478.6900<br>Facsimile: 801.994.9041<br>wadleyd@gtlaw.com | **LEWIS BRISBOIS BISGAARD & SMITH LLP**<br>William E. Pallares (SBN CA 187740)<br>633 West 5th Street, Suite 4000<br>Los Angeles, California 90071<br>Telephone: 213.250.1800<br>Facsimile: 213.250.7900<br>William.Pallares@lewisbrisbois.com<br><br>Kyle Maland (SBN CA 292210)<br>550 West C Street, Suite 1700<br>San Diego, California 92101<br>Telephone: 619.233.1006<br>Facsimile: 619.233.8627<br>Kyle.Maland@lewisbrisbois.com |

Attorneys for Defendants eXp Realty, LLC; eXp World Holdings, Inc.; and Glenn Sanford

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIOLA ACEVEDO; TAMI SIMS; CHRISTIANA LUNDY; and MEGAN FARRELL-NELSON,<br><br>PartyOneType,<br><br>v.<br><br>eXp REALTY, LLC; eXp WORLD HOLDINGS, INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; BRENT GOVE; AND GLENN SANFORD; and DOES 1–10 inclusive   Defendants. | CASE NO. 2:23-cv-01304-AB-AGR<br><br>**DEFENDANTS EXP REALTY, LLC; EXP WORLD HOLDINGS, INC.; AND GLENN SANFORD'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT XIII OF THIRD AMENDED COMPLAINT**<br><br>Date: January 9, 2026<br>Time: 10:00 a.m.<br>Ctrm: 7B, 7th Floor<br><br>Action Filed: February 22, 2023<br>FAC Filed: March 23, 2023<br>SAC Filed: February 28, 2024<br>TAC Filed: October 27, 2025 |


# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 5

II. LEGAL ARGUMENT .................................................................................................... 7

    A. The Court Has Not Ruled on the Sufficiency of Plaintiff's Fraudulent Misrepresentation Claim. ................................................................................... 7

    B. The Opposition Confirms that Plaintiffs' Fraudulent Misrepresentation Claim Is Barred by the Economic Loss Doctrine. ...................................................... 10

        1. Plaintiffs explicitly ground the alleged duty in contractual policies and procedures. ...................................................................................... 10

        2. Plaintiffs ignore the requirement of an independent duty based in tort. ................................................................................................................ 11

        3. Plaintiffs do not address fraudulent intent at the time of the formation of the ICA. ............................................................................................ 13

        4. Plaintiffs' focus on their alleged damages is misplaced. ...................... 14

    C. The Opposition Confirms that Plaintiffs' Failed to Sufficiently Plead Fraudulent Misrepresentation. ........................................................................... 15

        1. Plaintiffs do not allege *scienter* at the time the contract was formed. .. 15

        2. Plaintiffs cannot plead fraudulent intent without supporting facts. ...... 16

        3. Plaintiffs fail to plausibly plead justifiable reliance. ........................... 17

        4. Plaintiffs still fail to plead fraud with particularity under Rule 9(b)... 17

    D. Should the Court Deny Defendants' Motion, Significant Fact Discovery Must Be Permitted ............................................................................................ 18

III. CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. Apple, Inc.*,
   500 F. Supp. 3d 933 (N.D. Cal. 2020) ............................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 16

*Bunker v. Buccinio*,
   CV 23-09263-FLA, 2024 WL 3390431 (C.D. Cal. 2024) ............................... 9

*Cisneros v. Instant Cap. Funding Grp., Inc.*,
   263 F.R.D. 595 (E.D. Cal. 2009) .................................................................... 17

*City of L.A. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ............................................................................ 8

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
   412 F. Supp. 2d 1059 (E.D. Cal. 2006) .......................................................... 14

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) .................................................................................... 12

*In re Finjan Holdings, Inc.*,
   58 F.4th 1048 (9th Cir. 2023) ......................................................................... 18

*Garces v. Gamboa*,
   No. 1:21-cv-00392-JLT-EPG, 2023 U.S. Dist. LEXIS 72756 (E.D. Cal. April 25, 2023) ................................................................................................................ 19

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ............................................................... 9, 18, 19

