UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   2:23-CV-01304-AB (AGR) | Date:   April 7, 2026 |
|---|---|

| Title:   *Fabiola Acevedo, et. al., v. eXp Realty, LLC, et. al.* |
|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[IN CHAMBERS] ORDER <u>DENYING</u> DEFENDANT'S MOTION TO DISMISS COUNT XIII OF THE THIRD AMENDED COMPLAINT [DKT. NO. 367]**

Before the Court is Defendants eXp Realty, LLC, eXp World Holdings, Inc., Michael L. Bjorkman, David S. Golden, Glenn Stanford, and Does 1-10 (collectively, "Defendants") Motion to Dismiss Count XIII of the Third Amended Complaint. Mot., Dkt. No. 367. Plaintiffs' Fabiola Acevedo, Tami Sims, Christiana Lundy, and Megan Farrell-Nelson's filed a timely Opposition (Opp'n, Dkt. No. 375) and Defendants filed a Reply ("Reply," Dkt. No. 376).

Finding this matter appropriate for resolution without oral argument, the Court **VACATED** the hearing set for January 9, 2026. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **DENIES** the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Motion seeks to dismiss Count XIII of the Third Amended Complaint ("TAC", Dkt. No. 327). In Count XIII, Plaintiffs Acevedo, Sims, and Farrell-Nelson

| CV-90 (12/02) | **CIVIL MINUTES – GENERAL** | Initials of Deputy Clerk <u>EVC</u> |
|---|---|---|

(collectively, "Plaintiffs") allege Defendants eXp Realty, LLC and eXp World Holdings, Inc. (collectively "eXp Defendants" or "eXp") fraudulently misrepresented details of the investigation to Plaintiffs' detriment. TAC ¶¶ 311-57. The Court assumes familiarity with the facts of this case. The following facts summarize the allegations from the TAC, as relevant to the Motion.

eXp is a publicly traded, multi-level, "cloud-based," global real estate company. *Id.* ¶¶ 18-19. eXp generates revenue through (1) the sale of residential and commercial properties, which creates a Revenue Share Program ("RSP" or the "Pyramid"); and (2) recruitment of agents. *Id.* ¶ 21. Agents who recruit other agents, or Sponsor Agents, are incentivized under the RSP to recruit more agents, or Recruited Agents. *Id.* ¶¶ 54-56. Under the RSP, a Sponsor Agent's revenue share is based on the number of Front Line Qualifying Active ("FQLA") agents they have recruited to the company. *Id.* ¶ 52. Recruited Agents may also recruit other agents, effectively creating a pyramid structure. The higher a Sponsor Agent is in their pyramid, the greater their revenue share. *Id.* ¶ 56. Notably, once a Sponsor Agent qualifies for an RSP vesting, they continue to share in the RSP even after they dissociate from eXp. *Id.* ¶ 53. Top Sponsor Agents, or "Influencers," are encouraged to invite prospective and current agents to social networking events showcasing success and prosperity. *Id.* ¶ 36.

This case concerns allegations surrounding eXp's "longstanding culture" of allowing its most influential male agents to sexually assault female agents and then "silenc[e] those whose accounts of sexual harassment and assault would impact profit." *Id.* ¶ 1. Plaintiffs allege that Defendants Bjorkman and Golden, two Influencers at eXp, engaged in a venture to entice Plaintiffs to travel to recruitment events with the promise of career advancement. *Id.* ¶ 2. At these events, Defendants Bjorkman and Golden used illicit drugs to sexually assault the Plaintiffs. *Id.* ¶¶ 44-46, 64-104. eXp Defendants and Defendant Glenn Sanford all knew of and ignored this conduct. *Id.* ¶ 112-117. Moreover, due to eXp's business model, Defendants continued to financially benefit from Plaintiffs' involvement in eXp. *Id.* ¶ 91, 102-104.

eXp's U.S. Policies and Procedures Manual ("Policies and Procedures") states: "All reported or suspected occurrences of harassment will be promptly and thoroughly investigated," and that "[a]ll complaints . . . will be taken seriously and followed through to resolution." *Id.* ¶ 312. In accordance with this policy, Plaintiffs each separately reported the drugging and sexual misconduct complaints concerning Defendants Bjorkman and Golden. Claim XIII centers on the fraudulent

---

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk <u>EVC</u>

1

representations of Defendants eXp Realty and eXp World Holdings, Inc. concerning these investigations. The Plaintiffs' individual allegations are summarized below.

