Ivy A. Wang (SBN CA 224899)
Daniel J. Wadley (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Ivy.Wang@gtlaw.com
wadleyd@gtlaw.com

William E. Pallares (SBN CA 187740)
Mack Reed (*Pro Hac Vice* forthcoming)
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900
William.Pallares@lewisbrisbois.com
Mack.Reed@lewisbrisbois.com

Attorneys for Defendants eXp Realty, LLC; eXp
World Holdings, Inc.; and Glenn Sanford

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIOLA ACEVEDO, CHRISTY LUNDY, TAMI SIMS, MEGAN FARRELL-NELSON,<br><br>　　　Plaintiffs,<br><br>v.<br><br>eXp REALTY, LLC; eXp WORLD HOLDINGS, INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; BRENT GOVE; and DOES 1–10,<br><br>　　　Defendants. | CASE NO.  2:23-cv-01304-AB-CTSx<br><br>Hon. André Birotte Jr., Ctrm 7B<br>Magistrate Judge Christina T. Shay<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING THE DISCOVERY CUT-OFF DEADLINE**<br><br>Action Filed:　February 22, 2023<br>FAC Filed:　　March 23, 2023<br>SAC Filed:　　February 28, 2024<br>TAC Filed:　　October 27, 2025 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 5

II.     STATEMENT OF RELEVANT FACTS....................................................... 7

III.    ARGUMENT ........................................................................................... 11

    B.    Plaintiffs Failed to Comply with the Court's Local Rules and Standing Order on *Ex Parte* Applications ............................................................... 11

    C.    Plaintiffs' Application Fails to Explain the Necessity for Bypassing Regular Motion Procedures ........................................................................... 12

    D.    Plaintiffs Cannot Demonstrate Good Cause For Relief................................. 13

IV.     CONCLUSION........................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Contreras*,
2025 WL 2019440 (C.D. Cal. June 23, 2025)......................................................15

*Burton v. Nationstar Mortg., LLC*,
2014 WL 3890103 at *3 (E.D. Cal. Aug. 4, 2014).............................................15

*CF & I Steel Corp. v. Mitsue & Co.*,
713 F.3d 494 (9th Cir. 1983) ............................................................................14

*Doe v. Sterling*,
2025 WL 4649373 (C.D. Cal. Sept. 23, 2025) ......................................13, 14, 15

*Fanmio, Inc. v. Garcia*,
2026 WL 1129911 (C.D. Cal. Apr. 23, 2026)....................................................15

*KBS Holdco, LLC v. City of W. Hollywood*,
2025 WL 4649349 (C.D. Cal. June 11, 2025)............................................12, 15

*Lopez v. City of la Habra Heights*,
2023 WL 5310220 (C.D. Cal. Aug. 17, 2023) ..........................................13, 14

*Mindtickle, Inc. v. Studio Enter., LLC*,
2025 WL 3691969 (C.D. Cal. Nov. 27, 2025) ..................................................15

*Moreno v. SFX Ent., Inc.*,
2016 WL 6039216 at *1 (C. D. Cal. Jan. 8, 2016) ............................................12

*Owen v. Alcresta Therapeutics, Inc.*,
2024 WL 5516290 (C.D. Cal. Dec. 12, 2024)....................................................14

*Sandoval v. St. John's Reg'l Med. Ctr.*,
2007 WL 9706629 (C.D. Cal. Oct. 3, 2007) ....................................................12

*Tourgeman v. Collins Fin. Servs.*,
2009 WL 3073714 (S.D. Cal. May 4, 2009) ....................................................14

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716, 737 (9th Cir. 2013) ....................................................................13

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)............................................................................5, 6, 9, 16

Local Rule 5-3.......................................................................................................11

Local Rule 7-19.....................................................................................................11

Local Rule 19 .......................................................................................................11

Rule 45(c)..............................................................................................................14

Standing Order, p. 13-14......................................................................................11

