UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | | |
|---|---|---|
| FABIOLA ACEVEDO, ET AL, | ) | CASE NO: 2:23-cv-01304-AB-AGRx |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| eXp WORLD HOLDINGS, INC, ET AL, | ) | Wednesday, April 29, 2026 |
| | ) | |
| | ) | (10:03 a.m. to 10:59 a.m.) |
| Defendants. | ) | |

VIDEO DISCOVERY CONFERENCE - ZOOM WEBINAR

BEFORE THE HONORABLE ALICIA G. ROSENBERG,
UNITED STATES MAGISTRATE JUDGE,
PRESIDING

APPEARANCES:                SEE PAGE 2

Court Reporter:             Recorded; CourtSmart

Transcribed by:             Exceptional Reporting Services, Inc.
                            20079 Stone Oak Pkwy.
                            Suite 1105, PMB 237
                            San Antonio, TX 78258
                            361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:


For Plaintiffs:                JENNIFER A. LENZE, ESQ.
                               Lenze Lawyers
                               999 Corporate Drive
                               Suite 100
                               Ladera Ranch, CA 92694

                               ANDREA SOLOMON HIRSCH, ESQ.
                               BROOKE F. COHEN, ESQ.
                               Cohen Hirsch
                               5256 Peachtree Road
                               Suite 195-E
                               Atlanta, GA 30341


For Defendants:                ANANDA G. SPEROW, ESQ.
                               Lewis Brisbois Bisgaard & Smith
                               90 S. 7th St.
                               Suite 2800
                               Minneapolis, MN 55402

                               WILLIAM EDWARD PALLARES, ESQ.
                               Lewis Brisbois Bisgaard & Smith
                               633 West 5th St.
                               Suite 4000
                               Los Angeles, CA 90071

                               DANIEL J. WADLEY, ESQ.
                               Securities & Exchange Commission
                               351 S. West Temple
                               Suite 6
                               Salt Lake City, UT 84101

                               IVY A. WANG, ESQ.
                               Greenberg Traurig
                               1840 Century Park East
                               Suite 1900
                               Los Angeles, CA 90067

                               ROBERT Z. DEMARCO, ESQ.
                               Chesnoff & Schonfeld
                               520 South Fourth St.
                               Las Vegas, NV 89101

3

**Los Angeles, California; Wednesday, April 29, 2026; 10:03 a.m.**

**(Call to Order)**

THE CLERK:  Calling case number CV-23-1304-AB-AGR, Fabiola Acevedo, et al. versus eXp World Holdings, Inc., et al.

Counsel, can you please state your appearances for the record.

MS. LENZE:  Good morning, Your Honor, Jennifer Lenze on behalf of the plaintiffs.

MS. HIRSCH:  Good morning, Andrea Hirsch here on behalf of the plaintiffs.

MS. COHEN:  Good morning, Your Honor, Brooke Cohen here also on behalf of the plaintiffs.

MS. SPEROW:  Good morning, Amanda Sperow on behalf of both eXp defendants and Glenn Sanford.

MR. WADLEY:  Good morning, Your Honor, Daniel Wadley from Greenberg Traurig also on behalf of Glenn Sanford and the eXp entities.

MS. WANG:  Good morning, Your Honor, Ivy Wang from Greenberg Traurig on behalf of the eXp entities and Glenn Sanford.

MR. PALLARES:  Good morning, Your Honor, William Pallares on behalf of the eXp entities and Glenn Sanford.

MR. DEMARCO:  Good morning, Your Honor, Robert DeMarco appearing on behalf of defendant Michael Bjorkman.

THE COURT:  Okay.  Then I think there was one person

4

who is missing, right, who is unable to attend today?

MS. LENZE:  That's correct, Your Honor.

MR. PALLARES:  That's correct, Your Honor.

THE COURT:  Okay.  So first of all good morning, everyone.

I'm trying to think of how best to go through this, because there was one section -- no, it was -- I think it was in Mr. Bjorkman's section about the list of issues that we could address today without him, but then Mr. DeMarco you're here, so does that mean -- well of course we don't have Mr. Levine.

MR. PALLARES:  I think Mr. DeMarco is here to make sure that the issues that concern Mr. Bjorkman are not addressed.

THE COURT:  Are not addressed, okay.

MR. PALLARES:  Okay.

THE COURT:  So we'll go through this list of things that are okay to discuss.

So the first thing I wanted to talk about, actually probably out of order, is the eXp defendants request that I issue a ruling on the -- that -- the question of -- I think there's a motion to compel answers to certain deposition questions.

MR. PALLARES:  That's correct.

THE COURT:  And I had been working on that ruling and

5

then there was a stay of discovery.  So apparently that stay has been lifted, thank you for the notice.  I have actually found my notes from way back when, so I do think I can get -- now of course I'm on criminal duty, you know, as luck would have it -- but I do think I can get the order out in, if it's not today it'll be tomorrow, and that of course depends on how criminal duty goes, but you know, let's hope for the best.