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ............................................................................ 9

*Mosqueda v. Am. Honda Motor Co., Inc.*,
   443 F. Supp. 3d 1115 (C.D. Cal. 2020) .......................................................... 11

*No Cost Conf., Inc. v. Windstream Comm., Inc.*,
   940 F. Supp. 2d 1285 (S.D. Cal. 2013) .......................................................... 11

*Redwood Villa Interfaith Hous. Corp. v. Nationwide Affordable Hous. Fund 33, LLC*,
    No.: 24-cv-00233-AJB-JLB, 2024 WL 4994345 (S.D. Cal. Dec. 4, 2024) ..................... 7

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal 4th. 979 (2004) ................................................................................................ 14

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ................................................................. 13, 16

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    754 F. Supp. 3d 946 (N.D. Cal. 2024) ........................................................................ 14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................................ 9

*Sum v. FAC US, LLC*,
    No. 2:22-cv-00213-RGK-RAO, 2022 WL 2189628 (C.D. Cal. Apr. 25, 2022) ..... 12, 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 17, 18

**Other Authorities**

First Amendment ................................................................................................................ 8

Fed. R. Civ. P. 9(b) ..................................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................... 5, 7, 9, 10

Fed. R. Civ. P. 15 ....................................................................................................... 5, 7, 8

Fed. R. Civ. P. 16(b) ....................................................................................................... 18

Fed. R. Civ. P. 54(b) ......................................................................................................... 8

## I. INTRODUCTION

Plaintiffs' Opposition does not cure the fundamental defects in Count XIII of the Third Amended Complaint ("TAC"). Instead, the Opposition simply repackages the same legally deficient theory that Defendants addressed in their opening brief—now supplemented with rhetoric which Plaintiffs failed to plead—but does not set forth law or facts sufficient to state a viable claim for fraudulent misrepresentation. At bottom, Plaintiffs' Opposition remains legally deficient for at least four independent reasons.

*First*, Plaintiffs' futility argument is misplaced and wrong. Plaintiffs repeatedly assert that this Court's prior order granting leave to amend forecloses dismissal of their fraud claim at the pleading stage. It does not. A determination that amendment would not be futile for purposes of Rule 15 does not constitute a ruling that the claim is adequately pled under Rules 12(b)(6) and 9(b). Nor does it immunize a newly added claim from dismissal where, as here, Plaintiffs' allegations remain legally insufficient and are materially different from the allegations presented to the Court. Plaintiffs' attempt to conflate the liberal amendment standard, applied before Plaintiffs finalized their fraudulent misrepresentation claim and before Defendants had a chance to respond to what Plaintiffs actually pled, with the substantive pleading requirements governing fraud claims reflects a fundamental misapprehension of federal pleading law and should be rejected.

*Second*, the economic loss rule bars Plaintiffs' fraudulent misrepresentation claim because Plaintiffs expressly allege that their damages arise from Defendants' alleged failure to follow the internal policies and procedures incorporated into Plaintiffs' Independent Contractor Agreements ("ICAs"). Plaintiffs' own allegations confirm that the supposed "misrepresentations" concern Defendants' performance—or alleged non-performance—of contractual obligations relating to complaint handling and investigation procedures. This is precisely the type of claim the economic loss rule prohibits: a tort claim that merely re-labels an alleged breach of contract as fraud. Nomenclature aside, that Plaintiffs claim to suffer an emotional response to Defendants' alleged

nonperformance does not shield the Plaintiffs' claim from the economic loss rule. Plaintiffs fail to identify any independent duty arising outside the parties' contractual relationship, nor does it allege any actionable misrepresentation separate from Defendants' purported failure to comply with internal policies. As pled, Count XIII remains an impermissible effort to convert a contractual dispute into a tort claim.