### A. Plaintiff Fabiola Acevedo

In early 2018, Defendant Golden began trying to recruit Plaintiff Acevedo to eXp. *Id.* ¶ 125. As one of her long-time friends, she believed he was a leader in the real estate space and trusted him. *Id.* ¶ 127, 134. On Defendant Golden's advice, she went to a July 2018 real estate networking event in Pelican Hill, California as Defendant Bjorkman's guest. *Id.* ¶ 130. However, upon arrival, she discovered there was no hotel room in her name. *Id.* ¶ 133. Distraught, she called Defendant Golden and he told her to stay in Defendant Bjorkman's room, emphasizing that Defendant Bjorkman was trustworthy. *Id.* That evening, Plaintiff Acevedo had one cocktail but remembers nothing else. *Id.* ¶ 135. The next day, she woke up naked in Defendant Bjorkman's room. *Id.* He also exposed himself to her and attempted to engage in inappropriate sexual contact. *Id.* ¶ 136. Later, while confused by the events of the night and morning, Plaintiff Acevedo signed an agreement listing Defendant Bjorkman as her Sponsor Agent. *Id.* ¶ 138. As a result of the assault, Plaintiff Acevedo was deeply traumatized and unable to work as a real estate agent. *Id.* ¶ 139. She was nevertheless required to pay all of eXp's required fees. *Id.*

In March 2022, Plaintiff Acevedo spoke with Defendant Sanford, current CEO of Defendant eXp Realty, about the incident. *Id.* ¶ 333. Defendant Sanford asked her to send him an email regarding her complaint. *Id.* At his instruction, she also reached out to another eXp employee, Tracy Sease. *Id.* ¶ 334. In April 2022, having received no help, she reached out to Defendant eXp World Holdings Board Member, Felicia Gentry. *Id.* ¶ 335. Ms. Gentry attempted to help Plaintiff Acevedo by trying to engage outside counsel. However, Defendant Sanford allegedly prevented Ms. Gentry from doing so. *Id.*

On April 18, 2022, Plaintiff Acevedo received notice from eXp that its Compliance Committee "thoughtfully deliberated and reviewed" her complaint that she was being forced to pay the individuals who misled her and drugged her. *Id.* ¶ 336. The Compliance Committee concluded that "after careful review," it would not grant her request for change in sponsorship. *Id.* In reality, the Compliance Committee never investigated her complaints. *Id.*

Unsatisfied, Plaintiff Acevedo reached out to several members of the executive team, including Mr. Jim Bramble (Chief Legal Officer of Defendant eXp World Holdings), Ms. Courtney Keating (Chief Marketing Officer of eXp World

Holdings), and Mr. Jason Gesing (then-CEO of eXp Realty). *Id.* ¶ 337-48. During this time, Plaintiff Acevedo regularly followed up on the status of the investigation and provided documents to help assist in the investigation. *Id.* In June 2022, Mr. Bramble represented to Plaintiff Acevedo that he had been unable to discuss with Mr. Gesing or Ms. Keating concerning her complain. *Id.* ¶ 348. In actuality, however, he had spoken with both Mr. Gesing and Ms. Keating and they had decided no investigation would be conducted. *Id.* ¶ 348.

Throughout the process, Plaintiff Acevedo was forced to painfully recollect details of her assault numerous times and provide statements in writing, over the phone the telephone, and over Zoom, providing these details to several members of the eXp senior leadership team. *Id.* ¶ 350. Had she known no investigation was being conducted, she would not have allowed herself to be questioned on numerous occasions about the assault, causing significant emotional distress. *Id.* ¶ 355. She believes that eXp misrepresented the nature of the investigation and their continued affiliation with Defendant Bjorkman to induce her to remain affiliated with eXp, continue to publicly support eXp, continue to share commissions with eXp, continue to pay eXp's monthly fees, and forego outside complaints. *Id.* ¶ 354.