## I. **INTRODUCTION**

As early as October 2024, Plaintiffs indicated their intent to amend their complaint, and by mid-2025, came to the conclusion that evidence they had adduced through discovery supported amendment of their complaint to assert a claim that eXp Realty, LLC and eXp Worldwide Holdings, Inc. (together, the "Entity Defendants") had lied about investigating allegations that defendants Michael Bjorkman and David Golden had engaged in sexual misconduct. Yet it was not until May 2026, less than one month from the cut-off date for fact discovery, that Plaintiffs first sought to take two depositions in connection with that claim. In this regard, Plaintiffs (a) moved to compel a further 30(b)(6) deposition of eXp World Holdings concerning what action, if any, the board of directors undertook regarding the alleged assaults, and (b) attempted (unsuccessfully) to serve a deposition subpoena on former eXp Worldwide Holdings board member Eugene Frederick (explaining during a June 8, 2026 meet and confer that they speculate he has knowledge relevant to the fraud claim).

Magistrate Judge Alicia Rosenberg granted the motion to compel further 30(b)(6) testimony, which was provided by James Bramble on June 4, 2026. Mr. Frederick objected to the subpoena (purportedly served on May 30, 2026 and calling for his testimony on June 8, 2026) because the mandatory witness fee was not tendered to him at the time of service. On that basis, Mr. Frederick did not appear. Plaintiffs now move *ex parte* for an order pursuant to Fed. R. Civ. P. 16(b)(4) extending the discovery cut-off deadline so that they can bring motions to compel: (1) Mr. Frederick to provide deposition testimony and (2) the Entity Defendants to answer a handful of questions that counsel advised Mr. Bramble not to answer during his June 4, 2026 deposition based on an attorney-client privilege assertion. Plaintiffs' motion should be denied in all respects.

First, Plaintiffs have not demonstrated any necessity for imposing upon this Court or the Entity Defendants a need to address their application on an *ex parte* basis. With trial of their fraud claims not scheduled to begin until March 2028, Plaintiffs could have, and should have, moved by notice. No urgency exists to justify expedited proceedings. Any perceived

urgency is solely a product of Plaintiffs' inexcusable delay in seeking discovery. To use Plaintiffs' own words, "[a] party cannot . . . use *ex parte* procedure to escape the consequences of its own inaction." *See* Declaration of William E. Pallares (the "Pallares Decl.") ¶ 9.

Second, regardless of how the application is brought before the Court, it should be denied for its lack of merit. As Plaintiffs have acknowledged, "[d]iligence is the touchstone of Rule 16(b)(4)." *Id.* A party cannot demonstrate "good cause" to modify a discovery scheduling order where it has not been diligent in seeking discovery. Here, the Court's scheduling orders unambiguously required all discovery – including resolution of any discovery disputes or motions – to be completed by the cut-off deadline. By their own standards, Plaintiffs have not acted diligently. In August 2025, when Plaintiffs finally moved for leave to add their fraudulent misrepresentation claim, they represented to the Court that, insofar as the parties had already taken all appropriate discovery in connection with that claim, "it will not require any additional discovery requests or witnesses to be deposed." Pallares Decl. ¶ 5. In November 2025, Plaintiffs maintained their position that no further fraud-related discovery was needed, when they opposed the Entity Defendants' motion to stay the case pending decision on their motion to dismiss the fraudulent misrepresentation claim. The Entity Defendants argued that, if that claim was not dismissed, the discovery deadline should be extended to afford them an opportunity to engage in fraud-related discovery. Plaintiffs countered that defendants could have taken fraud-related discovery as early as June 2025 (when Plaintiffs announced their intention to assert the claim) and had no excuse for not propounding such discovery immediately upon the Court's October 23, 2025 decision allowing Plaintiffs to amend their complaint. *Id.* ¶ 9.