So certainly this week, but I'm hopeful -- I got -- I was pretty far along, so --

MR. PALLARES:  Okay.

THE COURT:  -- I'm hopeful that, you know, another -- maybe tonight I will be able to finish it, and if not tonight then tomorrow.

MR. PALLARES:  Thank you, Your Honor.

THE COURT:  So that means we can now go to I think the next issue would have been the notice of plaintiffs' depositions.

MR. PALLARES:  That's correct, Your Honor.

MS. LENZE:  Yes, Your Honor.

THE COURT:  Right.  And so remind me now, that was May 13, 14, and 15?

MR. PALLARES:  Those were dates that were proposed as a placeholder to get things moving.

The depositions obviously are for three of the four plaintiffs, and it relates to the new claim that was brought on

6

allegations of fraud.

And so we are willing to work with obviously scheduling, and I know Ms. Lenze has something to say about this, but we would like the depositions to take place in Irvine rather than us having to travel back to the east coast as this is a new claim brought by plaintiffs and separate and apart allegedly from the other claims brought in the case.

And so as you -- the Court well knows is that you bring a lawsuit in the Central District you need to appear in the Central District for deposition.

**THE COURT:**  Let me ask just -- because this is coming at a time when I'm on criminal duty and I'm trying to wind down my chambers -- so let me see if someone can give me a very short statement of what that fraud claim is, the new fraud claim?

**MS. LENZE:**  Sure.  Yes, Your Honor, it relates to the failure of eXp to actually investigate the plaintiffs' complaints despite the fact that there were statements made to the plaintiffs that investigations were occurring.

**THE COURT:**  Okay.  Now, so I guess Mr. Pallares my question would be, maybe counsel have discussed this, but could these depositions be taken remotely?

**MR. PALLARES:**  I mean counsel have discussed this. Our preference has always been to take depositions in person. We've tried remote on some, we feel that they're more

7

productive in person.

And so I mean there has been that discussion, obviously there's been a meet and confer, and plaintiffs have presented that, but you know, our preference is to do it in person.

I mean these are new allegations, and you know, I understand the Court's inquiry is because these plaintiffs are all over the place.  I think one is actually -- may be in Los Angeles, and the other two are in Florida.

**THE COURT:**  Right.  And so since this is one claim I'm imagining that this will not take a long time.

I think before we were looking at long periods of time to go through the plaintiffs' allegations, but with this one claim, which may have some overlap with questioning that occurred before, it seems to me that these depositions would be relatively short and it would not make much sense for anyone to fly around the country for them.

**MS. LENZE:**  That's our position, Your Honor, if I may just ever so briefly.

I think there's extensive overlap, obviously because the -- two of the three plaintiffs have been deposed for three days, one two days, but have been deposed extensively related to the investigation, what happened afterwards, what they were told.  So I think Your Honor is right on the money when you say, you know, there's overlap.  I think that's extensive.

Plaintiffs' position initially was that we were going to oppose them altogether. We have met and conferred and understand there might be some follow up in light of the new claims, so we've adjusted that position.

But our position, Your Honor, is that we don't want to cause these plaintiffs to fly out all the way to California and also want to make sure there's some -- an order from Your Honor on the times in which defendants are entitled to question related to this new claim given the extensive depositions they've already been through.

THE COURT: Is it correct though that one plaintiff is in Los Angeles?

MS. LENZE: No, Your Honor.

MR. PALLARES: One plaintiff may be in Los Angeles, I believe.

MS. LENZE: Well, no, she doesn't live in Los Angeles, I think we're talking about Ms. Simms (phonetic), she lives in Nashville, Tennessee.

There is a chance she will be out in California, and so we were trying to work with defendants and in fact spoke about this just yesterday trying to work with them on a date that works for Ms. Simms and while she's out here in California to see if we can make that work. So that's to be determined, I guess, Your Honor, but her place of residence is Nashville.

THE COURT: Okay.

**MR. PALLARES:** You know, here are some of the issues, Your Honor, I mean there's some history going on here.

For example, we were out in Florida taking the deposition of Ms. Hasibeto (phonetic) when this new claim was pending, and you know, I tried to examine Ms. Hasibeto and was cut short, and one reason I was cut short was that this timing issue and multiple depositions, and I was prevented from asking questions as to the fraud claim when I flew all the way out to Florida to do an in-person deposition.

I mean I hate to say this, I think if -- you know, part of my reason is to get them out here in Los Angeles is so that we have certain exercise of decorum during the deposition, and that we're able to get forthright answers and answers to our questions without narrative speaking objections and get them done.

And I feel personally that doing that over Zoom is just going create all sorts of problems, and talk of time limits, you know, where the plaintiff can't answer the question and runs out the clock, and I mean that's been kind of the part and parcel of these depositions.

So part of it is yeah, bring them out here, get an understanding that this is -- needs to be done and it needs to be done properly, get the questions asked, get the questions answered, and we're done. Okay?