*Third*, Plaintiffs still fail to demonstrate that their fraudulent misrepresentation claim is pled with the requisite particularity required by Federal Rule of Civil Procedure 9(b). Despite extensive briefing, Plaintiffs do not allege—with particularity—the "who, what, when, where, and how" of any actionable misrepresentation by the eXp Entities themselves. Instead, Plaintiffs rely on generalized allegations, imprecise references to unidentified communications, and conclusory assertions that certain statements were "false" or "misleading." The Opposition does not cure the absence of specific facts showing that any Defendant knowingly made a false statement of existing fact with the intent to induce reliance at the time the Policies and Procedures were drafted or when the ICAs were entered into, nor does it plausibly allege justifiable reliance or cognizable damages flowing from any such statement. Rule 9(b) requires more than labels and conclusions, and Plaintiffs' Opposition offers no basis to depart from that well-established standard.

*Fourth*, Plaintiffs' Opposition underscores why dismissal is warranted at this stage. If the Court were to deny the Motion to Dismiss, Defendants would be forced to undertake substantial and burdensome fact discovery on a last-minute fraud claim that expands the scope of this case well beyond its prior contours, especially when Plaintiffs excuse their pleading deficiencies on the basis that "evidentiary detail" is "not required at the pleading stage". Plaintiffs' eleventh-hour amendment would require discovery into internal compliance processes, communications, and decision-making across multiple years to uncover the "evidentiary detail" Plaintiffs fail to plead but that Defendants require to defend against a new and impermissibly conclusory claim. Heightened pleading standards for claims grounded in fraud exist to prevent precisely this outcome. Where, as here,

Plaintiffs have not stated a plausible fraud claim, the Court should dismiss Count XIII rather than be forced to reopen discovery and permit expansive discovery based on legally deficient allegations.

For these reasons, and as set forth more fully below, Plaintiffs' Opposition fails to justify denial of Defendants' Motion and Count XIII should be dismissed with prejudice.

## II. LEGAL ARGUMENT

### A. The Court Has Not Ruled on the Sufficiency of Plaintiff's Fraudulent Misrepresentation Claim.

Plaintiffs attempt to characterize this Court's order granting leave to amend as a determination on the sufficiency of the fraudulent misrepresentation claim. Plaintiffs' argument is misplaced and wrong.

*First*, Plaintiffs overlook a critical point: the Court's prior order addressed a motion for leave to amend, not a motion to dismiss, and the Court did not articulate—let alone apply—the Rule 12(b)(6) standard when considering whether amendment would be futile. (Dkt. 326, p. 5.) The absence of any stated standard is dispositive. A ruling that amendment is not futile does not constitute a determination that a claim is adequately pled, nor does it resolve the applicability of substantive defenses such as the economic loss rule.

Courts routinely distinguish between the liberal Rule 15 standard governing amendment and the more exacting standards applicable on a motion to dismiss. As one court recently explained:

> "Plaintiff asks the Court to delve into the merits of the proposed amended counterclaim, in essence holding a motion for leave to amend under Rule 15 up to the standard for a Rule 12(b)(6) motion to dismiss. **The Court declines to do so as it contradicts the letter and spirit of Rule 15**."

*Redwood Villa Interfaith Hous. Corp. v. Nationwide Affordable Hous. Fund 33, LLC*, No.: 24-cv-00233-AJB-JLB, 2024 WL 4994345, at *2 (S.D. Cal. Dec. 4, 2024).

The Court's prior order did precisely that—it did not address the merits of the claim at the amendment stage under a 12(b)(6) standard, rather, the Court applied the standard for leave to amend under Rule 15(a)(2), expressly stating: "[t]his policy is to be applied with extreme liberality." (Dkt. 326, p. 5 (citing *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014).) Plaintiffs therefore err in treating the ruling as a merits-based rejection of the economic loss doctrine.[1]

***Second***, Plaintiffs' reliance on the prior order is further undermined by the fact that the Third Amended Complaint is **not the same pleading** the Court evaluated when granting leave to amend. Plaintiffs materially altered the Third Amended Complaint by dropping their ratification claim they initially sought to add and altering the factual allegations supporting their fraudulent misrepresentation theory. Those changes matter

---

[1] Any attempt by Plaintiffs to characterize the Court's order on their Motion for Leave to Amend as the law of the case is similarly misplaced, as explained by the Ninth Circuit in *Askins v. U.S. Dept. of Homeland Security*:

> The law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order. *See City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001); *Houser*, 804 F.2d at 567; see also Fed. R. Civ. P. 54(b) ('[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'). The law of the case doctrine does not apply here. The district court dismissed plaintiffs' First Amendment claim, but without prejudice; it did not enter a final judgment in the case. It specifically granted plaintiffs leave to amend 'with respect to the constitutionality of the CBP photography policy.' Accepting the district court's invitation, plaintiffs filed an amended complaint, and included facts and claims that were different from those in the initial complaint. Instead of ruling on the merits of the government's motion to dismiss the amended complaint, the district court invoked the law of the case doctrine, holding that it was 'precluded' from considering the amended complaint. **This was error**.