## B. Plaintiff Sims

Plaintiff Sims is a real estate agent and former business partner of Defendant Bjorkman. *Id.* ¶ 143. Defendant Bjorkman tried to recruit Plaintiff Sims to eXp, but she was wary of joining with Defendant Bjorkman as her Sponsor Agent because Defendant Golden would then be in her pyramid, benefiting from her contributions. *Id.* ¶ 144. Defendant Bjorkman, who had disparaged Defendant Golden to Plaintiff Sims, eventually convinced Plaintiff Sims to join, listing both him and Defendant Golden in her pyramid. *Id.* ¶ 145-46.

On April 11, 2019, Plaintiff Sims attended a real estate networking event in Beverly Hills, California. *Id.* ¶ 148. Over the course of the evening, Plaintiff Sims had three drinks: one at dinner, one at the hotel bar, and one given to her by Defendant Bjorkman at a get-together in host's hotel room. *Id.* ¶ 149-152. She lost memory of the night after the third drink. *Id.* ¶ 152. Plaintiff Sims woke up the next morning in pain, naked, and alone, with her hotel room in disarray. *Id.* ¶ 153-54.

Over the course of the next few weeks, Plaintiff Sims questioned Defendant Bjorkman several times to try and understand what had happened that night. *Id.* ¶ 155-160. Eventually, she discovered she had been sexually assaulted by Defendant Bjorkman. *Id.* ¶ 160. After this, Plaintiff Sims began the process of leaving her

business with Defendant Bjorkman. *Id.* ¶ 161. As a result of the assault, she suffered severe emotional distress, has PTSD, and lost several business opportunities. *Id.* ¶ 164.

After realizing others had a similar experience with Defendant Bjorkman, Plaintiff Sims reported the assault as well as several other incidents to Mr. Cory Haggard, a member of eXp's executive leadership. *Id.* ¶ 165. On October 2020, Plaintiff Sims made a complaint to Mr. Cory Haggard, a member of eXp's executive leadership team, detailing several wrongful acts committed by Defendant Bjorkman, Defendant Golden, and Mr. Rick Geha. *Id.* ¶ 166, 317. After making her complaint to eXp, Plaintiff Sims proceeded as if a thorough investigation was moving forward as promised. No such investigation was conducted. *Id.* ¶ 318.

Plaintiff Sims also requested to be moved from Defendant Golden and Defendant Bjorkman's lines. *Id.* ¶ 319. She was initially told that eXp had not taken any action with respect to her sponsor change request because the Agent Compliance Committee members were not available to meet. *Id.* ¶ 321. This was not true. *Id.* After months of repeated requests, eXp leadership agreed to move her but refused to pay her the part of the Revenue Share they were sending to Defendant Bjorkman.

Plaintiff Sims was also told in October 2020 that eXp had severed all ties with Defendant Bjorkman. Over the course of this action, Plaintiff Sims learned this was not true. She also learned through the litigation that her complaints were never investigated. *Id.* ¶ 332.

Throughout the process, Plaintiff Sims was forced to painfully recollect details of her assault numerous times and provide statements in writing, over the phone the telephone, and over Zoom, providing these details to several members of the eXp senior leadership team. *Id.* ¶ 350. Had she known no investigation was being conducted, she would not have allowed herself to be questioned on numerous occasions about the assault, causing significant emotional distress. *Id.* ¶ 355. She believes that eXp misrepresented the nature of the investigation and their continued affiliation with Defendant Bjorkman to induce her to remain affiliated with eXp, continue to publicly support eXp, continue to share commissions with eXp, continue to pay eXp's monthly fees, and forego outside complaints. *Id.* ¶ 354.