By Plaintiffs' own clearly articulated standards, their lack of diligence and the consequent absence of good cause for a further extension of the discovery cut-off is undeniable. Plaintiffs do not explain why they have suddenly and belatedly decided that they desperately need discovery they previously and repeatedly represented was

unnecessary. Plaintiffs do not identify any information that they expect to obtain from Mr. Frederick that they could not have obtained from any of the dozens of other witnesses deposed in this case; and they certainly do not explain why they waited until May of 2026 to attempt to obtain that testimony. The law is very clear. Where, as here, all discovery–including resolution of disputes and motions–must be completed by the discovery cut-off, the parties must seek discovery sufficiently in advance of the deadline to ensure that any disputes can be brought to the Court's attention and resolved by the deadline. Where, as here, no excuse is offered (or exists) for waiting until the deadline was looming to first seek discovery, the deadline must be enforced.

## II.    STATEMENT OF RELEVANT FACTS

On April 14, 2023, the Court entered a stipulated order (the "Initial Scheduling Order") establishing deadlines for, among other things, completion of discovery. The Initial Scheduling Order provided, in relevant part, that a "Discovery Cut-Off" date was "the final day for **completion of discovery**, including resolution of all discovery motions" and that such discovery cut-off "is the last day by which all depositions must be completed, responses to previously-served written discovery must be provided, and motions concerning discovery disputes must be heard." Pallares Decl. ¶ 2 (citing Dkt. No. 43 ¶ I(l) and (r)). By order dated March 21, 2025, July 7, 2025 was set as the cut-off date for non-expert discovery. *Id.* ¶ 3 (citing Dkt. No. 238). The definition and description of discovery "cut-off" dates set forth in the Initial Scheduling Order was not modified.

Commencing in October 2024, Plaintiffs' counsel began indicating that they intended to amend the complaint for a second time. *Id.* ¶ 4. On or about June 24, 2025, Plaintiffs formally announced their intention to seek leave to file a third amended complaint which, among other things, would add a claim for fraudulent misrepresentation. *Id.* On that date, counsel participated in a meet and confer in which the Entity Defendants took the position that Plaintiffs did not have good cause to further modify the then-existing Scheduling Order (which had already been modified several times) to extend the already expired deadline for seeking leave to amend the complaint, as Plaintiffs had been aware of the alleged bases for

asserting a misrepresentation claim for eight months, but had neither sought leave to amend nor to extend the January 26, 2024 deadline for doing so. *Id.* and Exhibit A. On or about July 6, 2025, Plaintiffs circulated a draft of a proposed third amended complaint including a misrepresentation claim and, on or about August 29, 2025, Plaintiffs served their notice of motion and motion for leave to serve the third amended complaint (the "Motion to Amend"). Pallares Decl. ¶ 4 (citing Dkt. No. 303-4).

In their Motion to Amend, Plaintiffs asserted that the amendment to add misrepresentation and ratification claims was warranted to conform the pleadings to the proof adduced during discovery. Pallares Decl. ¶ 5 (citing Dkt. No. 303-4 at 7-12). Plaintiffs further contended that amendment would cause no prejudice to the Entity Defendants because the Entity Defendants had known about Plaintiffs' intention to amend for several months and had therefore had a full opportunity to engage in all appropriate discovery by the then-current deadline (October 3, 2025). *Id.* Plaintiffs contended that they needed no additional discovery, as they had "already served discovery related to the Plaintiffs' proposed claims." *Id.* Plaintiffs represented to the Court that "[b]y allowing these new claims to be added to the complaint, it will not require any additional discovery requests or any additional witnesses to be deposed." *Id.*

By order dated September 2, 2025 (Dkt. No. 307), the Court extended the discovery cut-off deadline to December 1, 2025. The Court did not change the definition of "cut-off date" as the date all discovery disputes and motions are to be resolved and further warned that "[a]bsent exceptional circumstances, no further continuance will be allowed." Pallares Decl. ¶ 6.