**MS. LENZE:** If I may, Your Honor?

**THE COURT:**  Yeah, I think that we'll -- it seems to me I think that the remote is properly better, but perhaps we don't need such tight time frames, because --

**MR. PALLARES:**  Yeah.

**THE COURT:**  -- you know, I don't really want to be micromanaging what questions are asked, and so I'm not sure that that's necessary, but maybe you can work together on dates and times to start the depositions, and do them by remote means.

I mean obviously if, you know, plaintiff happens to be in town maybe it's easier to do in-person, but assuming that they are, you know, across the country, work on remote means and maybe a general idea, you know, would this take more than half a day, Mr. Pallares?  What do you think?

**MR. PALLARES:**  It shouldn't take more than half a day, I mean ideally, but I mean we've had -- and you know, this is also -- I mean there's questions here as to the Court's order.

I mean this is going to be depositions as to the fraud claims, then yeah, it shouldn't take more than half a day.

With Ms. Ferrill (phonetic) depending upon the Court's order, her deposition may be longer, because there were several questions asked at her last deposition where she was instructed not to answer, and so as you know, her answering

those questions may lead to additional follow-up questions.

So I don't want to be pinned down to I can only ask this question and then we move on and we have a time limit.  So that's a concern as well.

THE COURT:  Okay.  Well you know, with the exception of that one plaintiff, because there is obviously this other issue, and as I said I want to be able to get the order out as soon as possible, so I think I will stick with the idea of remote means for the other plaintiffs, let's aim for half day and try to work that out.

You know, you seem -- it always seems as though you don't really have a whole lot of time, but it doesn't seem like you do have a whole lot of time.  I think it's June 8 is the deadline?

MS. LENZE:  That's correct.

MR. PALLARES:  Yes.

THE COURT:  Okay.

MR. PALLARES:  It's June 8th.

THE COURT:  So yeah, so that's coming up.

So I will leave it to counsel to work on the deposition schedule for those -- I think you said three plaintiffs?

MS. LENZE:  Yes, Your Honor.

MR. PALLARES:  Three plaintiffs.

THE COURT:  Okay.  Three plaintiffs, and we -- the

12

Court will order remote means, and a basis half day expect for the one plaintiff who is the subject of an order that will hopefully come out in the next day or two.

MS. WANG:  Your Honor, I -- respectfully I would like to push back on the half day because plaintiffs' counsel in this case engaged in very lengthy speaking objections, and so I just -- I foresee if -- you know, if we are limited to half a day we're going to be coming back to this Court.

It's been very, very difficult to get continuous testimony from plaintiffs in this case.

MS. LENZE:  If I may, Your Honor.  I think I've heard two comments now about these speaking objections --

THE COURT:  The speaking objections.

MS. LENZE:  -- I think I heard the word decorum mentioned, and I'm saying this with a smile, Your Honor, but the issues that have been presented is -- are because of numerous reasons, including the lack of working out time frames per our deposition protocol in advance of these depos.

So there was frustration in trying to pass the questioning as originally indicated in multiple depositions despite our request that that be worked out amongst defense counsel prior to examinations.  That's number 1, Your Honor.

Number 2, there was frustration, for example, on the part of Mr. Pallares during the examination of one of our clients, and that frustration kept coming out.  And so

obviously it was my right to make a record related to that frustration and the unhappiness of Mr. Pallares with the answers he was given.

And so, Your Honor, I very much understand there's no speaking objections under the federal rules and don't do so when not called for, and otherwise my speaking during a deposition is related to making a record and protecting my clients.

So I stand on those and --

**THE COURT:** Well making a record is one thing, but to me it is disruptive if it starts becoming a speaking objection in front of the witness --

**MS. LENZE:** Which I have not done, Your Honor.

**THE COURT:** -- argument about, you know, the merits or something.

**MS. LENZE:** Exactly.

**THE COURT:** And that I think does not belong as the deposition.

Now, if you want to have -- I can understand making a statement at the end so -- to explain what it is -- I've seen lawyers do that, but it, you know, comes at the end and so it doesn't disrupt the questioning of the witness.

I still would think that this should be half day, but you know, if people start going on and I've seen this for pages, then it does take a lot of time.  But I don't see why

14

that should happen here, we're talking about one claim, and so I don't really understand why anyone should -- I shouldn't say that, I do understand, this has been going on for years and it's hard to do that and people get on each other's nerves, and I get that, but you're in the home stretch and you just need to take a deep breath and get through it.

And then, you know, it's -- and unfortunately I won't be around because I -- my last day will be -- in chambers my last day is May 22nd, and as you can imagine there's a lot of time to -- that I need in order to wind down chambers.  Things like what came up here, you know, oh, there was a ruling that we needed, you know, there was a stay, the stay was lifted.

So these kinds of things happen and I want to leave as clean a record as I can, so I want to make sure that I can do that with as many cases as possible.