899 F.3d 1035, 1042-1043 (9th Cir. 2018) (emphasis added).

and were not addressed by the Court in its order granting leave to amend.

A futility analysis necessarily turns on the specific claims and facts proposed at the time leave is sought. Where a plaintiff modifies the theory, reframes the alleged duty, or alters the damages theory—as Plaintiffs did here—the prior futility determination can have no preclusive effect. Plaintiffs cannot bootstrap a permissive amendment ruling into a blanket endorsement of a revised fraud claim that now rests expressly on alleged violations of contractual policies and procedures—the very circumstance that triggers application of the economic loss rule.

Plaintiffs' reliance on *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) and *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) is therefore misplaced. Even if the Court did apply Plaintiffs' extreme futility standard (again, it did not), the Court would have applied it to a materially different complaint which is not at issue here.

***Third***, even if the Court had addressed futility under a Rule 12(b)(6)-like framework (which it did not), Ninth Circuit and district court authority is clear that a defendant may still bring a motion to dismiss challenging the sufficiency of the amended pleading. As courts have repeatedly recognized, the inquiry is distinct: "Defendant's motions to dismiss under Rules 12(b)(1) and 12(b)(6) are separate and distinct from assessing the propriety of amendment." *Bunker v. Buccinio*, CV 23-09263-FLA (DFM), 2024 WL 3390431 at *3 (C.D. Cal. 2024), (citing *Foman v. Davis*, 371 U.S. 178 (1962)). A court's decision not to deny amendment on futility grounds does not insulate the amended complaint from later dismissal. To the contrary, courts routinely allow amendment and then entertain—and grant—Rule 12(b)(6) motions testing whether the plaintiff ultimately met federal pleading standards. *See also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (granting defendant's motion to dismiss amended complaint following district court's granting leave to amend over defendant's futility opposition). In short, Plaintiffs' suggestion that the economic loss doctrine has already been adjudicated is incorrect as a matter of law and procedure. The Court has not ruled on

the merits of Defendants' economic loss argument under Rule 12(b)(6), and Defendants are fully entitled to raise that challenge now.

### B. The Opposition Confirms that Plaintiffs' Fraudulent Misrepresentation Claim Is Barred by the Economic Loss Doctrine.

Plaintiffs' Opposition does not meaningfully respond to Defendants' core economic loss argument. Rather than addressing the threshold requirement that a tort claim arise from an independent duty outside the contract, Plaintiffs focus almost exclusively on the nature of their alleged damages. That focus is misplaced. The application of the economic loss rule is not dictated by how Plaintiffs label their injuries, but by whether the duty allegedly breached exists independent of the parties' contractual relationship. Plaintiffs' own words confirm that it does not.

#### 1. Plaintiffs explicitly ground the alleged duty in contractual policies and procedures.

Critically, Plaintiffs do not dispute that the duty they claim was breached arises directly from the ICAs and the incorporated Policies and Procedures. To the contrary, Plaintiffs *affirmatively plead* that the Policies and Procedures created the duty and obligation at issue. The TAC alleges that the ICAs "incorporate eXp's U.S. Policies & Procedures Manual," and that those Policies and Procedures promise that complaints will be "promptly and thoroughly investigated" and "taken seriously and followed through to resolution." Plaintiffs then allege that, by virtue of those written policies, Defendants assumed a duty to conduct investigations in a particular manner.

Those allegations are dispositive. By Plaintiffs' own framing, the alleged duty to investigate—and any alleged failure to do so—exists solely because of the contractual relationship and the contractual documents governing that relationship. This is the paradigmatic scenario in which the economic loss rule applies: a plaintiff alleging tort liability based on the manner in which a defendant performed (or failed to perform) obligations arising from contract.