### C. Plaintiff Farrell-Nelson

In August 2020, Plaintiff Farrell-Nelson was invited to an event in Las Vegas, Nevada by her Sponsor, Defendant Bjorkman. *Id.* ¶ 184. The event was marketed as

a recruiting event beneficial to her real-estate career. *Id.* Prior to the event, Plaintiff Farrell-Nelson visited Defendant Bjorkman and Defendant Golden's hotel suite for a get-together. *Id.* ¶ 186. Plaintiff Farrell-Nelson and Defendant Bjorkman both left the get-together once Defendant Golden became upset, went for a walk on the Las Vegas Strip, gambled at a casino, then returned to the hotel suite. *Id.* At this point forward, Plaintiff Farrell-Nelson's memory becomes limited. *Id.* ¶ 187. However, she does recall being sexually assaulted by Defendant Bjorkman. *Id.* ¶ 188.

She tried to discuss the incident with Defendant Golden in the following weeks but Defendant Golden encouraged her to lie when interviewed by the police. *Id.* ¶ 190. After the incident, Plaintiff Farrell-Nelson also received several threatening messages from people associated with Defendant Bjorkman and Defendant Golden. *Id.* ¶ 191. In January 2021, Mr. Brent Gove reached out to other individuals, requesting they submit false statements to the Las Vegas investigators. *Id.* ¶ 192.

Plaintiff Farrell-Nelson reported her assault and, as part of her complaint, requested she be removed from Defendant Bjorkman and Defendant Golden's lines. *Id.* ¶ 319. After receiving her complaint, several senior executives of the eXp Defendants made representations to Plaintiff Farrell-Nelson that the Agent Compliance Committee and eXp were investigating her complaints. *Id.* ¶ 316. No such investigation was occurring. *Id.* However, Plaintiff Farrell-Nelson proceeded as if an investigation was occurring. *Id.* ¶ 317. She reported the assault to individuals at eXp and, as a result, was forced to relive the trauma of the assault. *Id.* ¶ 328. She also prepared a seven-page account of her assault following these representations, which caused her extreme emotional distress. *Id.* ¶ 331.

Throughout the process, Plaintiff Farrell-Nelson was forced to painfully recollect details of her assault numerous times and provide statements in writing, over the phone the telephone, and over Zoom, providing these details to several members of the eXp senior leadership team. *Id.* ¶ 350. Had she known no investigation was being conducted, she would not have allowed herself to be questioned on numerous occasions about the assault, causing significant emotional distress. *Id.* ¶ 355. She believes that eXp misrepresented the nature of the investigation and their continued affiliation with Defendant Bjorkman to induce her to remain affiliated with eXp, continue to publicly support eXp, continue to share commissions with eXp, continue to pay eXp's monthly fees, and forego outside complaints. *Id.* ¶ 354.

Following this Court's Order, Plaintiffs filed the TAC on October 27, 2026, adding one claim for fraudulent misrepresentation based on information uncovered during discovery. Defendant files the present Motion to dismiss the new cause of action, or Claim XIII for fraudulent misrepresentation, under Rule 12(b)(6). For the reasons below, the Court **DENIES** Defendant's Motion

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a party to challenge the pleadings for "failure to state a claim upon which relief can be granted." A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    DISCUSSION

### A. Plaintiffs have pled the necessary elements for a claim for fraudulent misrepresentation.

To state a claim for fraudulent misrepresentation, a plaintiff must allege: "(1) a misrepresentation; (2) made with knowledge of its falsity (scienter); (3) with the intent to defraud, i.e., to induce reliance; (4) which did induce reasonable reliance; (5) causing damages." *Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 3d 916, 927 (N.D. Cal. 2019) (citing *Johnson v. Bank of Am.*, 2015 WL 351210 at *7 (N.D.

Cal. Jan. 23, 2015) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). Reading the TAC in the light most favorable to the Plaintiffs, Plaintiffs have sufficiently pled a claim for fraudulent misrepresentation.