On October 23, 2025, the Court granted Plaintiffs' motion for leave to serve the third amended complaint. *Id.* ¶ 7. On November 24, 2025, the Entity Defendants simultaneously moved to dismiss the fraudulent misrepresentation claim and applied for an *ex parte* order staying discovery deadlines pending resolution of that motion. *Id.* Among other things, the Entity Defendants contended that there was insufficient time to complete discovery necessary to mount a defense to the new claim, given the December 1, 2025 cut-off date,

and that they would be prejudiced if the court did not stay discovery. *Id.* The Entity Defendants requested that, if the misrepresentation claim survived the motion to dismiss, the discovery cut-off date should be extended for a reasonable period of time to afford them the opportunity to conduct discovery, including "targeted depositions of individuals with knowledge of the new allegations." *Id.* (citing Dkt. No. 368 at 4-5, 9-10).

Plaintiffs opposed the Entity Defendants' *ex parte* application, arguing that the Entity Defendants had not shown good cause for either a stay or a subsequent extension of the discovery cut-off date. *Id.* ¶ 8. Plaintiffs contended that the Entity Defendants had already been afforded an opportunity to conduct all discovery needed to defend against the fraud claim and that if they did not avail themselves of that opportunity, it was their own fault. *Id.* Specifically, Plaintiffs noted that the "fraud theory" was disclosed to the Entity Defendants in June 2025, and that even after the October 23, 2025 order allowing Plaintiffs to assert that a fraud claim, the Entity Defendants served no document requests or deposition notices. *Id.* (citing Dkt. No. 369 at 3). Plaintiffs argued that by waiting a month after the Court granted leave to amend before making an *ex parte* application to extend the discovery cut-off date, the Entity Defendants had fabricated an emergency. *Id.* ¶ 9. Plaintiffs averred that the extraordinary remedy of an *ex parte* order should not be granted because "[a] party cannot . . . use *ex parte* procedure to escape the consequences of its own inaction." *Id.* (citing Dkt. No. 369 at 4). According to Plaintiffs, "[d]iligence is the touchstone of Rule 16(b)(4)" and the Entity Defendants had "simply ignored the scheduling consequences" when they waited months after having notice of the fraud claim to pursue discovery. *Id.* In Plaintiffs' view, the fact that the Entity Defendants did not move for relief until 30 days after the Court granted leave to amend was "undeniable" proof of their lack of diligence and therefore, the absence of good cause to extend the discovery cut-off. *Id.* In opposing the stay of discovery and the extension of the cut-off deadline that would, of necessity, follow, Plaintiffs never even suggested that they had a need or desire to conduct any further discovery in connection with their newly-asserted claims. Pallares Decl. ¶ 10.

By order dated November 26, 2025—approximately five days before discovery

would have ended—the Court granted the Entity Defendants' *ex parte* application and stayed the case. *Id.* ¶ 11 (citing Dkt. No. 370). On April 7, 2026, the Court denied the Entity Defendants' motion to dismiss the misrepresentation claim, lifted the stay, and extended the discovery cut-off date to June 8, 2026 (60 days from the date of the denial). *Id.* (citing Dkt. No. 381). Without any explanation for their sudden reversal, Plaintiffs apparently decided that they *did* in fact wish to take further discovery related to their fraud claim. On April 14, 2026, Plaintiffs informed the Entity Defendants that they "intended to depose" Mr. Frederick, a former member of the eXp Worldwide Holdings board of directors. *See* Declaration of Andrea Hirsch dated June 8, 2026 in support of Plaintiffs' *ex parte* application (the "Hirsch Decl.") ¶ 3. Plaintiffs did not, however, serve a subpoena upon him.