And so the accessibility that I have had I don't have very much of because I don't have very much time left and I have duty and other things, and so it's going to be difficult. And so I'm not going to be available the way I have been, and so you're going to need to get through this somehow.

Of course the case will be reassigned, I have no idea to whom, but I also don't know if that person is someone who does informal conferences the way I do, so you know, if you have to brief things it's a lot more time consuming.

So I'm hopeful you'll be able to schedule and get

through this -- these last few things quickly so that the case can move to the next phase and I can be around for it as much as possible, although, you know, my time is limited.

So I -- let's leave it at trying to do the half day, I understand one plaintiff has an issue that you may have to address in the next day or two when you see my order, and so maybe hold off for another day, but you'll -- I think you will be able to manage this.

**MS. LENZE:**  Absolutely, Your Honor.

**MR. PALLARES:**  Okay.

**MS. LENZE:**  Thank you so much and congratulations.

**THE COURT:**  Okay.

**MR. PALLARES:**  Thank you, Your Honor.

**THE COURT:**  Oh, thank you.

You know what, have we -- is this the first you're hearing of it or have we discussed this before?

**MR. PALLARES:**  We've heard rumors.

**THE COURT:**  Yeah.  Okay.  Well I put it on the -- you know you're right because the stay came in at the end of last year.  Okay, so -- because I did make a decision and then I put it on my procedures page and then I didn't remember that we hadn't had sessions since then, so I'm sorry to have just blurted it out, but anyhow, yes, so I am retiring, and because May 25th is I think a holiday, so my last day in chambers is May 22nd, and so I'm working as fast as I can.

16

Okay.  All right.  So that's with the plaintiffs' depositions, and let me see, there were other issues on the list of things we could address.

MS. LENZE:  Yes.

THE COURT:  Things we are permitted to talk about. There was something -- oh, the plaintiffs' notice of depositions of two board members.

MS. LENZE:  Yes, Your Honor.  That was -- that would be a Mr. Dan Kahear (phonetic) and Randall Miles (phonetic), they are part of the eXp World Holdings, Inc. board of directors, and specifically involved in what's called the audit committee that is part of the board of directors dealing with things like internal controls and effectiveness of internal controls.

And it is our understanding that they had not only direct knowledge related to the investigation being elevated and complaints of sexual assault that we're dealing with in these -- in this matter, being raised to the board level, but dealt with the board's decision-making and actions thereafter specifically as part of the audit committee.

And so, Your Honor, we have indicated to counsel for eXp that we wanted to depose these individuals, and their position was immediately no, and that there was -- they raised the Apex rule, which we indicated did not apply and that there has already been testimony in this case -- and I have to be

17

careful about what I say because that testimony has been marked

confidential -- but I will just say, Your Honor, that that

testimony has indicated their specific involvement and

knowledge in this case, and so that's why we have asked for

their depositions specifically.

THE COURT:  So it's your impression that they are --

when you say their knowledge, I mean because sometimes with

board committees their knowledge means, you know, third-hand

hearsay.  I mean is it your impression that they were literally

the decision-makers?

MS. LENZE:  Yes, in taking action on behalf of the

board of directors or their inaction based on their decision-

making as part of the audit committee, and specifically

Mr. Miles was, as I understand it, chair of that committee

deciding what action was taken or not taken or brought

ultimately to the board for a decision, and there's specific --

it's public record audit committee meetings where this was

discussed in November of 2020, in March of 2021, Mr. Miles

spoke with the whistleblower, somebody who was designated as

the whistleblower to the board of directors.

And so it isn't just another opportunity for us to

hear something third hand, it is inquiry into what actions or

lack of action they decided as part of this committee.

MR. PALLARES:  Your Honor, what this really is, is

that this is trying to shoehorn the derivative action that's in

Delaware into this case under the guise of evidence that goes towards the fraud claims.

This case, as you know, it's been litigated heavily, they have gone into the processes of the investigation that took place at eXp and they've had testimony of 30(b)(6) on complaint handling, they've had testimony of the compliance director, Corey Haggard (phonetic), two days of deposition, they've taken chief counsel's deposition for two days.  They have the information.

We also know that we took the deposition of Fee Gentry (phonetic), and as one of the prior discovery disputes came out, Fee Gentry had nothing to say but pure hearsay, speculation, innuendo, and gossip.  Okay?

And that is what unfortunately the derivative action has piggybacked on this action and so you have two parallel actions bringing up the same false and the same false allegations, the same untruths, the same evidence based nothing on hearsay.

And as this Court has honed in on, these are part of directors, they are learning information from counsel and in these meetings, if at all, and it's third-hand knowledge. They're not going to have any unique knowledge, and they are at Apex, they are Apex officers and members of board and directors can be considered Apex depositions.  If like many of the board members do they sit on many boards.  They are also CEOs of

other companies, and the Apex deposition is that these people are very, very busy, okay, they have multiple jobs, they have multiple responsibilities for not just eXp but other corporations, and this is simply an attempt to kind of harass and try to get more evidence.