The Opposition never grapples with this problem. Plaintiffs do not identify any duty

imposed by statute, common law, or public policy that exists independent of the ICAs and Policies and Procedures. Instead, they rely on the same contractual language and attempt to transform alleged noncompliance with those policies into fraud.

These allegations merely repackage a breach of contract claim—namely, an alleged failure to properly respond to contractor complaints as required by the contractual documents, along with alleged omissions of material fact related thereto—as a fraud claim, which the economic loss rule expressly forbids. Plaintiffs' alleged harm (to the extent it can be discerned from the sparse pleading on this issue), regardless of whether they are economic in nature, still purportedly derive from the eXp Entities' alleged "omissions" concerning their failure to adequately investigate the complained-of conduct. [TAC, ¶ 353.] Simply put, alleging impermissible tort damages in a contract dispute does not, and cannot, convert the contract dispute into a tort case.

### 2. Plaintiffs ignore the requirement of an independent duty based in tort.

The Opposition cites authority for the unremarkable proposition that intentional misrepresentations can, in some circumstances, give rise to tort liability even where parties are in contractual privity. But Plaintiffs stop there. What they do not address—and what California law squarely requires—is that such tort liability depends on the existence of a duty **independent of the contract itself**.

As Defendants explained in their Motion, courts repeatedly hold that fraud-based claims "cannot flow from breach of a contract and must arise from a breach of an independent duty based in tort." *No Cost Conf., Inc. v. Windstream Comm., Inc.*, 940 F. Supp. 2d 1285, 1301 n.9 (S.D. Cal. 2013). Similarly, the economic loss rule bars tort claims that merely restate contractual obligations and prevents tort and contract law from "dissolving one into the another." *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020).

Plaintiffs never explain what independent tort duty Defendants allegedly violated. They do not contend, for example, that Defendants had a common-law duty—separate

from the ICAs—to investigate complaints in a particular way, nor do they identify any statutory obligation that forms the basis of their fraud claim. Instead, Plaintiffs' theory remains that Defendants failed to do what the Policies and Procedures promised they would do. That is contract performance (or at best, nonperformance), not tort. For example, Plaintiffs cite to *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999), for the position that deception can create a tort claim for fraud irrespective of the contractual duty at issue. But Plaintiffs ignore that the *Erlich* court held precisely the position Defendants argue here: "[a] contractual obligation may create a legal duty and the breach of that duty may support an action in tort. This is true; however, conduct amounting to a breach of contract becomes tortious *only when it also violates a duty independent of the contract arising from principles of tort law*. An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." *Id*. (emphasis added). Plaintiffs' reliance on *Erlich* and its other cases are unavailing because they consistently ignore that the tort claim must arise from a duty independent of the contractual obligation. Yet, Plaintiffs consistently plead and argue that Defendants' tortious conduct stems from their duty to investigate contained in the Policies and Procedures, and never identify a legal duty independent of the ICA (which incorporates the Policies and Procedures).

Plaintiffs criticize Defendants' reliance on *Sum v. FAC US, LLC*, No. 2:22-cv-00213-RGK-RAO, 2022 WL 2189628, at *2 (C.D. Cal. Apr. 25, 2022), but they misread the court in *Sum*'s holding. *Sum* reinforces the point Plaintiffs ignore: fraud cannot be established merely by pointing to subsequent nonperformance or dissatisfaction with how contractual duties were carried out. *Sum*, 2022 WL 2189628, at *3 ("'[T]he economic loss rule turns not on what a plaintiff alleges, but rather on the harm caused (whether it is purely economic) and on the nature of the conduct that caused it, and more particularly on whether that conduct overlaps with a contractual obligation or is independent of it.'") (quoting *In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020). The *Sum* court rejected precisely that type of hindsight-based fraud theory, explaining that allegations of concealment or omission tied

to contractual performance do not suffice absent an independent tort duty. Plaintiffs' allegations here—focused on post-reporting communications and alleged failures to investigate—fall squarely within that prohibited category.