### i.  Misrepresentation

First, the Plaintiffs each alleged the eXp Defendants falsely represented (1) that the eXp Defendants were conducting an investigation into their complaints and (2) that eXp Defendants had severed ties with Defendant Bjorkman. TAC ¶ 354. Plaintiff Acevedo, for instance, was allegedly told by Chief Legal Officer Jim Bramble that he had not been able to conduct an investigation was ongoing and that he had been unable to meet with key members of the leadership team. *Id.* ¶ 348. In actuality, Mr. Bramble had already met with those members of the leadership team and determined that investigation would not be conducted. *Id.* Likewise, Plaintiff Farrell-Nelson was told that an investigation was ongoing by several members of the senior leadership team when, in fact, there was no investigation or Compliance Committee review occurring at the time the statements were made. *Id.* ¶ 316. Plaintiff Sims was told the Agent Compliance Committee was unavailable to investigate her request for a sponsorship when this was not true, as the Compliance Committee had met during the relevant time frame. ¶ 321. Moreover, promises of the investigation continued to be made to Plaintiffs while Mr. Haggard, the Director of Agent Compliance, and Mr. Nuth had communicated to Defendant Bjorkman that no investigation would be occurring. *Id.* ¶ 324. Plaintiff Sims had also been expressly told that eXp had terminated Defendant Bjorkman and severed all ties with him. *Id.* ¶ 329. However, over the course of this litigation, Plaintiff Sims discovered this was not true. *Id.* ¶ 332. In sum, Plaintiffs alleged misrepresentations by members of eXp Defendants' leadership teams.

Defendants argue that this element is not met, in part, because the Plaintiffs have invoked the Policies and Procedures, as incorporated into the Plaintiffs' Independent Contractor Agreements, as the initial basis for the fraud claim. Mot. at 16. This is not true. Plaintiffs alleged they originally reported the sexual assaults because of the Policies and Procedures but the misrepresentations did not start there. Rather, each alleged several separate misrepresentations by members of the eXp leadership team throughout the course of the purported investigation. These separate misrepresentations resulted in the alleged damage.

Defendants also argue Plaintiffs fail to provide evidence that any representations were false. Mor. At 16. Defendants do not, in making this claim, point to any particular statements in Plaintiffs' briefing; rather, Defendants

wholesale claim that Plaintiffs statements are unsupported. This argument, however, is unsupported by the TAC. For instance, the statement made to Plaintiff Sims that the Agent Compliance Committee was unavailable to meet is alleged to be false based on evidence that the Agent Compliance Committee met several times during that time period. TAC ¶ 321. Likewise, statements made to Plaintiff Acevedo that her complaints were being investigated were alleged to be false based on evidence that senior leadership privately communicated and agreed to never conduct any investigation. *Id.* ¶ 348.

Finally, Defendants suggest that there was no misrepresentation was false at the time it was made as "statements regarding what may happen in the future cannot serve as the basis for a fraudulent misrepresentation claim." Mot. at 15, n. 2. Again, Plaintiffs claims do not suffer from this deficiency. As alleged by Plaintiffs, statements about Defendant Bjorkman's employment status or their various investigations were false *at the time they were made*. These were not statements about what may happen in the future, rather, they were statements made about the present or past state of events. The Court disagrees with Defendants and finds that Plaintiffs have sufficiently alleged misrepresentation by eXp Defendants.

### ii.  Knowledge of Falsity

Each of the Plaintiffs sufficiently alleged that the misrepresentations were made with knowledge of their falsity. Defendants' arguments that Plaintiffs have failed to plead scienter are not persuasive. First, Defendants characterize Plaintiffs' allegations as "conclusory." Mot. at 17. However, Defendants ignore several facts presented by Plaintiff that indicate knowledge of falsity. As noted above, the misrepresentations were made by senior leadership members who had knowledge of its falsity. For instance, Mr. Bramble communicated to Plaintiff Acevedo that an investigation was ongoing and that he had not spoken with Ms. Courtney Keating or Mr. Jason Gesing yet. In actuality, the TAC alleges that Mr. Bramble had already spoken with both of them and decided no investigation would take place. TAC ¶ 348. Likewise, Direct of Agent Compliance Mr. Cory Haggard had told Plaintiff Sims that the Agent Compliance Committee was unavailable to investigate her complaint when, at that time, they had met several times previously. *Id.* ¶ 321.