On April 28, 2026, the parties submitted to Judge Rosenberg a joint agenda for various discovery-related issues to be addressed at a hearing before her scheduled for the following day. Plaintiffs listed six items they wished Judge Rosenberg to address. Plaintiffs did not include a request to take Mr. Frederick's deposition. Pallares Decl. ¶ 12. On May 14, 2026, the parties submitted to Judge Rosenberg a joint agenda for various additional discovery-related issues to be addressed at a hearing before her scheduled for the following day. Plaintiffs listed six items they wished Judge Rosenberg to address. Plaintiffs' agenda did not include a request to take Mr. Frederick's deposition. Nor did it contain any express reference to the fraud claim. *Id*. ¶ 13.

It was not until May 18, 2026–six weeks after the court sustained their fraudulent misrepresentation claim and lifted the discovery stay, and five weeks after then announced their intention to depose Mr. Frederick–that Plaintiffs attempted to personally serve a deposition subpoena on him in Puerto Rico. *See* Hirsch Decl. ¶ 6. A dispute arose as to whether service of such subpoena was properly effectuated, as Mr. Frederick was not in Puerto Rico on the purported date and time of service. Pallares Decl. ¶ 14; Hirsch Decl. ¶ 11. On May 30, 2026, Plaintiffs again attempted to effectuate personal service of a deposition subpoena on Mr. Frederick. Hirsch Decl. ¶ 14. Plaintiffs admit that the process

server did not tender a witness fee at the time of service, and that Plaintiffs subsequently attempted to send the mandatory witness fee to Mr. Frederick in Puerto Rico by overnight delivery on June 3, 2026. Hirch Decl. ¶ 19. Mr. Frederick, however, was no longer in Puerto Rico on that date. Pallares Decl. ¶ 15. The subpoena purported to require Mr. Frederick's appearance for a deposition on June 8, 2026, just nine days after the date of purported service. *Id.* Mr. Frederick took the position that the subpoena was invalid, as the witness fee was not served with the subpoena. He therefore did not appear on June 8, 2026. *Id*. ¶ 16.

On June 8, 2026, counsel for Plaintiffs and the Defendants engaged in a meet and confer by videoconference to discuss Plaintiffs' announced intention to move on an *ex parte* basis for an order extending the June 8, 2026 discovery cut-off date so that Plaintiffs could move to compel (a) Mr. Frederick to appear at a deposition, and (b) the Entity Defendants' 30(b)(6) witness to answer questions that counsel had instructed him not to answer during his June 4, 2026 deposition (counsel's instruction was based on his belief that answering would disclose privileged attorney-client communications). Defendants' counsel was unable to convince Plaintiffs' counsel that there was (a) no need to move for such relief on an *ex parte* basis or (b) no good cause to further extend the discovery cut-off deadline. Pallares Decl. ¶ 17.

## III.    ARGUMENT

### B.    Plaintiffs Failed to Comply with the Court's Local Rules and Standing Order on *Ex Parte* Applications

The Court's Standing Order clearly provides that, in addition to service in accordance with Local Rule 5-3, "the moving party must also serve the non-moving party by email, fax, or personal service." Further, "[t]he moving party must notify the nonmoving party that opposing papers are due 48 hours (2 court days) after service." Standing Order, p. 13-14. The Standing Order also mandates compliance with Local Rule 19, which requires applicants to include the name, address, telephone number and e-mail address of opposing counsel in their moving memorandum. *See* Local Rule 7-19. The Court's website (Judge's

Procedure) warns that "Applications that violate these rules will be denied." Plaintiffs' Application should be denied because they (a) failed to notify the Entity Defendants that opposing papers are due within 48 hours (2 court days after service); (b) failed to serve the Application by email, facsimile or personal service; and (c) failed to list the contact information for Entity Defendants' counsel in their moving memorandum (or elsewhere in their moving papers).