For example, she mentions in the March 2021 communication with Randall Miles and the alleged whistleblower and the derivative action, and once again we're rehashing. What we're rehashing is the Dave Kinard (phonetic) issue and the innuendo and the gossip and the rumors about Dave Kinard. And as this Court knows, because you did the in camera review.

Here there's allegations in the derivative action that he was sending explicitly sexual photographs and this Court knows that that is an outright -- it's a lie, and it's basically a lie, and here we are trying to rehash these issues, shoehorn him back in, try to claw back what we weren't unable to do, vis-a-vis Ashley Goladay (phonetic) and that whole hearsay declaration that she presented.

I asked point-blank Fee Gentry, multiple people are coming to me, multiple productions, communications, what do you have?  Nothing.  Who are these people?

**THE COURT:**  Well that's why I was asking, is this going to be more of that versus, you know, someone who has access to -- you know, as we were looking at -- or I did  at least an in camera review of the whole series of text

20

messages -- so that's why I was asking what is the personal involvement?  Because if it's just, you know, yes, someone told me this based on what someone else said and what someone else said and then when you get to the end of it there's really nothing to it, or there's something there but it's -- we're three people removed.

MR. PALLARES:  Yeah.

MS. LENZE:  But, Your Honor, we are talking about eXp World Holdings, Inc. defendant in this case, and we have the right for discovery related to the claims against eXp World Holdings, Inc..

Those claims relate to the action or inaction they took when claims were brought to the board, and claims brought to the board are always going to be hearsay, right, because they're from another source being brought to this board of directors.

Now, for discovery purposes that's allowed, whether it gets into evidence is whether or not we can overcome that hearsay at the time of trial.

For purposes of Mr. Miles we are talking about a gentleman that heard from Ms. Gentry, from other sources, heard directly from letters, from people making complaints that there were complaints of sexual assault.  He as a --

THE COURT:  Is that a dispute?  I mean --

MS. LENZE:  No, that's --

**THE COURT:** -- is it a fact that someone heard this, is that -- I mean -- I'm trying to understand why we need to have a deposition over the fact that people were making these comments probably throughout the company.

**(Simultaneous speaking)**

**MS. LENZE:** Excuse me, Mr. Pallares, we are putting them in the seat of a defendant and having to prove that they did not follow through.

Like the company, they did not follow through with their obligations as the parent company, as the board of directors to do anything about these complaints, to investigate these complaints.

There was a suggestion by the whistleblower to go to outside counsel and investigate. Mr. Miles himself knew this and told that whistleblower to -- that it was none of her business and to not mention it and to not talk about it.

Mr. Miles took that action and we, Your Honor, respectfully as they are a defendant in this case should be allowed to inquire about the action or inaction taken, because ultimately it is the burden of the plaintiff to prove that.

And so --

**MR. PALLARES:** Well let's look --

**MS. LENZE:** -- it is not a rehashing -- excuse me, Mr. Pallares -- it is not a rehashing of the Kinard situation, it directly relates to complaints made by our plaintiffs to the

board of directors, and they have not been inquired to.

Yes, Ms. Fee Gentry's deposition was taken, and yes she identified what actions she suggested to the board, and that ultimately at the time of trial will not be hearsay, but  -- or it will be hearsay that is overcome with exceptions and direct testimony related to what was told to her, but like Ms. Gentry we should be able to inquire as to, especially Mr. Miles, what he was told, what he did about it, what he decided not to do as chair of the audit committee.

They are a defendant in this case and we should be allowed to inquire of defendant in this case.  Just because they're the board of directors doesn't mean they're not accessible for a deposition, because the deposition bar is much lower, you know, for discovery purposes.

And the way Mr. Pallares has indicated --

**THE COURT:**  Well that the issue for Apex, whether you think it applies or not, but is going to be an issue because one side is going to raise it, is there has to be some kind of a factual showing.

So it doesn't sound like something that we are going to be able to decide in a discovery conference, unfortunately, because it sounds as though this is something that needs to be briefed.

I just -- is this an entity that has produced a 30(b)(6) witness before?

23

**MR. PALLARES:**  It is not because there's not been one asked for.

In fact the -- but going to the board, I mean they had ample access to the secretary, Jim Bramble (phonetic), they took two depositions of him, he's the secretary, he's the one that does the board meetings, he attends the boards, he would have any information as to what happened, he also is there with the audit committee.

They had the opportunity to take depositions of those individuals that -- down below to exhaust their -- to exhaust that before going to the Apex, and they failed to do so.

**MS. LENZE:**  No, we did that.

**MR. PALLARES:**  This is after --

**THE COURT:**  Well I think as I said that's --

**MR. PALLARES:**  This is after the --

**THE COURT:**  -- going to be one of the issues.  You know, is this something where the party already had an opportunity to take discovery and didn't do it?