Plaintiffs attempt to sidestep *Sum* by emphasizing the nature of their alleged injuries, asserting that they suffered personal and emotional harm rather than purely economic loss. But *Sum* makes clear that the dispositive inquiry is not the label attached to the damages; it is whether the alleged duty and misconduct exist independently of the contract. Because Plaintiffs' claimed injuries flow from Defendants' alleged failure to comply with contractual policies and procedures, *Sum* confirms that the economic loss rule bars Plaintiffs' tort claim regardless of how Plaintiffs characterize the resulting harm.

### 3. Plaintiffs do not address fraudulent intent at the time of the formation of the ICA.

Equally telling is what Plaintiffs do not address regarding intent. Even where a plaintiff attempts to plead fraud in the context of a contractual relationship, courts require allegations showing fraudulent intent **at the time the contract was formed**, not merely a later failure to perform. As courts have made clear, "fraudulent intent cannot be proven, however, by simply pointing to the defendant's subsequent failure to perform as promised." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001).

The Opposition is silent on this point. Plaintiffs do not allege—much less plausibly explain—how Defendants harbored fraudulent intent when the ICAs were entered into or when the Policies and Procedures were adopted. Instead, Plaintiffs rely entirely on alleged post-reporting conduct and hindsight dissatisfaction with how complaints were handled. That is insufficient to convert an alleged breach of contractual obligations into fraud.

Even if the Court were to consider the Plaintiffs' arguments raised in Opposition that the eXp Defendants knowingly lied that there was an ongoing investigation, Plaintiffs' own allegations betray these allegations. For example, Plaintiffs simultaneously allege that: (1) multiple eXp employees told Plaintiffs that "eXp and its Agent Compliance Committee would investigate her complaints. These representations were not

true," [TAC ¶ 322] and (2) that Plaintiffs spoke to the at least eight eXp employees, that eXp took statements, engaged inside counsel, spoke to additional individuals involved in the allegations, and took action by terminating Defendant Bjorkman. [See TAC, generally.] Plaintiffs cannot have it both ways. The claim for fraudulent misrepresentation must be dismissed.

### 4. Plaintiffs' focus on their alleged damages is misplaced.

Rather than addressing duty or intent, Plaintiffs focus almost entirely on damages. They argue that the economic loss rule does not apply because they allege personal and emotional injuries, and because they claim that "post-reporting fraud" caused independent emotional harm. But this argument misunderstands the duty implicated and where the damages flow from.

The applicability of the economic loss rule does not turn on how Plaintiffs characterize their damages. It turns on whether the damages arise solely from the breach of a duty created by contract. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 984 (N.D. Cal. 2024) ("Where the source of the duty is contract, the economic loss rule bars an action in tort." (internal citations omitted)); *Cont'l Airlines, Inc. v. Mundo Travel Corp.,* 412 F. Supp. 2d 1059, 1069 (E.D. Cal. 2006) ("The economic loss rule bars recovery in tort for the breach of a duty that is found solely in contract." (internal citations omitted)); *Anderson v. Apple, Inc.*, 500 F. Supp. 3d 933, 1021 (N.D. Cal. 2020) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal 4th. 979, 990 (2004), to hold that the touchstone is "intentional conduct," which "gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated.").As courts have explained, the rule applies where the plaintiff's expectations were frustrated because the defendant did not perform as promised under the contract—even if the plaintiff alleges consequential or non-economic harm flowing from that failure. *See Robinson Helicopter Co.,* 34 Cal. 4th 979 at 988 (holding that "[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a

broken contractual promise" and that whether the economic loss rule applies "does not rest on the luck one plaintiff having…injury….the distinction rests, rather, on an understanding of the nature of responsibility . . . .")..

Here, Plaintiffs' alleged injuries—emotional or otherwise—are claimed to flow from Defendants' alleged failure to carry out investigations in accordance with the Policies and Procedures. Because the duty to investigate arises exclusively from those contractual documents, Plaintiffs cannot evade the economic loss rule simply by recasting the resulting harm as emotional rather than economic.