Defendants additionally claim that Plaintiffs' claims no investigation was occurring are belied by Plaintiffs' own statements which indicate that an investigation had taken place. Mot. at 17. Defendants certainly offer one interpretation of the facts presented by the Plaintiffs. However, reading the facts in the light most favorable to the Plaintiffs, it is plausible that the steps taken by the

eXp Defendants, such as conducting an interviews with the Plaintiffs, were done to give the impression that an investigation was ongoing when in fact, no such investigation was present. The Court finds that Plaintiffs have sufficiently met their burden to plead knowledge of the falsity.

### iii.  Intent to Defraud or Induce Reliance

Plaintiffs have sufficiently alleged intent to induce reliance on Defendants' fraudulent statements. Plaintiffs expressly stated that the existence of an investigation was material to Plaintiffs' continued affiliation with eXp Defendants. As a result of their continued affiliation, they continued to "remain affiliated with eXp, continue to publicly support eXp, continue to share commissions with eXp, continue to pay eXp's monthly fees, and forgo outside complaints." TAC ¶ 354. The same is true of statements made with respect to the eXp Defendant's relationship with Defendant Bjorkman. *Id.*

Defendants argue that these allegations are not sufficient to support this element of a claim for fraudulent misrepresentation since Plaintiffs did not provide specific facts supporting an intent to defraud or induce reliance. Mot. at 17-18. However, the California Supreme Court has held it is sufficient at this stage to find a reasonable inference of an intent to induce reliance based on a continued course of conduct. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976 (1997) (finding an inference for an intent to induce reliance based on periodic newsletters sent by defendant that could "plausibly be viewed as reflecting [defendant's] intent to induce subscription or renewal of subscription" for their services). That precise inference may be applied here. Plaintiffs have alleged a course of repeated assurances and statements by various members of eXp Defendants' leadership team. Such statements "can plausibly be viewed as reflecting [eXp Defendants'] intent to induce" reliance. *Id.* Accordingly, the Court concludes that Plaintiffs have sufficiently alleged intent to induce reliance.

### iv.  Justifiable Reliance and Damages

Finally, Defendants have argued that Plaintiffs have not demonstrated the last two factors. First, Defendants argue that Plaintiffs have not alleged justifiable reliance because they did not "specify what they did, what action they took or what action they refrained from, in allegedly relying on the statements attributed to eXp-affiliated personnel." Mot. at 18. However, this is directly contradicted by allegations in the TAC, where Plaintiffs alleged they relied on statements that an investigation was ongoing by cooperating with purported investigations, submitting

detailed written statements, participating in calls, and continuing to engage with internal processes rather than escalate. TAC ¶¶ 316-57.

Moreover, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Engalla*, 15 Cal. 4th at 977. A misrepresentation is material if "A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (citations omitted) As such, "materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Id.* (citations omitted). Plaintiffs allege that the existence of an investigation was material to their continued affiliation with eXp Defendants. TAC ¶ 354. Based on the nature of the misrepresentations, the Court cannot find that they are so unimportant a person would not be reasonably influenced by them. Indeed, statements that an investigation is ongoing and that Defendants have severed contact with an individual accused of repeated sexual assaults would be very relevant to Plaintiffs' decisions. In short, Plaintiffs' allegations of reliance on eXp Defendants misrepresentations are sufficient to support of a showing of materiality and an inference of reliance as a "reasonable man would attach importance to its existence or nonexistence in determining his choice[.]" *Engalla*, 15 Cal. 4th at 977.

Defendants next argue that Plaintiffs have not sufficiently alleged damages because "it is unclear whether [extreme emotional distress] is the only damage Plaintiffs are claiming as a result of the alleged fraudulent conduct by the eXp Entities or if there are other, unspecified damages that Plaintiffs claim as a consequence of the alleged fraudulent misrepresentations." Mot. at 18. However, by Defendants' own argument, Plaintiffs *have* articulated damages, or extreme emotional distress. Plaintiffs stated explicitly that they suffered from extreme emotional distress because of the fraudulent misrepresentation. TAC ¶¶ 331, 355. There is no need to "guess or discern" the damages that have resulted, as Defendants claim. Mot. at 18. Accordingly, the Court finds Plaintiffs have met the final elements for a claim of fraudulent misrepresentation.