### C. Plaintiffs' Application Fails to Explain the Necessity for Bypassing Regular Motion Procedures

As the Court has accurately observed, "[a]n *ex parte* application is a 'means of obtaining extraordinary relief and is appropriate only in rare circumstance.'" *See* Dkt. No. 370, quoting *Santos v. TWC Admin. LLC*, 2024 WL 12703021 at *1 (C.D. Cal. Sept. 15, 2014). Such extraordinary relief is warranted only if (1) the moving party's cause will be irreparably prejudiced if the application is denied and (2) the moving party is "without fault in creating the crisis that requires ex parte relief, of that the crisis occurred as a result of excusable neglect." *Id*. quoting *Moreno v. SFX Ent., Inc.*, 2016 WL 6039216 at *1 (C. D. Cal. Jan. 8, 2016). The foregoing standard has consistently been applied to *ex parte* applications seeking to modify scheduling orders. *See, e.g. KBS Holdco, LLC v. City of W. Hollywood*, 2025 WL 4649349, at *2 (C.D. Cal. June 11, 2025) (plaintiff created emergency by waiting a month after need to seek order allowing additional depositions arose to make motion less than a week before discovery cut-off); *Sandoval v. St. John's Reg'l Med. Ctr.*, 2007 WL 9706629, at *1 (C.D. Cal. Oct. 3, 2007) (denying *ex parte* application to extend discovery cut-off date in scheduling order because party did not even attempt to establish irreparable harm and lack of fault).

Plaintiffs waited until the discovery cut-off date to bring this motion to extend the deadline, correctly reciting that unless the deadline is extended, any motion(s) to compel deposition testimony would be untimely. *See Ex Parte* Application at 10. However, regardless of whether the motion to extend is brought on an *ex parte* (expedited) basis or by normal motion procedures, any decision to extend will be rendered after the June 8, 2026

deadline has already expired.  It matters not one wit whether the motion is decided a few days or a few weeks after the expiration.  The Court is capable of retroactively extending the deadline–or not–in either case.  Insofar as trial is not scheduled to commence until 2028, and Plaintiffs identify no urgent need to obtain the discovery they hope to compel (indeed, they do not even describe the information they expect to obtain), Plaintiffs should have brought this motion on notice rather than forcing the Entity Defendants and the Court to drop all of their other work to address Plaintiffs' untimely demands.

In addition, as discussed in more detail below, to the extent that any urgency exists (and it does not), Plaintiffs are entirely at fault for creating it.  The law requires parties to seek discovery they believe is necessary sufficiently in advance of the court-ordered discovery cut-off date to allow for the resolution of any disputes.  Where, as here, a party waits until the discovery cut-off is near upon it to first seek discovery, making it impossible to resolve a dispute before the cut-off, that party has in fact brought the urgency upon itself and is not entitled to substantive relief (i.e., extension of the cut-off deadline) at all, much less on an expedited basis.  Thus, even if Plaintiffs' assertion that the dispute did not ripen until June 8, 2026 is correct, the only reason that the dispute did not ripen in time for resolution through the usual procedures is that Plaintiffs inexplicably waited until the last moment to seek the discovery that led to the dispute.  As discussed below, Plaintiffs could have and should have sought the depositions months earlier.

### D. Plaintiffs Cannot Demonstrate Good Cause For Relief

Plaintiffs correctly note that, under applicable law, (a) extension of a discovery cut-off deadline set forth in a scheduling order may only be granted where the party establishes "good cause" for extension, and (b) the most significant factor in the analysis is whether the party acted diligently.  *See Ex Parte* Application at 9-10.  *See also Doe v. Sterling*, 2025 WL 4649373, at *1 (C.D. Cal. Sept. 23, 2025) ("a scheduling order may be modified only for good cause" and "[t]his standard primarily considers the diligence of the party seeking the amendment.") (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013)); *Lopez v. City of la Habra Heights*, 2023 WL 5310220, at *1 (C.D.