These are all going to be issues, so I think this is one where I'm sorry to say we probably need a factual record --

**MS. LENZE:**  Right.

**THE COURT:**  -- so that the Court has some way of making a decision about this.

So I don't know what we can do, because right now unfortunately I don't have time for a hearing.  I think it is

24

going to be very difficult to address this.  Let me see if I can grab my calendar.  What happened?  Oh, hold on one moment.  Now I have it.

All right, so then in terms of the briefing schedule, have you discussed how to proceed with this?  I assume this is one that could be done, if at all, in June, so that we have the maximum amount of time to try and get this together.  So this sounds like a motion to compel, so for the plaintiffs' side when would you be able to get a brief done?

**MS. LENZE:**  As early as possible, I would say next week, Your Honor, we can submit our motion.

**THE COURT:**  May what day?

**MS. LENZE:**  Let's see, how about just -- how about May 6th or 7th, as Your Honor prefers.

**THE COURT:**  Well let's see with the opposition how long would the defendant need to file an opposition?

**MR. PALLARES:**  Well given that I'm going to be -- I mean if -- this is tight, Your Honor.  If we get it --

**THE COURT:**  If you get it May 6th would you be able to --

**MR. PALLARES:**  See I'm going to be out of time.

**THE COURT:**  Oh.

**MR. PALLARES:**  I'll be out of time, but we can actually start getting working on it, I'm just trying to accommodate, and then we have depositions in -- a deposition in

Arizona on the 12th.

You know what, I mean we can probably try to get something -- an opposition by the 13th.

THE COURT:  All right.  So let's go with May 6th as the motion filing date, May 13 as the opposition, and I hate to do this, but I think we'd have to have the hearing then on May 15, and then any reply arguments can be made at the hearing.

MS. LENZE:  Understood, Your Honor.

MR. PALLARES:  I will be out, but I'm sure we can have somebody come in and argue the motion.

THE COURT:  Okay.  Why don't we set May 15 at 10 a.m.

MR. PALLARES:  Okay.

MS. LENZE:  That works, Your Honor.

THE COURT:  All right.  So for that, okay.

Then the sanctions motion.  That's not going to be heard by me, so you can address whatever, you know, briefing schedule you want to do with that, because that's not something that I will end up hearing.  So I don't think it's something we can address here today.

Missing Facebook workplace chats, what is that?

MS. LENZE:  That --

MR. PALLARES:  That is -- go ahead.

MS. LENZE:  It's just -- it's been an outstanding issue.  We've met and conferred on it, Your Honor, and sent the defense a list of Facebook workplace chat productions that we

26

received where there was missing messages where the witness, whose name appeared next to the missing messages testified they didn't themselves delete them.  We are trying to find the origin of those deletions.

We took a 30(b)(6) regarding retention of Facebook workplace chats and so on and so forth, and one of the things that came up, and I believe it was at a discovery conference, but was the suggestion that because these workplace chats are visible from multiple platforms we are now at the juncture where plaintiffs are seeking an inspection of that Facebook workplace chat from another view.

They were produced in PDF, no Metadata, which is contrary to the ESI protocol, but that's a whole nother (sic) issue.

And so what we were seeking was a request to have our ESI folks view -- remotely obviously or however ESI folks do this -- view that Facebook workplace chat for multiple members of a given chat and try to ascertain whether that deleted message exists in another form on another member's message or can ascertain from Metadata, right, in the original source, Metadata that demonstrates when it was deleted, by whom it was deleted, so on and so forth.

MR. PALLARES:  Here's the issue, Your Honor, is that workplace chats or from Meta on Facebook, it's a business aspect of Facebook, and so to get that we had to use certain

27

software because Meta or Facebook doesn't provide you, they don't say here, here they are.

THE COURT:  Uh-huh.

MR. PALLARES:  Certain software to export that.  And that export process then has to be loaded up or converted onto a review platform, and then when it's ultimately produced it's in a completely different format than what you would have seen in Facebook.

And so what's happening is that there are blips in there.  Plaintiff has characterized it as deletions.  There's been no conclusion that they're actually been deleted.  But for one where there has been a deleted Facebook workplace chat for an individual, so whenever that individual chat comes up it is marked, but there are other bubbles that we don't know what the origin is, and it's since been suspected that it could be due to the transfer process, we don't know.

So they've asked, well, have somebody look at the workplace chats, and today I'm supposed to have a conference with the vender to actually get with the vendor and see what can we do.  Can this actually be done before we set up an inspection?

Preferably I'd like my vendor to look at this and see is there any discrepancies or what's going on if you compare what plaintiff has provided to us certain workplace chats that they believe are questionable and how these ellipsis with no

content in them where they think content has been deleted.

Look at that, look at the actual chat that we have, see if there's any missing content or anything that's been deleted, and then get back to us before we set up, you know, something that we're going to try to recreate the workplace chat.

And quite frankly, I mean if he no longer uses that platform and I just don't know realistically what can be done, so I'm going to be conferring with our ESI vendors this afternoon.

MS. LENZE:  Well --

THE COURT:  What I was wondering is have you been able to identify the ones where you think there's a deletion?