In short, Plaintiffs' Opposition confirms the defect identified in Defendants' Motion. Plaintiffs have not alleged the breach of any duty independent of the ICAs and Policies and Procedures, have not addressed fraudulent intent at the time of contracting, and have relied instead on damages allegations that do not control the economic loss analysis. For these reasons, Plaintiffs' fraudulent misrepresentation claim remains barred by the economic loss rule and should be dismissed.

### C. The Opposition Confirms that Plaintiffs' Failed to Sufficiently Plead Fraudulent Misrepresentation.

Plaintiffs' Opposition confirms that the TAC still fails to plead fraud under the heightened standards of Federal Rule of Civil Procedure 9(b). Rather than addressing the specific deficiencies identified in Defendants' Motion, Plaintiffs rely on generalized assertions about post-reporting conduct and alleged emotional harm. That approach misunderstands both the elements of fraud and the pleading requirements governing fraud-based claims.

#### 1. Plaintiffs do not allege *scienter* at the time the contract was formed.

A critical flaw in Plaintiffs' fraud theory is the absence of any allegation that Defendants acted with fraudulent intent at the time the ICAs were entered into. By their own description, Plaintiffs' alleged duty arises exclusively from the ICAs and the incorporated Policies and Procedures. As a result, Plaintiffs were required to allege facts

showing that Defendants knew, at the time those contractual commitments were made, that they were false or that Defendants had no intention of performing them.

Plaintiffs do not do so. Instead, the Opposition focuses exclusively on alleged *scienter* related to statements made by various eXp personnel long after the ICAs were executed. That is insufficient as a matter of law. As courts have made clear, "fraudulent intent cannot be proven, however, by simply pointing to the defendant's subsequent failure to perform as promised." *Smith*, 160 F. Supp. 2d at 1152 (citing *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30–31 (1985)).

Plaintiffs do not allege—nor attempt to allege—that Defendants adopted the Policies and Procedures or entered into the ICAs with knowledge that they would not comply with them. The complete absence of allegations addressing *scienter* at contract formation is fatal to Plaintiffs' fraud claim.

### 2. Plaintiffs cannot plead fraudulent intent without supporting facts.

Plaintiffs' Opposition further collapses *scienter* and intent to defraud into a single, conclusory discussion. Plaintiffs argue that intent to defraud may be inferred when a defendant makes knowing or reckless misrepresentations designed to influence a plaintiff's conduct or delay action. But Plaintiffs do not plead facts supporting such an inference here.

Instead, Plaintiffs summarily allege that eXp personnel misrepresented the existence of an investigation to induce Plaintiffs to cooperate and refrain from escalating their complaints. These allegations are precisely the type of "labels and conclusions" that do not satisfy federal pleading standards. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs identify no facts showing that any Defendant acted with the specific intent to deceive Plaintiffs or that any Defendant acted with the requisite recklessness, as opposed to engaging—perhaps unsatisfactorily—in an internal handling of complaints.

Rule 9(b) requires more than speculation or motive-based inference. Plaintiffs must plead facts showing what was false or misleading about the statements, why the statements were false at the time they were made and how Defendants knew, or should

have known, that the statements were false. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Plaintiffs do not do so.

### 3. Plaintiffs fail to plausibly plead justifiable reliance.

Plaintiffs next argue that justifiable reliance need not be pled with heightened particularity. Even assuming that is correct (it is not), Plaintiffs must still plead facts establishing plausible reliance. They do not.

Plaintiffs allege that they relied on alleged statements that investigations were underway or completed by cooperating—submitting statements, providing documents, and communicating with personnel conducting the investigation.[2] But Plaintiffs do not explain how such actions constitute legally cognizable reliance. They do not allege that they forewent legal remedies or altered their position in a manner that was induced by any specific misrepresentation. Their alleged "reliance" is solely conclusory.

But conclusory allegations of reliance are insufficient. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (requiring allegations of reliance to be tied to specific misrepresentations) (*citing Bly-Magee v. California*, 236 F.3d 1014,1019 (9th Cir. 2001). Plaintiffs' reliance theory is indistinguishable from ordinary participation in an internal process and does not support a fraud claim.