## B. Plaintiffs' claim meets the heightened pleading standard of Rule 9(b)

Under Rule 9(b), a plaintiff is required to state with particularity the circumstances of any allegations of fraud. "Averments of fraud must be accompanied by 'the who, what, where, and how' of the misconduct charged." *Swafford*, 383 F. Supp. 3d at 926. The TAC does precisely this. As noted above,

Plaintiffs allege, in great detail, the specific actions taken by various members of the eXp Defendants' leadership team, including General Counsel Jim Bramble, President of Brokerage Operations Stacey Onnen, Chief Marketing Officer of eXp World Holdings Courtney Keating, and Direct of Agent Compliance Cory Haggard. The TAC specifically identifies statements made to which Plaintiffs and why those statements were false at the time they were made.

Defendants attempt to argue that Plaintiffs' pleadings are ambiguous by raising several areas of possible confusion as to the nature of the claim. Contrary to Defendants position, the TAC is not ambiguous. It states specifically where the alleged fraudulent misrepresentation exists. The TAC also specifically identifies the individuals at issue and their specific roles at eXp Realty and eXp World Holdings. Plaintiffs allegations are sufficient to meet the heightened pleading standards of fraud and have pled with particularity their allegations as it relates to the corporate defendants.

### C. Plaintiffs' claim is not barred by the economic loss rule.

The economic loss tule prohibits a plaintiff from repackaging a breach of contract claim as an independent tort claim. The purpose of the economic loss rule is to prevent tort law and contract law from dissolving into one another. Under the economic loss rule:

> "[T]ort recovery for breach of a contract duty is generally barred unless two conditions are satisfied. A plaintiff must first demonstrate the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract. Second, the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed."

*Rattagan v. Uber Tech., Inc.*, 17 Cal. 5th 1, 20-21 (2024) (citations omitted). As further clarified by the California Supreme Court, "[t]he guiding and distinguishing principle is this. If the the alleged breach is based on a failure to perform as the contract provides, and the parties reasonably anticipated and allocated the risks associated with the breach, the cause of action will generally sound only in contract because a breach deprives an injured party of a benefit it bargained for." *Id.* at 27.

Defendants argue that Plaintiffs' claim is barred by the economic loss rule because the fraudulent misrepresentation claim is grounded in the Policies and

Procedures assurance that Defendants will "thoroughly investigate" all complaints related to sexual misconduct. In short, Defendants argue that Plaintiffs are recasting a breach of the Policies and Procedures as a fraudulent misrepresentation claim that is, therefore, barred by the economic loss rule. Mot. at 11-14. Defendants, however, mischaracterize Plaintiffs claim. While Plaintiffs state they brought complaints pursuant to the Policies and Procedures, their fraudulent misreprentation claim is not based on a contractual duty to investigate the sexual misconduct allegations. Rather, the fraudulent misrepresentation claim is based on several subsequent statements by members of the leadership team that investigations were ongoing and that eXp had ceased its affiliation with Defendant Bjorkman, despite contemporaneous knowledge that these statements were untrue.

As the alleged tort is not based in a violation of a breach of contract, the economic loss rule does not apply. Accordingly, Plaintiffs' claim for fraudulent misrepresentation is not barred.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED.**

In light of the denial, Defendants have requested the Court modify the scheduling order to extend the fact discovery period. The Defendants request with respect to modification of the scheduling order is **GRANTED.** The Court extends the fact discovery deadline to sixty (60) days after the date of this Order. In light of the fact discovery extension, the Court **ORDERS** the Parties to submit a joint proposed schedule for all other stayed deadlines with fourteen (14) days of this Order.

**IT IS SO ORDERED**.