Cal. Aug. 17, 2023) ("when a party seeks to continue the dates set by the court at a scheduling conference, he or she must first show 'good cause' for modification of the scheduling order"; "the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.") Where Plaintiffs err is in asserting that they have demonstrated diligence in this case. They have not. Indeed, they have acted with anything but diligence. Further, the other (albeit somewhat less important) factors that the Court must consider also militate against the relief sought. *See Sterling*, 2025 WL 4649373 at *1 (other factors to consider include whether "[]trial is imminent, [] whether the request is opposed, [] whether the non-moving party would be prejudiced," "[]the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and [] the likelihood that the discovery will lead to relevant evidence."); *Lopez*, 2023 WL 5310220, at *1 (same).

Plaintiffs suggest that they acted diligently because they sought to depose Mr. Frederick and to obtain additional 30(b)(6) testimony from the Entity Defendants soon after the Court's April 7, 2026 decision denying the defendants' motion to dismiss the fraud claim. Plaintiffs contend that it was not their fault that Mr. Frederick disputed the validity of the subpoena served on May 30, 2026 and that counsel instructed the 30(b)(6) witness not to answer questions at his June 4, 2026 deposition.[1] *See Ex Parte* Application at 4, 11.

---

[1] While the merits of Mr. Frederick's objection are not relevant on this motion, two points are noteworthy. First, Plaintiffs' assertion that their application should be granted because Mr. Frederick did not seek a protective order (*Ex Parte* Application at 11) is misplaced. Plaintiffs did not serve the subpoena sufficiently in advance of the cut-off deadline to permit such a motion to be brought and resolved. *See Owen v. Alcresta Therapeutics, Inc.*, 2024 WL 5516290, at *2 (C.D. Cal. Dec. 12, 2024) (no good cause where plaintiff did not leave defendant with sufficient time to adjudicate dispute "through a protective order or motion to compel" before discovery cut-off). Second, had Plaintiffs left sufficient time to resolve the dispute, there is no doubt that Mr. Frederick's objection would have been sustained, and the subpoena held invalid. It is hornbook law that if the mandatory witness fee is not tendered simultaneously with personal service of the subpoena, the subpoena is a nullity. *See, e.g., Tourgeman v. Collins Fin. Servs.*, 2009 WL 3073714 (S.D. Cal. May 4, 2009) ("A subpoena is invalid when witness fees. . . are not tendered at the time the subpoenas are served . . . and the deposition testimony will not be

Plaintiffs fail to explain why they did not seek this testimony long before the November 26, 2025 discovery stay. Had they done so, there would have been ample time to bring any discovery dispute–a routine and predictable event–before the Court for resolution within the deadline established by the Scheduling Order.

The law is clear that parties must seek discovery sufficiently in advance of the court-ordered cut-off date to allow for disputes to be brought to the Court's attention and resolved *before* the deadline expires. Where, as here, a party waits until the deadline is near at hand to first seek discovery, the fact that a dispute arises is *not* good cause to extend the deadline. *See Sterling*, 2025 WL 4649373, at *3 (witness unavailability near cut-off date not good cause for extension where need to depose them was foreseeable long before the deadline and party elected to wait until deadline was approaching); *KBS Holdco,* 2025 WL 4649349, at *2 (Court's procedures "admonish parties to timely serve discovery such that disputes can be heard and ruled on before expiration of the discovery period"; good cause lacking because party knew the identity of the deponents and could have sought their depositions months before discovery cut-off); *Fanmio, Inc. v. Garcia*, 2026 WL 1129911, at *5 (C.D. Cal. Apr. 23, 2026) (because discovery disputes "are a common component of any civil matter and they should be anticipated," fact that dispute arose near deadline "is therefore of no consequence and in no way excuses Plaintiff from its failure to conduct discovery diligently from the outset.") (quoting *Burton v. Nationstar Mortg., LLC*, 2014 WL 3890103 at *3 (E.D. Cal. Aug. 4, 2014)); *Mindtickle, Inc. v. Studio Enter., LLC*, 2025 WL 3691969, at *1 (C.D. Cal. Nov. 27, 2025) (no good cause where court admonished parties it was