MS. LENZE:  Oh, yes, and we've produced the list of those to defense counsel in advance of our meet and confer, in advance of this conference.

THE COURT:  Okay.  So then Mr. Pallares, can you talk with your vendor about those specific I guess Bate stamp numbers or however they've been identified so that they can take a look and see if there's any explanation that they can find?

MR. PALLARES:  That's what we're -- that's what I intend to do, I've been trying to coordinate with them to get that conference to see if they can do that to see exactly what you're going at, Your Honor.  Is like have them look at it and

begin the process that way.

MS. LENZE: And I would just say, Your Honor, just because there was a characterization that somehow we were misidentifying these as deleted when they're not, and that's the whole point of the inspection, right, to determine what happened.

But I will say we have a good faith basis to believe that content is relevant because we're talking about conversations, for example, related to the early vesting of defendant Bjorkman following complaints and there would be a comment that is missing, and then another comment below directly addressing the comment above saying something like, thanks Jim for the suggestion or whatever it might be.

So it is a natural missing part of what otherwise flows as a conversation. And so --

MR. PALLARES: Well if you do Facebook chats you know that chats come in, it's almost like email. It's like you get an email and then somebody is looking at an email and then responds to a previous email. Just because it falls in sequentially after the next one doesn't mean that that response is to the above email or the above chat.

So I understand where they're going, I think the ESI to look at it, I did -- because you know, their good faith belief is, you know, they asked somebody did you delete this, and they said no, and then it's obviously the presumption of

well somebody must have deleted it, and yet we haven't really ascertained whether there's actual a deletion.

THE COURT:  Well that's my point, I think you need to talk with the vendor first, Mr. Pallares, and see giving some example, give them the chance to take a look at it and see if they can determine what they think happened.

I mean I'm hopeful that it can be done at the vendor level as opposed to, you know, sometimes having to get, you know, Meta involved or something, because sometimes, you know, it's not at -- it's not with the vendor that's the issue, so I'm hoping we don't have to go beyond that.

But I think it's before doing an inspection the question is going to be an inspection of what, and so I think Mr. Pallares your vendor needs to make a first effort to try and see is that something that happened in the export process, from the export process to the platform?

In other words, you know, go through all the steps using some examples to see if it's -- if that missing caption or whatever is in the original --

MR. PALLARES:  Right.

THE COURT:  -- or does that happen at some point in the export or platform or review process?  So I think you need to do that first.

But when did you say you were going to be meeting --

MR. PALLARES:  I'm supposed to have a meeting with

them at two today, and so --

THE COURT:  Okay.

MR. PALLARES:  -- hopefully I can start laying the ground work to start getting them going on this.

THE COURT:  Okay.  So then why don't you talk with the plaintiffs' counsel, you know, maybe even tomorrow, depending on -- I'm imagining they will need some time --

MR. PALLARES:  Yeah.

THE COURT:  -- to look into this, but see if they could maybe do it within a week.

MR. PALLARES:  Okay.

THE COURT:  At least to try a few of these.  I mean it may not be, you know, every single one, but if there are five examples maybe they can look at five and see if there's a pattern that is emerging.

MR. PALLARES:  Okay.

MS. LENZE:  And I would just represent to the Court, we understand what Mr. Pallares was discussing relating to it was Ms. Onin (phonetic) whose complete Facebook workplace chat account was deleted, we understand that.

What we would ask Mr. Pallares to do is of the 20 or so that exist, checking on one of those that's not Ms. Onion's --

MR. PALLARES:  Oh, yeah, I understand.

MS. LENZE:  -- at first because we already understand

that issue.  Yeah.

THE COURT:  Okay.  All right.  Let's see.  Well this looks related to something we just discussed.

The next one is the 30(b)(6) related to investigations by eXp defendants of complaints related to defendant Bjorkman and defendant Golden.

MS. LENZE:  This is a bit different, Your Honor, and if I may it's much like the defendants' position related to inquiring further into -- or of our plaintiffs about the fraudulent misrepresentation claim.

Likewise now through the lens of that claim we would have some additional questioning related to statements made about the -- what was occurring on the part of the company, you know, the truth behind those statements.

And again, like with plaintiffs we don't think it would be an extensive deposition, but nonetheless believe that given this new cause of action we are entitled to question with that cause of action in mind.

And so therefore have additional follow-up questions, have additional areas of inquiry that are very specific and tailored to this claim.

MS. WANG:  Your Honor, I'd like to point out that in opposing our motion to dismiss their additional claim the plaintiffs had represented to the Court that with respect to defendants' request for additional discovery should the Court

deny their motion dismiss plaintiff submit no additional discoveries necessary.

So I do think it's disingenuous for them now to say they need -- require discovery on this entire list of topics when they have represented to the Court that they had already the evidence for the claim they were bringing and they didn't need additional discovery.

MS. LENZE:  Well I think needing it to bring that claim and discovery being opened and us being entitled to it are two different things, right?  And just because we believe there was enough evidence to bring a claim we identified that there was this fraudulent misrepresentation through the discovery we were taking.