### 4. Plaintiffs still fail to plead fraud with particularity under Rule 9(b).

Finally, Plaintiffs do not satisfy Rule 9(b)'s particularity requirements. Most notably, the TAC alleges no facts establishing who at eXp had authority to speak. Rule 9(b) requires Plaintiffs to identify who made the alleged misrepresentations and on whose behalf. *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 607 (E.D. Cal. 2009) ("[I]n a fraud action against a corporation, a plaintiff must 'allege the names of the

---

[2] Once again, Plaintiffs confusingly allege that no investigation was conducted while at the same time alleging that the eXp Defendants in fact conducted an investigation by collecting statements, interviewing individuals, and taking action. Based on Plaintiffs' own allegations, it cannot be disputed that an investigation was conducted, however inadequate in Plaintiffs' opinions, a fact that is fatal to any claim of fraud or deceit.

persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'") (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)). The TAC does not allege that any identified individual had authority to speak on behalf of eXp Realty, LLC or eXp World Holdings, Inc., nor do they allege facts supporting attribution of those statements to either entity. In an attempt to remedy this deficiency, Plaintiffs make conclusory allegations in their Opposition regarding who the individuals are and their job titles. Plaintiffs' attempts are futile. They are required to adequately *plead* the elements of fraud *in their complaint*. They have not done so.

Equally problematic, Plaintiffs do not distinguish between the two Defendant entities. They plead collective allegations against "eXp" without identifying which Defendant allegedly made which statement. Such group pleading is insufficient under the Rule 9(b) particularity requirements. *Vess*, 317 F.3d at 1106.

Plaintiffs argue that they need not plead evidentiary detail or proof, only enough to give notice. But Rule 9(b) requires more than notice—it requires particularity sufficient to allow Defendants to defend against the charge of fraud. *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023).

In sum, Plaintiffs have not cured, and cannot cure by way of their Opposition, the defects identified in Defendants' Motion to Dismiss. Plaintiffs' fraudulent misrepresentation claim fails as a matter of law and should be dismissed with prejudice.

**D.   Should the Court Deny Defendants' Motion, Significant Fact Discovery Must Be Permitted**

If this Motion is denied, the eXp Defendants will be forced to petition to have discovery extended to allow the parties an opportunity to properly conduct discovery on this last-minute claim.

As highlighted in eXp Defendants' Motion to Dismiss, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "[T]he focus of the inquiry is [therefore] upon the moving party's reasons

for seeking modification" and the reasonableness of their efforts to do so. *Id*. "Good cause may be found where the moving party shows … that it is unable to comply with the scheduling order's deadlines due to matters not reasonably foreseeable at the time the scheduling order issued, and that it was diligent in seeking a modification once it became apparent it could not comply with the scheduling order." *Garces v. Gamboa*, No. 1:21-cv-00392-JLT-EPG, 2023 U.S. Dist. LEXIS 72756, *6-7 (E.D. Cal. April 25, 2023).

Should the Court deny this Motion, good cause would exist to modify the scheduling order and extend the fact-discovery deadline. An extension would be necessary—and the failure to permit additional fact discovery would be highly prejudicial—to allow the eXp Defendants to adequately develop the record concerning the newly added fraudulent misrepresentation claim, especially when Plaintiffs have failed to provide "evidentiary detail" because they believe it is "not required" at this stage.

Required or not, even with the current stay, only one day of fact-discovery remains to develop this evidentiary denial. Without an extension, Defendants cannot conduct any discovery, including eliciting any testimony related to the fraudulent misrepresentation claim. Absent relief, these constraints would severely prejudice the eXp Entities by depriving them of any meaningful opportunity to develop a defense to the fraud allegations and would improperly force eXp to proceed toward trial without a fair chance to do so.

### III.     CONCLUSION

For the foregoing reasons, Count XIII (Fraudulent Misrepresentation) of the Third Amended Complaint should be dismissed with prejudice.

DATED:  December 26, 2025                    GREENBERG TRAURIG, LLP

By /s/ *Joseph M. Dietrich*
Ivy A. Wang
Daniel J. Wadley
Shauna E. Imanaka
Joseph M. Dietrich
Attorneys for Defendants eXp Realty, LLC; eXp World Holdings, Inc.; and Glenn Sanford