---

compelled.") Plaintiffs' argument that they cured the defect by overnighting the fee to him before they received his objection (*Ex Parte* Application at 11) is meritless. Plaintiff's Memorandum of Points and Authorities is devoid of any authority that such a cure is permissible. *See CF & I Steel Corp. v. Mitsue & Co.*, 713 F.3d 494, 496 (9th Cir. 1983) (rejecting argument that defect was cured by later tender; "we hold the plain meaning of Rule 45(c) requires simultaneous tendering of witness fees . . . with service of a subpoena"). Moreover, if tendering the fee could cure a defect, there was no cure here because Mr. Frederick was not in Puerto Rico when Plaintiffs attempted to deliver it to him. Pallares Decl. ¶ 15.

disinclined to extend deadlines and party waited until one month before cut-off date to propound discovery, leaving insufficient time to "present a discovery motion" through the required process); *Allen v. Contreras*, 2025 WL 2019440, at *2 (C.D. Cal. June 23, 2025) (no good cause where plaintiff did not seek discovery in time to bring any necessary motion to compel to the court's attention "in accordance with the Federal Rules, Local Rules, and other applicable procedures and orders" prior to the cut-off date).

There is no reason for Plaintiffs to have waited until the stay was lifted in order to seek fraud-related deposition testimony. It is undisputed that Plaintiffs formed the intention to assert a fraud claim no later than October 2024, formally announced their intention to seek leave to amend their complaint in June 2025, and moved for that relief in August 2025. Pallares Decl. ¶ 4. Plaintiffs therefore had every opportunity to seek any discovery they deemed necessary to support that claim long before November 26, 2025, when the Court stayed all scheduling deadlines, including the December 1, 2025 discovery cut-off. In moving for leave to amend the complaint to add the fraud claim (at the end of August 2025), Plaintiffs represented to the Court that they had "already served discovery related to the Plaintiffs' proposed claims" and if the claim were allowed, Plaintiffs "will not require any additional discovery requests or any additional witnesses to be deposed." Pallares Decl. ¶ 5. In October 2024, Plaintiffs opposed the Entity Defendants' motion for a stay, contending that, by that time, all parties had already had ample opportunity to complete any necessary and appropriate fraud-related discovery. *Id*. ¶ 8. Indeed, Plaintiffs argued that, if the Entity Defendants had not availed themselves of the opportunity to take fraud-related discovery prior to October 2025, it would be "undeniable" proof they had not acted with the diligence that "is the touchstone of Rule 16(b)(4)." *Id*. ¶ 9.

Plaintiffs offer no explanation for why: (a) they changed their mind and came to the conclusion that they *do* need additional fraud-related discovery; or (b) they could not have done so in time to seek discovery and resolve any (predictable) disputes before the (extended) cut-off date. Why did it take Plaintiffs until April 2026 to decide they needed more fraud-related 30(b)(6) testimony? Why did it take Plaintiffs until the end of May 2026

to decide they needed testimony from Mr. Frederick?  Plaintiffs have long known who Mr. Frederick is (and the position he held).  They do not explain why they just now have decided to depose him (and they certainly do not identify any information they hope to obtain from him).

## IV.   CONCLUSION

For the foregoing reasons, the Entity Defendants respectfully request that this Court deny Plaintiffs' *ex parte* application for an order extending the discovery cut-off deadline.

DATED:  June 10, 2026                GREENBERG TRAURIG, LLP


By */s/ Ivy A. Wang*
Ivy. A. Wang
Daniel J. Wadley


LEWIS BRISBOIS BISGAARD & SMITH LLP


By */s/ William E. Pallares*
William E. Pallares

Attorneys for Defendants eXp Realty, LLC; eXp World Holdings, Inc.; and Glenn Sanford