There are elements of fraudulent misrepresentation that we would like to inquire into and we're entitled that -- to that in discovery.  And just because we have one fact to prove an element doesn't mean we're not entitled to more, and that's what we're -- the same thing you're doing with the plaintiffs, Your Honor, the same thing defendants are asking to do with the plaintiffs, ask about these investigations we've already inquired to.

Well now they're doing it in the -- through the lens of this fraudulent misrepresentation claim and that's all we're trying to do as well.

MS. WANG:  But it's not the same at all because we

34

had no idea that plaintiffs were going to bring a fraud claim, and so we never pursued the lines of inquiry we would have had we known we were defending a fraud claim.

Plaintiffs put together -- I mean reviewed the evidence I guess in the earlier discovery period, decided that plaintiffs had enough to bring a fraud claim, but more than that also represented that no additional discovery is needed.

The two -- I mean the two parties are not in the same position.  We had no idea a fraud claim was going to be brought by the plaintiffs and therefore we are entitled to pursue additional lines of inquiry to be able to defend our claims.

**THE COURT:**  So let me make sure I understand, because I feel like I'm coming into the middle of a movie.

So is the defendants' position -- or eXp entities is the position no 30(b)(6) witness?

**MS. WANG:**  I believe that at this point all of this would be cumulative.

**MR. PALLARES:**  Yeah.

**MS. LENZE:**  And I would --

**MR. PALLARES:**  Much of this stuff has been gone over, and to be candid with you, we asked for -- I mean just as a very general 30(b)(6) topic so we asked for more specific categories, and in the categories if you look at them it's, you know, all statements made to plaintiffs but concerning investigation.

I mean these are something that the plaintiffs would know about, that's what we want to know is what statements were made to you, okay, and it's almost -- and then other things it's like identify of people who made these statements and then another category is a purpose or a reason each statement was made.

I mean these are the 30(b)(6) categories for investigation, and these are like all -- this is all plaintiffs, this is the information that we would gather from plaintiffs, it's like why were you presenting this?  Well what did you mean by these statements when you -- and now this is being turned around on a 30(b)(6) for us.

**THE COURT:**  Well --

**MR. PALLARES:**  Further it's been investigated -- it's been gone over.

They had again complaint handling, Corey Haggard, Jim Bramble, they're the ones who were conducted the investigations, and they had the opportunity and did conduct discovery as to them.  That's why as Ms. Wang pointed out they said in their motion we don't need any more discovery because we've already deposed everybody and got our information.  I mean --

**MS. LENZE:**  But I'd like to --

**THE COURT:**  So I have a problem because I'm needed DOWN in the duty courtroom, so we have to adjourn this.

36

I'm wondering if in the meantime someone can send me the proposed 30(b)(6) topics and -- for each eXp entity, I assume there were two different ones, maybe not.

MR. PALLARES:  It's -- we understand it's the eXp Realty because they're the ones who conducted the investigation, and so that's our understanding of the 30(b)(6), it goes to eXp Realty, LLC.

MS. LENZE:  Well then we -- depending on the issue with Mr. Miles obviously we would like a 30(b)(6) related to eXp World Holdings, Inc. as well related to the -- their involvement in the investigation.  So --

MR. PALLARES:  That's already been -- I mean you already know they weren't involved in the investigation, that's -- we keep going around to the same thing.  You already have all of the evidence that you deposed Corey Haggard and Jim Bramble as to the investigation and its scope, all right?

THE COURT:  No, no, but I mean is the issue -- because from what I'm understanding the eXp World Holdings wasn't deposed before in terms of the investigations.  So is there someone who can state the company's position on this?  I mean did they conduct an investigation of their own?  Did they rely on someone else's investigation?  You know, we're in a double hearsay issue.

MR. PALLARES:  As a parent they let the subsidiary, that being eXp Realty, handle the situation.  That's the issue

37

here, is that --

THE COURT:  Okay.  So all right --

MR. PALLARES:  -- they're advised as to what eXp Realty is doing.

THE COURT:  Okay.  So I think that's helpful.

So then perhaps someone can send to my chambers the proposed topics for the 30(b)(6) and I can take a look at those, and in the meantime see if there's any additional time that I have that we could reconvene, if not, not, but you know, I'll do the best I can, but right now I'm -- I have to go downstairs.

So thank you very much.  I will at least issue a minute order on the topics that we've covered so that we all know, you know, the dates for the motions and all that.  So hopefully that goes out, if it doesn't go out by the end of the day it'll be first thing tomorrow morning.  And then in the meantime I will take a look at my schedule.

So sorry for the truncated conference, but that's just the way it is this week.  But thank you very much, everyone.

(A chorus of thank you)

(This hearing was adjourned at 10:59 a.m.)

38

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

<u>June 13, 2026</u>

Signed                                           Dated

*TONI HUDSON, TRANSCRIBER*